IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:16-cv-_____ - ___-___

**ELECTION SYSTEMS & SOFTWARE, LLC,**
a Delaware limited liability company; and

**HART INTERCIVIC, INC.,**
a Texas corporation;

        Plaintiffs,

        v.

**WAYNE W. WILLIAMS,**
in his official capacity as Colorado Secretary of State.

        Defendant.

---

**AFFIDAVIT OF BRYAN J. HOFFMAN IN SUPPORT
OF PLAINTIFFS' MOTION WITH AUTHORITIES
FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

---

Bryan J. Hoffman, having first been duly sworn, states the following under oath.

1. I am over the age of 21 years.

2. I have been employed by plaintiff Election Systems & Software, LLC ("ES&S"), or a predecessor entity since 1992.

    a. In September of that year I became an Aftermarket Product Sales Representative with Business Records Corporation ("BRC"), responsible for selling peripheral election products along the East Coast.

    b. In 1997 BRC was acquired by American Information Systems to form ES&S. I retained my position as an After Market Product Sales Representative with ES&S, based in Waite Park, Minnesota.

relating to a "uniform voting system" for Colorado. Under that concept, a single vendor would be chosen by the Secretary to provide the same voting system to all 64 of Colorado's counties.

9.  [¶33] In response, proposals were submitted by Clear Ballot Group, Inc. ("Clear Ballot"); Dominion Voting Systems, Inc. ("Dominion"); ES&S; Everyone Counts, Inc.; and co-plaintiff Hart InterCivic, Inc. ("Hart").

10. [¶34] In 2014 it was determined by the current Secretary, Wayne Williams, that the proposed systems would be "piloted" – *i.e.*, evaluated – in various counties during the November 2015 election.

11. [¶35] A Pilot Election Review Committee ("PERC") was appointed by the Secretary to obtain and evaluate feedback concerning the systems to be piloted. It was intended that the Secretary would carefully review and consider the PERC's recommendations, and that one or more provider(s) of the system(s) ultimately selected would then undergo formal certification so that counties desiring to acquire the new system(s) could do so in time for use in the 2016 primary election.

12. [¶36] Ultimately, four voting systems were temporarily approved by the Secretary for use in the November 2015 election and evaluation by the PERC – those of Clear Ballot, Dominion, ES&S and Hart.

13. [¶37] Eight counties participated in the PERC evaluation process utilizing one of the four voting systems in the November 2015 election: Adams (Clear Ballot), Denver (Dominion), Douglas (Hart), Garfield (Hart), Gilpin (Clear Ballot), Jefferson (ES&S), Mesa (Dominion) and Teller (ES&S).

14. [¶39] In December 2015, after completing its pilot evaluation, the PERC voted 5-2 that Colorado counties should have multiple options available to them for the purchase or lease of such voting systems.

15. [¶40] Soon thereafter, however, the Secretary announced his decision to select a *single* uniform voting system, to be provided by Dominion, for acquisition by all Colorado counties for use in conducting elections.

16. [¶47] In early February 2016, the Secretary permanently adopted certain new election rules and changes to certain other existing election rules.

17. [¶49] Later in February 2016, the Secretary and Dominion entered into a contract for Dominion to be the provider of voting systems to Colorado's counties. The contract is for at least six years and may be extended by the Secretary for an additional two years.

18. [¶72.a(i)] Currently, ES&S has voting systems in place or provides election support services in the following Colorado counties: Adams, Alamosa, Archuleta, El Paso, Huerfano, Jefferson, La Plata, Mineral, Montezuma, Pitkin, Saguache and Teller.

19. [¶112] As the chief election official of the State of Colorado, and as a result of communications with ES&S and those counties, the Secretary is necessarily aware of those existing business and contractual relations between ES&S and those counties.

20. [¶72.b] As a result of the Secretary's actions:

    a. Mesa County has already terminated its prior relationship with ES&S in order to acquire the Dominion system.

    b. It is anticipated that Alamosa and La Plata counties will also be moving from the ES&S system to the Dominion system.

    c. ES&S' remaining county customers are likely to do the same when their current maintenance and support or rental agreements expire in 2016.

    d. [¶114] All of this has been and will be to the economic detriment of ES&S.

21. [¶72.d] Meanwhile, due to the newly-changed election rule 11.9.2(b), ES&S is unable

[(i)] to sell or lease upgrades to or enhancements for the voting systems it currently has in place in the above-listed Colorado counties or [(ii)] to sell or lease replacements for them unless they are damaged, defective or inoperable.

22. [¶72.d(iii)] And, because of other newly-changed or -adopted election rules 11.9 and 21.4 and the Secretary's actions in selecting and then contracting with Dominion as the provider of a uniform voting system for Colorado, ES&S is unable to compete with Dominion to sell or lease voting systems to any Colorado county.

23. [¶108-09] As a result of the preceding, no Colorado county has purchased or leased from ES&S upgrades or enhancements to or replacements for ES&S voting systems currently in place, nor has any Colorado county has purchased or leased a new voting system from ES&S – all to the economic detriment of ES&S.

24. Plaintiff ES&S will incur economic damages in the form of decreased net revenues due to its inability to continue functioning as a voting system provider in Colorado. It necessarily will lose all its customers and business in the state.

25. Once customers are induced away or lost, there is an extreme difficulty and uncertainty in regaining their business.

26. The effect of the Secretary's challenged conduct on the volume of ES&S' revenues is inherently difficult to measure because it is uncertain how many additional new customers and associated revenues ES&S otherwise may have been able to generate if allowed to compete for new business.

27. Accordingly, Plaintiff's potential economic damages attributable to the loss of actual and potential customers and revenues cannot be accurately ascertained.

28. Additionally, Plaintiff's loss of customer good will is not subject to precise calculation. ES&S will lose the continuity of business which comes from years of establishing and fostering customer relationships. The contacts and good will that it has established is essential to the continued successful operation of its business, both in Colorado and elsewhere. The longer it is precluded from providing new voting systems in Colorado, the more good will and customers it will lose here, and its national business reputation will also suffer as a result.

29. The effect of the Secretary's challenged conduct on the good will Plaintiff enjoys with its customers is inherently difficult to project. There is an extreme difficulty and uncertainty in restoring goodwill among customers. Although losses such as good will and reputation are identifiable, they are not readily calculable.

30. In sum, the harm that ES&S will suffer from the Secretary's challenged action while this matter proceeds to trial cannot necessarily be measured in dollars, particularly when, as here, his conduct completely changes the entire competitive structure of the marketplace.

31. This completes my affidavit in this matter.

Bryan J. Hoffman

[Remainder of this page intentionally left blank.]

STATE OF MINNESOTA )
) ss.
COUNTY OF STEARNS )

Subscribed and sworn to before me this 20 day of May 2016 by Bryan J. Hoffman.

My commission expires: 1-31-2017

_____
Notary Public

RONALD P KOSEL
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/17

[SEAL]