IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:16-cv-_____ - ___-___

**ELECTION SYSTEMS & SOFTWARE, LLC,**
a Delaware limited liability company; and

**HART INTERCIVIC, INC.,**
a Texas corporation;

      Plaintiffs,

v.

**WAYNE W. WILLIAMS,**
in his official capacity as Colorado Secretary of State.

      Defendant.

---

**AFFIDAVIT OF PETER LICHTENHELD IN SUPPORT
OF PLAINTIFFS' MOTION WITH AUTHORITIES
FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

---

Peter Lichtenheld, having first been duly sworn, states the following under oath.

1. I am over the age of 21 years.

2. I earned an M.A. in Instructional Technology from the University of Texas, and a B.A. in Religious Studies and Philosophy from Beloit College

3. I have been employed with plaintiff Hart Intercivic, Inc. ("Hart"), since January, 2001.

    a. From 2001-05 I was Training Program Manager, managing training services and end-user documentation.

    b. From 2005-07 I was Director of Consulting and Training, managing Account Managers, Project Managers and Trainers and their programs.

    c. In 2007-08 I was Director of Customer Care, managing Project Managers and

Trainers, Help Desk and all customer-facing programs.

        d.     From 2008-11 I was Director of Operations, managing Project Managers and Trainers, Help Desk and all customer-facing programs including Ballot Production Services (ballot layout and media production for customers), Hart's Repair Depot and Supply Chain and Technical Services (computer setup for customers).

        e.     I have been Vice-President of Operations for Hart since 2011. I am responsible for managing Professional Services, including training and project management, the Help Desk, Ballot Production Services, Technical Services and Product Management, including voting systems certification. As such, I am familiar with the voting systems situation in Colorado and I am competent to testify to the following matters[1] based upon my own personal knowledge.

4.     [¶29] Colorado has 64 counties. The governing body of each is the Board of County Commissioners. The chief election official of each is the Clerk and Recorder.

5.     [¶30] In Colorado, voting systems are acquired by each individual county. They are then used by that county – as well as by municipalities, special districts, school boards and the like within the county – in conducting elections.

6.     [¶31] Over the years, multiple vendors have at any one time provided voting systems to Colorado counties. Each county has been free to choose among the competing vendors of voting systems that have been certified and approved by the Colorado Secretary of State (the "Secretary") in order to select the particular system the county deems most appropriate for its individual situation.

7.     [¶105] In the preceding regard, Hart has been openly marketing and/or providing voting systems and/or election support services to Colorado counties since at least 2002.

8.     [¶74] Hart's voting system is an electronic or electromechanical voting system within the

---

[1] Bracketed references are to numbered paragraphs of the Complaint and Jury Demand.

meaning of C.R.S. §§1-1-104(13.5), 1-1-104(23.5) and 1-5-601(1).

9.  [¶32] In fall 2013 then-Secretary Scott Gessler promulgated a request for proposals relating to a "uniform voting system" for Colorado. Under that concept, a single vendor would be chosen by the Secretary to provide the same voting system to all 64 of Colorado's counties.

10. [¶33] In response, proposals were received from Clear Ballot Group, Inc. ("Clear Ballot"); Dominion Voting Systems, Inc. ("Dominion"); co-plaintiff Election Systems & Software, LLC, ("ES&S"); Everyone Counts, Inc.; and Hart.

11. [¶34] In 2014 it was determined by the current Secretary, Wayne Williams, that the systems would be "piloted" – i.e., evaluated – in various counties during the November 2015 election.

12. [¶35] A Pilot Election Review Committee ("PERC") was appointed by the Secretary to obtain and evaluate feedback concerning the systems to be piloted. It was intended that the Secretary would carefully review and consider the PERC's recommendations, and that one or more provider(s) of the system(s) ultimately selected would then undergo formal certification so that counties desiring to acquire the new system(s) could do so in time for use in the 2016 primary election.

13. [¶36] Ultimately, four voting systems were temporarily approved by the Secretary for use in the November 2015 election and evaluation by the PERC – those of Clear Ballot, Dominion, ES&S and Hart.

14. [¶37] Eight counties participated in the PERC evaluation process utilizing one of the four voting systems in the November 2015 election: Adams (Clear Ballot), Denver (Dominion), Douglas (Hart), Garfield (Hart), Gilpin (Clear Ballot), Jefferson (ES&S), Mesa (Dominion) and Teller (ES&S).

15. [¶39] On December 17, 2015, after completing its pilot evaluation the PERC voted 5-2

that Colorado counties should have multiple options available to them for the purchase or lease of such voting systems.

16. [¶38] Meanwhile, however, on December 15, 2015, the Secretary issued a notice of proposed rulemaking for January 14, 2016, to consider revisions to various election rules in 8 CCR 1505-1, including Rule 11.9.2. The latter proposal indicated that, except for voting systems that had been certified by the Secretary on or before December 31, 2014, a political subdivision would only be able to purchase or lease a voting system certified and selected by him on or after December 15, 2015 as the State's *uniform voting system*.

17. [¶40] And, on December 22, 2015, the Secretary announced his decision to select a *single* uniform voting system, to be provided by Dominion, for acquisition by all Colorado counties for use in conducting elections.

18. [¶47] Then, in early February 2016, the Secretary permanently adopted certain new election rules and changes to other existing election rules.

19. [¶49] Later in February 2016, the Secretary and Dominion entered into a contract for Dominion to be the provider of voting systems to Colorado's counties. The contract is for at least six years and may be extended by the Secretary for an additional two years.

20. [¶72.a(ii)] Currently, Hart has voting systems in place or provides election support services in the following Colorado counties: Bent, Boulder, Cheyenne, Conejos, Costilla, Crowley, Custer, Delta, Dolores, Douglas, Fremont, Garfield, Grand, Hinsdale, Jackson, Kit Carson, Kiowa, Lake, Las Animas, Lincoln, Moffat, Montrose, Morgan, Otero, Ouray, Phillips, Prowers, Rio Blanco, Rio Grande, Routt, San Juan, San Miguel, Summit and Yuma.

21. [¶72.c] Hart also has voting systems in place or provides election support services in the following Colorado counties that are expected to switch to the Dominion voting system: Baca,

Chaffee, Clear Creek, Eagle, Gunnison, Logan, Park, Sedgwick and Washington.

22. [¶112] As the chief election official of the State of Colorado, and as a result of communications with Hart and those counties listed in ¶¶16-17 above, the Secretary is necessarily aware of those existing business and contractual relations between Hart and those counties.

23. [¶114] Yet, the Secretary has taken the above-referenced actions causing Hart to not receive the contractual benefits for which it had bargained with those counties and to which it is entitled and has caused pecuniary harm to it, which lost and continues to lose significant revenues as a result.

24. [¶72.c] As a result of the Secretary's actions:

   a. Gilpin County has already terminated its prior relationship with Hart in order to acquire the Dominion system.

   b. In addition to the counties listed in ¶17 above, it is anticipated that Hart's remaining county customers are likely to move from the Hart system to the Dominion system when their current maintenance and support or rental agreements expire.

   d. [¶114] All of this has been and will be to the economic detriment of Hart.

25. Meanwhile, [¶72.d] due to the newly-changed election rule 11.9.2(b) adopted by the Secretary in February 2016, Hart is unable [(i)] to sell or lease upgrades to or enhancements for the voting systems it currently has in place in the above-listed Colorado counties or [(ii)] to sell or lease replacements for them unless they are damaged, defective or inoperable.

26. But, [¶87.a] Colorado political subdivisions are authorized to adopt electronic and electromechanical voting systems including hardware, firmware and software *upgrades*. C.R.S. §1-5-612(1). [¶87.b] In amending election rule 11.9.2(b) such that only replacement of damaged, defective or inoperable electronic and electromechanical voting systems, components or devices is

authorized – rather than upgrades – the Secretary's action conflicts with C.R.S. §1-5-612(1).

27.    [¶72.d(iii)] And, because of other newly-changed or -adopted election rules 11.9 and 21.4 and the Secretary's actions in selecting and then contracting with Dominion as the provider of a uniform voting system for Colorado, Hart is unable to compete with Dominion to sell or lease voting systems to any Colorado county.

28.    [¶108-09] As a result of the preceding, no Colorado county has purchased or leased from Hart upgrades or enhancements to or replacements for Hart voting systems currently in place, nor has any Colorado county has purchased or leased a new voting system from Hart – all to the economic detriment of Hart.

29.    Yet, [¶75] in accordance with C.R.S. §1-5-601.5, Hart's voting system may be offered for sale in Colorado in that it meets federal election standards.

30.    [¶76] In accordance with C.R.S. §1-5-608.5(1), Hart's voting system has been tested, approved and qualified by a federally-accredited laboratory for sale and use in Colorado.

31.    [¶77] In accordance with C.R.S. §1-5-617(1)(a), after Hart's voting system was tested in accordance with C.R.S. §1-5-608.5, it was submitted to the Secretary for certification.

32.    [¶79] Hart's voting system meets the:

   a.    Extensive, statutorily-prescribed criteria set forth in C.R.S. §1-5-615; and

   b.    Rules adopted by the Secretary establishing minimum standards in the respects prescribed in C.R.S. §1-5-616(1) for functional requirements; performance levels; physical and design characteristics; documentation requirements; evaluation criteria; audit capacity; security requirements; telecommunications requirements; and accessibility.

33.    Plaintiff Hart will incur economic damages in the form of decreased net revenues due to its inability to continue functioning as a voting system provider in Colorado. It necessarily will lose

all its customers and business in the state.

34.   Once customers are induced away or lost, there is an extreme difficulty and uncertainty in regaining their business.

35.   The effect of the Secretary's challenged conduct on the volume of Hart' revenues is inherently difficult to measure because it is uncertain how many additional new customers and associated revenues Hart otherwise may have been able to generate if allowed to compete for new business.

36.   Accordingly, Plaintiff's potential economic damages attributable to the loss of actual and potential customers and revenues cannot be accurately ascertained.

37.   Additionally, Plaintiff's loss of customer good will is not subject to precise calculation. Hart will lose the continuity of business which comes from years of establishing and fostering customer relationships.  The contacts and good will that it has established is essential to the continued successful operation of its business, both in Colorado and elsewhere.  The longer it is precluded from providing new voting systems in Colorado, the more good will and customers it will lose here, and its national business reputation will also suffer as a result.

38.   The effect of the Secretary's challenged conduct on the good will Plaintiff enjoys with its customers is inherently difficult to project.  There is an extreme difficulty and uncertainty in restoring goodwill among customers.  Although losses such as good will and reputation are identifiable, they are not readily calculable.

39.   In sum, the harm that Hart will suffer from the Secretary's challenged action while this matter proceeds to trial cannot necessarily be measured in dollars, particularly when, as here, his conduct completely changes the entire competitive structure of the marketplace.

40.   This completes my affidavit in this matter.

_____
Peter Lichtenheld

STATE OF TEXAS         )
                       ) ss.
COUNTY OF TRAVIS       )

Subscribed and sworn to before me this 19th day of May 2016 by Peter Lichtenheld.

My commission expires: 4-12-2018

_____
Notary Public

[SEAL]

BARBARA KRAMER
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-12-2018
NOTARY ID 124183240