IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:16-cv-_____-___-___

**ELECTION SYSTEMS & SOFTWARE, LLC,**
a Delaware limited liability company; and

**HART INTERCIVIC, INC.,**
a Texas corporation;

   Plaintiffs,

v.

**WAYNE W. WILLIAMS,**
in his official capacity as Colorado Secretary of State.

   Defendant.

---

**AFFIDAVIT OF STEVEN M. PEARSON IN SUPPORT
OF PLAINTIFFS' MOTION WITH AUTHORITIES
FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

---

Steven M. Pearson, having first been duly sworn, states the following under oath.

1. I am over the age of 21 years.

2. I am Vice-President of Voting Systems Certification for plaintiff Election Systems & Software, LLC ("ES&S"). I have held that position since May 2004. In that position, I am familiar with the voting system situation in Colorado and I competent to testify to the following matters[1] based upon my own personal knowledge.

3. [¶74] In Colorado, ES&S is a vendor of electronic or electromechanical voting systems within the meaning of C.R.S. §§1-1-104(13.5), 1-1-104(23.5) and 1-5-601(1).

4. [¶38] On December 15, 2015, the Colorado Secretary of State (the "Secretary") issued

---

[1] Bracketed references are to numbered paragraphs of the Complaint and Jury Demand.

JK00819538.1 /font=8

a notice of proposed rulemaking for January 14, 2016, to consider revisions to various election rules in 8 CCR 1505-1, including Rule 11.9.2. The latter proposal indicated that, except for voting systems that had been certified by the Secretary on or before December 31, 2014, a political subdivision would only be able to purchase or lease a voting system certified and selected by him on or after December 15, 2015 as the State's uniform voting system.

5.  [¶40] On December 22, 2015, the Secretary announced his decision to select a single uniform voting system, to be provided by Dominion Voting Systems, Inc. ("Dominion"), for acquisition by all Colorado counties for use in conducting elections.

6.  [¶47] On February 9, 2016, the Secretary gave notice of permanent adoption of election rules 11.9 and 21.4 under 8 CCR 1505-1 which differ significantly from the December 15, 2015 proposed rules. The adopted rules eliminated any reference to a uniform voting system, instead adding exclusive and restrictive requirements and considerations.

   a.  Rule 11.9 adds significant technical requirements and optional considerations for approval by the Secretary of the acquisition or use of electronic or electromechanical voting systems by political subdivisions.

   b.  Rule 21.4 adds significant functional requirements for certification by the Secretary of electronic or electromechanical voting systems.

   c.  Rules 11.9 and 21.4, and their technical and functional requirements and optional considerations, are only met by – and seem tailored to the features of – the Dominion system,

      (i)  Which had been selected on December 22, 2015, by the Secretary as the provider of the uniform voting system for Colorado, and

      (ii) Do not have any basis in the requirements of HAVA incorporated into the Colorado election code.

7.  [¶48] The collective effect of the February 9, 2016 rules is – without expressly calling for a uniform voting system – to functionally mandate that all Colorado counties adopt a single uniform voting system whose requirements can only be met by Dominion's product. For example:

a.  New rule 11.9.2(b) allows only replacement of damaged, defective or inoperable existing electronic and electromechanical voting systems, components or devices – but neither (i) replacement of undamaged, non-defective or operable existing electronic and electromechanical voting systems, components or devices, nor (ii) upgrades to existing systems, components or devices. [¶87] That conflicts with C.R.S. §1-5-612(1), which authorizes Colorado political subdivisions to adopt electronic or electromechanical voting systems and hardware, firmware and software upgrades.

b.  New rule 11.9.3(c) gives favorable consideration to a voting system's utilization of commercial, off-the-shelf hardware components rather than proprietary, purpose-built hardware components. Dominion's system does; the ES&S system does not. The result is to disfavor it.

c.  New rules 11.9.3(d), 11.9.4(c) and 21.4.7(e) effectively require a voting system to enable users to operate or access all election management systems within a single interface on the same server or workstation.

(i)  Dominion's system does; the ES&S system has two interfaces. The result is to effectively disqualify it.

(ii) Yet, there is no operational reason for these functions to be on the same high priced server.

d.  New rules 11.9.3(g)(1), 11.9.4(a) and 21.4.16(a) effectively require a voting system to enable election judges to digitally rather than manually adjudicate, resolve and duplicate ballots. Dominion's system does; ES&S' system doesn't. The result is to effectively disqualify it.

e.  New rules 11.9.3(g)(2), 11.9.4(b) and 11.9.5 effectively require a voting system

to have ballot scanners equipped with automatic document feeders, enabling election judges to scan multiple ballots rather than a single ballot at a time.

        (i)    Dominion's system does; the ES&S system does not. The result is to effectively disqualify it.

        (ii)    Yet, there is no operational benefit to this requirement.

    f.    New rule 21.4.7(e) effectively prohibits a voting system from deploying, separately from a traditional election management system, any data management applications that do not capture or tabulate votes. Dominion's system utilizes integrated applications; the ES&S system utilizes separately-deployed applications. New rules 21.4.14 (b)-(c) and 21.4.15(b)-(d) impose arbitrary and restrictive formatting requirements in a manner that is highly irregular for administrative rules, particularly in light of the fact that the formatting requirements appear to be tailored exactly to the manner in which Dominion system operates.

8.    Regardless of the preceding [¶63]:

    a.    [¶63.a] ES&S has, in accordance with C.R.S. §1-5-608.5(1), had its voting system tested by a federally-accredited laboratory and found to be in substantial compliance with all applicable federal and Colorado requirements [¶76] so that it may be offered for sale and use in the state.

    b.    [¶75] Because it meets federal election standards, under C.R.S. §1-5-601.5 the ES&S voting system may be offered for sale in Colorado.

    c.    [¶63.b, ¶77] ES&S has, in accordance with C.R.S. §1-5-617(1)(a), submitted its voting system to the Secretary for certification.

9.    [¶78] In accordance with C.R.S. §1-5-617(1)(b), the Secretary was then required to examine the ES&S system and determine whether it complies with the statutorily-prescribed

requirements of C.R.S. §1-5-615 and the rules establishing minimum standards addressing statutorily-prescribed criteria under C.R.S. §1-5-616.

10. [¶64, ¶79] In fact, the voting system of ES&S does comply with the extensive, statutorily-prescribed requirements of C.R.S. §1-5-615(1) and the rules establishing minimum standards addressing statutorily-prescribed criteria under C.R.S. §1-5-616(1) for functional requirements; performance levels; physical and design characteristics; documentation requirements; evaluation criteria; audit capacity; security requirements; telecommunications requirements; and accessibility.

11. [¶80] Accordingly, under C.R.S. §1-5-608.5(3)(a) the Secretary must certify the ES&S voting system and approve it for purchase, installation and use by Colorado political subdivisions.

12. [¶66, ¶81] Nevertheless, the Secretary has not done so.

13. [¶68] As the result of the newly-changed election rules, the Secretary has:

   a. Discriminated in favor of Colorado-based Dominion by ensuring that it is the only company which can meet the new requirements for operating as a voting system vendor in Colorado.

   b. Discriminated against non-Colorado-based ES&S by ensuring it cannot meet the new requirements and therefore is unable to continue operating as a voting system vendor in Colorado.

14. [¶69] In discriminating against non-Colorado-based ES&S by effectively barring it from continuing to provide voting systems in Colorado, the Secretary has prevented ES&S from engaging in interstate commerce – to the benefit of Colorado-based Dominion.

15. [¶70] The Secretary's discriminatory actions are not supported by any objectively-valid justification.

16.. This completes my affidavit in this matter.

*[signature]*
Steven M. Pearson

STATE OF NEBRASKA          )
                           ) ss.
COUNTY OF DOUGLAS          )

Subscribed and sworn to before me this 19th day of May 2016 by Steven M Pearson.

My commission expires: January 15, 2020

*[signature]*
Notary Public

[SEAL]

> State of Nebraska - General Notary
> TIMOTHY J. HALLETT
> My Commission Expires
> January 15, 2020