IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:16-cv-1237 - ___-___

**ELECTION SYSTEMS & SOFTWARE, LLC,**
    a Delaware limited liability company; and
**HART INTERCIVIC, INC.,**
    a Texas corporation;
        Plaintiffs,

        v.

**WAYNE W. WILLIAMS,**
    in his official capacity as Colorado Secretary of State.
        Defendant.
_____

**ORDER ON PLAINTIFFS' MOTION WITH AUTHORITIES FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**
_____

The Court has reviewed the Complaint and Jury Demand as well as Plaintiffs' Motion with Authorities for Temporary Restraining Order And/or Preliminary Injunction and its accompanying affidavits and exhibits, and has heard argument by counsel for the parties. The Court is therefore fully informed in this matter.

**FACTS**

The Court finds the following facts. Plaintiffs Election Systems & Software, LLC ("ES&S"), and Hart InterCivic, Inc. ("Hart"), are non-Colorado based entities that do business in Colorado. Dominion Voting Systems, Inc. ("Dominion"), is a Colorado-based corporation, with its principal place of business in this state.

In Colorado, voting systems are acquired by individual counties and are then used by those county and their municipalities, special districts, school boards and the like in conducting elections. On December 15, 2015, defendant Colorado Secretary of State Williams (the "Secretary") issued a

notice of proposed rulemaking for January 14, 2016, to consider revisions to various election rules in 8 CCR 1505-1, including Rule 11.9.2. The latter proposal indicated that, except for voting systems certified by the Secretary on or before December 31, 2014, a county would only be able to purchase or lease a voting system certified and selected by him on or after December 15, 2015 as the State's uniform voting system.

On December 22, 2015, the Secretary announced his decision to select a single uniform voting system, to be provided by Dominion Voting Systems, Inc. ("Dominion"), for acquisition by all Colorado counties for use in conducting elections. Meanwhile, opposition to a uniform voting system was submitted in advance of the January 14, 2016 proposed rulemaking. Nevertheless, on January 20, 2016, the Secretary announced that he had moved ahead toward completing the testing and certification of Dominion's system and tentatively negotiated pricing with Dominion on the behalf of the counties.

Next, on February 9, 2016, the Secretary permanently adopted election rules under 8 CCR 1505-1 significantly different than the rules initially proposed on December 15, 2015. The adopted rules eliminated any reference to a uniform voting system; instead they added exclusive and restrictive requirements and considerations. Rule 11.9 adds significant technical requirements and optional considerations for approval by the Secretary of the acquisition or use of electronic or electromechanical voting systems by political subdivisions. Rule 21.4 adds significant functional requirements for certification by the Secretary of electronic or electromechanical voting systems. Rules 11.9 and 21.4, and their technical and functional requirements and optional considerations, are seemingly only met by the Dominion voting system.

Without expressly calling for a uniform voting system, the collective effect of the February 9, 2016 rules appears to be to functionally mandate that all Colorado counties adopt a single uniform

voting system whose requirements are only met by Dominion's product.  Thus:

•	New rule 11.9.2(b) allows only replacement of damaged, defective or inoperable voting systems, components or devices – but neither replacement of undamaged, non-defective or operable existing electronic and electromechanical voting systems, components or devices, nor upgrades to existing systems, components or devices.

•	New rule 11.9.3(c) gives favorable consideration to a voting system that utilizes commercial, off-the-shelf hardware components rather than proprietary, purpose-built hardware components. Dominion's system does so across-the-board.  The ES&S system does not and so is disfavored; Hart's system does so in certain places and not in others, causing it to be less favored.

•	New rules 11.9.3(d), 11.9.4(c) and 21.4.7(e) effectively require a voting system to enable system users to operate or access all election management systems within a single interface on the same server or workstation. Dominion's system meets the requirement; the ES&S and Hart systems do not, effectively disqualifying them.  Yet, there is no operational reason for such functions all to reside on the same high-priced server.  In fact there are internal control, and single point of failure, reasons why they should not be on the same server.

•	New rules 11.9.3(g)(1), 11.9.4(a) and 21.4.16(a) effectively require a voting system to enable election judges to digitally rather than manually adjudicate, resolve and duplicate ballots. Dominion's system meets the requirement; the ES&S system does not, effectively disqualifying it.

•	New rules 11.9.3(g)(2), 11.9.4(b) and 11.9.5 effectively require a voting system to have ballot scanners equipped with automatic document feeders, enabling election judges to scan multiple ballots rather than a single ballot at a time.  Dominion's system meets the requirement; the ES&S and Hart systems do not, effectively disqualifying them.  Yet, there is no operational benefit to the requirement.

•       New rule 21.4.7(e) effectively prohibits a voting system from deploying, separately from a traditional election management system, any data management applications that do not capture or tabulate votes. Dominion's system utilizes integrated applications; the ES&S and Hart systems utilize separately-deployed applications.

•       New rules 21.4.14 (b)-(c) and 21.4.15(b)-(d) impose arbitrary and restrictive formatting requirements in a manner that is highly irregular for administrative rules, particularly in light of the fact that the formatting requirements appear to be tailored exactly to the manner in which Dominion system operates.

Not surprisingly, then, on February 17, 2016, the Secretary and Dominion entered into a contract for Dominion to be the provider of a uniform voting system to Colorado's counties. The contract is six years in length and may be extended by the Secretary for an additional two years.

**LAW**

**DORMANT COMMERCE CLAUSE**

The First Claim (¶¶61-72) of the Complaint and Jury Demand (the "Complaint") asserts that Plaintiffs' constitutional rights to engage in interstate commerce free from discrimination are being and will continue to be abridged here. In that regard, the Commerce Clause, U.S. Const., art. I, §8, cl.3 ("Congress shall have [p]ower ... [t]o regulate Commerce ... among the several States"), "confers 'rights, privileges, or immunities' within the meaning of [42 U.S.C.] §1983." <u>Dennis v. Higgins</u>, 498 U.S. 439, 446 (1991).

Although its language only addresses Congress' power over commerce, the Clause has long been recognized as "also limit[ing] the power of ... States to erect barriers against interstate trade.'" *Id.* at 446 (citations omitted). The Commerce Clause is a "substantive 'restriction on permissible state regulation' of interstate commerce." It is a "self-executing limitation on the power of the States

to enact laws imposing substantial burdens on such commerce." *Id.* at 447 (citations omitted).

This implicit rule of law has come to be known as the Dormant Commerce Clause. Under the Dormant Commerce Clause, only Congress is empowered to regulate interstate commerce. That clause "'denies ... states the power ... to *discriminate* against ... the interstate flow of articles of commerce.'" <u>Bioganic Safety Brand, Inc. v. Ament</u>, 174 F. Supp. 2d 1168, 1183 (D. Colo. 2001) (emphasis added) (citing <u>Oregon Waste Sys. v. Dept. of Envtl. Quality</u>, 511 U.S. 93, 98 (1994)). A state regulation may violate the Dormant Commerce Clause by "*discriminat[ing]* against interstate commerce ... on its face or in practical effect," *id.* (emphasis added) (citing <u>Am. Target Adver., Inc. v. Giani</u>, 199 F.3d 1241, 1254 (10th Cir. 2000)), such as by "*discriminat[ing]* in favor of in-state economic interests." *Id.* at 1183-84 (emphasis added). "Violation of Commerce Clause rights is itself an irreparable injury." *Id.* at 1185 (citing <u>ACLU v. Johnson</u>, 194 F.3d 1149, 1163 (10th Cir. 1999)).

**INITIAL EQUITABLE RELIEF**

A temporary restraining order or preliminary injunction is a form of equitable remedy that implicates the sound discretion of the trial court. *See* <u>Lundgrin v. Claytor</u>, 619 F.2d 61, 63 (10th Cir. 1980). The purpose of such relief is to preserve the relative positions of the parties pending a trial. <u>Univ. of Tex. v. Camenisch</u>, 451 U.S. 390, 395 (1981). In other words, it is designed to preserve the status quo[1] in order to enable a court to render a meaningful decision on the merits. <u>Tri-State Generation & Trans. Ass'n v. Shoshone River Power, Inc.</u>, 805 F.2d 351, 355 (10th Cir. 1986).

---

[1] The *status quo* is the last peaceable uncontested status between the parties prior to the controversy arising. <u>Dominion Video Satellite, Inc. v. Echostar Satellite Corp.</u>, 269 F.3d 1149, 1155 (10th Cir. 2001); 11A Charles Alan Wright, et al., Federal Prac. & Proc. §2948, at 136 (2d ed. 1995). Here, that was prior to the February 9, 2016 adoption of new election rules 11.9 and 21.4.

**The traditional test**

Traditionally, such relief lies where: (1) the Plaintiffs will suffer irreparable injury unless the order or injunction issues; (2) the injuries threatened to the Plaintiffs outweigh whatever harm the order or injunction may cause the defendant; (3) the order or injunction sought would not be contrary to the public interest; and (4) there is a substantial likelihood the Plaintiffs will prevail on the merits. *See id.* at 355; <u>Seneca-Cayuga Tribe v. Okla.</u>, 874 F.2d 709, 716 (10th Cir. 1989); *accord* <u>Resolution Trust Corp. v. Cruce</u>, 972 F.2d 1195, 1198 (10th Cir.1992); <u>Hartford House, Ltd. v. Hallmark Cards, Inc.</u>, 846 F.2d 1268, 1270 (10th Cir. 1988); <u>Otero Sav. & Loan Ass'n v. Fed. Reserve Bank</u>, 665 F.2d 275, 278 (10th Cir. 1981); <u>Lundgrin v. Claytor</u>, 619 F.2d at 63 (citing <u>Crowther v. Seaborg</u>, 415 F.2d 437, 439 (10th Cir. 1969)). These tests are met here.

*Irreparable injury.* Because a constitutional right is implicated, no further showing of irreparable injury is necessary. *See* <u>Kikumura v. Hurley</u>, 242 F.3d 950, 963 (10th Cir. 2001) (citing 11A Charles Alan Wright, et al., Federal Prac. & Proc. §2948.1 (2d ed. 1995)). Nevertheless, irreparable injury exists here. The evidence shows that ES&S and Hart are already losing and will continue to lose business. Indeed, they are threatened with being forced out of business altogether in Colorado. Further, the damages they will suffer are uncertain and they will suffer loss of goodwill and reputation.

*Balance of harms.* Because they face irreparable injury, the balance of harms weighs in their favor. Issuance of initial equitable will relief will simply leave the Secretary in the same position as before, causing him no injury or damages.

*Public interest.* For decades, Colorado counties have enjoyed all the benefits of competition among providers of voting systems: more efficient allocation of systems appropriate to each individual county's particular circumstances, better pricing, technological innovation and enhanced

customer service.    Continuation of those benefits militate in favor of initial equitable relief here. Moreover, Colorado counties can choose to acquire the Dominion system if they wish.

*Fair ground for litigation*.  Where, as here, the first three conditions of the traditional test are met, "the standard for meeting the fourth 'probability of success' prerequisite becomes more lenient." <u>Resolution Trust Corp. v. Cruce</u>, 972 F.2d at 1199; *accord* <u>Prairie Band of Potawatomi Indians v. Pierce</u>, 253 F.3d 1234, 1246 (10th Cir. 2001).  In such circumstances, the Tenth Circuit rule regarding prevailing on the merits is that Plaintiffs need only make a *prima facie* showing, <u>Lundgrin</u>, 619 F.2d at 63 (citing <u>Crowther</u>, 415 F.2d at 439), that they have a "fair ground for litigation" in order to satisfy the "substantial likelihood" of success prong. <u>Seneca-Cayuga</u>, 874 F.2d at 716 (citing <u>Lundgrin</u>, 619 F.2d at 63).  In other words, ES&S and Hart need "only show 'questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation.'" <u>Cruce</u>, 972 F.2d at 1199 (quoting <u>Tri-State</u>, 805 F.2d at 355 (quoting <u>Otero</u>, 665 F.2d at 278)); *accord* <u>Shattuck</u>, 1 F.Supp.2d at1238.  They have done that here.

Moreover, Plaintiffs have not only a reasonable, but a very substantial, likelihood of success on the merits here.  In the Tenth Circuit, a state rule that clearly discriminates against interstate commerce in favor of intrastate commerce is virtually invalid *per se* under the dormant Commerce Clause and can survive only if the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism. <u>KT & G Corp. v. Attorney Gen. of Okla.</u>, 535 F.3d 1114, 1143 (10th Cir. 20008).  Here, the collective effect of the new election rules and the Secretary's mandating of a single, uniform voting system provided by Dominion is to discriminate against non-Colorado-based ES&S and Hart in favor of Colorado-based Dominion without objectively-valid justification.  The latter is additionally true because the Secretary's rules conflict with state statutes and exceed his statutory rulemaking authority.

**The alternative test**

Alternatively, "[w]hen the evidence shows that the defendant[] [is] engaged in, or about to be engaged in, the act or practices prohibited by a statute which provides for injunctive relief to prevent such violations[2] ... . 'it is unnecessary for plaintiff[s] to plead and prove the existence of the usual equitable grounds ... . It is enough if the requirements of the statute are satisfied.' " <u>Atchison, Topeka & Santa Fe Ry. Co. v. Lennen</u>, 640 F.2d 255, 259-60 (10th Cir. 1981) (citation omitted) (cited in <u>CSX Transp., Inc. v. Term. State Bd. of Equaliz'n</u>, 964 F.2d 548, 550-51 (6th Cir. 1992); <u>Burlington N. R.R. Co. v. Dept. of Revenue</u>, 934 F.2d 1064, 1074-75 (9th Cir. 1991)).  That is because Congress has already determined that such violations should be enjoined.  *See* <u>Star Fuel Marts, LLC v. Sam's East, Inc.</u>, 362 F.3d 639, 652 (10th Cir. 2004) (quoting <u>Burlington N. R.R. Co. v. Bair</u>, 957 F.2d 599, 601 (8th Cir. 1992)).  All that is necessary is a reasonable probability the plaintiff will ultimately prevail on the merits.  <u>Lennen</u>, 640 F.2d at 261.

The evidence here shows that the Secretary is, and is about to be, engaged in conduct proscribed by the federal civil rights laws, which expressly provide for equitable relief to restrain and prevent such violations.  *See* 42 U.S.C. §1983; <u>Dennis v. Higgins</u>, 498 U.S. at 447; <u>Monell v. Dept. of Social Servs.</u>, 436 U.S. at 690; <u>Bioganic</u>, 174 F. Supp. 2d at 1183-85.  Accordingly, in order to obtain initial equitable relief here, there is no need to:  (i) demonstrate irreparable harm, *see* <u>Lennen</u>, 640 F.2d at 259 (*quoted in* <u>Kikumura</u>, 242 F.3d at 963; <u>Mical Commc'ns, Inc. v. Sprint Telemedia, Inc.</u>, 1 F.3d 1031, 1035 (10th Cir. 1993)); (ii) balance the equities between the parties, because Congress has already done so, *see* <u>Star Fuel Marts</u>, 362 F.3d at 652 (quoting <u>Bair</u>, 957 F.2d at 601);

---

[2] Suit for equitable relief is authorized by the Civil Rights Act.  *See* 42 U.S.C. §1983; <u>Dennis v. Higgins</u>, 498 U.S. 439, 447 (1991) (parties injured by state action violating Commerce Clause may sue for injunctive relief); <u>Monell v. Dept. of Social Servs.</u>, 436 U.S. 658, 690 (1978) (injunctive relief available under §1983 against implementation or execution of officially adopted and promulgated regulation or decision).

or (iii) determine the public interest, because "Congress has already ... determined that, as a matter of public policy, an injunction should issue where the defendant is engaged in ... any activity which the statute prohibits.' *See id.*

The existence of evidence showing that such violations have occurred or are about to occur is a sufficient basis in and of itself for the entry of initial equitable relief here. *See Lennen*, 640 F.2d at 259-60 (*quoted in CSX*, 964 F.2d at 551; *Burlington N. R.R. Co. v. Dept. of Rev.*, 934 F.2d at 1074-75). Consequently, such relief shall issue on this alternative basis as well.

Based on all of the foregoing, the Court ORDERS as follows:

1. Initial equitable relief in the form of a temporary restraining order is appropriate here, until an expedited preliminary injunction hearing can be held. This will preserve the relative positions of the parties as of their last peaceable uncontested status prior to the controversy arising.

2. The Secretary is restrained from the following:

  a. Applying, adhering to or enforcing election rules 11.9 and 21.4 as adopted on February 9, 2016, or applying, adhering to or enforcing election rules 11.9 and 21.4 except as they existed on December 14, 2015.

  b. Proceeding with the decision announced on December 22, 2015, to select a single uniform voting system to be provided by Dominion for acquisition and use by all Colorado counties in conducting elections.

  c. Proceeding with the contract entered into on February 17, 2016, for Dominion to be the provider of a Uniform voting system to Colorado's counties.

Dated this ___ day of _____, 2016.

BY THE COURT:

_____
United States District Court Judge