IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-1237-JLK

**ELECTION SYSTEMS & SOFTWARE, LLC**, a Delaware limited liability company; and **HART INTERCIVIC, INC.**, a Texas corporation,

    Plaintiffs,

v.

**WAYNE W. WILLIAMS**, in his official capacity as Colorado Secretary of State,

    Defendant.

## SECRETARY'S UNOPPOSED MOTION FOR PROTECTIVE ORDER

Defendant Wayne W. Williams, in his official capacity as Colorado Secretary of State ("the Secretary"), files this motion under Fed.R.Civ.P. 26(c)(1) seeking modification of the Court's May 31, 2016 Order (Doc. 14) on Plaintiffs' Motion for Limited Expedited Discovery (Doc. 11). As grounds, the Secretary states as follows:

### D.C. COLO.LCivR 7.1(A) and Fed.R.Civ.P. 26(c)(1) CERTIFICATION

As described in greater detail below, the Secretary's counsel conferred in good faith with counsel for Plaintiffs regarding the relief requested by this motion in an effort to resolve the dispute without court action. Plaintiffs do not oppose the relief requested herein.

## BACKGROUND

1. Plaintiffs, two voting systems vendors, Election Systems & Software, LLC and Hart InterCivic, Inc. (collectively "the Vendors"), filed their Complaint and Jury Demand on May 23, 2016 (Doc. 1), alleging that the Secretary's rules governing the certification of voting equipment and approval to purchase same violate, *inter alia*, the Commerce Clause because they discriminate against the Vendors in favor of Dominion Voting Systems, Inc. ("Dominion"). The Vendors are represented by Jones & Keller, a law firm that just weeks earlier utilized the Colorado Opens Records Act ("CORA") to request from the Secretary broad categories of documents related to Dominion and the Secretary's new rules. *See* Exhibit 1. The Secretary's office has been working cooperatively with Jones & Keller over the last several weeks to fulfill the voluminous CORA request.

2. Later on May 23, the Vendors filed a Motion with Authorities for Temporary Restraining Order and/or Preliminary Injunction (Doc. 2).

3. On May 24, 2016, the Court set a hearing on the Vendors' motion for temporary preliminary relief for the next day (Doc. 7), and their counsel provided notice of the hearing to undersigned counsel. *See* Exhibit 2.

4. In response, the Secretary's counsel conferred with the Vendors' counsel about the prejudice resulting to their client from having to defend against Vendors' motion for preliminary relief on such short notice. *See* Exhibit 2. During the conferral, counsel to all parties agreed that postponing the hearing was appropriate to allow for full briefing on the preliminary injunction motion, provided that the Secretary take no action on the Vendors' pending applications for voting system certification until after the Court rules on the preliminary injunction motion.

5. As a result of this conferral, counsel for the parties jointly requested that the Court vacate the May 25 hearing and instead permit the motion to be fully briefed and to schedule a preliminary injunction hearing for a later date.

6. At no time during the parties' conferrals did counsel for the Vendors disclose any intention to seek limited, expedited discovery from the Secretary in advance of the preliminary injunction hearing.

7. The Court approved the parties' requested approach and set a preliminary injunction hearing for July 6, 2016 (Doc 8). The Secretary's response to the Vendors' motion is due on June 14, and their reply is due on June 28.

8. On the afternoon of May 27, 2016, the Vendors filed a Motion for Limited Expedited Discovery (Doc. 11). The certification of compliance with D.C. COLO.LCivR 7.1(a) stated, "Plaintiffs' undersigned counsel has attempted to confer with counsel for the Secretary but has been unable to reach him."

9. The Court accepted the Vendors' discovery motion, but rejected their counsel's certification as deficient under the local rule because it failed to set forth "any and all 'specific efforts' undertaken to fulfill its duty to confer," and ordered an amended certification to be filed (Doc. 12).

10. The amended certification stated that the conferral attempt consisted of two calls to the direct telephone line of *one* of the Secretary's *three* undersigned counsel on May 27, 2016 (Doc. 13). And although the Vendors' counsel left a voicemail message when each call was unsuccessful in reaching that particular attorney for the Secretary, they went unheard until May 31 because the attorney was out of the office for the long holiday weekend.

11. Despite knowing the names, direct telephone numbers, and cell phone numbers for all three of the Secretary's counsel, *see* Exhibit 2, as well as the email addresses for two of the Secretary's counsel since at least May

4

24, the Vendors' counsel did not attempt to confer in any other manner with any of the Secretary's counsel—two of whom were in the office all day on May 26 and 27—before filing the discovery motion.[1]

12. On May 31, 2016, counsel for the Secretary emailed the Vendors counsel to address the lack of meaningful conferral, and to indicate that he would consult with his client to determine whether the Secretary opposed the motion for limited expedited discovery. *See* Exhibit 3.

13. Later that same day, the Court granted the discovery motion and ordered the Secretary to respond to two requests for production on or before June 10, and to designate staff to sit for a Fed.R.Civ.P. 30(b)(6) deposition on or before June 17 (Doc. 14).

14. After consulting with their client, undersigned counsel began conferring with the Vendors' counsel about the relief requested by this motion on June 1, 2016, which seeks to extend the current discovery and briefing deadlines and the hearing date by only three weeks.

---

[1] Indeed, the Secretary and his counsel take seriously their duty to "be available and to cooperate in efforts to resolve disputed matters, especially on the subject of discovery and expedited discovery in this time-sensitive election case" (Doc. 12), and are readily accessible by phone and/or email during and after business hours on weekdays, as well as on weekends.

15. Specifically, counsel for the Secretary engaged in a call with the Vendors' counsel that same day to explain the undue burden and prejudice to the Secretary if he is required to comply with the current discovery schedule, while simultaneously preparing both his brief in opposition to the motion for preliminary injunction and his factual presentation to the Court at the July 6 hearing and, most importantly, supervising the conduct of the June 28 Primary Election in 64 counties.

16. In response, the Vendors' counsel indicated his clients' agreement to the proposed extension, provided that the Secretary agree to refrain from granting any county's request for approval to purchase a Dominion voting system between now and the date the Court rules on the preliminary injunction motion. *See* Exhibit 4. The Vendors' counsel additionally requested that the Secretary's office expand the number of search terms it used in responding to the earlier CORA request to locate even more documents that they believe are responsive to their discovery requests. *See* Exhibit 5.

17. After consulting with the Secretary about the Vendors' proposal, counsel for the Secretary engaged in a second call with the Vendors' counsel on June 3, 2016, to explain that—although it is highly unlikely that any

county would elect to either purchase a new voting system between now and the June 28 Primary Election or to purchase a new voting system to pilot in the November 8 General Election—the Secretary cannot limit his authority to approve such purchase requests because exigent circumstances may arise that necessitate his doing so to ensure the proper conduct of the elections.

18. Counsel for the Vendors indicated that he would consult with his clients about whether they will agree to the three-week extension of all deadlines related to the preliminary injunction hearing despite the Secretary's inability to agree to their proposal. Both Vendors have indicated their lack of opposition to the relief requested herein.

19. As a related matter, the Secretary's counsel also has conferred in good faith with the Vendors' counsel about narrowing their requested search terms to identify documents responsive to their requests for production, but has been unsuccessful in doing so. As a result, the search results have grown from approximately 2,000 documents based on the narrowed search terms to at least 3,500 documents based on the search terms demanded by the Vendors.

7

## ARGUMENT

### I.     Standard for issuing a protective order.

Under Fed.R.Civ.P. 26(c)(1), the Court may, for "good cause" shown, issue an order to protect a party from whom discovery is sought from "undue burden." The standard for "good cause" under "Rule 26(c) is 'highly flexible, having been designed to accommodate all relevant interests as they arise.'" *Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008) (quoting *United States v. Microsoft Corp.*, 165 F.3d 952, 959 (D.C. Cir. 1999)). And it is well-settled that "the trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). This Court, then, must balance the burden imposed on the Secretary in responding to the Vendors' discovery requests by the current deadlines against the risk that relief from such burden would impair the Vendors' ability to prosecute their motion for preliminary injunction. *See Bharti v. King County*, 1995 U.S. App. LEXIS 28170, \*9 (9th Cir. 1995).

## II. Good cause to issue a protective order exists here because the current deadlines impose an undue burden on the Secretary.

The current discovery and preliminary injunction deadlines unduly burden the Secretary for four reasons. *First*, the Secretary must discharge his statutory obligation to oversee and support Colorado's 64 county clerks as they conduct the June 28 Primary Election. *See* § 1-1-107(1)(a), C.R.S. (2015). Although Election Day is just over three weeks away, the Primary Election actually is being conducted right now because it is a mail ballot election, which necessitates weeks of work by the Secretary and the clerks in advance of June 28. *See* § 1-7.5-104, C.R.S. (2015). Clerks sent ballots to military and overseas voters on May 14, and must send ballots to about 1.9 million other eligible voters no later than June 10. *See* §§ 1-8.3-110 and 1-7.5 107(3)(a)(I), C.R.S. (2105). Clerks may begin tabulating voted ballots on June 13, and must open their polling locations by June 20. *See* §§ 1-7.5-107.5 and 1-7.5-107(4.5)(c), C.R.S. (2015). Furthermore, this particular election places unique demands on the Secretary and his staff. Twenty-one of Colorados'64 county clerks assumed their offices in 2015, meaning this is the first primary election they will be conducting. In addition, 18 counties will be using a new

9

voting system for the first time.  The Secretary anticipates that these counties will need additional oversight by and support from his staff.

*Second*, the Secretary has extremely limited resources in terms of knowledgeable personnel with time available to prepare for and participate in this litigation because they are devoting all of their time to their county oversight and support responsibilities.  The Secretary's voting systems team consists of three individuals—the voting systems manager and two voting systems specialists—all of whom report to the county support manager.  These four individuals share direct responsibility for a variety of essential county oversight and support activities relating to the Primary Election.  These day-to-day responsibilities include: (1) preparing for and conducting weekly conference calls with over 150 county clerks and their election staff; (2) making onsite visits to approximately 20 counties between June 20-27 to audit their compliance with accessibility requirements and authorized use and security protocols pertaining to the statewide voter registration database; (3)  providing onsite support to several other counties on an as-needed basis due to county staffing exigencies or to resolve issues with certified voting equipment; and (4) configuring, testing and launching the Secretary's Election Night Reporting system by 7:00 p.m. on Election Day,

which requires reviewing and integrating election result files supplied by all 64 counties from 5 very different certified voting systems, to ensure the accurate aggregation of voter registration data and election results across the entire state.

The Secretary is likely to designate one or more of these individuals as Fed.R.Civ.P. 30(b)(6) deponent(s), and they will assist his counsel in the preparation for, and may testify at, the hearing on Plaintiffs' preliminary injunction. Adding the task of reviewing thousands of documents that will be produced in response to the Vendors' requests for production so they may be prepared to knowledgably answer deposition questions means that their attention must be diverted from two other tasks—namely, fulfilling their day-to-day election administration duties and assisting undersigned counsel with formulating and preparing the Secretary's defenses to the Vendors' claims for preliminary relief. Postponing all discovery and briefing deadlines by three weeks—thereby rendering the first deadline on July 1, after the June 28 Primary Election has occurred—will allow the Secretary's voting systems team to fulfill both their election administration duties and discovery obligations.

*Third*, although limited in number, the Vendors' requests for production will generate voluminous documents that are unduly burdensome to identify, review for applicable confidentialities, and produce on such a short timeline.  As explained above, the Secretary's counsel conferred with the Vendors' counsel about narrowing the search terms used to identify documents responsive to their requests for production.  *See* Exhibit 4.  And the narrowed search terms are ones currently being used by the Secretary in responding to a pending CORA request that the Vendors' counsel submitted to the Secretary before initiating this lawsuit.  *See* Exhibit 1.  Using these same narrowed search terms to identify documents responsive to the Vendors' requests for production will generate approximately 2,000 responsive documents.  But due to the Vendors' demand that the Secretary use expanded search terms in the litigation context, at least 3,500 responsive documents will be generated, each of which will have to be Bates-labeled, reviewed for and, if applicable, designated as containing confidential information, and then produced to the Vendors' counsel.  They also will need to be reviewed carefully by the Secretary's Fed.R.Civ.P. 30(b)(6) designees in preparation for their depositions.  Completing the identification, review, and production of such voluminous documents would be difficult under the

standard discovery timeframes, but is next to impossible in the ten-day window provided by the Court's May 31, 2016 Order.

And *fourth*, the current discovery schedule and preliminary injunction deadlines are unduly burdensome because they do not strike a fine enough balance between the harm to the Secretary occasioned by compliance with same, and the risk that the Vendors will be unable to meet their burden at the preliminary injunction hearing if the deadlines are extended by three weeks. Indeed, the risk to the Vendors is nonexistent here because they, too, will benefit from additional time that will enable the parties and counsel to streamline the presentation of facts and legal issues to the Court at the preliminary injunction hearing. And to the extent the Vendors claim that they risk losing additional current or prospective clients between now and when the Court decides the preliminary injunction motion, such risk is both minimal for the reasons discussed above and outweighed by the ability of money damages to make them whole. *See Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) ("It is . . . well settled that simple economic loss usually does not, in and of itself, constitute irreparable harm; such losses are compensable by monetary damages." (citation omitted)). Finally, it must be noted that any claim of irreparable harm to the Vendors is undercut by

13

their own delay in bringing suit.  The Complaint alleges that "on February 9, 2016, the Secretary gave notice of permanent adoption of election rules 11.9 and 21.4 under 8 C.C.R. 1505-1" (Doc. 1, at ¶ 47), yet the Vendors did not file suit until well over three months later on May 23.  An unjustified "'delay in seeking preliminary relief cuts against finding irreparable injury.'"  *Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Social and Rehabilitation Servs.*, 31 F.3d 1536, 1543-44 (10th Cir. 1994) (quoting *N.J. Ass'n of Health Care Facilities, Inc. v. Gibbs*, 838 F. Supp. 881, 928 (D.N.J. 1993)).

## CONCLUSION

For the reasons set forth above, the Secretary has shown good cause for the issuance of a protective order to alleviate the undue burden imposed by the current discovery and preliminary injunction deadlines.  Accordingly, he respectfully requests the following relief:

A. The deadline to respond to the Vendors' Request for Production shall be extended from June 10, 2016, through and including July 1, 2016;

B. The deadline for the Vendors to conduct a Fed.R.Civ.P. 30(b)(6) deposition of the Secretary's Office shall be extended from June 17, 2016, through and including July 8, 2016;

C. The deadline for the Secretary to respond to the Vendors' motion for preliminary injunction shall be extended from June 14, 2016, through and including July 5, 2016,

D. The deadline for the Vendors to file a reply brief in support of their motion for preliminary injunction shall be extended from June 28, 2016, through and including July 19, 2016; and

E. The preliminary injunction hearing scheduled for July 6, 2016, shall be vacated and rescheduled to July 27, 2016, or a soon as practicable thereafter.

Respectfully submitted this 5th day of June, 2016.

CYNTHIA H. COFFMAN
Colorado Attorney General


_s/ LeeAnn Morrill_
LEEANN MORRILL, No. 38742*
First Assistant Attorney General
GRANT T. SULLIVAN, No. 40151*
Assistant Solicitor General
CHRISTOPHER JACKSON, No. 49202*
Assistant Attorney General
*Counsel of Record
*Counsel for the Secretary*

15

Public Officials Unit
State Services Section
1300 Broadway, 6th Floor
Denver, CO 80203
Phone: (720) 508-6000
Fax: (720) 508-6041
Email: leeann.morrill@coag.gov
grant.sullivan@coag.gov
christopher.jackson@coag.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2016, I served a true and correct copy of the within **SECRETARY'S UNOPPOSED MOTION FOR PROTECTIVE ORDER** upon all parties through ECF-file and serve or as indicated below:

*Attorneys for Plaintiffs*:
Thomas P. McMahon
Aaron D. Goldhamer
JONES & KELLER, P.C.
1999 Broadway, Ste. 3150
Denver, CO 80202
tmcmahon@joneskeller.com
agoldhamer@joneskeller.com

*s/ LeeAnn Morrill*
LeeAnn Morrill