IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-1237-JLK

**ELECTION SYSTEMS & SOFTWARE, LLC**, a Delaware limited liability company; and **HART INTERCIVIC, INC.**, a Texas corporation,

     Plaintiffs,

v.

**WAYNE W. WILLIAMS**, in his official capacity as Colorado Secretary of State,

     Defendant.

---

## THE SECRETARY'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)

---

Wayne W. Williams, in his official capacity as the Colorado Secretary of State ("the Secretary"), by and through the Colorado Attorney General and undersigned counsel, submits this motion to dismiss the Complaint [Doc. 1] under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

Election Systems & Software, LLC ("ES&S") and Hart InterCivic, Inc. ("Hart") seek to invalidate new election rules governing electronic and electromechanical voting systems that were promulgated by the Secretary in his role as Colorado's chief election official. *See* §§ 1-1.5-101(1)(h), 104(1)(e),

1

C.R.S. (2015); 8 COLO. CODE REGS. § 1501-1 ("Voting Systems Rules"). The new rules were adopted by the Secretary on February 9, 2016, and became effective on March 30, 2016. Compl. [Doc. 1] ¶ 47; Ex. A, ¶ 4 (June 20, 2016 Declaration of Suzanne Staiert). They follow the evaluation of competing voting systems in the 2011 Coordinated Election by the Pilot Election Review Committee ("PERC") that was convened by the Secretary. Compl. ¶¶ 35-37. The new Voting Systems Rules do not mandate a single voting systems vendor for use by all Colorado's 64 counties, nor do they give preference to vendors located within Colorado. Instead, the new rules are neutral on their face between intrastate and interstate vendors, and they codify heightened technological functions and capabilities based on Colorado's unique election administration needs for *any* voting systems vendor seeking certification. *See* 8 COLO. CODE REGS. § 1501-1.

The Secretary informed Colorado's local county clerks and recorders that his office would pay 50 percent of the implementation, training, and program costs associated with transitioning to Dominion Voting Systems, Inc., a vendor that currently is certified under the Voting Systems Rules. Compl. ¶ 46. To make the transition to this certified vendor as cost-effective as possible for those counties that voluntarily elect to do so, the Secretary has

leveraged the state's considerable power to negotiate pricing for Colorado counties with Dominion. *Id.* ¶¶ 42, 45(b).

To further mitigate the counties' transition costs, the new Voting Systems Rules also contain a grandfathering structure that permits counties to continue using legacy voting systems certified by the Secretary before January 1, 2016; counties may even acquire replacement components for their existing systems under certain circumstances. *See* 8 COLO. CODE REGS. § 1501-1, Rule 11.9.2. But any voting system acquired on or after January 1, 2016, must comply with the Secretary's new Voting Systems Rules. *See id.*, Rule 11.9.4.

Plaintiffs have submitted their respective voting systems to the Secretary for certification under § 1-5-617(1)(a), C.R.S. (2015). Compl. ¶ 63(b). ES&S's application was received by the Secretary on January 26, 2016, while Hart's application was received on January 27, 2016. Ex. A, ¶¶ 2-3 (June 20, 2016 Declaration of Suzanne Staiert). By statute the Secretary is required to respond to the applications within 120 days of submission, § 1-5-617(1)(c), C.R.S. (2015), rendering the Secretary's response deadlines for ES&S and Hart May 25 and 26, respectively. However, Plaintiffs filed the instant lawsuit on May 23, 2016, before the Secretary's responses were due. As of that date, the Secretary had not yet acted on Plaintiffs' pending

3

applications, Compl. ¶ 66, and counsel for the Secretary and Plaintiffs have since both agreed that no action will be taken on the pending applications until after this Court resolves Plaintiffs' request for a preliminary injunction. *See* Secy's Unopposed Mot. for Protective Order [Doc. 17] ¶ 4; Ex. A, ¶¶ 2-3 (June 20, 2016 Declaration of Suzanne Staiert).

After the Secretary adopted the Voting Systems Rules, two Colorado clerks and recorders and the Board of County Commissioners for Jefferson County sued the Secretary in state district court to challenge the new rules. *See Bd. of Cnty. Comm'rs of Jefferson Cnty. v. Williams*, Denver Dist. Court No. 16cv31544 (filed Apr. 29, 2016); *Merlin v. Williams*, Denver Dist. Court No. 16cv31603 (filed May 4, 2016). These ongoing state actions were brought pursuant the prescribed state procedures for challenging an agency's rulemaking decisions. *See* § 24-4-106(4), C.R.S. (2015). Despite having participated in both the pilot elections evaluated by PERC and in the rulemaking proceedings, Plaintiffs here have not brought their own rulemaking challenge in state district court or sought to intervene in the above-listed cases.

4

## STANDARD OF REVIEW

When a defendant files a motion to dismiss due to lack of jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of proof. *Dudnikov v. Chalk & Vermilion Fine Arts*, 514 F.3d 1063, 1070 (10th Cir. 2008). Moreover, "a district court may not presume the truthfulness of the complaint's factual allegations." *Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000). When making a Rule 12(b)(1) motion, a party may go beyond the allegations in the complaint to challenge the facts upon which jurisdiction depends, and may do so by relying on affidavits or other evidence properly before the court. *See New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995); *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). In those instances, a court's reference to evidence outside the pleadings does not necessarily convert the motion to one for summary judgment. *See Holt*, 46 F.3d at 1003 (citing *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987)).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must state "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

5

# ARGUMENT

The Court should dismiss the entire Complaint. Plaintiffs' dormant Commerce Clause claim fails for two reasons: (1) the market participant exception to the dormant Commerce Clause bars Plaintiffs' claim as a matter of law, and (2) Congress expressly authorized the states to regulate elections when it passed the Help America Vote Act of 2002 ("HAVA"). Plaintiffs' remaining causes of action, which all sound in state law, also must be dismissed due to insurmountable jurisdictional impediments.

## I. Plaintiffs' dormant Commerce Clause claim fails as a matter of law.

### A. *The market participant exception bars Plaintiffs' dormant Commerce Clause claim.*

The dormant Commerce Clause does not restrain a state or local government from entering the market as a participant. *See Dep't of Revenue v. Davis*, 553 U.S. 328, 343-48 (2008). In describing this "market participant" exception, the US Supreme Court has said that "[nothing] in the purposes animating the Commerce Clause prohibits a State, in the absence of congressional action, from participating in the market and exercising the right to favor its own citizens over others." *Hughes v. Alexandra Scrap Corp.*, 426 U.S. 794, 810 (1976). When acting as market participants, rather than

market regulators, states may "operate freely in the free market," just as a private businessman is free to "'exercise his own independent discretion as to the parties with whom he will deal.'" *Reeves, Inc. v. Stake*, 447 U.S. 429, 437-39 (1980) (quoting *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919)); *see also White v. Mass. Council of Constr. Employers*, 460 U.S. 204, 208 (1983). The "single inquiry" is whether the challenged program constitutes direct state participation in the market. *Reeves*, 447 U.S. at 435 n.7.

The market participant exception applies equally when a state acts in its capacity as a seller, *see Reeves*, 447 U.S. at 432-33, or as a purchaser, *see White*, 460 U.S. at 205-06. And the fact that the Secretary's new rules bear the "hallmarks" of regulation does not render the market participant exception inapplicable; rather, the exception applies even when the Secretary acts in his "dual roles" as a participant and a regulator because his regulatory activity is treated as "terms or conditions" of his participation in the market. *Davis*, 553 U.S. at 345-46. The market participant exception applies even when the state or local government is the "dominant" actor in the market. *Chance Mgmt. v. South Dakota*, 97 F.3d 1107, 1111 (8th Cir. 1996).

Invoking this recognized exception to the dormant Commerce Clause, the Supreme Court has upheld a myriad of state and local programs,

including a Maryland program authorizing state payments to automobile scrap processors that imposed more onerous documentation requirements on out-of-state processors, *Alexandra*, 426 U.S. 794; a South Dakota program giving in-state customers preferred status for cement produced by a state-owned plant, *Reeves*, 447 U.S. 429; a Boston policy requiring half of all workers on city-financed construction projects to be city residents, *White*, 460 U.S. 204; and a Kentucky law granting a tax exemption for interest earned on in-state bonds but not out-of-state bonds when the state was also in the bond-issuer business, *Davis*, 553 U.S. 328. Together, these cases recognize that when a state or local government enters the market as a participant, it is not subject to the restraints of the dormant Commerce Clause.

Applying the market participation exception here, Plaintiffs' first claim for relief under the dormant Commerce Clause must be dismissed. The gravamen of Plaintiffs' claim is that the Secretary's new Voting Systems Rules impose heightened technological requirements that preclude Plaintiffs from becoming certified and selling their voting systems to Colorado counties, damaging Plaintiffs' business. The rules, Plaintiffs contend, impermissibly restrict interstate commerce. *See, e.g.,* Compl. at 1 (alleging "the Secretary's action will injure and damage the businesses of Plaintiffs . . . ."); *id.* ¶ 68(b) (alleging the Secretary discriminated against Plaintiffs "by ensuring they

8

cannot meet the new requirements and therefore are unable to continue operating as voting system vendors in Colorado").

But the market participant exception permits the Secretary to enter the market to authorize the purchase of qualifying voting systems on behalf of its political subdivisions, which are subordinate to the state and must administer elections in accordance with the Uniform Election Code of 1992, § 1-1-101, *et seq.*, C.R.S. (2015) ("Election Code"), and the Secretary's election rules, 8 COLO. CODE REGS. §  1501-1. The Secretary is the "chief state election official," charged with supervising the conduct of elections for statewide and federal offices and implementing federal and state law governing such elections. § 1-1.5-101(1)(h), C.R.S. (2015). In that capacity, the Secretary is authorized to adopt "minimum standards" for electronic and electromechanical voting systems, § 1-5-616(1), C.R.S. (2015), as well as "conditions of use" and "standards for certification" governing such systems, §§ 1-5-608.5(3)(b), 616, C.R.S. (2015). And no political subdivision within Colorado may purchase a new electromechanical or electronic voting system without first obtaining the Secretary's express approval, which is also

9

governed by his rules.[1] §§ 1-5-613, 623(3)(a), C.R.S. (2015). Indeed, Colorado's local election officials—the clerk and recorder within each county—"in rendering decisions and interpretations under the [Election Code], shall consult with the [Secretary] and follow the rules and orders promulgated by the [S]ecretary pursuant to this code." § 1-1-110(1), C.R.S. (2015).

In this fashion, the Secretary is no different than the mayor of a large city who determines the necessary qualifications for contractors that are hired to perform construction services for the city's various agencies. *See White*, 460 U.S. at 205-06. Both are empowered to set minimum prerequisites that must be satisfied before their subordinate divisions are permitted to do business with a would-be vendor.[2] *See id*. at 211 n.7 (market participation exception applies even though mayor's executive order reaches "beyond the

---

[1] Counties, towns, cities, and other municipal corporations are political subdivisions of the state. *See, e.g.*, *City & Cnty. of Denver v. Bd. of Assessment Appeals*, 30 P.3d 177, 181 (Colo. 2001).

[2] Moreover, Plaintiffs' own Complaint alleges that the Secretary is a direct participant in the electromechanical and electronic voting systems market. It states that the Secretary intends to pay directly "50% of the [counties'] implementation, training and program management fees" associated with transitioning to a complying vendor. Compl. ¶ 46. It also alleges that the Secretary directly participates in the market by "leveraging" the State's negotiating and purchasing power, *id*. ¶ 42, to obtain favorable pricing "on the counties' behalf," *id*. ¶ 45.b.

immediate parties" because everyone affected is, in "an informal sense, 'working for the city'").

The Supreme Court has made clear that state and local governments are free to exercise this purchasing discretion under the Commerce Clause, just like a private business. *See Bldg. & Constr. Trades Council v. Associated Builders & Contrs.*, 507 U.S. 218, 231 (1993) ("To the extent that a private purchaser may choose a contractor based upon that contractor's willingness to enter into a prehire agreement, a public entity *as purchaser* should be permitted to do the same.") (emphasis in original). Just like a private trading partner, the Secretary is not compelled to "vouchsafe [Plaintiffs'] economic health," particularly when that health is tethered to voting systems technology that may not meet Colorado's unique election administration needs. *Red River Serv. Corp. v. City of Minot*, 146 F.3d 583, 588 (8th Cir. 1998) (upholding municipality's solid waste ordinance under market participant exception). Instead, the Secretary possesses "the freedom to choose its trading partners" under the market participant exception. *Id.* Accordingly, Plaintiffs' first claim should be dismissed.

### B. *Congress in HAVA authorized the States to regulate elections.*

Dismissal of Plaintiffs' dormant Commerce Clause claim is alternatively required because Congress in passing HAVA specifically authorized the states to regulate elections. *See* 52 U.S.C. §§ 21084-85.

The Tenth Circuit has recognized under the dormant Commerce Clause that "Congress may choose to regulate, thereby preempting the states from doing so . . . *or to authorize the state to regulate.*" *Direct Mktg. Ass'n v. Brohl*, 814 F.3d 1129, 1135 (10th Cir. 2016) (emphases added). Only if Congress is silent—"neither preempting nor consenting to state regulation"—do state enactments become susceptible to scrutiny under the dormant Commerce Clause. *Id.* at 1135.

The Supreme Court has repeatedly upheld state laws against dormant Commerce Clause scrutiny because Congress expressly authorized the states' exercise of regulatory power. *See, e.g., Panhandle E. Pipe Line Co. v. Pub. Serv. Comm'n*, 332 U.S. 507, 520-24 (1947); *Prudential Ins. Co. v. Benjamin*, 328 U.S. 408, 429-31 (1946); *see also Hillside Dairy, Inc. v. Lyons*, 539 U.S. 59, 66 (2003) ("Congress certainly has the power to authorize state regulations that burden or discriminate against interstate commerce . . . ."); *New York v. United States*, 505 U.S. 144, 171 (1992) (recognizing Congress

12

"lifted" the Commerce Clause's restriction on states' ability to impose surcharge on radioactive waste from other states).

Here, in passing HAVA, Congress unambiguously expressed its intent to permit states to enact laws governing electronic voting systems that meet or exceed HAVA's minimum requirements, provided they do not conflict with HAVA. *See* 52 U.S.C. § 20901, *et seq.* Specifically, although HAVA establishes certain "minimum requirements," it further provides that "nothing in this subchapter shall be construed to prevent a State from establishing election technology and administration requirements that are more strict than the requirements established under this subchapter so long as such State requirements are not inconsistent with the Federal requirements under this subchapter or any law described in section 21145 of this title."[3] 52 U.S.C. § 21084.

Invoking this provision, numerous courts have recognized the wide latitude that states enjoy to enact election administration laws. *See Cnty. of Nassau v. New York*, 724 F. Supp. 2d 295, 303 (E.D.N.Y. 2010) ("HAVA does not prescribe a particular type of voting machine, nor does have it have

---

[3] Likewise, HAVA grants states discretion in implementing its provisions, stating that "[t]he specific choices on the methods of complying with the requirements of this title shall be left to the discretion of the State." 52 U.S.C. § 21085.

anything to say about any specific requirements as to the manner in which New York public officials must carry out their official duties."); *State ex rel. League of Women Voters v. Herrera*, 203 P.3d 94, 99-100 (N.M. 2009) (citing former 42 U.S.C. § 15484 and rejecting challenge to New Mexico's hand-tallied vote tabulation requirement).

The Secretary's new rules, far from conflicting with HAVA, actually further its underlying objectives by improving election administration and updating outdated voting system technology.[4] *See* 52 U.S.C. § 20901(b)(1)(B) & (F). For example:

> ➤ Rules 11.9.3(g)(1), 11.9.4(a), and 21.4.16(a) require all certified voting systems to possess digital ballot adjudication functionality. This requirement enables elections judges to "resolve, adjudicate, and duplicate ballots with marginal or ambiguous voter marking digitally rather than manually." 8 COLO. CODE REGS. § 1501-1, Rule 21.4.16(a).

> ➤ Rules 11.9.3(g)(2), 11.9.4(b), and 11.9.5 require all certified voting systems to have ballot scanners equipped with automatic document feeders. This requirement permits election judges to scan "multiple ballots rather than a single ballot at a time." 8 COLO. CODE REGS. § 1501-1, Rule 11.9.4(b).

> ➤ Rules 11.9.3(d), 11.9.4(c), and 21.4.7(e) require all certified voting systems to integrate all components of the election management system so that they are accessible by a single user interface. This improves efficiency because data management applications that

---

[4] Notably, Plaintiffs' Complaint does not assert that the Secretary's new rules conflict with HAVA.

collect, convert, manage, or export election information are "essential component[s]" that must be accessible by system users from a single workstation, rather than several workstations. 8 COLO. CODE REGS. § 1501-1, Rule 21.4.7(e).

➢ Rule 11.9.3(c) gives favorable consideration in the Secretary's certification process to voting systems that utilize "commercial off-the-shelf hardware components, rather than proprietary, purpose-built hardware components." 8 COLO. CODE REGS. § 1501-1, Rule 11.9.3(c). This rule generally makes comparable replacement hardware less expensive and more readily available, and also permits counties to engage third-party providers rather than the voting system vendor for periodic hardware maintenance and repair services.

Accordingly, because Congress has expressed its unambiguous intent to permit states to regulate electromechanical and electronic voting systems, Plaintiffs' dormant Commerce Clause claim should be dismissed.

## II.   The Court should dismiss Plaintiffs' state law claims.

Plaintiffs' four remaining causes of action are all based on state law: violation of a statutory duty under § 1-5-608.5 (Second Claim); amended election rules conflict with the state statutes under § 24-4-103(8)(a) (Third Claim); election rules exceed the Secretary's statutory authority under § 24-4-103(8)(a) (Fourth Claim); and unfunded mandate under § 29-1-304.5 (Fifth Claim). The Court should dismiss them all.

**A.** ***The Eleventh Amendment bars the state law claims and the dormant Commerce Clause claim to the extent it seeks money damages from the Secretary in his official capacity.***

The Complaint asks this Court to exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiffs' Second through Fifth Claims, each of which alleges that the Secretary has breached some state statutory duty or that his Voting Systems Rules violate state law. In a nutshell, Plaintiffs ask this Court to order the Secretary to follow state law. However, it is well settled that "[a] federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the authority of federal law," and is barred by the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1979); *see also* U.S. Const. Amend. XI. All four state law claims must therefore be dismissed.

Plaintiffs' prayer for money damages as an alternative to equitable relief against the Secretary under their dormant Commerce clause claim likewise is barred by the Eleventh Amendment.  Compl., Prayer for Relief ¶ A(2)(b). This is because it is equally well-settled that "Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief."  *Brown v. Montoya*, 662 F.3d

16

1152, 1161 n.5 (10th Cir. 2011) (citing *Hafer v. Melo*, 502 U.S. 21, 30, 27 (1991)). Here, the Complaint pleads only that the Secretary "is named a defendant in his official capacity." Compl. ¶ 3. As a result, Plaintiffs' First Claim must be dismissed to the extent that it seeks money damages against the Secretary in his official capacity.[5]

## B. *If the Eleventh Amendment does not bar all of Plaintiffs' state law claims, this Court should abstain under the* **Pullman** *doctrine.*

As a general rule, federal courts will avoid answering federal constitutional questions whenever possible. *See, e.g.*, *Delaware v. Van Arsdall*, 475 U.S. 673, 693 n.5 (1986); *Cuesnongle, O.P. v. Ramos*, 835 F.2d 1486, 1495 (1st Cir. 1987) ("[F]ederal constitutional issues should be avoided where other grounds of decision are available."). "[A] corollary of this principle is that unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *Univ. of Utah v. Shurtleff*, 252 F. Supp. 2d 1264, 1284 (D. Utah 2003). But as the Supreme Court acknowledged in *Railroad Comm'n of Texas v. Pullman*, 312 U.S. 496, 500-01 (1941), state courts are best-equipped to manage the interplay

---

[5] If Plaintiffs re-plead this portion of their First Claim as against the Secretary in only his individual capacity, the Secretary reserves the right to move to dismiss the re-pleaded claim under any applicable Fed. R. Civ. P. 12 defense, including but not limited to qualified immunity.

between their own statutes, constitutions, and regulations. Allowing them the opportunity to do so, along with the fact that a state's interpretation of its own statute may moot an otherwise ripe federal constitutional claim, "serves the dual aims of avoiding advisory constitutional decisionmaking, as well as promoting the principles of comity and federalism by avoiding needless federal intervention into local affairs." *Pustell v. Lynn Pub. Schs.*, 18 F.3d 50, 53 (1st Cir. 1994) (citing 17A CHARLES A. WRIGHT ET AL.,  FEDERAL PRACTICE AND PROCEDURE, § 4242 (1988)).

The *Pullman* abstention doctrine "applies when state law is unclear and a state court's clarification of state law might make a federal court ruling on a constitutional issue unnecessary." *Am. Constitutional Law Found., Inc. v. Meyer*, 113 F.3d 1245 (10th Cir. 1997) (unpublished disposition). It is appropriate when "(1) an uncertain issue of state law underlies the federal constitutional claim; (2) the state issues are amenable to interpretation and such an interpretation obviates the need for or substantially narrows the scope of the constitutional claim; and (3) an incorrect decision of state law ... would hinder important state law policies." *Kansas Judicial Review v. Stout*, 519 F.3d 1107, 1118 (10th Cir. 2008) (quoting *Lehman v. City of Louisville*, 967 F.2d 1474, 1478 (10th Cir. 1992)).

Here, if federal jurisdiction over Plaintiffs' state law claims is not precluded by the Eleventh Amendment, the Court should abstain from deciding them under the *Pullman* abstention doctrine. As explained above, the Secretary's Voting Systems Rules are currently being challenged by two Colorado clerks and recorders and the Board of County Commissioners for Jefferson County. *See Bd. of Cnty. Comm'rs of Jefferson Cnty. v. Williams*, Denver Dist. Court No. 16cv31544 (filed Apr. 29, 2016); *Merlin v. Williams*, Denver Dist. Court No. 16cv31603 (filed May 4, 2016). In these cases, plaintiffs allege that the new rules conflict with provisions of the Election Code, exceed the Secretary's statutory rulemaking authority, and constitute an unfunded mandate on Colorado counties. Their claims are uncertain because they present issues of first impression to be decided by Colorado courts. And the state law issues involved certainly are amenable to interpretation by Colorado courts, the result of which likely would obviate the need for this Court to decide a federal constitutional question. Moreover, an incorrect interpretation of Colorado state law would clearly inhibit and frustrate the important state law policies as expressed through the Colorado General Assembly's statutes and the Secretary's new rules.

For these reasons, the Court should abstain from considering *any* of Plaintiffs' claims for relief.

### C. *This Court lacks jurisdiction to hear the state law claims.*

If the Eleventh Amendment does not bar Plaintiffs' state law claims and the Court declines to abstain under the *Pullman* doctrine, the Court still lacks jurisdiction to hear Plaintiffs' Second, Third, Fourth, and Fifth Claims.

### i. *Plaintiffs' Second Claim is not ripe.*

Under Article III of the federal constitution, the federal courts are jurisdictionally limited to adjudicating actual "Cases" and "Controversies." *Tandy v. City of Wichita*, 380 F.3d 1277, 1293 (10th Cir. 2004) (citing U.S. CONST. art. III, § 2, cl. 1). To establish standing to bring a claim, a litigant must show that the controversy is ripe for judicial review. *E.g.*, *Cellport Sys. v. Peiker Acustic GmbH*, 762 F.3d 1016, 1029 (10th Cir. 2014). Plaintiffs' Second Claim asserts that the Secretary is "in violation of his statutory duty" because he has not yet "certif[ied] the ES&S and Hart voting systems …." Compl. ¶ 83. But as discussed above, the Secretary had no statutory duty to issue a decision on Plaintiffs' applications until after this lawsuit was filed. *See supra*, pp. 3-4 (citing § 1-5-617(1)(c), C.R.S. (2015)). Thus, at the time the Complaint was filed, the issue was not "real, immediate, and fit for adjudication." *Bd. of Dirs., Metro Wastewater Reclamation Dist. v. Nat'l*

*Union Fire Ins. Co. of Pittsburgh*, 105 P.3d 653, 656 (Colo. 2005). As a result, the Court does not have subject matter jurisdiction. *Id.*

Moreover, once the Complaint was filed, the parties agreed that the Secretary would hold off on making a decision on Plaintiffs' applications until at least after the preliminary injunction is resolved. *See* Secy's Unopposed Mot. for Protective Order [Doc. 17] ¶ 4; Ex. A, ¶¶ 2-3 (June 20, 2016 Declaration of Suzanne Staiert). Because the Secretary has not yet issued a final certification decision, the claim is not ripe for review and this Court lacks jurisdiction to hear it. *E.g.*, *Crow*, 169 P.3d at 161 ("Because the Hospital's governing board has not rendered a final decision in his matter, … his case is not ripe for judicial review."); *Wilkinson v. Bd. of Cnty. Comm'rs*, 872 P.2d 1269, 1279 (Colo. App. 1993) ("[A] court cannot determine whether a regulation has violated a landowner's constitutional right to reasonable use of the landowner's property until the government entity charged with implementing the regulations has reached a final decision as to how the regulations will be applied to the property in question."); *cf. Peper v. St. Mary's Hosp. & Med. Ctr.* 207 P.3d 881, 886 (Colo. App. 2008) (*Crow*'s holding does not support defendants' position because there is no ripeness issue here, as St. Mary's indisputably reached a final decision adverse to Dr. Peper.").

21

*ii. Plaintiffs' Third, Fourth, and Fifth Claims are untimely.*

In addition to Article III of the federal constitution, Colorado law also limits the courts' jurisdiction to hear challenges to a state agency's actions. The State Administrative Procedure Act, § 24-4-101, *et seq.*, C.R.S. (2015), provides that "any person adversely affected or aggrieved by any agency action may commence an action for judicial review in the district court *within thirty-five days after such agency action becomes effective* …." § 24-4-106(4), C.R.S. (2015) (emphasis added). The word agency is expressly defined as meaning "any … officer of the state," and the word "action" is expressly defined as including "the whole or any part of any agency rule." §§ 24-4-102(3), (1), C.R.S. (2015).

The 35-day rule is "jurisdictional, and may be raised at any time." *1450 Hotel, LLC v. Colo. Econ. Dev. Comm'n*, 370 P.3d 309, 2015 COA 127, *10 (Colo. App. 2015). This state jurisdictional rule applies in federal cases like this one where Colorado substantive law applies to state law claims seeking pendent or supplemental federal jurisdiction. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Kirk v. Smith*, 674 F. Supp. 803, 804 (D. Colo. 1987) (citing *Erie v. Tompkins*, 304 U.S. 64 (1938), and applying Colorado substantive law to pendent state law claim where federal jurisdiction was premised on a federal question); *Luna v. Denver*, 537 F.

Supp. 798, 801 (D. Colo. 1982) (applying Colorado law to "pendent-jurisdiction" claim based on *Erie*).

Plaintiff's Third, Fourth, and Fifth Claims allege that the Secretary's decision to promulgate the Voting Systems Rules conflicts with the Election Code or the unfunded mandate statute. *See* Compl. ¶ 86 ("[T]he Secretary's actions conflict with Colorado statutes and are therefore void."); *id.* ¶ 93 ("Nothing in Colorado law delegates power to the Secretary authorizing him to" promulgate the new election rules); *id.* ¶¶ 99-100 (the new election rules violate the unfunded mandate statute). But the rules Plaintiffs challenge here were permanently adopted on February 9, 2016 and became effective on March 30, 2016.  Compl. ¶ 47; Ex.A ¶ 4 (June 20, 2016 Declaration of Suzanne Staiert). Because Plaintiffs did not bring this case within 35 days of the effective date, their Third, Fourth, and Fifth Claims are time barred. *E.g.*, *Romer v. Bd. of Cnty. Comm'rs*, 956 P.2d 566, 572 n.8 (Colo. 1998) ("We observe that the County's claims with respect to fiscal years 1987, 1988, 1989, and 1990 may be time barred due to the County's failure to timely file a civil action within thirty days of the agency action or inaction."); *Buzick v. Pub. Empls. Retirement Ass'n*, 849 P.2d 869, 870 (Colo. App. 1992) ("As a result, even if we assume that plaintiffs' claim sounds in contract, we hold

that plaintiffs were required to file their complaint for judicial review within 30 days.") (citation omitted).

### iii.  *Plaintiffs do not have standing to bring their Fifth Claim.*

Generally speaking, a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Here, Plaintiffs bring their Fifth Claim under § 29-1-304.5, C.R.S. (2015), which prohibits state agencies from imposing an unfunded mandate "*on any local government* unless the state provides additional moneys to reimburse *such local government* for the costs of such new state mandate or such increased level of service.*" § 29-1-304.5(1), C.R.S. (2015) (emphasis added).

Federal courts have recognized an exception to this general standing rule by adopting the doctrine of *jus tertii*, or third party standing.  *Aid for Women v. Foulston*, 441 F.3d 1101, 1111 (10th Cir. 2006). Under this exception, a plaintiff may invoke the rights of a third party if it can prove (1) it "has a 'close' relationship with the person who possesses the right," and (2) "there is a 'hindrance' to the possessor's ability to protect his own interests." *Id.* at 1111-12 (quoting *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004)). But in this case, Plaintiffs cannot prove that there is a hindrance to the counties'

24

ability to protect their own interests. They make no allegation in support of this contention, nor could they: both Douglas and Jefferson County have already filed lawsuits against the Secretary challenging the very same election rules that are at issue here. *See Bd. of Cnty. Comm'rs of Jefferson Cnty. v. Williams*, Denver Dist. Court No. 16cv31544 (filed Apr. 29, 2016); *Merlin v. Williams*, Denver Dist. Court No. 16cv31603 (filed May 4, 2016). Because Section 304.5 only implicates the interests of local governments, Plaintiffs cannot raise a claim under that statute.

## CONCLUSION

Plaintiffs cannot bring a viable dormant Commerce Clause claim because the Secretary is acting as a market participant and Congress has expressly permitted the states to regulate elections.  Similarly, Plaintiffs' four state law claims fail because this Court does not have jurisdiction to hear them.  The Court should dismiss the Complaint in its entirety.

Respectfully submitted this 21st day of June, 2016.

\*       \*       \*

CYNTHIA H. COFFMAN
Colorado Attorney General


_s/  LeeAnn Morrill_
LEEANN MORRILL, No. 38742*
First Assistant Attorney General
GRANT T. SULLIVAN, No. 40151*
Assistant Solicitor General
CHRISTOPHER JACKSON, No. 49202*
Assistant Attorney General
*Counsel of Record
*Counsel for the Secretary*


Public Officials Unit
State Services Section
1300 Broadway, 6th Floor
Denver, CO 80203
Phone:  (720) 508-6000
Fax:  (720) 508-6041
Email:  leeann.morrill@coag.gov
        grant.sullivan@coag.gov
        christopher.jackson@coag.gov

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 21, 2016, I served a true and complete copy of **THE SECRETARY'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)** upon all parties through ECF-file and serve or as indicated below:

Thomas P. McMahon
Aaron D. Goldhamer
Jones & Keller, P.C.
1999 Broadway, Ste. 3150
Denver, CO 80202
tmcmahon@joneskeller.com
agoldhamer@joneskeller.com
*Attorneys for Plaintiffs*

 *s/  LeeAnn Morrill*