IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-1237-JLK

ELECTION SYSTEMS & SOFTWARE, LLC, a Delaware limited liability company; and HART INTERCIVIC, INC., a Texas corporation,

    Plaintiffs,

v.

WAYNE W. WILLIAMS, in his official capacity as Colorado Secretary of State, Colorado Department of Revenue,

    Defendant.

## DECLARATION OF AMBER MCREYNOLDS

I, Amber McReynolds, pursuant to 28 U.S.C. § 1746, do depose and state as follows:

1. I am the Director of Elections for the City and County of Denver's Elections Division ("Division"), a position I have held since 2011. Prior to becoming the Director of Elections, I was the Deputy Director of Elections for the Division (2008-2011), as well as the Division's Operations Manager/Operations Coordinator (2005-2008). I have also worked as a Regional Project Manager for the New Voters Project in Des Moines, Iowa (2004), and as a Program Director for the Fourteenth Judicial Circuit in the State of Illinois (2002-2004). I hold a Masters of Science Degree in Comparative Politics from the London School of Economics and Political Science (2002), and a Bachelors of Arts Degree in

**EXHIBIT C**

Political Science and Speech Communications from the University of Illinois (2001). For the last three years I have co-chaired the Colorado County Clerks Association's Elections Statute Review Committee. My curriculum vitae is attached to this declaration.

2. I have supervised approximately 20 elections in Denver while serving as Deputy Director (8) and the Director of Elections (12). The City and County of Denver has a population of approximately 650,000 persons, including approximately 480,000 registered voters, making it one of the most populous counties in Colorado. Based on my experience, I am familiar with the different types of electronic and electromechanical voting systems that are available on the market, as well as their functions, capabilities, and costs.

3. I am familiar with the new election rules adopted by the Colorado Secretary of State ("Secretary") on February 9, 2016, codified in 8 COLO. CODE REGS. § 1505-1, which are currently being challenged by the plaintiffs in this federal lawsuit.

4. Rule 11.9.3(c) states that the Secretary, in deciding whether to approve a political subdivision's application to purchase or lease a new voting system on or after January 1, 2016, will consider whether the system utilizes commercial off-the-shelf hardware components, rather than proprietary,

2

purpose-built hardware components. This is beneficial to counties and local governments in at least two respects.

- First, it saves costs. Using older "legacy" systems that require proprietary, purpose-built components ties the county to one particular vendor, who can then charge the county a premium for replacement components. In my experience, using voting systems that are compatible with off-the-shelf hardware components offers more flexibility in upgrading hardware and purchasing less expensive replacement components; for example, this flexibility has enabled my division to purchase four new ballot scanners with off-the-shelf components for the same price as one scanner using proprietary components.
- Second, using off-the-shelf components enables counties to administer elections more efficiently. Off-the-shelf components are more readily available than proprietary components. It is also easier to obtain the necessary technical and customer support with off-the-shelf components because it is often the case that only a limited number of technicians are knowledgeable about a particular proprietary component. Having readily-available access to both replacement components and technical support is extremely important when

3

administering elections. In addition, off-the-shelf components are more likely to be compatible with the most up-to-date versions of election software. This allows counties to more easily upgrade their voting systems to take advantage of recent advancements in technology, rather than being tethered to a single proprietary device that is not necessarily designed to be upgraded.

5. Rules 11.9.3(g)(1), 11.9.4(a), and 21.4.16(a) require that new voting systems possess digital ballot adjudication functionality. These rules vastly improve the efficiency and transparency of ballot tabulation and election administration. Digital adjudication effectively enables election judges to resolve mismarkings, undetectable and ambiguous markings, overvotes and write-in votes on each ballot image requiring adjudication. Digital adjudication both preserves the original markings on the ballot as submitted by the voter and creates an audit log showing the usernames of the resolution team members and the manner in which they resolved each mark on the ballot. This is especially important in Colorado's election model with votes cast primarily on paper ballots; thus, election judges must adjudicate (or resolve) a large number of ballots containing ambiguous voter markings. If a voting system does not offer digital adjudication functionality, a team of election judges must manually duplicate a voter's markings onto a new ballot that can be tabulated by the

4

voting system, and they must maintain a log of each and every ballot duplicated. This degree of record keeping is necessary in the event of an election contest or recount. The possibility of human error in the duplication process, and the necessity of producing an additional paper ballot, makes non-digital adjudication less reliable and less accurate. Digital adjudication, by contrast, improves accuracy and transparency, which is especially helpful during later election audits and when responding to requests under the Colorado Open Records Act ("CORA").

6. The ability to digitally adjudicate a ballot is also helpful when ballots contain write-in candidates. Voting systems with digital adjudication capabilities can be programmed so that ballots cast for write-in candidates are electronically tallied and results are available immediately. Without this function, ballots cast for write-in candidates must be manually tallied by hand, increasing the opportunity for human error and delaying timely results. This has been an issue in Denver in the past. In 2011, the unopposed incumbent for District 8 on the Denver City Council died after ballots had been mailed to electors. Thus, the race became an all write-in candidate race. Because Denver at that time did not have digital adjudication capabilities, election officials were forced to hand-tally the votes cast for 42 different write-in candidates—a process that was cumbersome, inefficient, and prone to error.

5

7.  Rules 11.9.3(g)(2), 11.9.4(b), and 11.9.5 require that new voting systems have ballot scanners equipped with automatic document feeders. This is beneficial to counties because, absent an automatic document feeder, election officials must manually hand-feed ballots into the machine one at a time—a time-intensive process requiring hours of unnecessary labor expense. Hand-feeding single ballots not only slows down the process of reporting elections results, it also increases the opportunity for human error. Scanners with automatic document feeders typically have sensors and paper rollers that will automatically stop if the machine detects more than one ballot in the scanning area. Voting systems without automatic document feeders do not typically have this feature.

8.  Rules 11.9.3(d), 11.9.4(c), and 21.4.7(e) require that new voting systems integrate data management applications and the election management system ("EMS") so that they are accessible by a single user interface on the same server or workstation. These rules are beneficial to counties because they permit election officials to efficiently manage all aspects of an election from a single user interface. This includes four essential steps: (1) setting up the election through the EMS, including creating the ballot format and content for each precinct, programming the voting system on how to read completed ballots, and completing language translation requirements, all of which must be done within

extremely tight deadlines; (2) scanning completed ballots; (3) adjudicating ballots; and (4) producing election results. Having a voting system that bifurcates the EMS between different applications loaded onto different servers or workstations makes completing the above steps unnecessarily time-consuming and error-prone. It also is more expensive for counties because it requires counties to purchase or lease additional EMS hardware from voting systems vendors to complete each of the above steps, or to engage the voting systems vendor to assist in completing the above steps. Thus, utilizing a voting system that integrates all components of the EMS offers greater flexibility to counties. It permits counties to "do more with less."

9. Rule 21.4.14(b)-(c) requires new voting systems to capture a ballot-level cast vote record ("CVR"), which is a record for each ballot tabulated showing the manner in which the system interpreted and counted the voter's markings on the ballot. The new rules require that the CVRs be exported from the voting system in a comma-separated value ("CSV") text format. The CSV file format is a widely-used file format that is compatible with a host of other computer and software programs. It also streamlines the process of proofing the election results prior to certification because the source data is more easily verifiable in the CSV file format. Voting systems that do not utilize a CSV file format or comparable format create unnecessary risk because they require

converting the election data into a useable format; anytime election data is manipulated there is a risk that the data will be fully or partially lost, altered or corrupted. Additionally, voting system vendors will often charge a fee for converting the data from their proprietary format into a useable format, adding a layer of unnecessary cost for the counties.

10.  Rule 21.4.14(b)-(c)—requiring new voting systems to capture ballot-level CVRs—is also essential to risk-limiting audits. Risk-limiting audits are ballot audits that are based on scientific and statistical models; proportionally more ballots are audited as the margin of victory between competing candidates narrows. Colorado statute requires all Colorado counties to begin conducting risk-limiting audits in 2017. *See* § 1-7-515, C.R.S. (2015). Having CVRs in a useable format is important for conducting risk-limiting audits because it permits the auditors to quickly and efficiently compare the CVR with the voter's actual paper ballot.

11.  Rule 21.4.15(b)-(d) requires new voting systems to export results data in a specified CSV file format that contains specified fields. This data export format will make it easier for local election officials to upload their county results files into the Secretary's Election Night Reporting ("ENR") system. This rule, by requiring this widely-used format, will ensure that county results are

properly and accurately aggregated for statewide and multi-county ballot contests, and quickly and efficiently communicated to the media and public.

12. I believe the new election rules adopted and discussed above will both reduce costs and improve the efficiency, accuracy and transparency of election administration in all Colorado counties.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 30 day of June, 2016.

*Amber McReynolds*

Amber McReynolds

# AMBER F. MCREYNOLDS

**SUMMARY**  Effective, motivated, and creative executive with over twelve years of experience working in a highly visible election administration environment.  Delivered outstanding results by providing visionary leadership, utilizing creative strategic planning, implementing effective project management techniques, deploying enhanced communication strategies, utilizing data and analytics to effect policy and operational changes, encouraging continuous process improvement to identify efficient solutions, and leading strategic organizational development.

**PROFESSIONAL ACHIEVEMENTS**

**ELECTION ADMINISTRATION – AWARDS & RECOGNITION**

5281 Award | City and County of Denver | February 2012

Michelle M. Burton Excellence in Election Service Award – Colorado County Clerks Association | 2015

Electoral Ergonomy Award | Ballot TRACE | International Centre for Parliamentary Studies (ICPS) | 2015

Democracy Award for Innovation | Program:  iAPP | The Election Center | 2013

Democracy Award for Innovation | Program:  eSign | The Election Center | 2015

Achievement Award | Ballot TRACE & iAPP | NaCO | 2013

**INNOVATION – TECHNICAL & OPERATIONAL**

**eSign** – First-in-the-nation, national award winning software to digitize the petition process

**Ballot TRACE** – First-in-the-nation, national and international award winning ballot tracking application

**Continuous Process Improvement** – All staff received LEAN/Peak Academy training in continuous process improvement.  Strategic focus on continual improvement.

**PUBLIC POLICY – RECENT ACHIEVEMENTS**

2013 | Colorado Voting Model Modernization – HB13-1303 – Created a more efficient, streamlined, voter friendly voting model for the citizens of Colorado.  Assisted with drafting, conceptual development, and legislative advocacy

2015 | Proactive List Maintenance – HB15-1093 – Successfully advocated for an expansion of the list maintenance strategy passed in 2013.  Will provide for an enhanced customer experience and additional efficiency for voters and election officials.

2014 – Present | Strategic Technical Advisor and Election Expert | Actively participate in various national election policy and research groups in support of the Election Assistance Commission, Pew Charitable Trust Election Initiatives, Overseas Voting Foundation, National Council of State Legislators, Council of State Governments, Brennan Center, the Election Center and have provided speeches and presentations at various state conferences on election innovation and policy.



720.393.9746    @AmberMcReynolds    amberfaye7@yahoo.com    /amber-mcreynolds-4221613

## EDUCATION & CERTIFICATIONS

**MASTERS OF SCIENCE |LONDON SCHOOL OF ECONOMICS AND POLITICAL SCIENCE | LONDON, ENGLAND| NOVEMBER 2002**

Comparative Politics, Methodology Institute for Data Analytics

**BACHELOR OF ARTS| UNIVERSITY OF ILLINOIS | CHAMPAIGN-URBANA, ILLINOIS | MAY 2001**

Double Major:  Political Science and Speech Communication

**CERA – CERTIFIED ELECTION / REGISTRATION ADMINSITRATOR | THE ELECTION CENTER**

**COLORADO CERTIFIED ELECTION OFFICAL | STATE OF COLORADO | 2005 - PRESENT**

**2006 GOALS LEADERSHIP PROGRAM | CITY AND COUNTY OF DENVER | 2006**

## PROFESSIONAL EXPERIENCE

**DIRECTOR OF ELECTIONS | CITY AND COUNTY OF DENVER**

May 2011 - Present

**DEPUTY DIRECTOR OF ELECTIONS |CITY AND COUNTY OF DENVER**

February 2008 - May 2011

**ADMINISTRATIVE OPERATIONS MANAGER, BALLOT COORDINATOR | CITY AND COUNTY OF DENVER**

2005 - 2008

**REGIONAL PROJECT MANAGER | NEW VOTERS PROJECT | STATE OF IOWA**

2004 - 2005

**COUNCIL DIRECTOR | 14TH JUDICIAL CIRCUIT | STATE OF ILLINOIS, ROCK ISLAND, IL**

2002 - 2004

**PARLIAMENTARY RESEARCH ASSOCIATE | RT. HON. HARRIET HARMAN, QC MP, SOLICITOR GENERAL, UNITED KINGDOM PARLIAMENT**

2001 - 2002

## PROFESSIONAL MEMBERSHIPS & COMMUNITY LEADERSHIP

The Election Center (National Association of Election Officials) – Certified Election Official, Member, Speaker

International Centre for Parliamentary Studies (ICPS) – Speaker

International Association of Clerks, Recorders, Election Officials, & Treasurers (IACREOT) – Member

Overseas Voting Initiative |Technology Working Group |Council of State Governments – Advisor

Humphrey School of Public Affairs | University of Minnesota – Mentor

Board of Directors, Montessori Academy of Colorado

National Association of County Recorders, Election Officials, and Clerks (NACRC) – Member

Colorado County Clerks Association – Co-Chair, Election Statute Review Committee

Denver Metro Chamber of Commerce – Member

Project Management International – Member

Alumni and Friends of the London School of Economics USA – Member

University of Illinois Alumni Association – Member