IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-1237-JLK

ELECTION SYSTEMS & SOFTWARE, LLC, a Delaware limited liability company; and HART INTERCIVIC, INC., a Texas corporation,

    Plaintiffs,

v.

WAYNE W. WILLIAMS, in his official capacity as Colorado Secretary of State, Colorado Department of Revenue,

    Defendant.

## DECLARATION OF SHEILA REINER

I, Sheila Reiner, pursuant to 28 U.S.C. § 1746, do depose and state as follows:

1. I am the Clerk and Recorder for Mesa County, Colorado, a position I have held since 2011. In that role, I am the chief election official for Mesa County and I oversee all elections that take place in Mesa County, which has a population of approximately 145,000 persons, including approximately 111,000 registered voters. Prior to becoming the Clerk and Recorder, I worked for eight years as an Elections Technician for the Clerk and Recorder's Office, programing election equipment and maintaining the voter registration database. I am a Certified Election/Registration Administrator ("CERA") through Auburn

**EXHIBIT D**

University, and I hold an Associate's Degree from the Technical Trades Institute in Grand Junction, Colorado.

2.  I have supervised approximately 45 elections in Mesa County since becoming the Clerk and Recorder. Based on my experience, I am familiar with the different types of electronic and electromechanical voting systems that are available on the market, as well as their functions, capabilities, and costs.

3.  I am familiar with the new election rules adopted by the Colorado Secretary of State ("Secretary") on February 9, 2016, codified in 8 COLO. CODE REGS. § 1505-1.

4.  Rule 11.9.3(c) states that the Secretary, in deciding whether to approve a political subdivision's application to purchase or lease a new voting system on or after January 1, 2016, will consider whether the system utilizes commercial off-the-shelf hardware components, rather than proprietary, purpose-built hardware components. This is beneficial to counties because off-the-shelf components are less expensive and more readily-available than proprietary components. For example, I am aware that Election Systems & Software, LLC ("ES&S") offers a central count scanner (a machine that counts the majority of cast ballots) utilizing proprietary components for approximately $90,000. In contrast, Dominion Voting Systems, Inc. ("Dominion") offers our county a central count scanner utilizing off-the-shelf components for just

2

$18,500. Using off-the-shelf components therefore saves counties significant taxpayer dollars.

5. Rules 11.9.3(g)(1), 11.9.4(a), and 21.4.16(a) require that new voting systems possess digital ballot adjudication functionality. Ballot adjudication is the process by which election judges determine voter intent to resolve mismarkings, undetectable and ambiguous markings, overvotes, blank ballots, and write-in votes on cast ballots. Digital adjudication functionality greatly reduces the human error inherent in manual adjudication. Manual adjudication requires election judges to duplicate a voter's paper ballot by hand-copying the voter's markings that appear on the original paper ballot; it also requires the election judges to keep a manual log of the duplicated ballots. Manual adjudication is therefore susceptible to human error and can result in inconsistency between different teams of election judges. Digital adjudication allows the entire process to be completed electronically, greatly increasing accuracy, transparency and consistency, while simultaneously reducing the staffing costs for the adjudication process.

6. Digital adjudication and ballot image capture with electronic audit logs are also very helpful in conducting risk-limiting audits. Risk-limiting audits are ballot audits that are conducted based on scientific and statistical models; proportionally more ballots are audited as the margin of victory between

competing candidates narrows. Colorado statute requires all Colorado counties to begin conducting risk-limiting audits in 2017. *See* § 1-7-515, C.R.S. (2015). Without digital adjudication and ballot image capture functionality, the only way to conduct a risk-limiting audit is to re-tabulate, or re-scan, every ballot that is selected for audit—an inefficient and slow process. Digital adjudication and ballot image capture with electronic audit log capabilities greatly streamline this process.

7. Rules 11.9.3(g)(2), 11.9.4(b), and 11.9.5 require that new voting systems have ballot scanners equipped with automatic document feeders. This is beneficial to counties because, absent an automatic document feeder, election officials must manually hand-feed ballots into the machine one at a time—a time-intensive process requiring hours of unnecessary labor expense. Hand-feeding single ballots not only slows down the process of reporting elections results, it also increases the opportunity for human error.

8. Rules 11.9.3(d), 11.9.4(c), and 21.4.7(e) require that new voting systems integrate all components of the election management system ("EMS") so that they are accessible by a single user interface on the same server or workstation. These rules are beneficial to counties because it permits all of the various steps of election administration to be controlled and managed from one user interface, using one login username and password. The steps involved in

4

election administration are numerous, including setting up the election in the EMS (defining the election, building the ballot format and content, proofing, and creating test ballots, scanning cast ballots, validating the election results, and reporting the election results). Previously, Mesa County had a cumbersome system involving five different computers in which the different steps of election administration were disjointed, spread across different subsystems requiring different usernames and passwords. As an election administrator, the disjointed system made it difficult to set up the election because errors discovered midway through the set-up process often required the election staff to start over from the beginning. Heightened risk also existed with the disjointed system because data files were not always easily moved from one subsystem to another, especially if pre-existing data files were still in the subsystem. Stated differently, the disjointed subsystems did not "talk to each other" as one would hope. The Secretary's new rules alleviate these problems.

9. Rule 21.4.14(b)-(c) requires new voting systems to capture a ballot-level cast vote record ("CVR"), which is a record for each ballot tabulated showing the manner in which the system interpreted and counted the voter's markings on the ballot. The new rules require that the CVRs be exported from the voting system in a comma-separated value ("CSV") text format—a widely-used file format that is compatible with a host of other computer and software

programs. These rules reduce the risk of election data loss or corruption because they eliminate the need to convert election data from a voting system vendor's proprietary format into a more useable format. Anytime election data is manipulated there is a risk that the data will be fully or partially lost, altered, or corrupted.

10. I believe the new election rules adopted by the Secretary will both reduce costs and improve the efficiency, accuracy and transparency of election administration in all Colorado counties, including counties the size of Mesa County.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 27th day of June, 2016.

Sheila Reiner