IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-1237-JLK

ELECTION SYSTEMS & SOFTWARE, LLC, a Delaware limited liability
company; and HART INTERCIVIC, INC., a Texas corporation,

     Plaintiffs,

v.

WAYNE W. WILLIAMS, in his official capacity as Colorado Secretary of State,
Colorado Department of Revenue,

     Defendant.

## DECLARATION OF JANICE VOS CAUDILL

     I, Janice Vos Caudill, pursuant to 28 U.S.C. § 1746, do depose and state as

follows:

     1.     I am the Clerk and Recorder for Pitkin County, Colorado, a position

I have held since 2005. I am the only elected Clerk and Recorder in Colorado

that is unaffiliated with either major political party. Prior to becoming the Clerk

and Recorder, I worked for the City of Aspen for seven years, most recently as a

Business Process Analyst and Assistant to the City Manager. Before that, I

worked as a Coordinator of Staffing Services for seven years at the Milwaukee

Area Technical College. I am a Certified Election/Registration Administrator

("CERA"), hold a certificate of Process Management through Colorado State

University, and until recently was certified as a Professional in Human

**EXHIBIT E**

Resources through the Society of Human Resources Management for over 20 years. I hold a Master's in Public Administration (MPA), from Denver University; a Bachelor's Degree in business and marketing from Carthage College; and an Associate's Degree in secretarial administration from Gateway Technical Institute. While earning my Bachelor's Degree I attended the Chicago Institute of European Studies in Vienna, Austria, and worked with the Vienna Stock Exchange.

2.      I have supervised approximately 17 elections in Pitkin County since becoming the Clerk and Recorder. Pitkin County is a relatively small Colorado county, with approximately 15,000 registered voters. Based on my experience, I am familiar with the different types of electronic and electromechanical voting systems that are available on the market, as well as their functions, capabilities, and costs.

3.      I am familiar with the new election rules adopted by the Colorado Secretary of State ("Secretary") on February 9, 2016, codified in 8 COLO. CODE REGS. § 1505-1, which are currently being challenged by the plaintiffs in this federal lawsuit.

4.      Rule 11.9.3(c) states that the Secretary, in deciding whether to approve a political subdivision's application to purchase or lease a new voting system on or after January 1, 2016, will consider whether the system utilizes

2

commercial off-the-shelf hardware components, rather than proprietary, purpose-built hardware components. This is beneficial to Pitkin County in at least three respects. First, it saves costs and taxpayer dollars. Electronic or electromechanical voting systems that are compatible with off-the-shelf hardware components are less expensive than systems utilizing or requiring multiple proprietary, purpose-built components. Second, off-the-shelf hardware components are also more readily-available than proprietary, purpose-built components, making it easier for counties to quickly replace broken or inoperable voting systems components; they also provide neighboring counties the ability and opportunity to share components on a moment's notice. The ability to quickly and efficiently replace broken or inoperable voting systems components is vitally important when administering elections. Otherwise, counties, such as Pitkin, risk delay in reporting pivotal election results to the Secretary and the public at large. Third, as off-the-shelf technology improves, and in many instances pricing decreases, Pitkin County will be provided flexibility and better positioning in keeping up with technological advancements, in collaboration with the Secretary of State.

5.    Rules 11.9.3(g)(1), 11.9.4(a), and 21.4.16(a) require that new voting systems possess digital ballot adjudication functionality. These rules vastly improve the efficiency and transparency of ballot tabulating and election

3

administration in Pitkin County. Digital adjudication effectively enables election judges to electronically resolve mismarkings, undetectable and ambiguous markings, overvotes, undervotes in a recount, and write-in votes on each ballot image requiring adjudication. Digital adjudication both preserves the original markings on the ballot as submitted by the voter and creates an electronic audit log tracking the resolution team member who secured access into the system, and the manner in which they resolved each marking on the ballot.

6.      Without digital adjudication functionality, a team of election judges must manually observe and duplicate a voter's markings onto a new ballot that can be tabulated by the voting system, and they must manually maintain a log of each and every ballot duplicated. For example, if a voter uses light markings when filling out his or her ballot, the team of election judges must manually duplicate the voter's ballot using darker markings because the voting machine cannot read light markings. This manual process is complicated because the election judges must first locate a blank ballot that is consistent with the ballot style used by the voter; in a single election there may be dozens of different ballot styles, sometimes over 50, within Pitkin County, rendering it difficult for the election judges to quickly locate the correct duplicate ballot style. The election judges must then manually document each transaction regarding all ballot usage and the reason for duplication on a duplication log. All manually-

4

duplicated ballots and logs in Pitkin County must then be retained for 25 months, creating storage and space problems. This manual duplication process is therefore both tedious and subject to a high error rate because of the several steps that require manual input. Because the manual marking of duplicate ballots lends itself to error, it may require spoiling a duplicate ballot and reissuing yet another duplicate ballot. Digital adjudication, by contrast, does not require these manual steps and improves accuracy and transparency. It is also less expensive to counties because counties are not forced to spend as much in labor costs to pay election judges to manually duplicate and adjudicate ballots. After the 2015 election, Adams County saved approximately $60,000 in labor costs alone based on digital adjudication capability versus manual duplication.

7.     Rules 11.9.3(g)(2), 11.9.4(b), and 11.9.5 require that new voting systems have ballot scanners equipped with automatic document feeders. This is beneficial to Pitkin County in several respects. First, the automatic document feeder increases the pace at which Pitkin County tabulates voters' ballots. Pitkin County previously used a ballot scanner without an automatic document feeder; it took an hour or more to scan and tabulate just 400 ballots. But now, with an automatic document feeder, the same number of ballots can be scanned and tabulated in ten minutes or less. The automatic document feeder therefore greatly enhances the efficiency of election administration.

8.      Second, having an automatic document feeder reduces the number of manual, hand-fed ballot scanners that counties need to purchase or lease to efficiently tabulate voters' ballots in a timely manner. This is especially important in counties, like Pitkin County, where elections staff have limited office space to house ballot scanners.  In the past, Pitkin was required to increase the number of hand-fed ballot scanners on election night, and if space had been adequate, additional hand-fed scanners would have been added. Due to space constraints, and the inability to find judges to expand hand-fed scanner operations, judges worked into the late evening on election night and early morning hours the next day. It should be noted that, even when adding hand-fed scanners, limited human resources created additional burden: finding judges, paying judges, and finding physical space for judges.

9.      Third, Pitkin County has experienced other issues with hand-fed scanners that have proven to be challenging and costly to operations due to the human error inherent with hand-fed scanners. Hand-fed scanners have allowed for human error due to ballot jams and the inability of judges to read the error messages on hand-fed machines when the message disappears. This problem leaves the judges incapable of determining if the jammed ballot was counted or rejected. This has created challenges with balancing (*i.e.* reconciling cast ballots with tallied ballots), and at times required judges to rescan all ballots that had

6

been cast on that particular hand-fed machine, therefore creating timely and costly operation challenges. This requirement to rescan all prior ballots cast on the jammed hand-fed machine can occur because of the memory card limitations on hand-fed scanners. When a jam occurs with a scanner utilizing an automatic document feeder, by contrast, the election judge may simply delete the batch containing the jammed ballot and quickly rescan that particular batch rather than all ballots previously scanned on that machine.

10.   Fourth, the automatic document feeder reduces costs and saves taxpayer dollars because it reduces (1) the number of manual, hand-fed ballot scanners that are necessary to efficiently administer an election, and (2) the elections staff that must be hired to manually hand-feed ballots into the scanner, and (3) ballot jams due to the manual feed process and the requirement to rescan all ballots associated with the cast-and-count error.

11.   Rules 11.9.3(d), 11.9.4(c), and 21.4.7(e) require that new voting systems integrate data management applications and the election management system ("EMS") so that they are accessible by a single user interface on the same server or workstation. Pitkin County has utilized a single user interface on the same server or workstation in the past, and prefers to utilize such a system as it saves steps in moving back and forth from one system to another, especially during the critical time of programming ballots for an election, proofing, and

7

editing. Counties usually program ballots immediately after certification from the Secretary (which is usually over the weekend) in order to submit ballot designs to the printing vendor as soon as possible. Because there is a limited number of printing vendors, it has always been a race to submit ballot designs to the printer in order to secure a position in the production line to meet the statutory deadline for having ballots available in the county elections office. For example, litigation involving the most recent 2016 Republican primary ballot pushed the Secretary's certification back a few days, which in turn diminished the printer's production timeline to meet the statutory deadline to have ballots in the elections office. The single user interface saved steps and time during this process in an already-stressful situation.

12.     Additionally, having all aspects of the data management applications and EMS accessible from a single location enhances the security and integrity of the election process. In Pitkin County, where physical space is limited, all of the voting systems equipment is housed in one centralized location that is monitored with a security video camera behind locked gates. This eliminates the need and cost to secure multiple locations. The new election rules therefore improve security and reduce unnecessary costs.

13.     Rule 21.4.14(b)-(c) requires new voting systems to capture a ballot-level cast vote record ("CVR"), which is a record for each ballot tabulated

8

showing the manner in which the system interpreted and counted the voter's markings on the ballot. The new rules require that the CVRs be exported from the voting system in a comma-separated value ("CSV") text format. The CSV file format is a widely-used file format that is compatible with a host of other computer and software programs. In short, these new elections rules may increase efficiency in election administration because they mandate the use of the CSV file format, which is more functional, more widely-understood, and logically should be more cost-effective than other file formats.

14.     21.4.15(b)-(d) requires new voting systems to export results data in a specified CSV file format that contains specified fields. This data export format will make it easier for Pitkin County election officials to upload its county results files into the Secretary's Election Night Reporting ("ENR") system. This rule, by requiring this widely-used format, will ensure that Pitkin County's results are properly and accurately aggregated for statewide and multi-county ballot contests, and quickly and efficiently communicated to the media and public.

15.     I believe the new election rules adopted by the Secretary will reduce costs, improve the efficiency, accuracy and transparency of election administration, and promote uniform, best practices in all Colorado counties.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 29th day of _____ June _____, 2016.

_____

Janice Vos Caudill

10