IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-1237-JLK

ELECTION SYSTEMS & SOFTWARE, LLC, a Delaware limited liability company; and HART INTERCIVIC, INC., a Texas corporation,

    Plaintiffs,

v.

WAYNE W. WILLIAMS, in his official capacity as Colorado Secretary of State, Colorado Department of Revenue,

    Defendant.

## DECLARATION OF KRYSTAL BROWN

    I, Krystal Brown, pursuant to 28 U.S.C. § 1746, do depose and state as follows:

    1.    I am the Clerk and Recorder for Teller County, Colorado, a position I have held since 2013. Prior to becoming the Clerk and Recorder, I worked for the Teller County Clerk and Recorder's Office for two years as the Chief Deputy Clerk. Before that, I was a Recording Supervisor and a Deputy Clerk. In total, I have worked for the Teller County Clerk and Recorder's Office for twelve years. I am a Certified Election/Registration Administrator ("CERA").

    2.    I have supervised approximately five elections in Teller County since becoming the Clerk and Recorder, and I have assisted in administering several other elections in Teller County prior to becoming the Clerk and

**EXHIBIT F**

Recorder. Teller County is a relatively small Colorado county, with approximately 18,500 registered voters. Based on my experience, I am aware of the different types of electronic and electromechanical voting systems that are available on the market.

3.  I am familiar with the new election rules adopted by the Colorado Secretary of State ("Secretary") on February 9, 2016, codified in 8 COLO. CODE REGS. § 1505-1, which are currently being challenged by the plaintiffs in this federal lawsuit.

4.  Rule 11.9.3(c) states that the Secretary, in deciding whether to approve a political subdivision's application to purchase or lease a new voting system on or after January 1, 2016, will consider whether the system utilizes commercial off-the-shelf hardware components, rather than proprietary, purpose-built hardware components. This is beneficial to counties and local governments in at least two respects. First, it saves costs and taxpayer dollars. Electronic or electromechanical voting systems that are compatible with off-the-shelf hardware components are less expensive than systems utilizing proprietary, purpose-built components. Second, off-the-shelf hardware components are also more readily-available than proprietary, purpose-built components, making it easier for counties to quickly replace broken or inoperable voting systems components. The ability to quickly and efficiently

replace broken or inoperable voting systems components (for example, toners) is vitally important when administering elections. Otherwise, counties risk delay in reporting pivotal election results to the Secretary and the public at large.

5. Rules 11.9.3(g)(1), 11.9.4(a), and 21.4.16(a) require that new voting systems possess digital ballot adjudication functionality. These rules vastly improve the efficiency and transparency of ballot tabulating and election administration. Digital adjudication effectively enables election judges to electronically resolve mismarkings, undetectable and ambiguous markings, overvotes, undervotes in a recount, and write-in votes on each ballot image requiring adjudication. Digital adjudication both preserves the original markings on the ballot as submitted by the voter and creates an electronic audit log showing the names of the resolution team members and the manner in which they resolved each marking on the ballot.

6. Without digital adjudication functionality, election judges must manually duplicate a voter's markings onto a new ballot that can be tabulated by the voting system. This manual duplication process is time consuming, taking approximately five to seven minutes per ballot. Digital adjudication, by contrast, can be completed by the election judges in just one or two minutes per ballot. Digital adjudication is therefore more efficient and allows election results to be reported more quickly. It is also less expensive to counties because counties are

not forced to spend as much in labor costs to pay election judges to manually duplicate and adjudicate ballots.

7. Rules 11.9.3(g)(2), 11.9.4(b), and 11.9.5 require that new voting systems have ballot scanners equipped with automatic document feeders. This is beneficial to counties because it allows counties, including smaller counties like Teller, to scan more ballots in shorter period of time. Absent an automatic document feeder, election officials must manually hand-feed ballots into the scanning machine one at a time. This manual process is slow and time consuming, allowing only three to ten ballots to be scanned per minute. But the automatic document feeder allows at least 30 to 40, based on a one-sided ballot, to be scanned per minute. The automatic document feeder therefore greatly enhances the efficiency of election administration. The automatic document feeder also reduces costs and saves taxpayer dollars because it reduces the elections staff that must be hired to manually hand-feed ballots into the scanner.

8. Rules 11.9.3(d), 11.9.4(c), and 21.4.7(e) require that new voting systems integrate data management applications and the election management system ("EMS") so that they are accessible by a single user interface on the same server or workstation. These rules are beneficial to counties because they permit election officials to efficiently manage all aspects of an election from a single user interface. Having a centralized, integrated voting system allows the

election process to flow more smoothly because the different applications communicate simultaneously. For example, the ballot scanner will automatically send a ballot to digital adjudication when necessary. That is not necessarily the case with a bifurcated voting system, houses different applications on different servers and different workstations. Having a centralized, integrated voting system therefore saves time in administering an election, which in turn reduces costs because election judges and staff work fewer hours

9.  Further, having a centralized, integrated voting system is also easier to transport to, and maneuver at, the Voter Service and Polling Centers ("VSPCs") throughout the county. Decentralized, bifurcated voting systems are bulkier and take up more physical space, making them more difficult to transport and maneuver. This can pose a problem if an election judge is otherwise unable to handle large equipment—a frequent occurrence in Teller County.

10.  Rule 21.4.14(b)-(c) requires new voting systems to capture a ballot-level cast vote record ("CVR"), which is a record for each ballot tabulated showing the manner in which the system interpreted and counted the voter's markings on the ballot. The new rules require that the CVRs be exported from the voting system in a comma-separated value ("CSV") text format. The CSV file format is a widely-used file format that is compatible with a host of other

5

computer and software programs. In the past, file compatibility has been an issue in Teller County when it used voting systems provided by Election Systems & Software, LLC ("ES&S"). The specialized file format used in the ES&S voting systems would sometimes take so long we would have to manually upload our files to make sure our data transferred correctly, causing delay and additional time in the election administration process.

11.     I believe the new election rules adopted by the Secretary will both reduce costs and improve the efficiency, accuracy and transparency of election administration in all Colorado counties.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 5 day of July, 2016.

*[signature]*

Krystal Brown