IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:16-cv-1237-JLK

**ELECTION SYSTEMS & SOFTWARE, LLC,**
     a Delaware limited liability company; and

**HART INTERCIVIC, INC.,**
     a Texas corporation;

       Plaintiffs,

       v.

**WAYNE W. WILLIAMS,**
     in his official capacity as Colorado Secretary of State.

       Defendant.

_____

**AMENDED COMPLAINT AND JURY DEMAND**
_____

Thomas P. McMahon
Aaron D. Goldhamer
    Jones & Keller, P.C.
    1999 Broadway, #3150
    Denver, Colorado 80202
    Tel. (303) 573-1600
    Fax (303) 573-8133
Attorneys for Plaintiff

Dated:  July 12, 2016

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    PLAINTIFFS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    DEFENDANT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

NON-DEFENDANT BENEFICIARY OF SECRETARY'S ACTIONS . . . . . . . . . . . . 2

NATURE OF THE ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    FEDERAL CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    STATE LAW CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    RELIEF SOUGHT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

APPLICABLE LAW, JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . 4

OPERATIVE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    STATUTORY SCHEME . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    SECRETARY'S RULEMAKING AUTHORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    CHRONOLOGY OF EVENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    PERSPECTIVE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

INTERSTATE TRADE AND COMMERCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

FEDERAL CLAIM FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    FIRST CLAIM
    (Deprivation of Federal Rights, Privileges or Immunities
    [Commerce Clause - U.S. Const., Art I, Sec. 8, Cl. 3; Civil
    Rights Act, 42 U.S.C. §§1983, 1988] under Color of State Law) . . . . . . . . . . . . . 18

STATE LAW CLAIMS FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    SECOND CLAIM
    (Violation of Statutory Duty – C.R.S. §§1-5-608.5) . . . . . . . . . . . . . . . . . . . . . . . . 22

    THIRD CLAIM
    (Amended Election Rules Conflict with Election Code
    - C.R.S. §24-4-103(8)(a)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

    FOURTH CLAIM
    (Amended Election Rules Exceed Secretary's
    Statutory Authority - C.R.S. §24-4-103(8)(a)) . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

    FIFTH CLAIM
    (Unfunded Mandate - C.R.S. §29-1-304.5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

DEMAND FOR JURY TRIAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

**INTRODUCTION**

This case arises out of action by the Colorado Secretary of State mandating that all Colorado counties must soon acquire – and therefore that virtually all Colorado political subdivisions must use – a single uniform voting system manufactured by a particular company. But Colorado law authorizes political subdivisions to decide for themselves what voting system to acquire and use in conducting elections. The Secretary's statutory function is simply to certify which voting systems meet federal and Colorado election requirements so as to be eligible for such acquisition and use.

The effect of the Secretary of State's action will be to deprive Colorado's political subdivisions of their statutory right to acquire and use the most appropriate voting system for their individual circumstances. It will also subject them to monopoly pricing for the acquisition and support of the single system that has now been mandated. Further, his action will stifle innovation and customer service in the development of voting technologies for Colorado, and correspondingly deprive political subdivisions and the voting public of access to the latest cutting-edge voting systems and enhanced customer service. Finally, the Secretary's action will injure and damage the businesses of Plaintiffs, who are vendors of voting systems.

**PARTIES**

<u>PLAINTIFFS</u>

1. Election Systems & Software, LLC ("ES&S"), is a Delaware limited liability company. Its principal place of business is 11208 John Galt Blvd., Omaha, NE 68137.

ES&S manufactures and sells or leases voting systems which are used, and provides election support services, in various states across the country, including Colorado.

2.     Hart InterCivic, Inc. ("Hart"), is a Texas corporation.  Its principal place of business is 15500 Wells Port Dr., Austin, TX, 78728.  Hart manufactures and sells or leases voting systems which are used, and provides election support services, in various states around the country, including Colorado.

**DEFENDANT**

3.     The Secretary of State ("Secretary") is an elective office within the Executive Department of Colorado state government.  Colo. Const. art. IV, §1.  Among other things, the Secretary is responsible for supervising the conduct of primary, general, congressional vacancy and statewide ballot-issue elections in Colorado, and serves as the chief state election official within the meaning of the Help America Vote Act of 2002 ("HAVA").  C.R.S. §1-1-107(1)(a), (e).  Wayne W. Williams is the current Secretary and is named a defendant in his official capacity.

**NON-DEFENDANT BENEFICIARY OF SECRETARY'S ACTIONS**

4.     Dominion Voting Systems, Inc. ("Dominion"), is a Delaware corporation.  Its principal place of business is 1201 18th St., Ste. 210, Denver, CO 80202.  Dominion is the wholly-owned U.S. subsidiary of Dominion Voting Systems Corp. (Canada).  Dominion manufactures and sells voting systems in states across the country, including Colorado.

**NATURE OF THE ACTION**

5.     Plaintiffs ES&S and Hart bring this action seeking declaratory and injunctive relief

– or, alternatively, damages – based upon the following federal and state claims.

## FEDERAL CLAIM

6.    Imposition of a single uniform voting system mandate in favor of a company – Dominion – headquartered in Colorado is to the detriment of Plaintiffs, which are non-Colorado companies.  Such action:  violates the power of Congress to regulate interstate commerce under art. I, §8, cl. 3 (the "Commerce Clause") of the U.S. Constitution; and interferes with Plaintiffs' civil rights secured by that provision to engage in interstate commerce free from state interference.

## STATE LAW CLAIMS

7.    First, the Secretary proposed an election rule amendment that would prevent Colorado political subdivisions from purchasing or leasing any voting system or component unless the system had:  either been certified by him on or before December 31, 2014; or been certified and selected by him on or after December 15, 2015, as the State's uniform voting system.  A week later, he announced he had selected Dominion to provide the single, uniform voting system for acquisition and use in Colorado.  In effect, that meant he would not certify competing voting systems even though they meet federal and Colorado statutory requirements.  This conflicts with the Secretary's statutory duty requiring him to certify for acquisition and approve for use by Colorado political subdivisions voting systems which meet such requirements.

8.    Imposition of the challenged mandate was subsequently effectuated via the Secretary's permanent adoption of different election rules amendments which are in direct

contravention of Colorado statutes governing the authorization and use of voting systems. Those statutory provisions indicate that: Colorado political subdivisions are to have multiple voting systems available to them for purchase or lease and use in conducting elections; and only they – not the Secretary – have the authority to make the decision regarding which statutorily-qualified system to acquire.

9.    The challenged amendments exceed the Secretary's statutory rulemaking authority.

10.    The requirement that Colorado counties purchase a single uniform voting system constitutes an "unfunded mandate" in violation of Colorado law.

**RELIEF SOUGHT**

11.    Plaintiffs seek declaratory relief to invalidate and injunctive relief to prevent and restrain the Secretary's above-referenced actions.

12.    Alternatively, Plaintiffs seek damages for the injuries resultingly suffered in the event they are unsuccessful in obtaining such equitable relief.

**APPLICABLE LAW, JURISDICTION AND VENUE**

13.    This suit is brought under the Commerce Clause of the U.S. Constitution, art. I, §8, cl. 3, and the Civil Rights Act, 42 U.S.C. §1981 *et seq.*, specifically §1983 (deprivation of rights), §1985 (conspiracy) and §1988 (vindication).

14.    This Court has original jurisdiction over the subject matter of the federal claim in this action pursuant to 28 U.S.C. §1331 (federal question), §1332 (diversity), §1343(a) (civil rights), §2201(a) (declaratory relief) and §2202 (relief further to declaratory judgment).

15.    This Court also has supplemental jurisdiction over the subject matter of the state

law claims in this action pursuant to 28 U.S.C.§1367(a).

16.   Venue for this action properly lies in the District of Colorado pursuant to 28 U.S.C. §1391(b)(2) (where substantial part of events or omissions giving rise to claim occurred and substantial part of property that is subject of action is located).

## OPERATIVE FACTS

### STATUTORY SCHEME

Colorado's state election code, C.R.S. §§1-1-101 through 1-13-803, provides *inter alia*:

17.   In all elections votes may be cast, registered, recorded, and counted by means of an electronic or electromechanical voting system.  C.R.S. §1-5-601(1).  The latter includes a paper-based voting system, §1-1-104 (13.5), where votes are recorded solely on a paper ballot, §1-1-104(23.5).  *See* C.R.S. §1-5-601(2).

18.   Under C.R.S. §§1-5-603, 612(1) and 616(4), Colorado's political subdivisions are the entities authorized to select, adopt and use any kind of voting machine – including electronic or electromechanical voting systems and their hardware, firmware and software upgrades – meeting the requirements of §§1-5-601 *et seq.*

19.   In turn, the requirements of C.R.S. §§1-5-601 *et seq.* involve the following.

a.   C.R.S. §1-5-615(1) prescribes Colorado statutory standards for electronic and electromechanical voting systems, which mirror federal standards under HAVA.

b.   C.R.S. §1-5-616(1) requires the Secretary to adopt rules for electronic and electromechanical voting systems establishing *minimum standards* addressing the following criteria derived from HAVA:  (a) functional requirements; (b) performance levels; (c)

physical and design characteristics; (d) documentation requirements; (e) evaluation criteria;
(f) audit capacity; (g) security requirements; (h) telecommunications requirements; and (i)
accessibility.

20.    All voting systems and equipment offered for sale in Colorado must comply with
federal election voting systems standards.  C.R.S. §1-5-601.5.

21.    Federally accredited laboratories may test, approve, and qualify electronic and
electromechanical  voting systems [plural] for sale and use in the state.  C.R.S.
§1-5-608.5(1).

22.    After an electronic or electromechanical voting system is tested per §1-5-608.5:

    a.    Its provider may submit the system to the Secretary for certification.  C.R.S.
§1-5-617(1)(a).

    b.    The Secretary *must* then examine the system and determine whether it
complies with the statutorily-prescribed requirements of §1-5-615(1) and the rules
establishing *minimum standards* addressing statutorily-prescribed criteria under §1-5-616(1).
C.R.S. §1-5-617(1)(b).

23.    Voting systems [plural] so tested which satisfy the above-referenced statutory
requirements and *minimum standards* **must** be certified by the Secretary and approved for
purchase, installation and use by political subdivisions.  C.R.S. §1-5-608.5(3)(a).

24.    Indeed, the Secretary is required to adapt the *minimum standards* to ensure that
new technologies meeting the requirements for such systems are timely certified.  C.R.S. §1-
5-616(4).

### SECRETARY'S RULEMAKING AUTHORITY

In pertinent part, the Secretary has the following statutorily-authorized rulemaking authority.

25.   The Secretary is authorized to promulgate rules necessary for the proper:

a.   Administration and enforcement of the election laws. C.R.S. §1-1-107(2)(a).

b.   For the proper administration, implementation and enforcement of HAVA. C.R.S. §1-1.5-104(1)(e).

26.   The Secretary is required to:

a.   Adopt uniform rules for the purchase and sale of voting equipment. C.R.S. §1-5-613(1).

b.   Adopt rules for electronic and electromechanical voting systems establishing *minimum standards* addressing: functional requirements; performance levels; physical and design characteristics; documentation requirements; evaluation criteria; audit capacity; security requirements; telecommunications requirements; and accessibility. C.R.S. §1-5-616(1).

c.   Adapt those *minimum standards* to ensure that new technologies which meet the requirements for electronic or electromechanical voting systems are certified in a timely manner, are available for selection by political subdivisions and meet user standards. C.R.S. §1-5-616(4).

27.   Formerly, the Secretary was required to promulgate rules necessary to administer and enforce the requirements of C.R.S. §1-5-623 relating to the use, modification or purchase

of electronic voting devices, systems or related components between May 15, 2009, and the 2014 general election.  C.R.S. §1-5-623(4).

28.   [Inadvertently omitted.]

## BACKGROUND

29.   Colorado has 64 counties.  In general (with the exception of the two "cities and counties" of Broomfield and Denver), the governing body of each is the Board of County Commissioners.  The chief election official of each is the Clerk and Recorder.

30.   In Colorado, voting systems are acquired by each individual county.  They are then used by that county – as well as for elections by municipalities, special districts, school boards and the like within the county – in conducting elections.

31.   Since inception of the use of voting equipment in Colorado, many different vendors have at any one time provided voting systems to the counties.  Statutorily, each county is free to choose among the competing vendors of voting systems certified and approved by the Secretary in order to select the particular system the county deems most appropriate for its individual situation.

## CHRONOLOGY OF EVENTS

32.   In fall 2013 the then-Secretary promulgated a request for proposals relating to a "uniform voting system" for Colorado.  Under that concept, a single vendor would be chosen by the Secretary to provide the same voting system to all 64 of Colorado's counties.

33.   In response, proposals were received from Clear Ballot Group, Inc. ("Clear Ballot"); Dominion; ES&S; Everyone Counts, Inc.; and Hart.

34.   In 2014 the current Secretary decided that the proposed systems would be "piloted" – *i.e.*, evaluated – in various counties during the November 2015 election.

35.   A Pilot Election Review Committee ("PERC") was appointed by the Secretary to obtain and evaluate feedback concerning the systems to be piloted.  It was intended that the Secretary would carefully review and consider the PERC's recommendations, and that one or more provider(s) of the system(s) ultimately selected would then undergo formal certification so that counties desiring to acquire the new system(s) could do so in time for use in the 2016 primary election.

36.   Four voting systems were temporarily approved by the Secretary for use in the November 2015 election and evaluation by the PERC – those of Clear Ballot, Dominion, ES&S and Hart.

37.   Eight counties participated in the PERC evaluation process with one of the four voting systems in the November 2015 election:  Adams (Clear Ballot), Denver (Dominion), Douglas (Hart), Garfield (Hart), Gilpin (Clear Ballot), Jefferson (ES&S), Mesa (Dominion) and Teller (ES&S).

38.   On December 15, 2015, the Secretary issued a notice of proposed rulemaking for January 14, 2016, to consider revisions to various election rules in 8 CCR 1505-1, including Rule 11.9.2.  The latter proposal indicated that, except for voting systems certified by the Secretary on or before December 31, 2014, a political subdivision would only be able to purchase or lease a voting system certified and selected by him on or after December 15, 2015 as the State's *uniform voting system*.

39.   On December 17, 2015, however, after completing its pilot evaluation PERC voted 5-2 that Colorado counties should have multiple options available to them for the purchase or lease of such voting systems.

40.   On December 22, 2015, the Secretary announced via letter to the state's County Clerks and Recorders that he had "conditionally decided to select a single voting system for future use in Colorado"; he "intend[ed] to enter into contract negotiations with Dominion ... as Colorado's sole voting system provider going forward ... [which] depends on the quick and successful negotiation of mutually agreeable terms with Dominion"; "[t]ransitioning to a single voting system on a statewide basis" would have various purported benefits; and "the ... benefits outweigh the risks of pairing Colorado's counties with a single provider in the future ...."

41.   In response, on December 28, 2015, Douglas County requested that, pursuant to C.R.S. §24-4-103(4.5), the Secretary conduct a regulatory analysis of the proposed amendment to Rule 11.9.2.  In particular, the county requested an analysis of:  (i) who would pay for switching to the single Dominion voting system; (ii) what the cost would be; (iii) what the effect would be of not switching to a single voting system; and (iv) what other alternatives had been considered.

42.   On January 7, 2016, the Secretary responded that, among other things:  (i) county taxpayers would bear the costs, while there would be no cost to the Secretary or any other state agency; (ii) by supposedly leveraging the state's negotiating and purchasing power, the Secretary purportedly would be able to negotiate standard pricing and support terms on

behalf of the counties; (iii) not switching would mean each county would be able to make its own decision about purchasing a voting system based on price and capabilities; and (iv) no alternatives to implementing a single uniform voting system had been considered.

43.   In fact, however, switching to a single uniform voting system would primarily benefit the election staff of the Secretary while negatively impacting counties.

44.   By mid-January 2016, numerous counties and other interested entities had provided comments opposing the adoption of a single uniform voting system provided by Dominion.

45.   Yet, just a few days later, on January 20, 2016, the Secretary addressed the uniform voting system topic at length in a presentation to the Colorado County Clerks Association, presenting it and Dominion as a *fait accompli*.   Among other things, he announced that testing of Dominion's system would be completed by mid-February, its certification would occur by March 1st and it could be installed by early April; 22 counties had indicated they would be switching to Dominion's system in 2016 and another 19 indicated they would do so in 2017; on the counties' behalf, he had entered a memorandum of understanding with Dominion, although counties could seek to negotiate more favorable terms on their own.

46.   On January 21, 2016, the Secretary announced to the Colorado County Clerks Association that, as an inducement for counties to switch to the Dominion system in 2016 or 2017, his office would pay 50% of the associated implementation, training and program management fees.

47.   Ultimately, on February 9, 2016, the Secretary gave notice of permanent adoption of election rules 11.9 and 21.4 under 8 CCR 1505-1 which differ significantly from the December 15, 2015 proposed rules.  The adopted rules eliminated any reference to a uniform voting system, instead adding exclusive and restrictive requirements and considerations.

a.   Rule 11.9 adds significant technical requirements and optional considerations for approval by the Secretary of the acquisition or use of electronic or electromechanical voting systems by political subdivisions.

b.   Rule 21.4 adds significant functional requirements for certification by the Secretary of electronic or electromechanical voting systems.

c.   Rules 11.9 and 21.4, and their technical and functional requirements and optional considerations, are only met by – and appear tailored to the features of – the Dominion system,

(i)   Which had been selected on December 22, 2015, by the Secretary as the provider of the single, uniform voting system for Colorado, and

(ii)   Do not have any basis in the requirements of HAVA incorporated into the Colorado election code.

48.   Upon information and belief, the February 9, 2016 rules are intended to and have the collective effect of – without expressly calling for a uniform voting system – functionally mandating that all Colorado counties adopt a single uniform voting system whose requirements can only be met by Dominion's product.  For example:

a.   New rule 11.9.2(b) allows only *replacement* of damaged, defective or

inoperable existing electronic and electromechanical voting systems, components or devices – but not

> (i)   *replacement* by ES&S and Hart of undamaged, non-defective or operable existing electronic and electromechanical voting systems, components or devices, or

> (ii)   *upgrades* by ES&S and Hart to existing systems, components or devices.

b.   New rule 11.9.3(c) gives favorable consideration to a voting system that utilizes commercial, off-the-shelf hardware components rather than proprietary, purpose-built hardware components.  Dominion's system does so across-the-board.  The ES&S system does not and so is disfavored; Hart's system does so in certain places and not in others, causing it to be less favored.

c.   New rules 11.9.3(d), 11.9.4(c) and 21.4.7(e) effectively require a voting system to enable users to operate or access all election management systems within a single interface on the same server or workstation.

> (i)   Dominion's system does; the ES&S and Hart systems do not.  The result is to effectively disqualify them.

> (ii)   Yet, there is no operational reason for these functions to be on the same high priced server.  In fact there are internal control, and single point of failure, reasons why they should not be on the same server.

d.   New rules 11.9.3(g)(1), 11.9.4(a) and 21.4.16(a) effectively require a voting system to enable election judges to digitally rather than manually adjudicate, resolve and duplicate ballots.   Dominion's system does; ES&S' system doesn't.   The result is to

effectively disqualify it.

     e.    New rules 11.9.3(g)(2), 11.9.4(b) and 11.9.5 effectively require a voting system to have ballot scanners equipped with automatic document feeders, enabling election judges to scan multiple ballots rather than a single ballot at a time.

     (i)    Dominion's system does; the ES&S and Hart systems do not. The result is to effectively disqualify them.

     (ii)   Yet, there is no operational benefit to this requirement.

     f.    New rule 21.4.7(e) effectively prohibits a voting system from deploying, separately  from a traditional election management system, any data management applications that do not capture or tabulate votes.  Dominion's system utilizes integrated applications; the ES&S and Hart systems utilize separately-deployed applications.  New rules 21.4.14 (b)-(c) and 21.4.15(b)-(d) impose arbitrary and restrictive formatting requirements in a manner that is highly irregular for administrative rules, particularly in light of the fact that the formatting requirements appear to be tailored exactly to the manner in which Dominion system operates.

    49.   On February 17, 2016, the Secretary and Dominion entered into a contract for Dominion to be the provider of a single uniform voting system to Colorado's counties.  The contract is six years in length (to 2022) and may be extended by the Secretary for an additional two years (to 2024).

    50.   As of January 20, 2016, the Secretary expected to complete the testing of Dominion's voting system by February 15, 2016, and expected to certify it for acquisition, installation and use by Colorado counties no later than March 1, 2016.

**PERSPECTIVE**

51.   The result is that, with Dominion as the provider of a single, uniform voting system mandated by the Secretary:

a.      Colorado counties and other political subdivisions will be deprived of choice in terms of voting systems they may acquire and use in conducting elections;

b.      Dominion will be placed in a position to charge monopolistic prices for its uniform voting system; and

c.      Technological innovation in voting systems and enhancements in customer service will be stifled, to the detriment of Colorado's counties, political subdivisions and voting public.

52.   All of this occurs against a backdrop involving Colorado's adoption of a mostly mail-ballot election system causing use of voting systems to continue to decline.

53.   Colorado's two largest counties are the City and County of Denver and El Paso County, each of which has a population in excess of 600,000.

54.    The vast majority of Colorado's counties, however – 50 out of 64 – have populations of less than 50,000.  Half – 32 – of Colorado's 64 counties have populations of less than 15,000.  Three counties have populations of less than 1,000.

55.   A voting system that is best for the state's two largest counties is undoubtedly not the most appropriate choice for its 50 smallest counties.

56.   Consequently, according to statute, in reviewing a county's application to purchase a voting system the Secretary must:

a.      Consider the needs of the particular political subdivision.  C.R.S. §1-5-

623(3)(b).  For example, a county with only 4,000 voters doesn't need Dominion's system that can process all of that county's ballots in just 20 minutes.

      b.     Compare the requested purchase with the county's average annual capital election expenditures for the preceding four years.  C.R.S. §1-5-623(3)(b)(III).  Yet, upon information and belief,

      (1)    One county with 60,000 residents would incur an estimated purchase price for Dominion's system that is 90% higher – with quoted annual license and related costs an estimated 50% higher – than the alternative, federally-certified system the county piloted in November 2015.

      (2)    Another county with 25,000 residents would incur an estimated annual maintenance price for Dominion's system that is almost quadruple (from $8,500 to $31,000) what it pays for its current system.

      (3)    Douglas County (which participated in the pilot evaluation) would incur an estimated higher initial cost of 87% or $277,000, and an estimated higher 10-year cost of 99% or $673,000, for Dominion's system as compared to Hart's.

      (4)    Garfield County (which participated in the pilot evaluation) would incur an estimated higher initial cost of 92% or $240,000, and thereafter estimated higher annual costs of 54.5% or $12,000 ($34,000 versus $22,000) – $120,000 more over 10 years – for Dominion's system as compared to Hart's.

      (5)    Gilpin County (which participated in the pilot evaluation) will incur or has incurred an estimated $84,000 cost increase in 2016 alone to implement Dominion's system, which will unnecessarily scan their entire 4,000 ballots in about 20 minutes.

(6)   Grand County would incur an estimated $40,000 cost increase for Dominion's system as compared to Hart's.

(7)   Jefferson County (which participated in the pilot evaluation) would incur an estimated ownership cost for Dominion's system of $1,238,273 for equipment, acquisition, implementation, training and software licenses that is almost 2½ times higher – over $700,000 more – than the $525,978 total cost of its current ES&S system.

(8)   Lincoln County does not have funds in its 2016 budget to purchase Dominion's system.

## INTERSTATE TRADE AND COMMERCE

57.   Utilizing the nationwide system of telecommunications, postal and delivery systems by means of which a substantial amount of the nation's communications and information exchanges take place and a substantial amount of its commerce is conducted, defendant Secretary and its co-conspirator Dominion, located in Colorado, provide information to and engage in communication with the federal government, political parties and news media in states across the country regarding Colorado election results.

58.   Utilizing the nationwide network of interconnected roads and highways or air routes over or through which motor vehicles or airplanes, a substantial amount of the nation's goods and a substantial number of the nation's people move in a continuous and uninterrupted stream of interstate commerce from and through one state to another, Plaintiffs ES&S and Hart, and Clear Ballot:

a.   Travel from other states to Colorado and return from Colorado to other states; and

b.   Ship voting systems from other states to, and install and maintain them in, Colorado.

59.   Utilizing the nationwide system of banking, significant monetary payments have been made by election officials located in Colorado to Plaintiffs ES&S and Hart, and Clear Ballot, located in states across the country, for installation and maintenance of voting systems in Colorado.

60.   The activities of defendant Secretary and the beneficiary of his actions, Dominion, took place and will continue to occur in, are and will continue to be within the flow of, and have and will continue to have a direct and substantial effect on, interstate trade and commerce.

## FEDERAL CLAIM FOR RELIEF

### FIRST CLAIM
**(Deprivation of Federal Rights, Privileges or Immunities [Commerce Clause -
U.S. Const., Art I, Sec. 8, Cl. 3; Civil Rights Act, 42 U.S.C. §§1983, 1988]
under Color of State Law)**

61.   Plaintiffs re-allege and incorporate by reference as if fully set forth here ¶¶1-60 above.

62.   The Secretary has selected Dominion as the single uniform voting system provider in the state of Colorado and has certified Dominion's voting system for purchase, installation and use by Colorado political subdivisions.

63.   Plaintiffs ES&S and Hart have each:

a.   In accordance with C.R.S. §1-5-608.5(1), had their voting systems tested by federally-accredited laboratories and found to be in substantial compliance with all applicable

federal and Colorado requirements; and

      b.    In accordance with C.R.S. §1-5-617(1)(a), submitted those voting systems to the Secretary for certification.

64.    The voting systems of Plaintiffs ES&S and Hart each comply with the statutorily-prescribed requirements of C.R.S. §1-5-615(1) and the rules establishing minimum standards addressing statutorily-prescribed criteria under C.R.S. §1-5-616(1).

65.    Accordingly, under C.R.S. §1-5-617(1)(b) the Secretary is required to examine them and, under C.R.S. §1-5-608.5(3)(a), must certify them and approve their purchase, installation and use by political subdivisions.

66.    The Secretary has not done so, and his following actions make clear he will not do so: the December 22, 2015 selection of Dominion as the single uniform voting system provider; the January 20, 2016 announcement that he had moved ahead with testing and certification of Dominion's system and negotiated tentative pricing with Dominion; the January 21, 2016 announcement of a 50% "switching" subsidy for counties acquiring Dominion's system in 2016 or 2017; the February 9, 2016 adoption of election rules 11.9 and 21.4; entry into the February 17, 2016 contract with Dominion; and the subsequent certification of Dominion's system for acquisition, installation and use by Colorado counties.

67.    The Secretary's actions are taken under color of state law – purporting to utilize his authority under the Colorado Constitution and Colorado Revised Statutes, including statutory rulemaking authority.

68.    Purporting to act under the state rules amendment process, the Secretary has:

      a.    Discriminated in favor of Colorado-based Dominion by ensuring that it is the

only company which can meet the new requirements for operating as a voting system vendor in Colorado.

  b. Discriminated against non-Colorado-based Plaintiffs ES&S and Hart, by ensuring they cannot meet the new requirements and therefore are unable to continue operating as voting system vendors in Colorado.

  69. In discriminating against non-Colorado-based Plaintiffs ES&S and Hart by effectively barring them from continuing to provide voting systems in Colorado, the Secretary has prevented them from engaging in interstate commerce – to the benefit of Colorado-based Dominion.

  70. The Secretary's discriminatory actions have been undertaken without demonstrable justification by any valid factor.

  71. The effect of the Secretary's actions has been and is to deprive Plaintiffs ES&S and Hart of the rights, privileges and immunities to engage in interstate commerce secured to them under art. I, §8, cl. 3 of the U.S. Constitution, known as the Dormant Commerce Clause, in violation of 42 U.S.C. §1983.

  72. The Secretary's actions have already caused and will continue to cause injury and damages to Plaintiffs ES&S and Hart as follows.

  a. The two Plaintiffs currently have voting systems in place or provide election support services in the following Colorado counties:

  (i) ES&S – Adams, Alamosa, Archuleta, El Paso, Huerfano, Jefferson, La Plata, Mineral, Montezuma, Pitkin, Saguache and Teller.

  (ii) Hart – Bent, Boulder, Cheyenne, Conejos, Costilla, Crowley, Custer,

Delta, Dolores, Douglas, Fremont, Garfield, Grand, Hinsdale, Jackson, Kit Carson, Kiowa, Lake, Las Animas, Lincoln, Moffat, Montrose, Morgan, Otero, Ouray, Phillips, Prowers, Rio Blanco, Rio Grande, Routt, San Juan, San Miguel, Summit and Yuma.

      b.    Mesa County has already terminated its prior relationship with ES&S in order to acquire the Dominion system.  Upon information and belief:

      (i)    Alamosa and La Plata counties will also be moving from the ES&S system to the Dominion system in response to the Secretary's mandate; and

      (ii)    ES&S' remaining county customers are likely to do the same when their current maintenance and support or rental agreements expire in 2016.

      c.    Gilpin County has already terminated its prior relationship with Hart in order to acquire the Dominion system.  Upon information and belief, the following additional (*i.e.,* not listed above) counties where Hart currently has voting systems in place will be switching to the Dominion system in response to the Secretary's mandate:  Baca, Chaffee, Clear Creek, Eagle, Gunnison, Logan, Park, Sedgwick and Washington.

      d.    ES&S and Hart have been and will continue to be injured and damaged by the Secretary's single, universal voting system mandate in favor of Dominion in that they will be:

      (i)    Unable to upgrade or enhance the voting systems they currently have in place in the above-listed Colorado counties.  *See* Rule 11.9.2(b), 8 CCR 1505-1.

      (ii)    Unable to replace the voting systems they currently have in place in the above-listed Colorado counties unless those voting systems are damaged, defective or inoperable.  *See id.*

(iii)   Unable to compete with Dominion to sell or lease voting systems to any Colorado county.   *See generally* Rules 11.9.2, 11.9.3, 11.9.4, 21.4.7, 21.4.14, 21.4.15, 21.4.16, 8 CCR 1505-1.

## STATE LAW CLAIMS FOR RELIEF

### SECOND CLAIM
### (Violation of Statutory Duty – C.R.S. §1-5-608.5)

73.   Plaintiffs re-allege and incorporate by reference as if fully set forth here ¶¶1-72 above.

74.   The voting systems of Plaintiffs ES&S and Hart constitute electronic or electromechanical voting systems within the meaning of C.R.S. §§1-1-104(13.5), 1-1-104(23.5) and 1-5-601(1).

75.   In accordance with C.R.S. §1-5-601.5, the voting systems of Plaintiffs ES&S and Hart may be offered for sale in Colorado in that they meet federal election standards.

76.   In accordance with C.R.S. §1-5-608.5(1), the electronic or electromechanical voting systems of Plaintiffs ES&S and Hart have been tested, approved and qualified by federally-accredited laboratories for sale and use in Colorado.

77.   In accordance with C.R.S. §1-5-617(1)(a), after the electronic or electromechanical voting systems of Plaintiffs ES&S and Hart were tested in accordance with C.R.S. §1-5-608.5, they were submitted to the Secretary for certification.

78.   In accordance with C.R.S. §1-5-617(1)(b), the Secretary was then required to examine those systems and determine whether they comply with the statutorily-prescribed requirements of C.R.S. §1-5-615 and the rules establishing minimum standards addressing

statutorily-prescribed criteria under C.R.S. §1-5-616.

79.    The electronic or electromechanical voting systems of Plaintiffs ES&S and Hart meet the:

    a.    Extensive, statutorily-prescribed criteria set forth in C.R.S. §1-5-615; and

    b.    Rules adopted by the Secretary establishing minimum standards in the respects prescribed in C.R.S. §1-5-616(1) for functional requirements; performance levels; physical and design characteristics; documentation requirements; evaluation criteria; audit capacity; security requirements; telecommunications requirements; and accessibility.

80.    Accordingly, under C.R.S. §1-5-608.5(3)(a) the Secretary ***must*** certify the electronic or electromechanical voting systems of Plaintiffs ES&S and Hart and approve them for purchase, installation and use by political subdivisions.

81.    To date, the Secretary has done neither.

82.    Further, it is clear the Secretary will not do so, based upon his:

    a.    December 22, 2015 announcement that he had selected Dominion as the provider of a single, uniform voting system for Colorado;

    b.    January 20, 2016 announcement that he had moved forward with the testing and certification process for Dominion's system and negotiated tentative pricing with Dominion on behalf of Colorado's counties;

    c.    February 9, 2016 adoption of permanent rules which Plaintiffs ES&S and Hart cannot meet and which therefore preclude certification of their systems;

    d.    Recent certification of Dominion's system;

    e.    Assessment that the voting systems of ES&S and Hart do not appear facially

to meet all requirements for certification; they appear to meet federal, but not state, requirements; and

f.   Position statement that even in the event a non-Dominion voting system were to be certified by the Secretary, that does not mean he would authorize their acquisition by counties because certification and acquisition approval are separate matters.

83.   The Secretary is therefore in violation of his statutory duty.  Failure to certify the ES&S and Hart voting systems has already caused and will continue cause them injury and damages as previously described in ¶72 above.

### THIRD CLAIM
### (Amended Election Rules Conflict with Election Code - C.R.S. §24-4-103(8)(a))

84.   Plaintiffs re-allege and incorporate by reference as if fully set forth here ¶¶1-83 above.

85.   Any rule, or amendment to an existing rule, of a state agency – such as the Secretary – that conflicts with a statute is void.  C.R.S. §24-4-103(8)(a).

86.   In (i) selecting Dominion as the provider of a single, uniform voting system for Colorado,  (ii) amending election rules 11.9.2(b), 11.9.3(c), (d), (g)(1) and (g)(2), 11.9.4(a), (b) and (c), 11.9.5, 21.4.7(e), 21.4.16(e), 8 CCR 1505-1, such that only Dominion's voting system qualifies for certification and (iii) certifying only the Dominion voting system, the Secretary's actions conflict with Colorado statutes and are therefore void, as follows:

a.   C.R.S. §§1-5-603, 612(1) and 616(4), which authorize Colorado's political subdivisions – not the Secretary, to select – and then to adopt and use any kind of voting machine, including electronic or electromechanical voting systems.

b.      C.R.S. §1-5-616(4), requiring that the minimum standards established by election rules addressing criteria statutorily-prescribed in C.R.S. §1-5-616(1) must be adapted to ensure that new technologies which meet the requirements for such systems are certified in a timely manner and are available for selection by political subdivisions.

c.      C.R.S. §1-5-608.5(3)(a), requiring the Secretary to certify electronic and electromechanical voting systems and approve them for purchase, installation, and use by political subdivisions after examining them pursuant to C.R.S. §1-5-617(1)(b) for compliance with the statutorily-prescribed requirements of C.R.S. §1-5-615 and the rules establishing minimum standards addressing statutorily-prescribed criteria under C.R.S. §1-5-616.

d.      C.R.S. §§1-5-623(3)(b) and (b)(I), requiring the Secretary – when considering the application of any political subdivision for approval to purchase an electronic voting device, system or related component – to consider the needs of the political subdivision and compare the requested purchase with its average annual capital election expenditures for the preceding four years.

e.      In sum, conflict with Colorado statutes requiring the Secretary to certify any and all voting systems meeting the statutory requirements and authorizing Colorado political subdivision to purchase any systems so certified.

87.     Furthermore:

a.      Colorado political subdivisions are authorized to adopt electronic and electromechanical voting systems including hardware, firmware and software *upgrades*. C.R.S. §1-5-612(1).

b.      In amending election rule 11.9.2(b) such that only *replacement* of damaged,

defective or inoperable electronic and electromechanical voting systems, components or devices is authorized – but neither (i) replacement of undamaged, non-defective or operable existing electronic and electromechanical voting systems, components or devices, nor (ii) upgrades to existing systems, components or devices – the Secretary's action conflicts with C.R.S. §1-5-612(1) and is void.

88.   ES&S and Hart have been and will be injured and damaged by the Secretary's actions as previously described in ¶72 above.

### FOURTH CLAIM
### (Amended Election Rules Exceed Secretary's Statutory Authority - C.R.S. §24-4-103(8)(a))

89.   Plaintiffs re-allege and incorporate by reference as if fully set forth here ¶¶1-88 above.

90.   A state agency, such as the Secretary, *may not* issue rules except within its delegated powers as authorized by law.   A rule *shall not* be deemed within an agency's statutory authority and jurisdiction merely because it is not contrary to a specific statutory provision.   C.R.S. §§24-4-103(8)(a).

91.   The Secretary is *authorized* to promulgate, publish, and distribute rules necessary for the proper administration and enforcement of the election laws.   C.R.S. §1-1-107(2)(a).

92.   The Secretary is *required* to:

a.   Adopt uniform rules regarding the purchase and sale of voting equipment. C.R.S. §1-5-613(1).

b.   Adopt rules for electronic voting systems establishing minimum standards

addressing the following statutorily-prescribed criteria:    functional requirements; performance levels; physical and design characteristics; documentation requirements; evaluation criteria; audit capacity; security requirements; telecommunications requirements; and accessibility.  C.R.S. §1-5-616(1).

      c.    Adapt those minimum standards to ensure that new technologies which meet the requirements for electronic or electromechanical voting systems are certified in a timely manner and available for selection by political subdivisions and meet user standards.  C.R.S. §1-5-616(4).

93.  Nothing in Colorado law delegates power to the Secretary authorizing him to:

      a.    Select a single, uniform voting system for Colorado political subdivisions.

      b.     Issue election rules or amendments having the effect of mandating that Colorado political subdivisions acquire for use in conducting elections only a single uniform voting system provided by one vendor.

94.  To the contrary, the Secretary is required to determine whether electronic voting systems comply with the statutorily-prescribed requirements of C.R.S. §1-5-615(1) and the rules establishing minimum standards addressing statutorily-prescribed criteria under C.R.S. §1-5-616(1).  C.R.S. §1-5-617(1)(b).  If the systems do so, the Secretary is required to certify them and approve their purchase, installation, and use by political subdivisions.  C.R.S. §1-5-608.5(3)(a).

95.  In sum, Colorado election statutes do not grant the Secretary discretion to issue election rules or amendments having the effect of refusing to certify and approve electronic voting systems which meet all statutory requirements.

96.   ES&S and Hart have been and will be injured and damaged by the Secretary's actions as previously described in ¶72 above.

### FIFTH CLAIM
### (Unfunded Mandate - C.R.S. §29-1-304.5)

97.   Plaintiffs re-allege and incorporate by reference as if fully set forth here ¶¶1-96 above.

98.   A state mandate is any legal requirement established by statute, rule or regulation requiring a local government to undertake a specific activity or provide a specific service which satisfies minimum state standards.  C.R.S. §29-1-304.5(3)(d).

99.   Imposition by the Secretary, via rulemaking, of the legal requirement that all Colorado political subdivisions acquire for use in conducting elections the single voting system produced by Dominion constitutes such a state mandate.

100. Pursuant to C.R.S. §24-4-103(2.7)(b), state agencies, such as the Secretary, are prohibited from promulgating rules creating a state mandate on a local government absent agency compliance with C.R.S. §29-1-304.5.

101. In turn, C.R.S. §29-1-304.5(1) provides that no new state mandate – or increase in level of service for an existing state mandate – may be imposed by a state agency, such as the Secretary, on a local government unless the state provides additional funds to reimburse the local government for the costs.  Where additional funds are not provided, compliance with the new or increased mandate is optional on the part of the local government.

102. Here, the state has not provided any additional funds to reimburse Colorado counties for the additional purchase or lease costs associated with the requirement that they

acquire for use in conducting elections the single voting system produced by Dominion. Accordingly, compliance with that requirement is optional on the part of the counties.

103. ES&S and Hart have a substantial relationship with Colorado counties regarding voting systems, as established in ¶72 above.

## PRAYER FOR RELIEF

In view of all of the preceding, Plaintiffs respectfully request that this Court order that:

A.   With respect to the federal claim:

(1)   The conduct alleged in the First Claim be declared in violation of the Commerce Clause, Art. I, Sec. 8, Cl. 3 of the U.S. Constitution, and 42 U.S.C. §§1981 and 1983.

(2)   In accordance with 42 U.S.C. §1983, Defendant be preliminarily and permanently enjoined and restrained from engaging in such conduct.

(3)   In accordance with 42 U.S.C. §1988, Defendant pay to Plaintiffs their costs of suit, including reasonable attorneys' fees.

B.   With respect to the state law claims:

(1)   The conduct alleged in Plaintiffs' Second through Seventh Claims be declared in violation of Colorado law.

(2)   Defendant be preliminarily and permanently enjoined and restrained from engaging in such conduct.

(3)   Alternatively, Plaintiffs be afforded their actual damages incurred as a result of Defendant's violations.

(4)   Plaintiff be awarded pre-judgment interest from the date of occurrence as

provided by Colorado law, together with costs and expert witness fees.

     (5)   Plaintiff be awarded post-judgment interest.

C.    Plaintiffs have such other, further and different relief as this Court deems just and
proper.

<h3 style="text-align:center">DEMAND FOR JURY TRIAL</h3>

In accordance with Fed.R.Civ.P. 38(b), Plaintiffs demands a trial by jury.

DATED:  July 12, 2016

               JONES & KELLER, P.C.
                *S/ T.P. McMahon*
               Thomas P. McMahon
                  tmcmahon@joneskeller.com
               Aaron D. Goldhamer
               agoldhamer@joneskeller.com
               1999 Broadway, Ste. 3150
               Denver, Colorado 80202
               Tel. (303) 573-1600
                  Fax  (303) 573-8133
                  Attorneys for Plaintiffs

<u>Addresses of Plaintiffs</u>
    Election Systems & Software, LLC
    11208 John Galt Blvd.,
    Omaha, NE 68137.

    Hart InterCivic, Inc.
    15500 Wells Port Dr.
    Austin, TX, 78728.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 12, 2016, I filed a true and correct copy of the foregoing

"**AMENDED COMPLAINT AND JURY DEMAND**" with the Clerk of Court using the

CM/ECF system which will send notification of such filing to the following email addresses:

LeeAnn Morrill
LeeAnn.Morrill@coag.gov

Grant T. Sullivan
Grant.Sullivan@coag.gov

Christopher Jackson
Christopher.Jackson@coag.gov


_____*s/Renae Mesch*_____
Renae Mesch