1

```
 1              IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLORADO
 2
        Civil Action No. 16-cv-1237-JLK-MJW
 3      _____

 4                  RULE 30(b)(6) DEPOSITION OF:
            SUZANNE M. STAIERT, ESQ. - July 8, 2016
 5                  COLORADO SECRETARY OF STATE

 6      _____

        ELECTION SYSTEMS & SOFTWARE, LLC, a Delaware limited
 7      liability company; and HART INTERCIVIC, INC., a Texas
        corporation,
 8
        Plaintiffs,
 9
        v.
10
        WAYNE W. WILLIAMS, in his official capacity as
11      Colorado Secretary of State,

12      Defendant.

13      _____

14              PURSUANT TO NOTICE, the Rule 30(b)(6)
        deposition of SUZANNE M. STAIERT, ESQ., COLORADO
15      SECRETARY OF STATE, was taken on behalf of the
        Plaintiffs at 1999 Broadway, Suite 3150, Denver,
16      Colorado 80202, on July 8, 2016, at 9:03 a.m., before
        Tracy C. Masuga, Registered Professional Reporter,
17      Certified Realtime Reporter, and Notary Public within
        Colorado.
18

19

20

21

22      H+G

23

24      Hunter + Geist, Inc.

25
        303.832.5966        1900 Grant Street, Suite 1025    www.huntergeist.com
        800.525.8490        Denver, CO 80203                 scheduling@huntergeist.com

                            Your Partner in Making the Record
```

EXHIBIT 14

Court Reporting, Legal Videography, and Videoconferencing

**29**

1  and then (c) has subsections 1 to 7.
2       A. That's the cast vote record?
3       Q. Yeah.
4       A. Okay. You called it "comma-separated."
5       Q. Well, I think I took the heading from
6  your declaration that said "Comma-Separated Value File
7  Formats."
8       A. Okay. Right.
9       Q. All right. So if you look at Exhibit 1,
10 the December 15 proposal, these -- these requirements
11 appeared there, correct?
12      A. Correct.
13      Q. And there was some slight linguistic
14 change between December 15 and February 9, was there?
15      MR. SULLIVAN: Same objection.
16      A. Yes.
17      Q. (BY MR. McMAHON) Okay. And what, if
18 any, communications occurred between the secretary's
19 office and Dominion about this proposed rule with this
20 comma-separated value file format between December 15
21 and February 9?
22      A. Only the email I referenced between --
23 that was sent to Jessi Romero.
24      Q. Okay. And the -- the content of that
25 email was that -- and I thought you said something

**30**

1  about that it would be hard for Dominion to comply
2  with this, or they were asked how to comply with it.
3  What was the tone -- or what was the subject of the
4  email?
5       A. The tone of the email was that the rule
6  was too strict, and that they thought there were
7  perhaps fields in the cast vote record that would have
8  a more -- would lead to a more robust report that
9  weren't listed in here, and that perhaps we should
10 make it more flexible so that they can determine what
11 goes in the cast vote record.
12      Q. Okay. That was the only communication?
13      A. Yes.
14      Q. Okay. Was there a response from the
15 secretary's office to that?
16      A. I don't believe there was.
17      Q. Okay. Do you have any idea why there
18 was an email rather than a formal comment submitted in
19 the rule-making procedure?
20      MR. SULLIVAN: Objection, form.
21      A. I'm not sure they were -- I think they
22 were just trying to -- I mean, I don't know. I can't
23 speak for Dominion. But it seemed that they were
24 having their technical people talk about a more
25 technical issue, and it wasn't a policy matter.

**31**

1       Q. (BY MR. McMAHON) Okay. The next topic
2  here is the election night reporting data and exports.
3  You covered that in your declaration?
4       A. Yes.
5       Q. And that is addressed in the
6  February rules of 21.4.15(b), 21.4.15(c)(1) to (3) and
7  (d)(1) to (3); is that correct?
8       A. Yes.
9       Q. Okay. And again, if you -- if you look
10 at the proposal from December, these provisions
11 essentially appeared in the same fashion back in
12 December?
13      A. Yes.
14      Q. And there's some slight linguistic
15 difference in the February rules?
16      A. Yes.
17      Q. What, if any, communications occurred
18 between the secretary's office and Dominion from
19 December 15 to February 9 with respect to these --
20 this -- these subsections of 21.4.15?
21      A. None.
22      Q. Okay. So the decision on the language
23 that was internal to the secretary's office did not --
24 is not in any way connected with any communications
25 with Dominion?

**32**

1       A. I don't know that it was internal.
2  There may have been other comments, but not from
3  Dominion.
4       Q. Okay. But it wasn't from Dominion?
5       A. Right.
6       Q. Okay. Now, if you -- let's see here.
7       MR. McMAHON: Mark that as Exhibit 9.
8       (Deposition Exhibit 9 was marked.)
9       Q. (BY MR. McMAHON) And can you identify
10 that as your declaration in this litigation dated, I
11 think, July 5?
12      A. Yes.
13      Q. Okay. Relating to the preliminary
14 injunction motion?
15      A. Yes.
16      Q. Okay. All right. I would like to have
17 you look at page 3, paragraph 5. And if you look at
18 the last half of paragraph 5, it indicates that "the
19 Secretary and his staff ultimately crafted the new
20 rules so that Colorado's 64 counties will be able to
21 select from more than one voting system, if the
22 Secretary certifies more than one voting
23 system . . . ." Do you see that?
24      A. Yes.
25      Q. Is that your understanding?

## 33

1  MR. SULLIVAN: Objection. This is
2  outside the issue. This isn't about a communication
3  with Dominion about the rules.
4  MR. McMAHON: We'll be coming to that.
5  A. Yes.
6  Q. (BY MR. McMAHON) Okay. So if the
7  secretary certifies more than one system, counties
8  will be able to select that system?
9  MR. SULLIVAN: Objection. Same
10 objection.
11 A. Subject to Rule 11 regarding purchases.
12 Q. (BY MR. McMAHON) Okay. It's got to be
13 approved, right?
14 A. Correct.
15 Q. So if the secretary certifies a system,
16 counties won't necessarily be able to acquire that
17 system?
18 MR. SULLIVAN: Same objection.
19 A. Correct. There are other factors.
20 Q. (BY MR. McMAHON) Okay. All right.
21 MR. McMAHON: Mark that as Exhibit 8.
22 (Deposition Exhibit 8 was marked.)
23 Q. (BY MR. McMAHON) You recognize that as
24 June 2, 2016, letter from Mr. Shellman to Clear
25 Ballot?

## 34

1  A. Yes.
2  MR. SULLIVAN: Objection, this has
3  nothing to do with a communication with Dominion about
4  the rules. She can't bind the secretary regarding
5  this communication.
6  Q. (BY MR. McMAHON) Okay. You've seen
7  this previously?
8  A. Yes.
9  Q. Okay. And if you would look at the
10 paragraph at the bottom of the page, the bottom
11 paragraph indicates that "even if Clear Ballot's
12 voting system is certified in Colorado, the Secretary
13 will approve political subdivisions' applications to
14 acquire the system only if the voting system and the
15 provider satisfy the criteria specified in Election
16 Rules 11.9.3 and 11.9.4. In other words, the
17 Secretary's certification of the voting system does
18 not necessarily mean that he will authorize its
19 acquisition for use by political subdivisions in
20 Colorado, because certification and acquisition
21 approval are separate inquiries." Do you see that?
22 A. Yes.
23 Q. Is that a correct statement?
24 A. Yes.
25 Q. All right. Have there been any

## 35

1  communications back and forth between Dominion and the
2  secretary's office with respect to certification and
3  approval of other voting systems?
4  MR. SULLIVAN: Objection. That has
5  nothing to do with the rules. It's outside the issue.
6  A. I don't know.
7  MR. McMAHON: Okay. All right. Well,
8  let's do this. Let's take a break and see -- I want
9  to see if we can extract that January email and talk
10 to Ms. Staiert about that. Okay.
11 MR. SULLIVAN: Okay.
12 (Recess taken, 9:47 a.m. to 9:59 a.m.)
13 MR. McMAHON: We have been unable to
14 come up with that email in doing -- you know,
15 electronic searching for it, so I'm going to ask if
16 you guys can find it and send it to us. And, yeah,
17 so -- okay.
18 Q. (BY MR. McMAHON) So we won't be able to
19 go into that, but I've got one just last little area
20 here to ask you about. I'll have this marked as
21 Exhibit 13.
22 (Deposition Exhibit 13 was marked.)
23 Q. The court reporter has furnished you
24 with Exhibit 13, the cover page of which is -- appears
25 to be an email from Mike Frontera of Dominion to

## 36

1  Mr. Shellman here and others in your office with some
2  cc's -- or one cc. And the subject is the "MOU,"
3  which I take it means "memorandum of understanding"
4  that you referred to?
5  A. Correct.
6  Q. Okay. And it's -- then there's an
7  attachment, CDOS-DVS UVS MOU, which would a fair
8  interpretation of that be the "Colorado Department of
9  State-Dominion Voting Services Uniform Voting System
10 Memorandum of Understanding"?
11 A. Correct.
12 Q. And then if you look to the page that
13 has Bates No. 1318 on it, so maybe four pages in --
14 actually, let's go to the page before that, 1317. Can
15 you identify that as apparently a working draft of the
16 memorandum of understanding?
17 A. Yes.
18 Q. And from this email, I take it that this
19 is on or about a January 15 version. Is that --
20 A. Yes.
21 Q. Okay. Did the memorandum of
22 understanding ever get signed?
23 MR. SULLIVAN: Objection. This is
24 outside the issue. It doesn't deal with the rules
25 whatsoever.

37

1  MR. McMAHON: Actually, it does deal
2  with the rules.
3  MR. SULLIVAN: How, Counsel? How does
4  it deal with the rules?
5  MR. McMAHON: I don't know. I would
6  look at the bottom of page 2. It deals with 21.4.14
7  and 21.4.15.
8  MR. SULLIVAN: Which pages?
9  MR. McMAHON: 2. 1318 on the Bates
10 numbers.
11     A.  I don't -- I know something got signed.
12 I don't know whether it was an MOU or a master price
13 agreement.
14     Q.  (BY MR. McMAHON) Okay. So if you look
15 at the second page of the MOU, and down at the bottom,
16 it's paragraph c, and then (ii), it makes reference to
17 "A ballot-level cast vote record export that complies
18 with the requirements set forth in proposed Election
19 Rule 21.4.14, issued . . . on December 15 . . . ." Do
20 you see that?
21     A.  Yes.
22     Q.  Why were the secretary and Dominion
23 communicating in the MOU about that particular
24 election rule?
25     A.  I believe it was because Dominion didn't

38

1  comply and would need to comply in order to obtain the
2  contract.
3      Q.  Okay. And then if you look at c(iii),
4  there's a reference to "An Election Night Reporting
5  export that complies with the requirements set forth
6  in proposed . . . Rule 21.4.15, issued . . . on
7  December 15 . . . ." Do you see that?
8      A.  Yes.
9      Q.  And is that the same thing, the reason
10 they're communicating back and forth in the MOU is
11 because Dominion didn't comply and would have to
12 comply?
13     A.  I'm not sure entirely about that one,
14 whether that was just a technical -- that we're
15 changing it and you're going to have to comply with
16 the change. I don't know.
17     Q.  Okay. Is there any reason the other
18 rules -- well, the other rules that were proposed on
19 December 15 are not addressed in the MOU?
20     MR. SULLIVAN: Objection, form.
21     A.  I don't know why they weren't. I think
22 the rules in general, they had to get certified, so in
23 order to comply with the MOU, I think they're
24 referenced in here, because they obviously had to be
25 certified in order to obtain a contract.

39

1  MR. McMAHON: Okay. That's all the
2  questions I have.
3      WHEREUPON, the within proceedings were
4  concluded at the approximate hour of 10:03 a.m. on the
5  8th day of July, 2016.
6          *     *     *     *     *

40

           I, SUZANNE M. STAIERT, ESQ., do hereby
certify that I have read the above and foregoing
deposition and that the same is a true and accurate
transcription of my testimony, except for attached
amendments, if any.
           Amendments attached   ( ) Yes   ( ) No


                                    _____
                                    SUZANNE M. STAIERT, ESQ.


           The signature above of SUZANNE M.
STAIERT, ESQ., was subscribed and sworn to before me
in the county of _____, state of
_____, this _____ day of
_____, 2016.


                                    _____
                                    Notary Public
                                    My Commission expires:


Election Systems & Software, LLC 7/8/16 (tcm)

SUZANNE M. STAIERT, ESQ.

41

REPORTER'S CERTIFICATE

STATE OF COLORADO         )
                          ) ss.
CITY AND COUNTY OF DENVER )

        I, TRACY C. MASUGA, Registered Professional Reporter, Certified Realtime Reporter, and Notary Public 19924005553, State of Colorado, do hereby certify that previous to the commencement of the examination, the said SUZANNE M. STAIERT, ESQ., was duly sworn by me to testify to the truth in relation to the matters in controversy between the parties hereto; that the said deposition was taken in machine shorthand by me at the time and place aforesaid and was thereafter reduced to typewritten form; that the foregoing is a true transcript of the questions asked, testimony given, and proceedings had.

        I further certify that I am not employed by, related to, nor of counsel for any of the parties herein, nor otherwise interested in the outcome of this litigation.

        IN WITNESS WHEREOF, I have affixed my signature this 15th day of July, 2016.

        My commission expires April 24, 2020.

__X__ Reading and Signing was requested.

_____ Reading and Signing was waived.

_____ Reading and Signing is not required.


_____
Tracy C. Masuga
Certified Realtime Reporter
Registered Professional Reporter