IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:16-cv-1237 - JLK

**ELECTION SYSTEMS & SOFTWARE, LLC,**
a Delaware limited liability company; and
**HART INTERCIVIC, INC.,**
a Texas corporation;

Plaintiffs,

v.

**WAYNE W. WILLIAMS,**
in his official capacity as Colorado Secretary of State.

Defendant.

## DECLARATION OF PETER LICHTENHELD

Pursuant to 28 U.S.C. § 1746, I, Peter Lichtenheld, do depose and state as follows.

1.      I have been Vice-President of Operations for plaintiff Hart Intercivic, Inc. ("Hart"), since 2011. I am responsible for managing Professional Services, including training and project management, the Help Desk, Ballot Production Services, Technical Services and Product Management, including voting systems certification. As such, I am familiar with the voting systems situation in Colorado and, based upon my own personal knowledge, am competent to testify to the following matters relating to new voting system rules adopted by the Colorado Secretary of State ("Secretary") on February 9, 2016.

**Replacement of Damaged, Defective, or Inoperable Voting System Applications, Components or Devices – Voting System Rule 11.9.2 (b)**

2.      Rule 11.9.2 & subsection (a) reference voting systems, devices or related

JK00842451.1 /font=8

**EXHIBIT 21**

components certified for use in Colorado by the Secretary of State ("Secretary") before January 1, 2016 and purchased, leased or used by a political subdivision (*i.e.*, county) before that date. In that context, Rule 11.9.2 & subsection (b) provide that the Secretary will approve a county's application to purchase lease or use such a system, device or component only where it is to replace the same or a substantially similar item that is damaged, defective or inoperable. And even then, subsection (c) limits such approval only to instances where doing so won't materially impair the county's future economic ability to purchase or lease a new voting system certified after January 1, 2016.

3.      Thus, upgrades or enhancements to – or replacement of – a current system, device or component will not be approved where the existing item is undamaged, is not defective and is functional. But, Colorado counties are authorized by statute to adopt electronic and electromechanical voting systems including hardware, firmware and software upgrades. C.R.S. § 1-5-612(1).

4.      The net effect is that existing voting systems may be used for the time being. However, a new requirement for systems to perform a Risk Limiting Audit takes effect in 2017 and none of the systems currently in use in Colorado have the ability to perform that function to the Secretary's specifications. Therefore, counties will be forced to purchase a new system by next year. The only system they will be able to purchase is that of Dominion Voting Systems, Inc. ("Dominion"), the only voting system certified by the Secretary after January 1, 2016.

**Single User Interface on Same Server/Workstation - Rules 11.9.3(d), 11.9.4(c), 21.4.7(e)**

5.      These rules effectively require that, in order for a voting system to be approved

by the Secretary for purchase by a county, the system must have a single user interface on the same server or workstation. There is no functional *need* for this requirement, but Dominion's system operates that way. This therefore appears written solely to customize these rules to the Dominion system.

6.     In her declaration, Deputy Secretary Suzanne Staiert misuses the term "integrated." She says that "Integrated voting systems that comply with this [single user interface] requirement are preferable in Colorado over bifurcated, disjointed voting systems that spread the functions of election administration across multiple subsystems." (Doc. 32-1, p.11).

7.     "Integrated" and "a single workstation" on one PC are not the same thing. The Hart system is integrated, but uses multiple workstations so that work can be divided efficiently and not bottlenecked by several different people with different needs and/or roles needing to work on the system simultaneously. The single user interface is an arbitrary requirement imposed not for efficiency but to customize these rules to Dominion's approach. It is without practical benefit to counties.

**Digital Adjudication - Rules 11.9.3(g) (1), 11.9.4(a), 21.4.16 (a)**

8.     These rules effectively require that, in order for a voting system to be approved for purchase by a county, the system must have digital – rather than manual – ballot adjudication capability. Digital adjudication is one way an election official can identify, analyze, and resolve ballot issues. Manual adjudication via ballot duplication following standardized procedures and documentation is another way. Requiring a digital approach means that small counties which don't need the faster, more expensive equipment are

nonetheless precluded from purchasing not-quite-as-fast, less expensive scanners without digital adjudication. Digital adjudication simply may not be necessary for every county, especially small counties. This requirement appears simply tailored to Dominion's approach.

**Ballot Scanners with Automatic Document Feeders - R. 11.9.3(g)(2), 11.9.4(b), 11.9.5, 21.4.16(b)**

9.      These rules effectively require that, in order for a voting system to be approved for purchase by a county, the system's ballot scanners must have automatic document feeders enabling the scanning of multiple ballots rather than a single ballot at a time. Ballot scanners with automatic document feeders make sense in certain situations. But for some, smaller counties, single-sheet scanners are an efficient way to get accurate results. There is no reason the Secretary should prescribe such a requirement. It serves no across-the-board purpose, except to exclude certain systems and to customize these rules as well to Dominion's system. It is an arbitrary rule that harms smaller counties.

**Comma-Separated Value ("CSV") Format and Cast Vote Record ("CVR") - Rule 21.4.14(b)-(c)**

10.      A comma-separated values (CSV) file stores tabular data (numbers and text) in plain text. Each line of the file is a data record. Each record consists of one or more fields, separated by commas. The use of the comma as a field separator is the source of the name for this file format. Requiring that in subsection (b) is fine.

11.      The problem is that subsection (c) spells out specifications for a voting system's exports (information the voting system provides) that are unrealistic. The exports are specified as having to come *directly* from the voting system software, not exported and then,

perhaps, formatted in order to be compatible with the state system. The export and then format process is standard operating procedure in technology applications. Formatting CSV files outside any company-wide software system is common throughout technology solutions.

12.    Dominion was creating its system on-the-fly during the PERC pilot process in the November 2015 election. It also had an extra pilot election in May of 2015 to test its system. Dominion was the only vendor allowed to do so. That gave it an unfair advantage to be able to develop custom imports and exports for the Secretary ahead of time as Dominion developed its system.

**Election Night Reporting Data with Specified Fields - Rule 21.4.15(c)-(d)**

13.    Rule 21.4.15 (c)-(d) also spell out specifications for a voting system's exports that are unrealistic, since Rule 21.4.14(c) indicates that the exports must be native to the voting system, not exported and then formatted externally. Again, formatting CSV files outside a company-wide software system is common throughout technology solutions.

\* \* \* \* \*

I declare under penalty of perjury that the foregoing is true and correct. Executed this 18th day of July, 2016.

Peter Lichtenheld