IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-1237-JLK

**ELECTION SYSTEMS & SOFTWARE, LLC**, a Delaware limited liability company; and **HART INTERCIVIC, INC**., a Texas corporation,

Plaintiffs,

v.

**WAYNE W. WILLIAMS**, in his official capacity as Colorado Secretary of State,

Defendant.

## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)

Defendant Wayne W. Williams, in his official capacity as the Colorado Secretary of State ("the Secretary"), submits this Reply in support of the Motion to Dismiss the Complaint under FED. R. CIV. P. 12(b)(1) and 12(b)(6).

## PRELIMINARY MATTER

Plaintiffs filed an Amended Complaint [Doc. 35] on July 12, 2016, pursuant to FED. R. CIV. P. 15(a)(1)(B). Although the Amended Complaint is now the operative pleading and renders the Secretary's Motion to Dismiss "technically moot," *Gotfredson v. Larsen LP*, 432 F. Supp. 2d 1163, 1172 (D. Colo. 2006), the Secretary's arguments supporting dismissal "equally apply" to the Amended Complaint. *Id*. Indeed, all of the original Complaint's

allegations cited in the Motion to Dismiss continue to appear in the Amended Complaint. The Secretary therefore files this Reply to complete fully the briefing on the Motion to Dismiss before the upcoming July 27 hearing. *See id.* (evaluating original motions to dismiss as if they were directed at the Second Amended Complaint, even though they were technically moot). Additionally, out of an abundance of caution, the Secretary simultaneously files herewith a separate Motion to Dismiss the Amended Complaint that incorporates all prior arguments and requests the Court to dispense with additional briefing.

## REPLY ARGUMENT

### I.   Plaintiffs' dormant Commerce Clause claim fails to state a claim upon which relief can be granted.

#### A.   *The market participant exception applies, regardless of whether purchases are made by the State or its political subdivisions.*

Plaintiffs argue that the Secretary has not "articulate[d] any facts" demonstrating that he is a participant in the market for voting systems. Resp. [Doc. 33], p. 9. But this is a motion to dismiss under Rule 12(b)(6), not a summary judgment motion. All well-pleaded factual allegations in the Complaint are accepted as true. *Commonwealth Prop. Advocates, LLC v.*

*Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011). And here, Plaintiffs' own Amended Complaint states that the Secretary pays "50% of the [counties'] implementation, training and program management fees" associated with transitioning to a complying vendor. Am. Compl. ¶ 46. As if payments were somehow not enough, the Amended Complaint goes on to state that the Secretary negotiated pricing "on the counties' behalf" for complying voting systems, *id.* ¶ 45, by "leveraging the state's negotiating and purchasing power . . . to negotiate standard pricing and support terms" for the counties, *id.* ¶ 42. This is the very heart of market participation. *See, e.g., Big Country Foods, Inc. v. Bd. of Educ. of Anchorage Sch. Dist.*, 952 F.2d 1173, 1179-80 (9th Cir. 1992) (applying market participant exception where Alaska reimbursed local school districts for purchases under annual school milk contracts).

Plaintiffs' attempt to draw a distinction between the Secretary and Colorado's 64 counties for purposes of the market participant exception should also be rejected. Federal courts addressing this question have repeatedly rejected any distinction between state entities that impose terms and conditions for purchases and subordinate local entities that actually make purchases. *See, e.g., Nat'l Solid Waste Mgmt. Ass'n*, 146 F.3d 595, 599

(8th Cir. 1998); *Smith Setzer & Sons v. S.C. Procurement Review Panel*, 20 F.3d 1311, 1319 (4th Cir. 1994); *Big Country Foods*, 952 F.2d at 1178-79; *Trojan Techs. v. Pennsylvania*, 916 F.2d 903, 910-12 (3d Cir. 1990).

In *Trojan Techs.*, for example, Pennsylvania required all local governments to purchase only American-made steel for public works projects. 916 F.3d at 904. Like Plaintiffs, a Canadian supplier argued the market participant exception did not apply because their customers were local government entities, not the State. The court rejected the supplier's argument and applied the market participant exception, stating "[w]e find no compelling analytical difference between a local government unit and central state agencies. Both exist only through affirmative acts of the state." *Id.* at 911. Likewise, in *Big Country Foods*, Alaska instructed local school districts to give a seven percent preference to Alaska companies bidding on annual school milk contracts. 952 F.2d at 1175. The court upheld the preference and applied the market participant exception, explaining that "[p]olitical subdivisions generally exist at the will of the state" and "[a] state should not

4

be penalized for exercising its power through smaller, localized units."[1] *Id.* at 1179.

The same analysis applies here. As Colorado's chief elections official, the Secretary promulgated new technological requirements for electronic and electromechanical voting systems that are purchased by Colorado counties. *See* §§ 1-5-608.5(3)(b) & 616, C.R.S. (2015). The counties, as political subdivisions of the State, must follow the Secretary's Voting Systems Rules when acquiring new voting systems that are used in statewide or federal elections. *See* §§ 1-1-110(1), 1-5-613 & 623(3)(a), C.R.S. (2015). Consistent with *Trojan Techs.* and *Big Country Foods*, the market participant exception applies notwithstanding the Secretary's decision to implement the Voting Systems Rules at the county level rather than the state level. *Accord*

---

[1] The main case that goes the other way nonetheless still supports the Secretary. *See W.C.M. Window Co. v. Bernardi*, 730 F.2d 486, 495-96 (7th Cir. 1984). In *Bernardi*, the court declined to equate the State of Illinois with a local school board for purposes of applying the market participant exception. But in doing so, the court stated "[w]hen the project on which the state impresses a home-state preference is undertaken by a unit of local government *without any state financial support* or supervision, the state is not a participant in the project but a regulator." *Id.* at 496 (emphasis added). Here, the Amended Complaint alleges that Colorado counties are receiving financial support from the Secretary. Am. Compl. ¶ 46. Thus, under *Bernardi*'s analysis, this financial support renders the market participant exception applicable.

5

*Williams*, 146 F.3d at 599 (holding "the state is performing as a market participant in directing the purchasing behavior of local governmental units."); *Smith Setzer & Sons*, 20 F.3d at 1319 (stating "we agree with the Third and Ninth Circuits that the distinction *Bernardi* draws between state and local governments simply does not make sense in this constitutional matter.").

Plaintiffs also argue the market participation exception does not apply because the Voting Systems Rules are akin to regulation, not market participation. Resp., pp. 8-11. But the U.S. Supreme Court has already held that the exception applies even when the government acts in its "dual roles" as regulator and participant. *Dep't of Revenue v. Davis*, 553 U.S. 328, 345 (2008). Like *Davis* where Kentucky's differential tax scheme "ma[de] sense" only because it was also a bond issuer in the market, *id.* at 344, the Secretary's Voting Systems Rules were promulgated precisely because the State's political subdivisions are market participants that obtain and use voting systems to administer public elections.[2] Plaintiffs' contrary view "blinks this reality." *Id.* at 345.

---

[2] To illustrate the point further, the Secretary's rules do not apply to voting systems acquired by private actors, such as those used by large unions to

Plaintiffs also attempt to rely on out-of-state statutes authorizing uniform voting systems, suggesting the absence of such a statute in Colorado somehow bolsters their dormant Commerce Clause claim. Resp., pp. 11-12. The presence or absence of such a statute, however, has no bearing on whether the market participant exception applies. The market participant exception has its underpinnings in the federal Constitution, not state statute. And the State's political subdivisions have been, and will continue to be, purchasers of some form of voting systems regardless of whether Colorado statute authorizes a "uniform" system. *See* § 1-5-603, C.R.S.

Accordingly, the market participant exception applies, requiring dismissal of the dormant Commerce Clause claim.

### B. HAVA contemplates state regulation of voting systems.

Plaintiffs next contend that Congress in the Help America Vote Act of 2002 ("HAVA") was silent "with respect to uniform voting systems." Resp., p. 14. Plaintiffs' argument misses the point. That Congress in HAVA did not specify any particular type of voting system (uniform or otherwise) demonstrates its intent to leave the matter to the states. *See* 52 U.S.C. §§

conduct officer elections. If they did, it would constitute pure regulation, not market participation.

21084 & 85. Here, the Secretary exercised the discretion vested in him by HAVA by codifying heightened technological requirements for voting systems—requirements that apply to all vendors regardless of their geographic location. The fact that Plaintiffs find the Voting Systems Rules stricter than federal requirements is explicitly permitted by HAVA. *See* 52 U.S.C. § 21084 (states may adopt "technology and administration requirements that are more strict than the requirements established under this subchapter").

Against this backdrop, the instant case is no different than *Panhandle E. Pipe Line Co. v. Pub. Serv. Comm'n*, 332 U.S. 507 (1947). There, Congress' Natural Gas Act was "motivated, designed and shaped to bring about more effective regulation, and particularly more effective state regulation." *Id.* at 519. The federal Act regulated three specific activities involving natural gas, while all others areas were left to the states. *Id.* at 516. That was enough, the Court explained, to "remove[ ] any necessity for determining the effect of the [C]ommerce [C]lause . . . ." *Id.* at 524.

Accordingly, because Congress has expressed its unambiguous intent to permit states to regulate electronic and electromechanical voting systems, Plaintiffs' dormant Commerce Clause claim should be dismissed.

## II.   Plaintiffs' state law claims should be dismissed.

### A.   *Plaintiffs' claims for monetary damages are barred by the Eleventh Amendment.*

Plaintiffs have dropped their request for monetary relief against the Secretary under the dormant Commerce Clause. *See* Notice of Filing of Am. Compl. & Jury Demand [Doc. 34], p. 2. But they persist in maintaining an "alternative" claim for monetary damages under their state law claims. Am. Compl. [Doc. 35], p. 29. Plaintiffs offer no substantive arguments as to why their alternative claims for damages against the Secretary in his official capacity should not be dismissed as barred by the Eleventh Amendment for the reasons stated and authorities cited in Motion to Dismiss. Nor did Plaintiffs amend their Complaint to name the Secretary in his individual capacity. Am. Compl. ¶ 3. Accordingly, Plaintiffs' alternative claims for damages against the Secretary in his official capacity must be dismissed.

### B.   *HAVA and NVRA do not make compliance with state law a federal duty.*

Plaintiffs contend the Eleventh Amendment and *Pennhurst* are not obstacles because HAVA and the National Voter Registration Act ("NVRA") make compliance with state law a federal duty. Resp., p. 17 (citing *Wisc.*

*Hosp. Assoc. v. Reivitz*, 820 F.2d 863, 868 (7th Cir. 1987)). Plaintiffs'

argument fails for both procedural reasons and on its merits.

Procedurally, Plaintiffs' argument is flawed because their Amended

Complaint does not allege that the Secretary violated HAVA or NVRA. *See*

*Bauchman v. W. High Sch.*, 132 F.3d 542, 554 n.9 (10th Cir. 1997) (review on

Rule 12(b)(6) motion is "limited to the allegations in [the] complaint"). The

Amended Complaint alleges violations only of the dormant Commerce Clause

and state law; NVRA is not even mentioned in the Complaint, and HAVA is

discussed only cursorily.[3] Am. Compl. ¶¶ 3, 19, 25. Certainly no substantive

violations of HAVA by the Secretary are alleged in the Amended Complaint

that would satisfy the heightened pleading standards of *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 554 (2007). Allegations that do not appear in the

Complaint cannot be raised for the first time in response to a dispositive

motion. *See Blackmon v. U.S.D. 259 Sch. Dist.*, 769 F. Supp. 2d 1267, 1267

---

[3] Yet another procedural obstacle under NVRA is its mandatory notice requirement. An aggrieved party must "'provide written notice of the violation to the chief election official of the state involved.'" *Scott v. Schedler*, 771 F.3d 831, 835 (5th Cir. 2014) (quoting former 42 U.S.C. § 1973gg-9(b)(1)). The state is then given a 90-day period to cure the alleged violation before suit may commence. *See id*. Without proper notice, no standing is conferred by NVRA. *Id*. Here, Plaintiffs did not provide this mandatory notice, nor does their Amended Complaint suggest otherwise.

(D. Kan. 2011); *In re Qwest Communications Int'l, Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004). Even assuming the Amended Complaint contained adequate allegations of HAVA or NVRA violations, two other equally important procedural flaws are that (i) no decision from the Tenth Circuit or this Court adopts *Reivitz*'s novel theory that *Pennhurst* can be avoided by bootstrapping compliance with state law into a federal duty, and (ii) nothing in HAVA or NVRA says it is a violation of federal law to not comply with Colorado's Election Code or the unfunded mandate statute. These procedural impediments render the Eleventh Amendment and *Pennhurst* applicable to the state law claims.

On its merits, Plaintiffs' argument fails for the simple reason that the HAVA and NVRA provisions cited by Plaintiffs do not confer federal rights that can be vindicated by a section 1983 claim, even if propped up by allegations of state law violations. Not all federal law violations are actionable under section 1983. "[A] plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (emphasis in original). The Court considers three factors when determining whether a particular statute gives rise to a federal right: (1) Congress must have intended that the provision in question benefit the

11

plaintiff; (2) the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence; and (3) the statute must unambiguously impose a binding obligation on the States. *Id.* at 340-41.

Only an "unambiguously conferred right" can support a cause of action brought under section 1983. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002). "Accordingly, it is *rights*, not the broader or vaguer 'benefits' or 'interests,' that may be enforced" by section 1983. *Id.* Thus, Congress must use "rights-creating language." *Id.* at 287. Such language must clearly impart an "individual entitlement" and have an "unmistakable focus on the benefited class." *Id.* In contrast, when a statute "focuse[s] on the aggregate services provided by the State, rather than the needs of any particular person, it confer[s] no individual rights and thus [cannot] be enforced by § 1983." *Id.* at 282 (internal quotations omitted). Likewise, "[s]tatutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons." *Alexander v. Sandoval*, 532 U.S. 275, 289 (2001) (internal quotations omitted).

Here, the statutory provisions in HAVA and NVRA cited by Plaintiffs do not contain "rights-creating language" for voting systems vendors,

12

unambiguous or otherwise. As described below, the provisions cited by Plaintiffs focus on the entities regulated (state governments) and voters, not voting systems vendors.

### 1. HAVA

- 52 U.S.C. § 21111 (formerly 42 U.S.C. § 15511): this provision authorizes "[t]he Attorney General," not private voting systems vendors, to bring a federal action against a state to carry out HAVA's provisions. Private actors are not mentioned, thus conferring no federal rights on Plaintiffs.[4]

- 52 U.S.C. § 21081 (formerly 42 U.S.C. § 15481): this provision outlines the requirements for voting systems used in federal elections. The only private actors it mentions are "voter[s]" and "individuals with disabilities," thus conferring no federal rights on Plaintiffs. *Id. see Morales-Garza v. Lorenzo-Giguere*, 277 Fed. Appx. 444, 446 (5th Cir. 2008) (holding former § 15481 does not provide declaratory relief); *Taylor v. Onorato*, 428 F.

---

[4] The only other enforcement mechanism within HAVA is a state-based administrative complaint procedure that allows individuals to file a complaint and receive a hearing regarding violations of Title III of HAVA. 52 U.S.C. § 21112 (formerly 42 U.S.C. § 15512). In Colorado, such complaints are filed with the Secretary's office. Plaintiffs do not rely on this provision and have failed to bring this type of administrative complaint within the Secretary's office.

13

Supp. 2d 384, 386 (W.D. Pa. 2006) (holding section 301 of HAVA—containing the current § 21081 language—confers no private right of action).

- 52 U.S.C. § 21082 (formerly 42 U.S.C. § 15482): this provision imposes provisional voting requirements that benefit "individuals" wanting to vote but who do "not appear on the official list of eligible voters." It has been held to create a federal right for voters "to cast a provisional ballot" that may be enforced through a section 1983 claim. *Sandusky Cnty. Democratic Party v. Blackwell*, 387 F.3d 565, 572 (6th Cir. 2004). But the statute makes no mention of voting systems vendors, thus conferring no federal rights on Plaintiffs. *See Cannon v. Univ. of Chi.*, 441 U.S. 677, 692 n.13 (1979) (stating text must be "phrased in terms of the persons benefited").

- 52 U.S.C. § 21083 (formerly 42 U.S.C. § 15483): this provision contains computerized voter registration list requirements and requirements for voters who register by mail. It does not mention voting systems vendors, and the U.S. Supreme Court has observed that a private litigant was "not sufficiently likely to prevail on the question whether Congress has authorized the District Court to enforce § 303 [of HAVA containing this language] in an action brought . . . to justify the issuance of a TRO." *Brunner v. Ohio Republican Party*, 555 U.S. 5 (2008).

14

The above decisions are consistent with other cases, including one from Colorado, holding that HAVA generally does not confer federal rights that can be enforced in a section 1983 claim. *See Marks v. Gessler*, 350 P.3d 883, 904-05 (Colo. App. 2013) (construing former 42 U.S.C. §§ 15512(a)(2)(B) and 15512(a)(2)(E), now codified in 52 U.S.C. §§ 2112 and 21111, respectively).

## 2. *NVRA*

- 52 U.S.C. § 20507: this provision in NVRA imposes administration requirements on states for voter registration. Its provisions benefit voter "registrant[s]" and "applicant[s]" who are eligible to vote. *Id.* Nowhere, however, does it mention voting system vendors, thus conferring no federal rights on Plaintiffs. *See Cannon*, 441 U.S. at 692 n.13. Moreover, as a technical matter, the maintenance of voter registration lists has no connection to the voting systems at issue here—those that allow "votes [to] be cast, registered, recorded, and counted by means of an electronic or electromechanical voting system," Am. Compl. ¶ 17. Plaintiffs' Amended Complaint fails to allege how such voting systems play any role in the registration of new voters under NVRA.

The sole NVRA case cited by Plaintiffs was not brought by voting system vendors but rather by civic organizations that wished to engage in

voter registration activities. *See* Resp., p. 20 (citing *Project Vote v. Blackwell*, 455 F. Supp. 2d 694 (N.D. Ohio 2006)). And in any event, *Blackwell* fails to analyze whether NVRA confers a federal right on voting systems vendors that may be enforced by a section 1983 claim. It is therefore uninformative on whether NVRA creates a federally-enforceable duty to comply with state law.

Accordingly, because the federal statutes cited by Plaintiffs cannot be enforced through a section 1983 claim on their own, they likewise cannot be used to manufacture a federally-enforceable duty to comply with state law.

### C.   *The* Pullman *abstention requirements are satisfied.*

Plaintiffs assert several arguments against the *Pullman* abstention doctrine, including that it requires identical parties in parallel state court litigation, that Colorado law is not unclear, and that Colorado law does not underline their federal dormant Commerce Clause claim. Resp., pp. 21-25. Each of Plaintiffs' arguments should be rejected.

First, the *Pullman* abstention doctrine does not require privity of parties in corresponding state court litigation. *See, e.g.*, *Morgan v. Equitable Life Assurance Soc'y*, 446 F.2d 929, 932 (10th Cir. 1971) (abstaining under *Pullman* where insurance company was party to federal case but not related state probate case). Indeed, *Pullman* abstention "does not require an ongoing

16

state proceeding." *Blume v. Myers*, No. CV-99-1423, 2000 U.S. Dist. LEXIS 1836, *16 (D. Ore. 2000).[5] To be sure, the Tenth Circuit has abstained under *Pullman* in cases where no parallel state proceeding existed, let alone one with identical parties. *See, e.g., S&S Pawn Shop, Inc. v. Del City*, 947 F.2d 432, 441-42 (10th Cir. 1991) (abstaining under *Pullman* and noting "appellant has not been charged with a felony" under challenged Oklahoma law).

Second, Plaintiffs address the wrong question when they assert "there is nothing unclear about [the] statutory standards" underlying the Secretary's rulemaking authority. Resp., p. 23. Instead, the proper question is how those statutory standards apply to the Voting Systems Rules and whether Secretary acted within his statutory authority when promulgating the rules. Plaintiffs concede these are issues of first impression because the Colorado Supreme Court has not addressed how the statutory standards interact with the Voting Systems Rules.[6] Resp., p. 23. Thus, Colorado law is certainly "amenable to interpretation" by the state court in the related

---

[5] All unreported cases cited in this Reply are attached as Exhibit B.

[6] Contrary to Plaintiffs' argument, the Voting Systems Rules do not constitute a mere "novel set of facts." Resp., p. 23. The new rules have the force and effect of state law. *See Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 164 (2d Cir. 2013).

17

actions pending in Denver District Court. *See* Mot. to Dismiss, pp. 18-19 (citing *Kansas Judicial Review v. Stout*, 519 F.3d 1107, 1118 (10th Cir. 2008)). Given the important state interest at play in the effective administration of elections in Colorado and the possibility of "hinder[ing] [those] important state law policies," Colorado's state courts should have the first opportunity to weigh in on the Voting Systems Rules and their compliance with state law. *See Stout*, 519 F.3d at 1118.

Third, if the plaintiffs in the state court case prevail on their state law claims (claims nearly identical to Plaintiffs' here), it will obviate the need for this Court to adjudicate the federal dormant Commerce Clause claim. Plaintiffs' appear to argue the opposite scenario: if the state court finds the Voting Systems Rules do *not* violate the state statutes that underlie their Second through Fifth claims, then their dormant Commerce Clause claim is unaffected. Resp., p. 24. The Secretary does not contend nor does *Pullman* require otherwise. But the whole point of *Pullman* abstention "is to *avoid* resolving the federal question by encouraging a state-law determination that *may moot* the federal controversy." *San Remo Hotel, L.P. v. City and Cnty. of San Francisco*, 545 U.S. 323, 339 (2005) (cited with approval in Plaintiffs' Response, at p. 23 n.7). That is precisely what may happen here if the

18

pending state court challenges to the Secretary's Voting Systems Rules are successful. Accordingly, *Pullman* abstention is appropriate.

### D. Plaintiffs' state law claims are barred by well-settled jurisdictional doctrines.

#### 1. Plaintiffs' Second Claim is not ripe for judicial review.

This Court should reject Plaintiffs' suggestion that the Second Claim is ripe for judicial review. Resp., pp. 25-28.

Among others, one purpose of the ripeness doctrine is to "protect [government] agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967), *superseded on other grounds by* 28 U.S.C. § 1331(a). In evaluating ripeness the Court considers the "fitness of the issues for judicial decision" and the "hardship to the parties of withholding court consideration." *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 670 n.2 (2010) (citations omitted).

On the first prong, "determining whether an issue is fit for judicial resolution, the Court consider[s] whether the issue was purely legal and whether the agency action was final." *Sierra Club v. Yeutter*, 911 F.3d 1405, 1416 (10th Cir. 1990) (citing *Abbott Labs*, 387 U.S. at 149-52). Here, both

criteria are missing—the issue is not purely legal and the Secretary has not issued a final agency decision. Whether the Plaintiffs' voting systems qualify for certification requires the Secretary's staff to use their election and technical expertise to verify whether the complex voting systems engineered by the Plaintiffs comply with the numerous requirements codified in both the Election Code and the Voting Systems Rules. This is a factual inquiry, not a legal one. And according to Plaintiffs' own Amended Complaint, the Secretary has not yet completed his factual investigation to approve or disapprove Plaintiffs' certification applications. Am. Compl. ¶ 81.

Moreover, it remains to be seen whether future unforeseen events may impact Plaintiffs' requests for certification. Plaintiffs may seek, for example, to supplement their certification applications to account for recent system updates, similar to the steps being undertaken by a Massachusetts-based vendor, Clear Ballot Group, Inc. *See* Resp. to Mot. for Prelim. Injunction [Doc. 32], p. 20. Or, discrete portions of the new rules that Plaintiffs dislike may be amended to comply with a future ruling from the Denver District Court in the related state court litigation. Thus, Plaintiffs' Second Claim is not ripe for judicial review because it "rests upon contingent future events that may not

occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998).

On the second prong, the hardship of withholding judicial consideration, Plaintiffs' purported economic harm is speculative. The alleged harm is predicated on (i) the Secretary denying their certification applications, and (ii) Plaintiffs proving that the denial was contrary to law. Plaintiffs "will suffer no harm unless they are unsuccessful in th[is] underlying lawsuit." *Jewell Coke Co., L.P. v. ArcelorMittal USA, Inc.*, No. 10-cv-01946, 2010 U.S. Dist. LEXIS 118455, *15 (N.D. Ohio 2010).

Plaintiffs' cited case, *Blanchette v. Conn. Gen. Ins. Corps.*, is inapposite because it involved a federal law that *mandated* the conveyance of railroad property to a nationalized corporation; the conveyance was inevitable because the law required it. 419 U.S. 102, 141-43 (1974). By contrast, Plaintiffs' certification applications will not be denied by operation of law. The Secretary must review them and make his own independent decision.

> **2.**     *Because the APA provides the exclusive avenue for bringing Plaintiffs' Third, Fourth and Fifth Claims, they are untimely and must be dismissed.*

Plaintiffs concede that Colorado state law applies to their state law claims. Resp., p. 29. Yet they ignore the governing Colorado statute—the

21

Administrative Procedures Act ("APA"). That statute makes clear that anyone aggrieved by "*any* agency action" must commence their challenge "within thirty-five days after such agency action becomes effective." § 24-4-106(4), C.R.S. (2015) (emphasis added). Plaintiffs did not.

The public policy reason underlying this strict time bar is straightforward: finality. Agency actions, including rules, are meant to provide the public with expeditious determinations that provide certainty and predictability in the administration of their affairs. *See Clasby v. Klapper*, 636 P.2d 682, 685 (Colo. 1981). Exposing agency actions to perpetual collateral attack "hampers the [agency's] effective functioning" and engenders "extended uncertainty." *Id.* For these reasons, the Colorado Supreme Court has held that a statute providing for direct judicial review of agency action in state court constitutes the "exclusive" means for seeking review. *Id.* (dismissing electrician's challenge to license renewal statute because state judicial review action was not filed within statutory 90-day period); *see also Silver Eagle Servs., Inc. Pub. Utils. Comm'n*, 768 P.2d 208, 214 (Colo. 1989) (statutory procedure provides "exclusive method for initiating and obtaining judicial review of a PUC decision."); *Crocker v. Colo. Dep't of Revenue*, 652 P.2d 1067, 1071 (Colo. 1982) (similar in context of driver's license revocation

22

statute). Because Plaintiffs here did not comply with 35-day requirement in the statute containing the exclusive avenue for judicial review, dismissal is required. *See State v. Borquez*, 751 P.2d 639, 644 (Colo. 1988).

The unpublished Colorado Court of Appeals case cited by Plaintiffs does demand a contrary result. *See Crow v. Penrose-St. Francis Healthcare Sys.*, No. 09CA2288 (Colo. App. Aug. 12, 2010). For one, it is unpublished, possessing no precedential value under Colorado law. *See In re Ballot Title 2005-06 No. 55*, 138 P.3d 273, 276 (Colo. 2006). For another, *Crow* addressed ripeness and exhaustion of administrative remedies through a C.R.C.P. 106(a)(4) action—an unusual state law proceeding where damages are not typically available. *See Crow*, slip. op. at 6-7. As such, *Crow* simply does not speak to whether the APA is the exclusive avenue for seeking judicial review of an agency's rulemaking.

> 3. *Plaintiffs fail to establish the requirements for third party standing on their Fifth Claim.*

Plaintiffs admit they must satisfy *Foulston*'s two-prong test to establish *jus tertii*, or third party standing, to assert their unfunded mandate claim on behalf of Colorado's counties. Resp., p. 30 (citing *Aid for Women v. Foulston*, 441 F.3d 1101, 1111-12 (10th Cir. 2006)). Plaintiffs satisfy neither prong.

23

First, Plaintiffs do not have a close relationship with Colorado's 64 counties that is sufficient to properly frame and present the issues with appropriate adversarial zeal. *Foulston*, 441 F.3d at 1113 (physician-patient relationship). The lack of a close relationship is borne out by Plaintiffs' divergent motivations—Plaintiffs are private corporate entities motivated by profit. Am. Compl. ¶¶ 1-2, 72, 83. Colorado counties are not. *Cf. Sw. Ctr. For Biological Diversity v. Berg*, 268 F.3d 810, 823 (9th Cir. 2001) (evaluating petition to intervene and finding inadequate representation where intervenors, unlike plaintiff, were driven by profit motive).

Moreover, the Clerk and Recorders of two counties that ES&S purports to serve as an "advocate" for, Teller and Pitkin, have signed sworn declarations applauding the Voting Systems Rules' advancements. *See* Resp. to Mot. for Prelim. Inj. [Doc. 32], Exs. E & F. To the extent anyone is advocating for these county officials it is the Secretary, not Plaintiffs. Plaintiffs' lack of a close relationship with the counties is further confirmed by their failure to obtain *any* county declaration agreeing with Plaintiffs' purported representation. This failure is telling since declarations and affidavits may be obtained to establish jurisdiction when defending against a motion to dismiss. *See New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d

24

1495, 1499 (10th Cir. 1995); *see also Amato v. Wilentz*, 952 F.2d 742, 750 (3d Cir. 1991) ("third party standing is exceptional: the burden is on the [plaintiff] to establish that it has third party standing, not on the defendant to rebut a presumption of third party standing.").

Second, Plaintiffs have not shown that Colorado counties face some hindrance to protecting their own interests. *Foulston*, 441 F.3d at 1111-12. Although Plaintiffs assert vague "budget constraints" problems, Resp., p. 32, those allegations are unsubstantiated by affidavits or other evidence. They also confuse the issue; the proper inquiry is whether the counties are hindered in their ability to challenge the Secretary's new rules, not whether the rules, if enforced, will impose a financial burden.

Plaintiffs' "hindrance" argument is also undermined by the pending rulemaking challenge in state court brought by two county Clerk and Recorders and the Board of Jefferson County Commissioners. *See* Mot. to Dismiss [Doc. 21], p. 25. This parallel state court litigation illustrates counties are perfectly able to protect their own interests in the event they disagree with the Voting Systems Rules. *See Singleton v. Wulff*, 428 U.S. 106, 113 (1976) (stating "courts should not adjudicate such rights unnecessarily, and it may be that in fact the holders of those rights either do not wish to

25

assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful or not."). This Court need not attempt the impossible task of parsing which counties support the Secretary and which support Plaintiffs. *See Wilentz*, 952 F.2d at 750.

The cases Plaintiffs rely on for third party standing are inapplicable. *Barrows v. Jackson* involved a case where "it would be difficult if not impossible for the persons whose rights are asserted to present their grievance before any court," a situation not present here. 346 U.S. 249, 257 (1953). Similarly, *Reese Bros., Inc. v. U.S. Postal Service* involved a First Amendment claim and the "danger of chilling free speech," making it appropriate to "relax" the second *Foulston* prong. 531 F. Supp. 2d 64, 69-70 (D.D.C. 2008). By contrast, no First Amendment protection is implicated here. Likewise, none of the cases cited by Plaintiffs invoking a more deferential standing inquiry involved voting, let alone voting systems vendors. Resp., pp. 30-31.

Finally, *Carey v. Population Servs. Int'l* and the cases it cites on third party standing are not instructive. 431 U.S. 678 (1977). They permitted a vendor to assert customers' constitutional rights (not state statutory rights) when the vendor was prohibited by a law from selling to the third party

26

customer under threat of sanction. *See* 431 U.S. 678 (1977) (challenged law criminalized and prohibited the distribution or advertisement of contraceptive devices). As the Court noted in *Craig v. Boren,* "[i]n both *Eisenstadt* and here, the challenged statutes compel *jus tertii* claimants either to cease their proscribed activities or to suffer appropriate sanctions." 429 U.S. 190, 196 n.5 (1976).

But here, the flexible Voting Systems Rules impose no sanctions and leave counties with significant discretion. Counties may (i) continue to use their existing voting systems equipment from Plaintiffs, (ii) acquire new certified and approved voting systems from vendors other than Plaintiffs, or (iii) acquire new voting systems from Plaintiffs if their systems eventually become certified and approved for purchase or lease. If Plaintiffs abandon their certification efforts, they may of course seek to expand their market into other areas, such as selling to Colorado municipalities and special districts that conduct local elections, over which the Secretary in most cases has no authority. Accordingly, *Carey* and its progeny do not apply.

## CONCLUSION

Plaintiffs' Amended Complaint should be dismissed in its entirety.

Respectfully submitted this 22nd day of July, 2016.

CYNTHIA H. COFFMAN
Colorado Attorney General

*s/ Grant T. Sullivan*
LEEANN MORRILL, No. 38742*
First Assistant Attorney General
GRANT T. SULLIVAN, No. 40151*
Assistant Solicitor General
CHRISTOPHER JACKSON, No. 49202*
Assistant Attorney General
*Counsel of Record
*Counsel for the Secretary*

Public Officials Unit
State Services Section
1300 Broadway, 6th Floor
Denver, CO 80203
Phone:  (720) 508-6000
Fax:  (720) 508-6041
Email:  leeann.morrill@coag.gov
         grant.sullivan@coag.gov
         christopher.jackson@coag.gov

28

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2016, I served a true and complete copy of the **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) and 12(b)(6)** upon all parties through ECF-file and serve or as indicated below:

Thomas P. McMahon
Aaron D. Goldhamer
JONES & KELLER, P.C.
1999 Broadway, Ste. 3150
Denver, CO 80202
tmcmahon@joneskeller.com
agoldhamer@joneskeller.com
*Attorneys for Plaintiffs*

*s/ Xan Serocki*
Xan Serocki