

**User Name:** Grant Sullivan
**Date and Time:** Jul 22, 2016 12:48
**Job Number:** 34997873

## Documents (2)

1. *Blume v. Myers, 2000 U.S. Dist. LEXIS 1836*
   **Client/Matter:** FBXLD
   **Search Terms:**
   **Search Type:**
2. *Jewell Coke Co., L.P. v. ArcelorMittal USA, Inc., 2010 U.S. Dist. LEXIS 118455*
   **Client/Matter:** FBXLD
   **Search Terms:**
   **Search Type:**

 Positive
As of: July 22, 2016 12:48 PM EDT

# *Blume v. Myers*

United States District Court for the District of Oregon

February 17, 2000, Decided ; February 22, 2000, Filed

No. CV-99-1423-HU

**Reporter**
2000 U.S. Dist. LEXIS 1836; 2000 WL 210605

YOLANDA BLUME, LARRY BENSON, and JENNIFER MacCRONE, Plaintiffs, v. , in his official capacity as Attorney General for the State of Oregon, and the STATE OF OREGON, Defendants.

**Notice:**  [*1]  NOT FOR PUBLICATION

**Disposition:** Defendants' motion to dismiss (# 8) granted.

## LexisNexis® Headnotes

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Motions to Dismiss

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to State Claims

*HN1* On a motion to dismiss, the court must review the sufficiency of the complaint. The court should construe the complaint most favorably to the pleader. In evaluating the sufficiency of the complaint, a court follows the accepted rule that the complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. The allegations of material fact must be taken as true.

Civil Procedure > ... > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Motions to Dismiss

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to State Claims

*HN2* A motion to dismiss brought pursuant to *Fed. R. Civ. P. 12(b)(1)* addresses the court's subject matter jurisdiction. The party asserting jurisdiction bears the burden of proving that the court has subject matter jurisdiction over his claims. Unlike a motion to dismiss for failure to state a claim under *Fed. R. Civ. P. 12(b)(6)*, a *Fed. R. Civ. P. 12(b)(1)* motion can attack the jurisdictional allegations in the plaintiff's complaint regardless of whether the complaint otherwise sufficiently states a claim. A challenge to the court's subject matter jurisdiction under *Fed. R. Civ. P. 12(b)(1)* may rely on affidavits or any other evidence properly before the court.

Civil Procedure > ... > Federal & State Interrelationships > State Sovereign Immunity > General Overview

*HN3* *United States Const. amend. XI* bars suits in federal court against a state and its agencies brought by its own citizens and citizens of other states.

Civil Procedure > ... > Federal & State Interrelationships > State Sovereign Immunity > General Overview

Civil Procedure > Parties > Real Party in Interest > General Overview

Governments > State & Territorial

Case No. 1:16-cv-01237-JLK   Document 37-1   filed 07/22/16   USDC Colorado   pg 3 of 18

Page 2 of 8
2000 U.S. Dist. LEXIS 1836, *1

Governments > Claims By & Against

**HN4** When an action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officers are nominal defendants.

Civil Procedure > ... > Federal & State Interrelationships > State Sovereign Immunity > General Overview

Civil Procedure > ... > Federal & State Interrelationships > State Sovereign Immunity > State Immunity

**HN5** While suits seeking declaratory and injunctive relief against state officers in their official capacities fall within a narrow exception to immunity under *U.S. Const. amend. XI*, that exception applies only to actions seeking prospective declaratory or injunctive relief.

Civil Rights Law > General Overview

**HN6** See *42 U.S.C.S. § 1983*.

Civil Rights Law > General Overview

**HN7** States or governmental entities that are considered arms of the State for purposes of *U.S. Const. amend. XI* are not persons under *42 U.S.C.S. § 1983*. Additionally, state officers in their official capacities, like States themselves, are not amenable to suit for damages under *42 U.S.C.S. § 1983*.

Civil Procedure > ... > Justiciability > Ripeness > General Overview

Civil Procedure > ... > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview

**HN8** An argument that a claim is not ripe challenges the court's subject matter jurisdiction. A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.

Civil Procedure > ... > Justiciability > Mootness > General Overview

Civil Procedure > Preliminary Considerations > Federal & State Interrelationships > Abstention

**HN9** Pullman abstention is an equitable doctrine that allows federal courts to refrain from deciding sensitive federal constitutional questions when state law issues may moot or narrow the constitutional questions.

Civil Procedure > ... > Justiciability > Mootness > General Overview

Civil Procedure > Preliminary Considerations > Federal & State Interrelationships > Abstention

**HN10** Abstention is appropriate when: (1) the federal plaintiff's complaint requires resolution of a sensitive question of federal constitutional law; (2) the constitutional question could be mooted or narrowed by a definitive ruling on the state law issues; and (3) the possibly determinative issue of state law is unclear.

Civil Procedure > Preliminary Considerations > Federal & State Interrelationships > Abstention

**HN11** Once Pullman abstention is invoked by the federal court, the federal plaintiff must then seek a definitive ruling in the state courts on the state law questions before returning to the federal forum.

Civil Procedure > Preliminary Considerations > Federal & State Interrelationships > Abstention

**HN12** Where abstention is appropriate, dismissal is the proper remedy where the only relief sought is equitable or otherwise discretionary.

**Counsel:** Mark McDougal, KAFOURY & McDOUGAL, Portland, Oregon, for Plaintiffs.

Hardy Myers, Attorney General, Katherine G. Georges, Assistant Attorney General, Department of Justice, Salem, Oregon, for Defendants.

**Judges:** Dennis James Hubel, United States Magistrate Judge.

**Opinion by:** Dennis James Hubel

## Opinion

OPINION AND ORDER

HUBEL, Magistrate Judge:

Plaintiffs Yolanda Blume, Larry Benson, and Jennifer MacCrone bring this action against Hardy Myers in his capacity as Attorney General for the State of Oregon, and the State of Oregon. Plaintiffs challenge the constitutionality of Oregon Revised Statute (ORS) 18.540 which requires that 60% of a punitive damages award be paid to the state Criminal Injuries Compensation Account. [1]

 [*2] Plaintiffs bring three claims for relief: violation of the *federal constitution's Fifth Amendment* takings provision, violation of the *federal constitution's Fourteenth Amendment* due process provision, and a third claim alleging violations of several different provisions of the Oregon Constitution. Plaintiffs seek declaratory relief, injunctive relief prohibiting the future enforcement of *ORS 18.540*, damages in the amount of monies "taken" by defendants, and costs and attorney's fees.

Defendants move to dismiss on the basis of failure to state a claim and lack of subject matter jurisdiction. Alternatively, defendants argue that I should dismiss the case under the abstention theory expressed in *Railroad Comm. of Texas v. Pullman Co., 312 U.S. 496, 85 L. Ed. 971, 61 S. Ct. 643 (1941)*. For the reasons explained below, I grant the motion to dismiss. I also conclude that dismissal under *Pullman* is appropriate. However, based on an argument made by plaintiffs during oral argument, I give them thirty days in which to file an amended complaint. As explained below, however, should they do so and should they survive another anticipated motion to dismiss, it is likely that [*3] *Pullman* abstention would still be appropriate, with the only likely difference being staying the case, rather than dismissing it.

BACKGROUND

In 1995, Blume was awarded $ 450,000 in punitive damages in a state court civil action. Pursuant to *ORS 18.540*, the State of Oregon was listed as a judgment creditor for a portion of the punitive damages award. After losing on appeal, the defendant paid the judgment, with the State of Oregon receiving a portion of the money in accordance with its judgment creditor status.

In 1997, Benson was awarded $ 300,000 in punitive damages in a state court civil action. In 1998, judgment was entered in his favor with the State of Oregon as a judgment creditor for a portion of the punitive damages award. Thereafter, Benson entered into settlement discussions and the state claimed a portion of the monies to be paid in settlement. Although not entirely clear from the Complaint, it appears that the state was paid its share of the punitive damages out of the settlement proceeds.

In a 1995 state court civil action, MacCrone was awarded $ 1,250,000 in punitive damages. In 1996, the trial court entered judgment in her favor with the State of Oregon as a [*4] judgment creditor for a portion of the punitive damage award. At present, MacCrone is attempting to settle her claims against the defendant, but is unable to do so given the amount of money claimed by the state by virtue of *ORS 18.540*. Plaintiff is presently "subjecting the verdict in favor of her on appeal to review by the Oregon Supreme Court." Compl. at P 9.

Plaintiffs contend that Blume and Benson have suffered injury in that defendants have taken a portion of their money judgments. Plaintiffs further contend that MacCrone will suffer irreparable harm unless *ORS 18.540* is declared unconstitutional because defendants have threatened to enforce *ORS*

---

[1] Although the statute presently requires that 60% of a punitive damages award be paid to the state, the amount at issue here is a 50% payment to the state because that is what the version of the statute required when plaintiffs' underlying causes of action arose.

18.540 against MacCrone and that threat has prevented her from settling her case and has subjected her to a risk of losing her entire judgment if reviewed by the Oregon Supreme Court.

STANDARDS

I. Motion to Dismiss for Failure to State a Claim

**HN1** On a motion to dismiss, the court must review the sufficiency of the complaint. *Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974)*. The court should construe the complaint most favorably to the pleader:

> In evaluating the sufficiency of the [*5] complaint, we follow, of course, the accepted rule that the complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)*. The allegations of material fact must be taken as true. *Moyo v. Gomez, 40 F.3d 982, 984 (9th Cir. 1994)*.

II. Motion to Dismiss for Lack of Subject Matter Jurisdiction

**HN2** A motion to dismiss brought pursuant to *Federal Rule of Civil Procedure 12(b)(1)* addresses the court's subject matter jurisdiction. The party asserting jurisdiction bears the burden of proving that the court has subject matter jurisdiction over his claims. *Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 128 L. Ed. 2d 391, 114 S. Ct. 1673 (1994)*. Unlike a motion to dismiss for failure to state a claim under *Federal Rule of Civil Procedure 12(b)(6)*, a *Rule 12(b)(1)* motion can attack the jurisdictional allegations in the plaintiff's complaint regardless of whether the complaint otherwise sufficiently states a claim. [*6] See *St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989)*. A challenge to the court's subject matter jurisdiction under *Rule 12(b)(1)* may rely on affidavits or any other evidence properly before the court. *Dreier v. United States, 106 F.3d 844, 847 (9th Cir. 1996)*.

DISCUSSION

I. *Eleventh Amendment*

A. State of Oregon

Defendants argue that the action against the State of Oregon must be dismissed because it is barred by the *Eleventh Amendment*. As recently stated by the Ninth Circuit, the **HN3** "*Eleventh Amendment* bars suits in federal court against a state and its agencies brought by its own citizens and citizens of other states." *In re Jackson, 184 F.3d 1046, 1049 (9th Cir. 1999)*. Plaintiffs concede that they may not properly sue the State of Oregon in federal court. The State of Oregon is dismissed.

B. Hardy Myers

Defendants contend that the *Eleventh Amendment* also bars suit against Myers. Defendants argue that because the suit is in essence one for the recovery of money from the State, the *Eleventh Amendment* bars plaintiffs' suit against Myers as well as the state itself.

Defendants correctly note that **HN4** when "the action [*7] is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officers are nominal defendants." *Windward Partners v. Ariyoshi, 693 F.2d 928, 929 (9th Cir. 1982)* (quoting *Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464, 89 L. Ed. 389, 65 S. Ct. 347 (1945))*; see also *Dittman v. California, 191 F.3d 1020, 1026 (9th Cir. 1999)* ("The *Eleventh Amendment* bars actions for damages against state officials who are sued in their official capacities in federal court."); *Native Village of Noatak v. Blatchford, 38 F.3d 1505, 1512 (9th Cir. 1994)* ("Suits against state officials that seek payment of money from the state treasury . . . are barred by the *Eleventh Amendment*[.]").

Additionally, **HN5** while suits seeking declaratory and injunctive relief against state officers in their official capacities fall within a narrow exception to *Eleventh Amendment* immunity, *Rounds v. Oregon State Bd. of Higher Educ., 166 F.3d 1032, 1036 (9th Cir. 1999)* (citing *Ex Parte Young, 209 U.S. 123, 52 L. Ed. 714, 28 S. Ct. 441 (1908))*, [*8] that exception applies only to actions seeking

Case No. 1:16-cv-01237-JLK   Document 37-1   filed 07/22/16   USDC Colorado   pg 6 of 18

Page 5 of 8
2000 U.S. Dist. LEXIS 1836, *8

*prospective* declaratory or injunctive relief. *Los Angeles County Bar Ass'n v. Eu, 979 F.2d 697, 704 (9th Cir. 1992)*.

Under these principles, the *Eleventh Amendment* bars all claims for damages and bars Blume's and Benson's actions for declaratory and injunctive relief. The only plaintiff with a prospective claim is MacCrone. However, although her claims survive an *Eleventh Amendment* argument, I conclude, as discussed further below, that her claims are not ripe.

II. *Section 1983* Claims

Plaintiffs' federal constitutional claims are brought under *42 U.S.C. § 1983*. In pertinent part, **HN6** *section 1983* provides that "every *person* who, under color of any statute . . . ." *42 U.S.C. § 1983* (emphasis added). Defendants argue that the State and Myers, who is sued in his official capacity, cannot be "persons" for the purposes of a *section 1983* claim.

**HN7** "'States or governmental entities that are considered "arms of the State" for *Eleventh Amendment* purposes' are not 'persons' under *§ 1983*." *Doe v. Lawrence Livermore Nat'l Lab., 131 F.3d 836, 839 (9th Cir. 1997)* **[*9]** (quoting *Will v. Michigan Dep't of State Police, 491 U.S. 58, 70, 105 L. Ed. 2d 45, 109 S. Ct. 2304 (1989))*. Thus, the *section 1983* claims against the State of Oregon are dismissed. Additionally, "state officers in their official capacities, like States themselves, are not amenable to suit for damages under *§ 1983*." *Arizonans for Official English v. Arizona, 520 U.S. 43, 69 n. 24, 137 L. Ed. 2d 170, 117 S. Ct. 1055 (1997)*; *see also Lawrence Livermore Nat'l Lab., 131 F.3d at 839* ("state officials sued in their official capacities are not 'persons' within the meaning of *§ 1983*."). Thus, because Myers is sued in his official capacity, the *section 1983* claims against him are also dismissed.

Plaintiffs seek leave to amend their Complaint to name Myers in his individual capacity. *See Arizonans for Official English, 520 U.S. at 69 n. 24* ("State officers are subject to *§ 1983* liability for damages in their personal capacities . . . even when the conduct in question relates to their official duties"), *Hafer v. Melo, 502 U.S. 21, 31, 116 L. Ed. 2d 301, 112 S. Ct. 358 (1991)* ("state officials, sued in their **[*10]** individual capacities, are 'persons' within the meaning of *§ 1983*."). During oral argument, plaintiffs indicated that in addition to the state's taking a percentage of their punitive damages award, the state's practice as applied to settlements results in a taking of their compensatory damages award as well. Plaintiffs theorized that they could state a viable claim for damages against Myers in his personal capacity for this practice. While plaintiffs apparently have *Eleventh Amendment* and ripeness hurdles to overcome in stating such a claim, I cannot conclude at this point that an amendment to state such a claim would be futile. Thus, I give plaintiffs thirty days from the date of this Opinion and Order to file an amended complaint.

III. Ripeness of MacCrone's Claim

Defendants argue that MacCrone's claims in the instant case are not ripe because her underlying case is pending before the Oregon Supreme Court. In *MacCrone v. Edwards Center, Inc., 160 Ore. App. 91, 980 P.2d 1156 (1999)* (en banc) the Oregon Court of Appeals affirmed the jury verdict in plaintiff's favor, including her punitive damages award. Four judges dissented, however, with five in the majority. **[*11]** Defendants argue that because the case is still pending before the Oregon Supreme Court, there is a chance that that court will reverse the Oregon Court of Appeals and the punitive damages issues she raises here would be moot. I agree with defendants.

**HN8** An argument that a claim is not ripe challenges the court's subject matter jurisdiction. *See Ecology Center, Inc. v. United States Forest Serv., 192 F.3d 922, 926 (9th Cir. 1999)* (dismissal affirmed because district court lacked subject matter jurisdiction when claims were not ripe). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States, 523 U.S. 296, 299, 118 S. Ct. 1257, 1259, 140 L. Ed. 2d 406 (1998)* (internal quotation omitted).

MacCrone concedes that any claim she has for damages is not ripe because the State has not yet received any of her damage award. She argues,

Case No. 1:16-cv-01237-JLK   Document 37-1   filed 07/22/16   USDC Colorado   pg 7 of 18

Page 6 of 8
2000 U.S. Dist. LEXIS 1836, *11

however, that she has a ripe claim for interference with her common law right to settle. MacCrone cites no cases recognizing a common law right to settle. Defendants argue that no such right exists, and to recognize [*12] one would produce undesirable results such as suits by one party against another for declining to settle or failing to settle for a certain amount.

In response, MacCrone contends that the claim she is articulating is akin to a third party interference tort claim, such as a claim for intentional interference with economic relations whereby the state, in asserting its right to a portion of her settlement, is improperly interfering with the relationship between MacCrone and the defendant in her underlying case. I need not decide at this juncture whether the law recognizes a common law right to settle. The Complaint, as presently drafted, states no claim for interference with such a right and fails to state a claim for any other third party interference tort. In their current form, MacCrone's claims are unripe and are dismissed. [2]

[*13] IV. State Claims

Defendants argue that the claims under the Oregon Constitution should be dismissed because there are no valid pending federal claims. I agree. Given the relevant factors to consider, judicial economy, convenience, fairness, and comity, and especially considering that the case is very young and the outcome of the state claims is not plain, I exercise my discretion to dismiss the state claims under *28 U.S.C. § 1367(c)(3)*. See *Executive Software v. United States Dist. Court, 24 F.3d 1545, 1556 (9th Cir. 1994)* (listing relevant factors).

V. Abstention

---

[2] Although it may appear that a plaintiff could never challenge *ORS 18.540* in federal court because the claims will be either unripe (MacCrone) or barred by the *Eleventh Amendment* for failing to seek prospective relief (Blume, Benson), there is a window for properly pleaded claims to survive those challenges. After the State is entered as a judgment creditor in accordance with *ORS 18.540*, a claim challenging the statute would be ripe. If declaratory or injunctive relief claims were then brought before any monies were actually paid to the state, they would be prospective and would fall within the narrow exception to *Eleventh Amendment* immunity discussed above.

Although I have now dismissed the entire case, it is prudent to discuss defendants' alternative *Pullman* abstention argument in light of the fact that plaintiffs will be allowed to amend their complaint. Defendants argue that the court should abstain under *Pullman* because a pending state action may moot or narrow the federal constitutional issues in this case. I agree with defendants.

**HN9** "*Pullman* abstention is an equitable doctrine that allows federal courts to refrain from deciding sensitive federal constitutional questions when state law issues may moot or narrow [*14] the constitutional questions." *The San Remo Hotel v. City and County of San Francisco, 145 F.3d 1095, 1104 (9th Cir. 1998)*.

> **HN10** Abstention is appropriate when: (1) the federal plaintiff's complaint requires resolution of a sensitive question of federal constitutional law; (2) the constitutional question could be mooted or narrowed by a definitive ruling on the state law issues; and (3) the possibly determinative issue of state law is unclear.

*Id.; see also Sinclair Oil Corp. v. County of Santa Barbara, 96 F.3d 401, 409 (9th Cir. 1996)* (describing the first element of the three-part test as "the complaint touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open."), *cert. denied, 523 U.S. 1059, 140 L. Ed. 2d 646, 118 S. Ct. 1386 (1998)*. **HN11** "Once *Pullman* abstention is invoked by the federal court, the federal plaintiff must then seek a definitive ruling in the state courts on the state law questions before returning to the federal forum." *San Remo Hotel, 145 F.3d at 1104*.

Defendants argue that the first element is satisfied because, by definition, a contention [*15] that a state law violates the *Takings Clause* and the Due Process Clause of the federal constitution implicates a sensitive question of federal constitutional law. Plaintiffs argue that, following the definition of the first element from *Sinclair Oil*, the taking of a portion of a plaintiff's money judgment by a state does not involve a sensitive area of social policy.

Regardless of whether the proper standard is a "sensitive question of federal constitutional law," or a "sensitive area of social policy," I agree with defendants. First, defendants rightly note that the issue of whether a state statute violates the United States Constitution can be described as a sensitive question of federal constitutional law. Second, the question of whether the regulation by the Oregon Legislature, representing the citizens of Oregon, of the previously unregulated common-law concept of punitive damages, is constitutional, can be described as implicating a sensitive area of social policy.

Next, it is clear that the constitutional issues could be mooted or narrowed by a definitive ruling on the state law issue of whether ORS 18.540 violates the Oregon Constitution. In fact, here, there already [*16] is a case on the issue pending before the Oregon Court of Appeals. *See Bocci v. State of Oregon*, Oregon Court of Appeals, Case # CA A10736. In that case, the Multnomah County Circuit Court held that ORS 18.540 violates Article I, section 18 of the Oregon Constitution. If this is upheld on appeal, the statute will be void and the federal constitutional claims in this case would be moot.

Plaintiffs argue that the second element is not met because the *Bocci* case does not seek an injunction and the State of Oregon has not voluntarily refrained from enforcing ORS 18.540. As indicated, however, the *Pullman* analysis requires only a narrowing of the issues, not the elimination of them. And, more importantly, *Pullman* abstention does not require an ongoing state proceeding. Thus, it is irrelevant what is actually being litigated in the pending state court case as long as the federal constitutional questions in the instant case could be mooted or narrowed by a definitive ruling on the state law issues.

Third, since the state appellate courts have not yet evaluated ORS 18.540 under the Oregon Constitution, the status of the state law is uncertain. *See Harris County Comm'rs Court v. Moore, 420 U.S. 77, 84, 43 L. Ed. 2d 32, 95 S. Ct. 870 (1975)* [*17] (abstention ordered where "the uncertain status of local law stems from the unsettled relationship between the state constitution and a statute."). Thus, the third element required for *Pullman* abstention is met.

Plaintiffs argue that I should not dismiss the federal claims under *Pullman*, but rather enter a stay deferring their consideration until after the resolution of the state law issues. *See Sinclair Oil, 96 F.3d at 410 n.6*. **HN12** Where abstention is appropriate, dismissal is the proper remedy where the only relief sought is equitable or otherwise discretionary. *Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 730-31, 135 L. Ed. 2d 1, 116 S. Ct. 1712 (1996)*. In the instant case, because of the Eleventh Amendment immunities previously discussed, the only available relief for any of the presently pleaded claims is equitable. Thus, dismissal is proper.

VI. Effect of Amendment on Abstention

Should plaintiffs amend their Complaint in the fashion described above, and should they survive defendants' promised motion to dismiss, I note that *Pullman* abstention would likely still be appropriate. If, after resolving the promised motion to dismiss, [*18] I conclude that *Pullman* abstention applies, I will dismiss the action if only equitable claims remain. *Quackenbush, 517 U.S. 706 at 730, 135 L. Ed. 2d 1, 116 S. Ct. 1712*. If damages claims remain, I will stay the action pending resolution of the state law issues. *Sinclair Oil, 96 F.3d at 410 n.6*.

CONCLUSION

Defendants' motion to dismiss (# 8) is granted. Plaintiffs have thirty (30) days in which to file an amended complaint consistent with this Opinion and Order. Should plaintiffs fail to do so, judgment will be entered at that time.

IT IS SO ORDERED.

Dated this     day of    , 2000.

Dennis James Hubel

United States Magistrate Judge

2000 U.S. Dist. LEXIS 1836, *18

---

**End of Document**

Grant Sullivan


Neutral
As of: July 22, 2016 12:48 PM EDT

# *Jewell Coke Co., L.P. v. ArcelorMittal USA, Inc.*

United States District Court for the Northern District of Ohio

November 8, 2010, Decided; November 8, 2010, Filed

CASE NO. l:10-CV-01946

**Reporter**
2010 U.S. Dist. LEXIS 118455; 2010 WL 4628756

JEWELL COKE COMPANY, L.P., Plaintiff, vs. ARCELORMITTAL USA, INC., Defendant.

**Subsequent History:** Motion denied by *Jewell Coke Co., L.P. v. ArcelorMittal USA, Inc., 2010 U.S. Dist. LEXIS 136577 (N.D. Ohio, Dec. 27, 2010)*

**Prior History:** *ArcelorMittal Cleveland, Inc. v. Jewell Coke Co., L.P., 2010 U.S. Dist. LEXIS 99132 (N.D. Ohio, Sept. 21, 2010)*

**Counsel:** [*1] For Jewell Coke Company, L.P., Plaintiff, Counter-Defendant: Hugh E. McKay, LEAD ATTORNEY, Charles W. Zepp, Hugh E. McKay, Porter, Wright, Morris & Arthur - Cleveland, Cleveland, OH.

For ArcelorMittal USA, Inc., Defendant, Counter-Claimant: Elissa L. Isaacs, LEAD ATTORNEY, Steptoe & Johnson - Chicago, Chicago, IL; George R. Calhoun, V, LEAD ATTORNEY, Steptoe & Johnson - Washington, Washington, DC; John M. Alten, LEAD ATTORNEY, Paula Gallito Shakelton, Ulmer & Berne - Cleveland, Cleveland, OH.

**Judges:** JAMES S. GWIN, UNITED STATES DISTRICT JUDGE.

**Opinion by:** JAMES S. GWIN

## Opinion

OPINION & ORDER

[Resolving Doc. Nos. 6, 19]

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

The Defendant, ArcelorMittal USA, Inc. ("ArcelorMittal USA") moves the Court to dismiss this action under *Federal Rule of Civil Procedure 12(b)(6)* for failure to state a claim upon which relief can be granted. [Doc. 6.] The Plaintiff opposes the motion. [Doc. 19.]

For the following reasons, the Court **GRANTS** the Defendant's motion to dismiss.

## I. Background

In this contract dispute, Plaintiff Jewell files suit seeking declaratory judgment under *Federal Rule of Civil Procedure 57* and *28 U.S.C. §§2201 & 2202* declaring that ArcelorMittal USA must guarantee a coke [*2] supply agreement as currently written. [Doc. 1.] Jewell also asserts a claim of negligent misrepresentation. [*Id.*] Plaintiff Jewell is a limited liability partnership that produces blast furnace coke in Vansant, Virginia. [*Id.* at ¶ 8.] Defendant ArcelorMittal USA is a Delaware corporation with its principal place of business in Chicago, Illinois. [Doc. 1 at ¶ 9; Doe. 18 at ¶ 9.] ArcelorMittal USA manufactures steel and is the parent corporation of ArcelorMittal Cleveland, Inc. and ArcelorMittal Indiana Harbor, LLC (collectively "ArcelorMittal Cleveland & Indiana"). [Doc. 1 at ¶ 9; Doe. 18 at ¶ 9.] The Court has proper diversity jurisdiction under *28 U.S.C. § 1332(a)(1)* since there is complete diversity and the amount in controversy exceeds $75,000.

Case No. 1:16-cv-01237-JLK   Document 37-1   filed 07/22/16   USDC Colorado   pg 11 of 18

Page 2 of 9
2010 U.S. Dist. LEXIS 118455, *2

This particular dispute arises out of the same nucleus of facts as a related suit - also before this Court - between Jewell and ArcelorMittal Cleveland & Indiana. *ArcelorMittal Cleveland, Inc. v. Jewell Coke Co., L.P., No. l:10-CV-00362, 2010 U.S. Dist. LEXIS 99132 (N.D. Ohio)*. In October 2002, ArcelorMittal Cleveland & Indiana [1] and Jewell entered into an agreement that Jewell would annually supply approximately 700,000 tons of blast furnace coke. [Doc. 1 at ¶ 15.] **[*3]** This agreement ran through 2005, but provided an option for ArcelorMittal Cleveland & Indiana to extend the contract through 2007. [*Id* at ¶ 16.] In October 2003, ArcelorMittal Cleveland & Indiana also contracted to purchase 550,000 tons of coke annually from the Haverhill North Coke Company, a Jewell affiliate ("Haverhill Coke Agreement"). [*Id* at ¶ 23.] Both Jewell and Haverhill are subsidiaries of Sun Coal & Coke Company ("Sun").

Also in October 2003, ArcelorMittal Cleveland & Indiana and Jewell executed a restated and amended coke supply agreement ("the amended purchase agreement"), [*Id* at ¶ 21.] The amended purchase agreement extended the original 2002 agreement through 2007; it also contracted for the sale of 700,000 tons of coke annually by Jewell from January 1, 2008 through 2020 under a new pricing formula. [*Id*. at ¶ 21.] The parties **[*4]** based the amended purchase agreement pricing formula on the price of coke sold to ArcelorMittal Cleveland & Indiana under the 2003 Haverhill Coke Agreement. [*Id*. at ¶ 27.]

In the related litigation also before the Court, ArcelorMittal Cleveland & Indiana allege that the new pricing formula in the amended purchase agreement contains an error, which is causing them to pay a 50% premium for Jewell coke. *ArcelorMittal Cleveland, Inc. v. Jewell Coke Co., L.P., 2010 U.S. Dist. LEXIS 99132, 2010 WL 3749592 (N.D. Ohio Sept. 21, 2010)*. In that action, ArcelorMittal Cleveland & Indiana claim that a multiplier in the new pricing formula was inverted - a mistake that the Plaintiffs in that suit calculate already cost them $100 million, with a total amount over the life of the contract of more than $1 billion. *Id*. ArcelorMittal Cleveland & Indiana seek to have the amended purchase agreement reformed or rescinded due to unilateral or mutual mistake. *Id*. The Court denied Jewell's motion to dismiss in that suit and discovery is currently ongoing. *Id*.

In 2007, Defendant ArcelorMittal USA was ordered by the United States Department of Justice to sells its facility at Sparrows Point for antitrust reasons. [Doc. 6 at 3.] At that time, **[*5]** Sparrows Point LLC was also a party to the previously discussed amended purchase agreement. [*Id*.] In connection with the sale of Sparrows Point LLC, Plaintiff Jewell and Defendant ArcelorMittal USA entered into a letter agreement ("guaranty agreement"), in which both Jewell and Haverhill consented to Sparrows Point's withdrawal from the amended purchase agreement. [Doe. 1 at ¶ 43.] As a condition for allowing the withdrawal, ArcelorMittal USA guaranteed the obligations of ArcelorMittal Cleveland & Indiana under the amended purchase agreement. [*Id*. at ¶¶ 44-46.] The guaranty agreement currently remains in force.

On September 1, 2010, Jewell filed a complaint, seeking a declaratory judgment ruling that in the event that the amended purchase agreement between Jewell and ArcelorMittal Cleveland & Indiana is reformed or rescinded, that ArcelorMittal USA is still required to guarantee payment under the amended purchase agreement's original terms. [Doc. 1 at ¶ 56.] Jewell also brings a claim of negligent misrepresentation, alleging that ArcelorMittal USA was aware that ArcelorMittal Cleveland & Indiana believed that the amended purchase agreement contained a mistake in 2008 when the guaranty **[*6]** agreement was signed, and that the Defendant purposely withheld this information from Jewell. [*Id*. at ¶¶ 58-65.]

The Defendant ArcelorMittal USA says that this Court should dismiss this action under *Federal Rule of Civil Procedure 12(b)(6)* for failure to state a claim upon which relief could be granted. Specifically, the Defendant argues that (1) the guaranty agreement specifically prohibits Jewell

---

[1] Prior to the merger of Mittal Steel USA and Arcelor S.A. in 2006, ArcelorMittal Cleveland & Indiana's predecessor companies were ISG Cleveland and ISG Indiana Harbor. However, for the sake of simplicity, the Court refers to these companies as ArcelorMittal Cleveland & Indiana both prior to and after the merger which resulted in their current names.

from bringing the current suit; (2) the declaratory judgment claim does not currently present a justiciable case or controversy; and (3) the negligent misrepresentation claim fails to state a valid cause of action. [Doc. 6 at 1, 9.]

## II. Legal Standard

A court may grant a motion to dismiss only when "it appears beyond doubt" that the plaintiff fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); Conley v. Gibson, 355 U.S. 41, 45, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). [2] The plausibility requirement is not a "probability requirement," [*7] but requires "more than a sheer possibility that the defendant has acted unlawfully." Id.

Federal Rule of Civil Procedure 8 provides the general standard of pleading and only requires that a complaint "contain . . . a short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 129 S.Ct. at 1949 (citations removed). In deciding a motion to dismiss under Rule 12(b)(6), "a court should assume the[] veracity" of "well-pleaded factual allegations," but need not accept a plaintiff's conclusory [*8] allegations as true. Iqbal, 129 S.Ct. at 1949-51.

## III. Analysis

---

[2] The Court's *Iqbal* and *Twombly* interpretation of **Rule 12(b)(6)** has been correctly criticized as "contrary to many of the values underlying the Federal Rules" and "that the Court's preoccupation with defense costs is misplaced and its belittlement of case management as a way of cabining those costs is unpersuasive." Arthur Miller, *From Conley to Twombly to Iqbal: a Double Play on the Federal Rules of Civil Procedure*, 60 Duke L.J. 1, 2 (2010).

## III. A *Declaratory Judgment*

The Defendant makes two related arguments for why the Plaintiff's cause of action seeking a declaratory judgment must be dismissed. First, the Defendant says that the Court should dismiss this action since the guaranty agreement specifically prohibits Jewell from bringing the current suit. [Doc. 6 at 4-5.] Second, the Defendant says that the declaratory judgment claim does not currently present a justiciable case or controversy because it is not yet ripe. [Id. at 5-6.] The Court finds both of these arguments persuasive and GRANTS the Defendant's motion to dismiss the Plaintiff's declaratory judgment action without prejudice.

<u>i. Suit Barred by Contractual Provision</u>

First, on the contract issue, the Court finds that the guaranty agreement specifically prohibits suit until there is a default on the underlying obligation. Section 2 of the guaranty agreement reads:

> [N]otwithstanding any other provisions in this Guaranty, no action shall commence against the Guarantor unless and until written notice of default is first made upon the applicable Guarantor's Affiliate and Guarantor pursuant to the requirements [*9] set forth in the Haverhill Contract or, as applicable, the Jewell Contract, and such Guarantor's Affiliate or the Guarantor fails to cure such default within the applicable cure period.

[Doc. 1-3 at 17.] "Issues of contract interpretation are generally matters of law and therefore [are] suitable for disposition on a motion to dismiss." PB Ams., Inc. v. Cont'l Cas. Co., 690 F. Supp. 2d 242, 247 (S.D.N.Y. 2010) (quotation omitted). The interpretation of a contract of suretyship is governed by the same standards which govern the interpretation of contracts in general. General Authority for Supply Commodities, Cairo, Egypt v. Insurance Co. of N.A., 951 F. Supp. 1097 (S.D.N.Y. 1997) (citing General Phoenix Corp. v. Cabot, 300 N.Y. 87, 89 N.E.2d 238, 241 (N.Y. 1949)). Additionally, it is a basic contract principle that when the parties set down their agreement in a clear, complete document, that their writing should be enforced according to its terms. Vermont Teddy

Case No. 1:16-cv-01237-JLK Document 37-1 filed 07/22/16 USDC Colorado pg 13 of 18

Page 4 of 9
2010 U.S. Dist. LEXIS 118455, *9

*Bear Co., Inc. v. 538 Madison Realty Co., 1 N.Y.3d 470, 807 N.E.2d 876, 879, 775 N.Y.S.2d 765 (N.Y. 2004)*. [3]

The plain language of the guaranty agreement prohibits suit against the Guarantor (ArcelorMittal USA) until "written notice of default is first made upon the applicable Guarantor's Affiliate." [Doc. 1-3 at 17.] However, no allegation is made by Jewell that ArcelorMittal Cleveland & Indiana defaulted on the underlying obligation or that any sort of written notice was given to those companies. Indeed, Jewell admits in its complaint that ArcelorMittal Cleveland & Indiana "have continued to pay under the Jewell Coke Supply Agreement and have not refused the shipments of coke by Jewell. [Doc 1 at ¶ 41.]

The Plaintiff attempts to circumvent this provision of the contract by saying that "the provision does not apply to this action [because] Jewell does not sue to enforce [the Defendant's] liability to pay any amount owed . . . Rather, Jewell seeks a declaration of [the Defendant's] obligations under the Guaranty." [Doc. 19 at 5.] However, this argument is belied by the plain language of the contract, which states that "no action shall commence . . . unless and until written notice of default is first made." [Doc. 1-3 at 17.] A [*11] suit for declaratory judgment is "an action" that will determine legal rights and obligations under the guaranty agreement and any natural reading of this provision would include a declaratory judgment action within its reach. Essentially, Jewell is improperly attempting to amend this provision to read that only actions brought specifically to collect on the guaranty are limited. The Court rejects this position.

Since the plain language of this contract prohibits suit against the Defendant until there is a default on the amended purchase agreement, this action is premature. Pursuant to the contract, this action may be appropriately be filed at a later date. Therefore,

the Court finds that the Plaintiff's claim seeking a declaratory judgment should be dismissed without prejudice.

ii. Actual Case or Controversy

Although this cause of action is disposed of by the finding that the plain terms of the contract bars suit, the Court will also consider the Defendant's argument that this suit is not yet ripe.

Federal courts may only adjudicate actual "cases" and "controversies." U.S. Const, art. III, § 2. This constitutional limitation applies to cases brought under the Declaratory Judgment Act. [*12] *Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41, 57 S. Ct. 461, 81 L. Ed. 617 (1937)*; *28 U.S.C. § 2201*. Under Article III of the Constitution, a suit is not a justiciable "case" or "controversy" if it is not yet ripe. "Ripeness is a question of timing," *City Communications, Inc. v. Detroit, 888 F.2d 1081, 1089 (6th Cir. 1989)*, and a "claim is not amenable to judicial process when it is filed too early." *Sch. Dist. v. Sec'y of the United States Dep't of Educ., 584 F.3d 253, 260 (6th Cir. 2009)* (citations omitted).

When a controversy depends on a future or contingent event, a court must carefully analyze whether the dispute is ripe. To determine whether an action is ripe, courts in the Sixth Circuit consider: (1) the likelihood that the alleged harm will come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication on the merits; and (3) the hardship to the parties if judgment is withheld until after the harm occurs. *Adult Video Ass'n v. United States DOJ, 71 F.3d 563, 568 (6th Cir. 1995)*. The Court will consider each of these factors in turn.

On the first factor, the Court finds that the particular harm alleged is speculative, at best. Although ArcelorMittal Cleveland & [*13] Indiana have challenged their obligation to pay the amount owed under the amended purchase agreement, those parties have continued to pay under the agreement and have not given any indication that a default is likely. [Doc. 1 at ¶ 41.] Moreover, the alleged harm - the failure to pay on the amended purchase agreement as currently written - is entirely

---

[3] The Court finds that the choice-of-law provision in the guaranty agreement is valid under Ohio choice-of-law principles. *Tele-SaveMerch. Co. v. Consumers Distrib. Co., Ltd., 814 F.2d 1120, 1122 (6th Cir.1987)*. [*10] The Court will apply New York law to the terms of the contract.

contingent upon the outcome of the pending litigation in *ArcelorMittal Cleveland, Inc. v. Jewell Coke Co., L.P., No. l:10-CV-00362, 2010 U.S. Dist. LEXIS 99132 (N.D. Ohio)*. Thus, for the harm to materialize, Defendant Jewell must first be unsuccessful in that suit. A "claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Winget v. JP Morgan Chase Bank, N.A.., 537 F.3d 565, 582 (6th Cir. 2008)* (citing *Cooley v. Granholm, 291 F.3d 880, 883-84 (6th Cir. 2002)*). Therefore, the Court finds that this factor weighs in favor of finding that the action is not yet fit for review. *Beck v. Gannett Satellite Informational Network Inc., 124 Fed. App'x 311, 324-25 (6th Cir. 2005)*.

The Court finds that the second factor - whether the factual records is sufficiently developed to produce a fair [*14] adjudication on the merits - weighs slightly in favor of the Plaintiff. This suit will largely turn on the intent of the parties in drafting the guaranty agreement; specifically, whether ArcelorMittal USA must guaranty the original terms of the amended purchase agreement, even if the amended purchase agreement is reformed or rescinded. [Doc. 6 at 7-9; Doe. 19 at 6.] The factual record likely could be developed if this claim proceeded to allow the Court to make these determinations.

The third factor - the hardship to the parties if judgment is withheld until after the harm occurs - weighs in favor of the Defendant. Jewell alleges that its business operations will be jeopardized should there be any gap in payment on the amended purchase agreement. [Doc. 19 at 7.] However, this harm is speculative. Indeed, the Plaintiff will suffer no harm unless they are unsuccessful in the underlying lawsuit. The Plaintiff is really alleging that they are faced with great uncertainty because ArcelorMittal Cleveland & Indiana may, in the future, default on the amended purchase agreement. *Nebraska Pub. Power Dist. v. MidAmerican Energy Co., 234 F.3d 1032,1038 (8th Cir. 2000)* (stating harm may validly include [*15] uncertainty).

In this case, however, the uncertainty does not rise to the level of undue hardship. *See Norton v. Ashcroft, 298 F.3d 547, 555 (6th Cir. 2002)*. Specifically, under the express terms of the guaranty agreement, the Plaintiff contractually agreed not to bring suit to enforce payment against ArcelorMittal USA until a notice of default is first filed. [Doc. 1-3 at 17.] Thus, at all times under this contract, Jewell faced the risk of a gap in payment because it agreed not to bring suit until a default occurred. The prospect of having to wait for a default before adjudicating rights under the guaranty agreement is not an unexpected risk and is therefore not an undue hardship. Although Jewell undoubtedly prefers to adjudicate its legal rights without waiting for a potentially harmful gap in payment - an insurance policy of sorts - in reality Jewell currently faces no greater risk of harm than is normally associated with a long-term business contract. The Court finds that no irreparable harm or substantial hardship will result should the Court delay adjudication of the rights of the parties under the guaranty agreement.

Accordingly, after considering whether this action for declaratory [*16] judgment is fit for judicial resolution, the Court finds that the action is not yet ripe. First, ArcelorMittal Cleveland & Indiana did not default or even threaten to default on the underlying contract; second, the need for judicial resolution of the exact nature of the payment guaranteed by the guaranty agreement is entirely contingent on outcome of other pending litigation; and third, the Plaintiff does not currently face any greater risk of harm than is normally associated with a business contract. Thus, the action is not yet ripe and the Court must dismiss the action without prejudice. *Winget, 537 F.3d at 582*. [4]

---

[4] The Court also notes that it leaves the issue of whether it would be justified in declining jurisdiction under the declaratory judgment act unresolved. *28 U.S.C. §2201*. The Declaratory Judgment Act states that a court "may declare the rights and other legal relations of any interested party seeking this declaration." *28 U.S.C. §2201*. The Supreme Court has repeatedly characterized the Declaratory Judgment Act as "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co., 515 U.S. 277, 287, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995)*; [*17] *see also Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 554 (6th Cir. 2008)*. However, since the Court already found that this suit must be dismissed because express terms of the contract bar the current suit and because the suit is not yet ripe, the Court need not decide this issue.

*III.B Negligent Misrepresentation*

The Plaintiff also asserts a claim alleging that the Defendant possessed knowledge in 2008, when the guaranty agreement was signed, that ArcelorMittal Cleveland & Indiana believed that the underlying amended purchase agreement contained a mistake in its pricing formula. [Doc. 1 at ¶¶ 57-65.] The Plaintiff says that the Defendant concealed this information, inducing the Plaintiff to enter into the guaranty agreement. [*Id*.]

As a preliminary matter, the parties agree that New York state law controls with respect to the guaranty agreement. [Doc. 1 at ¶ 50; Doe. 6 at 6; Doe. 19 at 14.] The guaranty agreement provides that "[t]his guaranty and the rights and obligations of Haverhill, Jewell and Guarantor shall be governed by and construed in accordance with the law of the State of New York . . ." [Doc. 1-3 at 19.] Although the parties agree that New York law should apply to the claim [*18] of negligent misrepresentation, the language of the contract does not necessarily suggest such a broad construction.

When a court exercises diversity or supplemental jurisdiction over state law claims, "the choice-of-law rules of the forum state . . . govern the determination whether to enforce the . . . selection of . . . law." *Wallace Hardware Co. v. Abrams, 223 F.3d 382, 391 (6th Cir. 2000)* (citing *Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941)*; *Banek Inc. v. Yogurt Ventures U.S.A., Inc., 6 F.3d 357, 361 (6th Cir. 1993)*. In this case the forum state is Ohio, so Ohio choice of law rules govern in deciding whether this Court will apply New York law as per the choice of law provision in the guaranty agreement.

The Ohio Supreme Court has adopted the Restatement (Second) of Conflict of Laws, which provides:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable [*19] basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of *§ 188*, would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Tele-Save Merch. Co., 814 F.2d at 1122*.

In this case, the Restatement factors favor the application of the parties choice of law provision. Applying New York law would not be adverse or repugnant to Ohio public policy and Ohio does not have a materially greater interest in this suit than does New York. Having determined that the choice of law provision is valid, the Court must now turn to determining the provision's precise scope.

The Sixth Circuit has held that similar provisions apply not only to claims arising under a contract, but also to related tort claims. In *Banek, Inc. v. Yogurt Ventures U.S.A., Inc*., the Sixth Circuit held that a choice of law provision which stated that Georgia law was to govern "all rights and obligations" pertaining to a franchise agreement was "sufficiently broad so as to cover [the [*20] Plaintiffs'] fraud and misrepresentation claims" as well. *6 F.3d 357, 363 (6th Cir. 1993)*. The Court based its holding on the fact that the fraud and misrepresentation claims were "directly" and not "tangentially" related to the franchise agreement. *Id*. Similarly, in *Baumgardner v. Bimbo Food Bakeries Distribution, Inc., 697 F. Supp. 2d 801 (N.D. Ohio 2010)*, the court held that a choice of law provision which stated that "the validity, performance, and interpretation of this agreement shall be controlled and construed in accordance with the laws of New York" was broad enough to apply to claims of tortious interference with contract and unjust enrichment. *697 F. Supp. 2d at 804-06*. The court in *Baumgardner* noted that, while these tort claims were "not explicitly covered" by the contract, they were nevertheless "not tangential" but rather "closely related to

'performance of the agreement.'" *Id. at 806*; *see also Moses v. Bus. Card Express, Inc., 929 F.2d 1131, 1139-40 (6th Cir. 1993)* (holding choice of law provision applicable to fraud and misrepresentation claims when Plaintiffs were not asserting "claims that arose incidentally of the contractual relationship" but rather claims that [*21] "put the validity of the contract in issue.")

In the instant case, the Plaintiffs claim of negligent misrepresentation is not explicitly covered by the choice of law provision, but it is closely related to the performance and underlying negotiation of the contract. Therefore, the Court finds that this claim is subject to the parties' choice of law provision, and as a result, the Court will apply New York law to the claim.

Proceeding to the merits, the Plaintiff alleges that the Defendant possessed knowledge in 2008, when the guaranty agreement was signed, that ArcelorMittal Cleveland & Indiana believed the underlying amended purchase agreement contained a mistake in its pricing formula. [Doc. 1 at ¶¶ 57-65.] The Plaintiff says that the Defendant concealed this information, inducing the Plaintiff to enter into the guaranty agreement and causing resultant damages. [*Id*.] The Defendant argues that the Court should dismiss the Plaintiff's claim of negligent misrepresentation under *Federal Rule of Civil Procedure 12(b)(6)* for failure to state a claim upon which relief can be granted under the applicable New York law. [Doc. 6 at 9.]

"Under New York law, the elements for a negligent misrepresentation [*22] claim are that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Hydro Investors, Inc. v. Trafalgar Power, Inc., 227 F.3d 8, 21 (2d Cir. 2000)*.

Under the first element of the cause of action, "a party must demonstrate that the person making the misrepresentation possessed specialized or unique experience, or the persons involved are in a special relationship of confidence and trust such that reliance on the negligent misrepresentation is justified." *Salesian Soc'y, Inc. v. Nutmeg Partners Ltd., 271 A.D.2d 671, 673, 706 N.Y.S.2d 459 (N.Y.App. Div. 2000)*(citing *Kimmell v. Schaefer, 89 N.Y.2d 257, 675 N.E.2d 450, 454, 652 N.Y.S.2d 715 (N.Y. 1996))*. Establishing a "special relationship" under this element requires showing a fiduciary relationship or some other closer degree of trust beyond an ordinary business relationship. *See H&R Project Associates, Inc. v. City of Syracuse, 289 A.D.2d 967, 969, 737 N.Y.S.2d 712 (N.Y. App. Div. 2001)*.

The [*23] Plaintiff here does not allege that any special relationship existed between the parties. New York courts have consistently held that in the absence of a special relationship an action alleging negligent misrepresentation must be dismissed. *Murphy v. Kuhn, 90 N.Y.2d 266, 682 N.E.2d 972, 974, 660 N.Y.S.2d 371 (N.Y. 1997)*; *Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 788 (2d. Cir. 2003)*; *Stewart v. Jackson & Nash, 976 F.2d 86, 90 (2d Cir. 1992)*. Here, Jewell and ArcelorMittal USA were commercial parties engaged in an arm's length transaction and nothing in the complaint suggests that a special relationship existed between them. *See, e.g. LaSalle Bank v. Citicorp Real Estate, 2003 U.S. Dist. LEXIS 4315, 2003 WL 1461483, at *3-*6 (S.D.N.Y Mar. 21, 2003)* (holding that no special relationship existed between a mortgage loan seller and purchaser where duty to provide accurate information about financial status of companies subject to mortgage arose solely from the operative purchase agreement); *Kimmell, 675 N.E.2d at 454* ("Professionals, such as lawyers and engineers, by virtue of their training and expertise, may have special relationships of confidence and trust with their clients, and in certain situations we have imposed liability for [*24] negligent misrepresentation when they have failed to speak with care").

The Plaintiff alternatively attempts to satisfy this element of the offense by alleging that ArcelorMittal USA possessed specialized knowledge since it was "uniquely situated to attest

to what its affiliates would have known of their business affairs." [Doc. 1 at ¶ 59.] This argument is not persuasive. All that Jewell really alleges is that ArcelorMittal USA possessed superior knowledge of its own internal affairs and the affairs of its affiliates than did Jewell. However, basing a claim of negligent misrepresentation on this sort of knowledge would transform every contract dispute into a negligent misrepresentation claim. *JP Morgan Chase Bank v. Winnick, 350 F.Supp.2d 393, 403 (S.D.N.Y. 2004)* ("Borrowers will almost always have 'specialized' knowledge of the particulars of their businesses, and indeed, of the facts underlying any misrepresentations made in support of desired loan . . ."); *LaSalle, 2003 U.S. Dist. LEXIS 4315, 2003 WL 1461483, at \*3-\*4* (no duty arose from seller's "unique knowledge or access to information" about mortgage status). Accordingly, the Court finds that the Plaintiff fails to plead allegations sufficient to meet **[\*25]** the first element of a cause of action for negligent misrepresentation.

The Defendant also argues that the Plaintiff failed to sufficiently allege facts that would constitute the fifth element of the claim of negligent misrepresentation - reliance resulting in detriment. [Doc. 6 at 13.] Specifically, the Plaintiff says that there is no reliance because the sale of Sparrows Point was mandated by court order and that no damages were suffered because there has been no default on the underlying amended purchase agreement. The Court finds the Defendant's argument persuasive as to damages. As already set forth in this opinion, any cause of action that Jewell might possess should the underlying amended purchase agreement be reformed or rescinded is premature. Likewise, any claim of detriment arising out of this guaranty agreement is also premature and speculative. [5]

Since the Plaintiff's pleadings fail to allege a claim of negligent misrepresentation, the Plaintiff's claim must be dismissed under *Federal Rule of Civil Procedure 12(b)(6)* for failure to state **[\*26]** a claim upon which relief could be granted.

## IV. Conclusion

For the foregoing reasons, Court **GRANTS** the Defendant's motion to dismiss and dismisses all claims against the Defendant. The Court dismisses Count I (declaratory judgment) without prejudice. The Court dismisses Count II (negligent misrepresentation) with prejudice.

IT IS SO ORDERED.

Dated: November 8, 2010

/s/ James S. Gwin

JAMES S. GWIN

UNITED STATES DISTRICT JUDGE

---

[5] The Court need not decide the reliance issue, since the Plaintiff's claim already fails to state this element due to a lack of damages.

**End of Document**