IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-1237-JLK

**ELECTION SYSTEMS & SOFTWARE, LLC**, a Delaware limited liability company; and **HART INTERCIVIC, INC**., a Texas corporation,

     Plaintiffs,

v.

**WAYNE W. WILLIAMS**, in his official capacity as Colorado Secretary of State,

     Defendant.

---

## DEFENDANT'S MOTION FOR ATTORNEYS' FEES UNDER FED. R. CIV. P. 54(d)

---

Defendant Wayne W. Williams, in his official capacity as the Colorado Secretary of State ("the Secretary"), submits this Motion for attorneys' fees under FED. R. CIV. P. 54(d).

### D.C. COLO.LCivR 7.1(a) CERTIFICATION

The Secretary's counsel conferred in good faith with counsel for Plaintiffs regarding the relief requested by this Motion. Although the Secretary's and Plaintiffs' counsel initially attempted to resolve the attorneys' fees issue through settlement, those settlement discussions were ultimately unsuccessful. Plaintiffs' counsel informed the Secretary's counsel on August

31, 2016, that Plaintiffs will oppose any request by the Secretary for reimbursement of his attorneys' fees.

## PROCEDURAL BACKGROUND

Plaintiffs, two vendors of electronic voting systems, initiated this lawsuit on May 23, 2016, to attempt to invalidate new rules promulgated by the Secretary. Their claims included a dormant Commerce Clause claim and four claims based on state law. *See* [Doc. 1]. Simultaneously with submitting their Complaint, Plaintiffs requested that the Court issue a temporary restraining order ("TRO") or preliminary injunction to prevent the Secretary from enforcing his new rules. *See* [Doc. 2]. Shortly thereafter, Plaintiffs also sought and were granted limited expedited discovery from the Secretary. *See* [Docs. 11, 14]. A hearing on Plaintiffs' request for injunctive relief was scheduled for July 27, 2016. [Doc. 18].

With the hearing quickly approaching, the Secretary, his staff, and his counsel moved rapidly to respond to the Complaint's allegations, the request for injunctive relief, and the request for discovery. Recognizing that the Complaint's legal theories failed as a matter of law, the Secretary moved to dismiss the Complaint. [Doc. 21]. Simultaneously, the Secretary also worked to marshal the evidence and facts supporting his position in preparation for

the July 27 hearing, [Docs. 32-1 to 32-10], and to prepare a response in opposition to the request for injunctive relief, [Doc. 32]. What's more, the Secretary's staff worked to respond to Plaintiffs' written discovery requests while also making themselves available for deposition under FED. R. CIV. P. 30(b)(6), all within a span of a few short weeks. *See* [Doc. 11-1].

The hearing proceeded on July 27, 2016. The Court requested oral argument on the Secretary's Motion to Dismiss. Without taking evidence regarding Plaintiffs' preliminary injunction request, the Court ruled from the bench that it would dismiss Plaintiffs' Complaint for the reasons articulated in the Motion to Dismiss. *See* [Doc. 40]. The Court memorialized its verbal ruling shortly thereafter in its written Memorandum Opinion and Order. *See* [Doc. 41].

## ARGUMENT

### I.   Plaintiffs' Complaint was frivolous, unreasonable, and without foundation, justifying an award of attorneys' fees.

A prevailing defendant's right to seek attorneys' fees in a § 1983 case is well-established. *See* 42 U.S.C. § 1988. Section 1988(b) states that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ." *See also* FED. R. CIV. P. 54(d)(2)(B)(ii) (motion for

fees shall "specify the judgment and the statute, rule or other grounds entitling the movant to the award."). The court may make such an award to a prevailing <u>defendant</u> "upon a finding that the plaintiff's action was frivolous, unreasonable, <u>or</u> without foundation, even though not brought in subjective bad faith." *D.A. Osguthorpe Family Partnership v. ASC Utah, Inc.*, 576 Fed. Appx. 759, 763 (10th Cir. 2014) (first emphasis in original) (citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)). A complaint is "frivolous" when it "lacks an arguable basis in either fact or law." *Blakely v. USAA Cas. Ins. Co.*, 633 F.3d 944, 949-50 (10th Cir. 2011).

Here, Plaintiffs' Complaint, while not brought in bad faith, was frivolous, unreasonable and without foundation. This standard justifying attorneys' fees is satisfied as to both the dormant Commerce Clause claim and the state law claims.

***Dormant Commerce Clause Claim***. The crux of Plaintiffs' dormant Commerce Clause claim was that the Secretary's new rules impose heightened technological requirements that preclude Plaintiffs from selling their existing voting systems to Colorado counties, damaging Plaintiffs' business. Compl. [Doc. 1], p. 16, ¶ 68.b (alleging the Secretary discriminated against Plaintiffs "by ensuring they cannot meet the new requirements and

therefore are unable to continue operating as voting system vendors in Colorado."). Plaintiffs argued that the Secretary's new rules favored an allegedly Colorado-based business, Dominion Voting Systems, Inc. *See id.* at 2, ¶ 6. But as this Court correctly determined, the market participant exception causes the restraints of the Commerce Clause to "fall away." Order [Doc. 41], p. 10. "[N]othing about the Founders' exclusive grant of regulatory authority over interstate commerce precludes Colorado from 'restrict[ing] its trade to its own citizens or businesses within the state.'" *Id.* at 11 (citing *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 808 (1976)). Accordingly, this Court found that Plaintiffs' claim is "conceptually ill-fitted" to the dormant Commerce Clause rubric. *Id.* at 8. "Under these circumstances," the Court said, "the anticompetitive effects of [the] rulemaking in Colorado is so tangential and miniscule in the constitutional scheme of things *as to be entirely inactionable.*" *Id.* at 7-8 (emphasis added).

The Court's finding that Plaintiffs' dormant Commerce Clause claim is "entirely inactionable" supports a finding that the claim is frivolous, unreasonable and without foundation. Plaintiffs' own Complaint and their briefing in this case make clear that this standard is satisfied. For example, the Amended Complaint removes any doubt, as a factual matter, that the

Secretary is participating in the voting systems market. It states that the

Secretary pays "50% of the [counties'] implementation, training and program

management fees" associated with transitioning to a complying vendor. Am.

Compl. [Doc. 35] ¶ 46. It goes on to assert that the Secretary negotiated

pricing "on the counties' behalf" for complying voting systems, *id.* ¶ 45, by

"leveraging the state's negotiating and purchasing power . . . to negotiate

standard pricing and support terms" for the counties, *id.* ¶ 42. This is the

very heart of market participation.

     Similarly, the Plaintiffs' briefing implicitly recognizes that the market

participant exception applies. Plaintiffs cite no case in any of their three legal

briefs, and the Secretary is aware of none, where a government entity that

purchased goods from an in-state vendor was then unable to take advantage

of the protections under the market participant exception. [Doc. 2, 33, 36].

Nor is the market participant exception a new doctrine. It has been

recognized by the U.S. Supreme Court since at least 1976. *See Hughes*, 426

U.S. at 810. Thus, Plaintiffs' decision to bring this claim, despite the market

participant exception being well-established, supports a finding that the

claim is frivolous and without foundation. *See, e.g.*, *Betz v. United States*, 753

F.2d 834, 835 (10th Cir. 1985) (awarding attorneys' fees and double costs to

government because it "is well settled" that the Fifth Amendment general objection is not a valid claim of constitutional privilege).

***State Law Claims***. This Court correctly summarized Plaintiffs' state law claims as follows: they "challenge the Secretary's actions in promulgating the new Voting Systems Rules and in failing to certify their machines for purchase by political subdivisions under state law. Specifically, Plaintiffs claim the new Voting Systems Rules are invalid and that the Secretary's actions violate the state election code. For their relief, Plaintiffs ask that [the Court] declare the Secretary's actions unlawful, invalidate the new rules and prevent the Secretary from implementing them, and compel the Secretary to approve their pending certification applications." Order [Doc. 41], p. 12.

This Court recognized that "[a] more perfect storm" of reasons to decline federal jurisdiction on abstention grounds "is difficult to imagine." *Id.* And yet, additional reasons continued to stack up. Indeed, the Court went on to acknowledge that:

- Colorado "has limited judicial review of administrative rulemakings to state courts." *Id.* at 13;

- Plaintiffs "failed to seek review within the requisite 35 days after the agency action became effective." *Id.* at n.1;

- "[T]wo challenges to the new Voting Systems Rules were already pending in state court." *Id.* at 6-7;

7

- "Colorado's interest in adjudicating Plaintiffs' state law challenges to the Secretary's action is paramount, [and] perhaps exclusive[.]" *Id.* at 13; and

- Plaintiffs' state law claims could "disrupt[ ] Colorado's efforts to fulfill its constitutionally mandated and exclusive duty to manage the time, place, and manner of elections[.]" *Id.* at 13.

Each of these reasons serves to highlight why Plaintiffs' decision to assert their state law claims in a federal forum was frivolous, unreasonable, and without foundation. *See D.A. Osguthorpe*, 576 Fed. Appx. at 763. To be sure, Plaintiffs appear to have asserted their state law claims in this federal forum precisely because they were time-barred from doing so in the prescribed state court forum. *See* Order [Doc. 41], p. 13 n.1; Reply in Support of Mot. to Dismiss [Doc. 37], pp. 21-22. As recognized by other courts, this type of strategic forum shopping should not be condoned and is properly a basis to award attorneys' fees. *Cf. Domingo Cambeiro Prof'l Corp. v. Advent*, 2000 U.S. App. LEXIS 3652 (9th Cir. 2000)[1] (affirming defendant's award of attorneys' fees where plaintiff initially lost in federal court, and then re-filed "virtually identical" claims in state court that were then removed). Again, Plaintiffs point to no case where a party in a state rulemaking proceeding

---

[1] All unpublished cases cited herein are attached as Exhibit A.

was able to successfully assert state law claims in a federal court despite the availability of a prescribed rulemaking challenge procedure in state court. This lack of supporting precedent is all the more troubling because Plaintiffs are sophisticated corporate entities represented by counsel, not *pro se* litigants who are unfamiliar with the litigation process. *Cf. Bluff v. Brass*, No. 09-cv-00481, 2009 U.S. Dist. LEXIS 104806, at *14-15 (D. Utah Nov. 10, 2009) (Kane, J., for the District of Colorado, sitting by designation) (declining to award fees because the case was *pro se* plaintiff's first attempt to litigate issues, but warned that a fee award could result from the plaintiff's filing of a substantially similar lawsuit).

Accordingly, Plaintiffs' Complaint was frivolous, unreasonable and without foundation, justifying an award of attorneys' fees to the Secretary.

## II.     The Secretary's requested attorneys' fees were reasonably incurred.

Once the Court determines that an attorney fee award is appropriate, § 1988(b) gives the Court discretion to award the prevailing party "reasonable attorney's fees." 42 U.S.C. § 1988(b). A court's evaluation of the reasonableness of a fee request proceeds along the following three steps: (1) determine whether the number of hours are reasonable; (2) determine whether the hourly rate is reasonable; and (3) multiply the reasonable hourly

rate by the number of hours reasonably expended to determine the "lodestar" amount. *See Ramos v. Lamm*, 713 F.2d 546 (10th Cir. 1983), *overruled on other grounds*, *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 725 (1987).

### A.    Reasonableness of Hours Expended.

The first step in determining a fee award is to determine the number of hours reasonably spent by counsel for the party seeking the fees. *Malloy v. Monahan*, 73 F.3d 1012, 1017 (10th Cir. 1996); *Ramos*, 713 F.2d at 553. Factors considered in a reasonableness determination include: (1) whether the amount of time spent on a particular task appears reasonable in light of the complexity of the case, the strategies pursued, and the responses necessitated by an opponent's maneuvering; (2) whether the amount of time spent is reasonable in relation to counsel's experience; and (3) whether the billing entries are sufficiently detailed, showing how much time was allotted to a specific task. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, No. 09-cv-00717-CMA-BNB, 2011 U.S. Dist. LEXIS 90420, *5-6 (D. Colo. Aug. 15, 2011).

The prevailing party may also properly obtain fees for time spent working on the motion requesting fees. *See Glass v. Pfeffer*, 849 F.2d 1261,

1266 n.3 (10th Cir. 1988) (concluding that "it is obviously fair to grant a fee

for time spent litigating the fee issue . . . since it is the adversary who made

the additional work necessary") (quoting *Prandini v. Nat'l Tea Co.*, 585 F.2d

47, 54 n.8 (3d Cir. 1978)).

Here, the attached timekeeping report from the Colorado Attorney

General's Office and the sworn declarations from the Secretary's counsel

establish that the time spent defending this lawsuit was reasonable. *See* Exs.

B-1 (Morrill declaration); B-2 (Sullivan declaration); B-3 (Jackson

declaration); B-4 (timekeeping report). The legal work—totaling 512.60 hours

of attorney time—included but was not limited to:

- Researching and preparing a Response to the Motion for a Temporary Restraining Order and/or Preliminary Injunction. *See* [Doc. 32].

- Researching and preparing a Motion to Dismiss, [Doc. 21], and Reply in support thereof, [Doc. 37].

- Taking the depositions of Plaintiffs' two corporate representatives under FED. R. CIV. P. 30(b)(6), and defending the depositions of two representatives from the Secretary's office, also under FED. R. CIV. P. 30(b)(6).

- Preparing and negotiating the terms of a protective order to facilitate the exchange of sensitive and confidential material. *See* [Docs. 17 & 24].

11

- Responding to requests for production under FED. R. CIV. P. 34(b)(1), which required locating, reviewing, and producing approximately 3,500 documents. *See* [Doc. 11-1].

- Propounding written requests for production, and reviewing approximately 2,500 documents produced in response thereto. *See* [Doc. 19].

- Preparing for the July 27, 2016 hearing, including preparation for both oral argument on the Secretary's Motion to Dismiss and an evidentiary presentation on Plaintiffs' Motion for a Temporary Restraining Order and/or Preliminary Injunction. *See* [Doc. 40]. The latter included the preparation of both witness testimony and supporting affidavits/declarations.

- Negotiating with opposing counsel regarding the Secretary's Bill of Costs and Motion for Attorneys' Fees, and preparing pleadings requesting both from the Court.

In light of the Plaintiffs' request for preliminary injunctive relief, the bulk of the above work was completed on an accelerated nine-week schedule, thus necessitating the involvement of three attorneys to accomplish all necessary tasks. Where appropriate, tasks were delegated to in-house attorneys and staff at the Secretary's office. The Secretary does not seek reimbursement for the time expended by his in-house staff.

Accordingly, as demonstrated by the attached timekeeping report and sworn declarations, the time spent defending this matter was reasonable.

### B. Reasonableness of the Hourly Rate.

The second step is determining a reasonable hourly rate of compensation. *Ramos*, 713 F.2d at 555. "A reasonable rate is the prevailing market rate in the relevant community." *Malloy*, 73 F.3d at 1018 (citing *Blum*, 465 U.S. at 897). Public sector attorneys should be assigned a billing rate equal to their counterparts in expertise in private practice. *See Ramos*, 713 F.2d at 555.

Based on case law from this jurisdiction, a conservative hourly rate in 2016 for the Secretary's counsel, with their background and experience, is $350 per hour for Ms. Morrill (14 years experience) and $300 per hour for both Mr. Sullivan (8 years experience) and Mr. Jackson (5 years experience). *See Home Loan Investment v St. Paul Mercury Insur. Co.*, 78 F. Supp. 3d 1307, 1318 (D. Colo. 2014) (awarding $375 per hour to 11-year attorney); *see also QFA Royalties LLC v. Q of O, LLC*, No. 15-cv-00461-CMA-MJW, 2016 U.S. Dist. LEXIS 30845, *8 (D. Colo. Mar. 10, 2016) (awarding $275 per hour to attorney with 5 years experience); *Rasmussen v. Thorne*, No. 13-cv-02557-CMA-CBS, 2015 U.S. Dist. LEXIS 103341, *20-21 (D. Colo. Aug. 6, 2015) (awarding $350 per hour to "experience[d]" government attorney in Denver

13

with § 1983 defense practice); *Brokers' Choice*, 2011 U.S. Dist. LEXIS 90420, *20 & 25 (awarding $320 per hour to attorney with 6 years experience).

Other indicia, such as office size and location, also render these requested hourly rates reasonable. The Colorado Bar Association's 2012 Economic Survey Snapshot states that, in 2011, attorneys practicing in firms with 50 or more attorneys billed between $186 per hour (25th percentile) and $356 per hour (75th percentile). *See* Ex. C, p. 15. Similarly, attorneys with offices in downtown Denver billed between $185 per hour (25th percentile) and $325 per hour (75th percentile). *See id*. The Colorado Attorney General's Office, with its downtown Denver location and approximately 250 attorneys, falls squarely into these categories. And, given the passage of time since the 2012 Economic Survey Snapshot, the requested hourly rates for Ms. Morrill ($350) and Messrs. Sullivan and Jackson ($300) are reasonable and consistent with the current market rates.

### C.    Calculating the lodestar amount.

The third step consists of multiplying the reasonable hourly rate by the number of hours reasonably expended to determine the "lodestar" amount. *Brokers' Choice*, 2011 U.S. Dist. LEXIS 90420, *7 (citing *Hensley*, 461 U.S. at 433).

Based on the foregoing, the Secretary calculates his fee request as

follows:

| Timekeeper | Hourly rate | Hours | Total |
|---|---|---|---|
| LeeAnn Morrill | $350 | 91.50 | $32,025.00 |
| Grant Sullivan | $300 | 230.10 | $69,030.00 |
| Christopher Jackson | $300 | 191.00 | $57,300.00 |
| | | | **Grand total:** **$158,355.00** |

## CONCLUSION

The Secretary respectfully requests that the Court grant this Motion,

award him $158,355.00 in attorneys' fees, and grant such other and

appropriate relief that the Court deems just.

Respectfully submitted this 16th day of September, 2016.

CYNTHIA H. COFFMAN
Colorado Attorney General

*s/ Grant T. Sullivan*
LEEANN MORRILL, No. 38742*
First Assistant Attorney General
GRANT T. SULLIVAN, No. 40151*
Assistant Solicitor General
CHRISTOPHER JACKSON, No. 49202*
Assistant Attorney General
*Counsel of Record
*Counsel for the Secretary*

Public Officials Unit
State Services Section
1300 Broadway, 6th Floor
Denver, CO 80203
Phone:  (720) 508-6000
Fax:  (720) 508-6041
Email:  leeann.morrill@coag.gov
        grant.sullivan@coag.gov
        christopher.jackson@coag.gov

16

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2016, I served a true and complete copy of the **DEFENDANT'S MOTION FOR ATTORNEYS' FEES UNDER FED. R. CIV. P. 54(d)** upon all parties through ECF-file and serve or as indicated below:

Thomas P. McMahon
Aaron D. Goldhamer
JONES & KELLER, P.C.
1999 Broadway, Ste. 3150
Denver, CO 80202
tmcmahon@joneskeller.com
agoldhamer@joneskeller.com
*Attorneys for Plaintiffs*

*s/ Terri Connell*
Terri Connell