

**User Name:** Grant Sullivan
**Date and Time:** Sep 15, 2016 18:23
**Job Number:** 37132478

## Documents (5)

1. _Domingo Cambeiro Prof'l Corp. v. Advent, 2000 U.S. App. LEXIS 3652_
   **Client/Matter:** FBXLD
   **Search Terms:**
   **Search Type:**
2. _Bluff v. Brass, 2009 U.S. Dist. LEXIS 104806_
   **Client/Matter:** FBXLD
   **Search Terms:**
   **Search Type:**
3. _Brokers' Choice of Am., Inc. v. NBC Universal, Inc., 2011 U.S. Dist. LEXIS 90420_
   **Client/Matter:** FBXLD
   **Search Terms:**
   **Search Type:**
4. _QFA Royalties LLC v. Q of O, LLC, 2016 U.S. Dist. LEXIS 30845_
   **Client/Matter:** FBXLD
   **Search Terms:**
   **Search Type:**
5. _Rasmussen v. Thorne, 2015 U.S. Dist. LEXIS 103341_
   **Client/Matter:** FBXLD
   **Search Terms:**
   **Search Type:**

 Neutral
As of: September 15, 2016 6:23 PM EDT

## *Domingo Cambeiro Prof'l Corp. v. Advent*

United States Court of Appeals for the Ninth Circuit

February 16, 2000; March 7, 2000, Filed

No. 99-15637

**Reporter**

2000 U.S. App. LEXIS 3652; Copy. L. Rep. (CCH) P28,037

DOMINGO CAMBEIRO PROFESSIONAL CORPORATION, Plaintiff-Appellant, v. MARK ADVENT; TRI-M HOLDINGS, INC., Defendants-Appellees.

**Notice: [*1]** RULES OF THE NINTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**Subsequent History:** Reported in Table Case Format at: *2000 U.S. App. LEXIS 14833*.

**Prior History:** Appeal from the United States District Court for the District of Nevada. D.C. No. CV-S-98-779-JBR. Johnnie B. Rawlinson, District Judge, Presiding.

**Disposition:** AFFIRMED.

## LexisNexis® Headnotes

Civil Procedure > Remedies > Costs & Attorney Fees > General Overview

Civil Procedure > ... > Attorney Fees & Expenses > Basis of Recovery > Statutory Awards

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

Copyright Law > ... > Damages > Types of Damages > Costs & Attorney Fees

*HN1* A district court's decision regarding the award of attorney fees pursuant to *17 U.S.C.S. § 505* of the Copyright Act is reviewed for abuse of discretion.

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

Criminal Law & Procedure > ... > Standards of Review > Abuse of Discretion > General Overview

*HN2* Reversal for abuse of discretion is not appropriate unless this court has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors. Any underlying findings of fact are reviewed for clear error.

Civil Procedure > Remedies > Costs & Attorney Fees > General Overview

*HN3* Prevailing plaintiffs and prevailing defendants are to be treated alike, but attorney fees are to be awarded to prevailing parties only as a matter of the court's discretion. There is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised.

Civil Procedure > Remedies > Costs & Attorney Fees > General Overview

Copyright Law > ... > Damages > Types of Damages > Costs & Attorney Fees

*HN4* Frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence, are appropriate

EXHIBIT A

2000 U.S. App. LEXIS 3652, *1

factors in determining an attorney fees award so long as such factors are faithful to the purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in an evenhanded manner.

**Counsel:** For DOMINGO CAMBEIRO PROFESSIONAL CORPORATION, Plaintiff - Appellant: Bradley N. Boodt, Esq., GORDON & SILVER, Joseph S. Kistler, Esq., GORDON & SILVER LTD, Las Vegas, NV.

For MARK ADVENT, TRI-M HOLDINGS, INC., Defendants - Appellees: Michael Barbee, HUGHES, HUBBARD & REED, Los Angeles, CA.

For MARK ADVENT, Defendant - Appellee: Thomas Rondeau, Esq., GOOLD, PATTERSON, DEVORE & RONDEAU, Las Vegas, NV.

**Judges:** Before: B. FLETCHER, CANBY, O'SCANNLAIN, Circuit Judges.

## Opinion

MEMORANDUM [1]

Plaintiff-Appellant, Domingo [*2] Cambeiro Professional Corporation ("Cambeiro"), an architecture firm, was invited by defendants to submit a design proposal for a shopping center with a "New York theme." Under a confidentiality agreement, Cambeiro prepared and submitted an architectural rendering along with a scroll of drawings depicting a single commercial building with an integrated structure and facade based on the skyline of New York City.

Although Cambeiro made two well-received presentations of the rendering and scroll to defendants, other architects were brought in when defendants decided to build a New York theme hotel-casino. Cambeiro's infringement suit against

defendants alleged that the "New York-New York Hotel" eventually constructed in Las Vegas (as well as the rendering of another architect), infringed Cambeiro's rights in the rendering and scroll prepared for the proposed shopping center.

Cambeiro's original complaint asserted causes of action for conversion and unjust enrichment, among other state law claims. The district court dismissed these causes of action on the ground that they were preempted by the Copyright Act since both arose from the alleged modification and use of Cambeiro's works in [*3] the New York Hotel project. After the court granted summary judgment on the copyright claim, Cambeiro filed a new complaint in state court, once again asserting causes of action for conversion and unjust enrichment. Defendants removed the case to federal court and filed a motion to dismiss the conversion and unjust enrichment claims based on res judicata and the court's earlier finding of preemption. After denying Cambeiro's motion to remand, the court granted the motion to dismiss, observing that both claims were "virtually identical" to the claims asserted in the original federal complaint. Defendants then moved for attorney's fees under *17 U.S.C. § 505*. The court awarded fees on the ground that plaintiff's attempt to relitigate preempted claims was objectively unreasonable. We have jurisdiction under *28 U.S.C. § 1291*. We affirm.

## I.

*HN1* A district court's decision regarding the award of attorney fees pursuant to *§ 505* of the Copyright Act is reviewed for abuse of discretion. *Smith v. Jackson, 84 F.3d 1213, 1221 (9th Cir. 1996)*. "Reversal *HN2* for abuse of discretion is not appropriate unless this court has a definite [*4] and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Id.* (citing *Washington State Dep't of Transp. v. Washington Natural Gas Co., 59 F.3d 793, 805 (9th Cir. 1995))*. Any underlying findings of fact are reviewed for clear error. *Id.*

---

[1] This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by *Ninth Circuit Rule 36-3*.

EXHIBIT A

2000 U.S. App. LEXIS 3652, *4

In *Fogerty v. Fantasy, Inc.*, the Supreme Court rejected the British Rule as well as the "dual standard" in favor of an "evenhanded approach" toward fee requests in copyright cases:

> **HN3** Prevailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion. There is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised . . . .

*510 U.S. 517, 534, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994)* (internal quotations omitted). In a footnote, the court observed that "'frivolousness, **HN4** motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence,'" are appropriate factors **[*5]** "so long as such factors are faithful to the purposes of the Copyright Act

and are applied to prevailing plaintiffs and defendants in an evenhanded manner." *Id. at 534 n.19* (quoting *Lieb v. Topstone Indus., Inc., 788 F.2d 151, 156 (3d Cir. 1986))*; *see also Entertainment Research Group, Inc. v. Genesis Creative Group, Inc., 122 F.3d 1211, 1229 (9th Cir. 1997)* (reciting and following *Fogerty/Lieb* factors).

The district court's order granting fees to defendants held that "including the two claims in their state complaint after this Court held they were preempted was objectively unreasonable." Cambeiro attempts to defend its conduct by arguing the merits of preemption and removal jurisdiction. However, given the doctrine of res judicata and the clear implication of the court's prior ruling on preemption, we agree with the district court that Cambeiro's decision to refile in state court was objectively unreasonable. Accordingly, the district court's grant of attorney fees to defendants is **AFFIRMED**.

**End of Document**

Grant Sullivan

EXHIBIT A


Neutral
As of: September 15, 2016 6:23 PM EDT

## *Bluff v. Brass*

United States District Court for the District of Utah, Central Division

November 10, 2009, Decided; November 10, 2009, Filed

Civil Action No. 09-cv-00481-JLK

**Reporter**
2009 U.S. Dist. LEXIS 104806; 2009 WL 3764079

FEROSA BLUFF (Pro Se), Plaintiff, v. , Attorney, Defendant.

**Prior History:** *State v. Bluff, 2002 UT 66, 52 P.3d 1210, 2002 Utah LEXIS 93 (2002)*

**Counsel:** **[\*1]** Ferosa Bluff, Plaintiff, Pro se, DRAPER, UT.

For Edward K. Brass, Defendant: Edward K. Brass, LEAD ATTORNEY, SALT LAKE CITY, UT.

**Judges:** , Senior United States District Judge. [1]

**Opinion by:**

## Opinion

ORDER OF DISMISSAL

Plaintiff, Ferosa Bluff, a citizen of Utah, initiated the instant action on May 27, 2009, by filing a *pro se* civil rights complaint in the United States District Court for the District of Utah (District of Utah), Central Division. On August 13, 2009, the action was reassigned to me, after the District Judges for the District of Utah recused from the case.

*Background*

On October 29, 1998, Ms. Bluff, Suzanne Federowicz and Andrew G. Federowicz were charged in Salt Lake County District Court with

criminal homicide, child abuse and sexual abuse of a child. The charges stemmed from the death of Rebecca Bluff, Ms. Bluff's four year old daughter.

Ms. Federowicz was represented by Ronald J. Yengich, and the charges against Ms. Federowicz were dismissed prior to trial. After a four day jury trial, Ms. Bluff and Mr. Federowicz were convicted of the charges against them on July **[\*2]** 16, 1999. Ms. Bluff was represented by Defendant Edward K. Brass during the trial and on direct appeal.

The court dockets [2] for Ms. Bluff and Mr. Federowicz reflect their jury trials and subsequent convictions, but also include docket entries reflecting that Ms. Bluff and Mr. Federowicz were convicted by guilty pleas. These docket entries are apparently due to a clerical error.

Ms. Bluff's conviction was affirmed on direct appeal, and the United States Supreme Court denied her certiorari petition. *See State v. Bluff, 2002 UT 66, 52 P.3d 1210 (Utah 2002)*, cert. denied, 537 U.S. 1172, 123 S. Ct. 999, 154 L. Ed. 2d 914 (2002).

Ms. Bluff filed a petition for post-conviction relief in state court, which was denied. The Utah Court of Appeals affirmed, and the Utah Supreme Court and the United States Supreme Court denied certiorari. *See Bluff v. State, 2004 UT App 383, 2004 WL*

---

[1] The Honorable , Senior United States District Judge for the District of Colorado, sitting by designation.

[2] The Court may take judicial notice of the court proceedings in Ms. Bluff's criminal case and any subsequent litigation in the course of ruling on a motion to dismiss pursuant to *Fed. R. Civ. P. 12(b)(6)*. *See, e.g., Pace v. Swerdlow, 519 F.3d 1067, 1073 (10th Cir. 2008)* (collecting cases).

EXHIBIT A

*2404333 (Utah App. Oct. 28, 2004)* (unpublished decision), *cert. denied, 109 P.3d 804 (Utah 2005)*, [*3] and *cert. denied, 546 U.S. 880, 126 S. Ct. 176, 163 L. Ed. 2d 181 (2005)*.

Ms. Bluff filed the instant action in the District of Utah on May 27, 2009. The Court notes that the Complaint consists of 102 pages, and is largely a catalogue of grievances against Defendant Brass and other attorneys, interspersed with various documents pertaining to Ms. Bluff's criminal case. Ms. Bluff does not provide "a short and plain statement of [her] claim[s] showing that the pleader is entitled to relief," pursuant to *Federal Rule of Civil Procedure 8*. Nonetheless, in general, Ms. Bluff appears to assert that she was convicted by a guilty plea which she did not enter, and that Defendant Brass engaged in a conspiracy with other attorneys, in order to deny Ms. Bluff her right to a fair trial. Ms. Bluff seeks $ 10,0400,00 in damages, in addition to the confiscation of Defendant Brass' license to practice law. Complaint at 99-100.

Defendant filed a motion to dismiss pursuant to *Fed. R. Civ. P. 12(b)(6)* on July 15, 2009, and a memorandum in support of the motion to dismiss on August 4, 2009. Plaintiff filed a response to the motion to dismiss on August 10, 2009, a memorandum in support of her response on August 17, 2009, and a second memorandum [*4] in support of her response on September 2, 2009.

*Legal Standard*

Under *Fed. R. Civ. P. 12(b)(6)*, the Court may dismiss for failure to state a claim upon which relief can be granted when the complaint contains insufficient allegations of fact "to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)*, or when an issue of law is dispositive, *See Neitzke v. Williams, 490 U.S. 319, 326, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)*. "Factual allegations must be enough to raise a relief above the speculative level." *Twombly,*

*127 S.Ct. at 1965*. "The complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)*. Complaints that are no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly, 127 S.Ct. at 1965*.

All factual allegations pled in the complaint, other than conclusory ones, are accepted as true and are construed in the light most favorable to the plaintiff. *Coosewoon v. Meridian Oil Co., 25 F.3d 920, 924 (10th Cir. 1994)*; [*5] *Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991)*. When evaluating a motion to dismiss for failure to state a claim, the Court cannot consider information outside the complaint without converting the motion to one for summary judgment. *Peterson v. Jensen, 371 F.3d 1199, 1202 (10th Cir. 2004)*.

Allegations that are not supported by facts may not be offered or considered. *Fry Bros. Corp. v. Dep't of Hous. and Urban Dev., 614 F.2d 732, 733 (10th Cir.1980)*; *Maher v. Durango Metals, Inc., 144 F.3d 1302, 1304 (10th Cir.1998)*. The Court, however, is not to assume that the Plaintiff "can prove facts that [she] has not alleged or that the [D]efendant[] [has] violated the state laws in ways that have not been alleged." *Assoc. Gen. Contractors v. California State Council of Carpenters, 459 U.S. 519, 526, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983)*.

Finally, the Court must construe the Complaint liberally because Ms. Bluff is not represented by an attorney. *See Haines v. Kerner, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)*; *Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)*. Therefore, if the Complaint reasonably can be read "to state a valid claim on which the plaintiff could prevail, [the Court] should do so despite the plaintiff's failure [*6] to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his

unfamiliarity with pleading requirements." *Hall, 935 F.2d at 1110*. However, the Court should not be an advocate for a *pro se* litigant. *See id.*

## Discussion

Ms. Bluff asserts jurisdiction pursuant to *42 U.S.C. § 1985*, *18 U.S.C. § 241* and *42 U.S.C. § 1983*. The Complaint also appears to assert numerous state law claims, including breach of contract, negligence and breach of fiduciary duty. The Court assumes that Ms. Bluff is asserting supplemental jurisdiction over her state law claims pursuant to *28 U.S.C. § 1367*. However, the Complaint and this action will be dismissed, for the reasons set forth below.

First, Ms. Bluff apparently alleges a conspiracy to interfere with the administration of justice in federal and state courts pursuant to *42 U.S.C. § 1985(2)*. Complaint at 54. *Section 1985(2)* contains four clauses which create four distinct causes of action. *Wright v. No Skiter, Inc., 774 F.2d 422, 425 (10th Cir. 1985)* (citations omitted). These are:

A. If two or more persons conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United **[*7]** States from attending such court, or from testifying to any matter pending therein, . . . or

B. to injure such party or witness in his person or property on account of his having so attended or testified, or

C. if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or

D. to injure him or his property for lawfully enforcing . . . the right of any person, or class of persons, to the equal protection of the laws.

*Id.* (citation omitted). Ms. Bluff specifically cites to Clause C of 1985(2) in her Complaint. *See*

Complaint at 54. However, a cause of action under Clause C requires that the conspiracy be class-based. *See Griffin v. Breckenridge, 403 U.S. 88, 91, 91 S. Ct. 1790, 29 L. Ed. 2d 338 (1971)* ("The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."); *see also Kush v. Rutledge, 460 U.S. 719, 725-26, 103 S. Ct. 1483, 75 L. Ed. 2d 413 (1983)*; *Steinert v. Winn Group, Inc., 440 F.3d 1214, 1225 n. 13 (10th Cir. 2006)*. **[*8]** The Tenth Circuit narrowly construes the requirement of class-based animus, *Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir. 1993)*, and generally courts do not find such motivation "in cases involving allegations of classes that were not readily recognizable or that tended to be defined by one particular activity or by plaintiff's individual situation and that were not traditionally among those groups protected by the civil rights laws." *Silkwood v. Kerr-McGee Corp., 460 F.Supp. 399, 405 (W.D. Okla. 1978)*. Ms. Bluff does not allege that she is a member of a class protected by *section 1985* nor does she allege discriminatory animus. Accordingly, Ms. Bluff has failed to state a claim under *42 U.S.C. § 1985(2)*.

Second, to the extent Ms. Bluff is attempting to initiate a federal criminal prosecution pursuant to *18 U.S.C. §§ 241* and *242*, she seeks to invoke the authority of United States attorneys under *28 U.S.C. § 547* to prosecute for offenses against the United States. She may not do so. Courts universally endorse the principle that private citizens cannot prosecute criminal actions. *See, e.g., Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989)* (per curiam); *Connecticut Action Now, Inc. v. Roberts Plating Co., 457 F.2d 81, 86-87 (2d Cir. 1972)* **[*9]** ("It is a truism, and has been for many decades, that in our federal system crimes are always prosecuted by the Federal Government, not as has sometimes been done in Anglo-American jurisdictions by private complaints."); *Winslow v. Romer, 759 F. Supp. 670, 673 (D. Colo. 1991)* ("Private citizens generally have no standing to

EXHIBIT A

2009 U.S. Dist. LEXIS 104806, *9

institute federal criminal proceedings."). Therefore, to the extent she is attempting to do so, Ms. Bluff lacks standing to maintain a criminal action, and she cannot state a claim under *18 U.S.C. § 241*.

In addition, the only defendant in this action is Edward K. Brass, the lawyer that represented Ms. Bluff during the course of her criminal case. However, *section 1983* "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert, 526 U.S. 286, 290, 119 S. Ct. 1292, 143 L. Ed. 2d 399 (1999)*. "[T]he purpose of *§ 1983* is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole, 504 U.S. 158, 161, 112 S. Ct. 1827, 118 L. Ed. 2d 504 (1992)*. "[T]he under-color-of-state-law element of *§ 1983* excludes from its reach merely **[*10]** private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999)* (internal quotation marks omitted). The only proper defendants in a *§ 1983* action are those who "'represent [the state] in some capacity, whether they act in accordance with their authority or misuse it.'" *NCAA v. Tarkanian, 488 U.S. 179, 191, 109 S. Ct. 454, 102 L. Ed. 2d 469 (1988)* (quoting *Monroe v. Pape, 365 U.S. 167, 172, 81 S. Ct. 473, 5 L. Ed. 2d 492 (1961))*.

In order to satisfy the under-color-of-state-law element, Ms. Bluff must show that she was deprived of a federal right through conduct that is "fairly attributable to the State." *Lugar v. Edmondson Oil Co., 457 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982)*. In other words,

the party charged with the deprivation must be a person who may fairly be said to be a state actor . . . because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Id.*

Ms. Bluff does not allege that Defendant Brass was acting under color of state law. Actually, Ms. Bluff acknowledges that Defendant Brass is "a private attorney and not acting under Color of State [law]." Complaint at 2. The fact that Ms. Bluff **[*11]** believes her rights have been violated because Defendant Brass was "acting in collusion" with other attorneys involved in her criminal case does not demonstrate that she was denied equal protection or due process by a person acting under color of state law. *See Beedle v. Wilson, 422 F.3d 1059, 1073 (10th Cir. 2005)* (holding "[t]he conduct of an attorney acting in his professional capacity while representing his client does not constitute action under color of state law for the purposes of *§ 1983*." (quotation omitted)). Further, "when a plaintiff attempts to assert the state action required for a *§ 1983* action against private actors based on a conspiracy with government actors, mere conclusory allegations with no supporting factual averments are insufficient." *Id.* (quotation omitted). Here, Ms. Bluff's conclusory allegations are insufficient to demonstrate that Defendant Brass entered into a conspiracy with the other lawyers involved in her criminal case. Therefore, because Ms. Bluff fails to allege facts that demonstrate Defendant Brass was acting under color of state law, she has failed to state a claim under *§ 1983*.

Based upon the above findings, Ms. Bluff has failed to establish **[*12]** a basis for the Court's jurisdiction. Ms. Bluff's complaint also suffers from other deficiencies. Ms. Bluff seeks money damages for an alleged wrongful criminal proceeding in state court. However, Ms. Bluff may not recover damages for claims that challenge the validity of her conviction and sentence. *See Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994)*.

In *Heck,* the United States Supreme Court held that if a judgment for damages favorable to a prisoner in a *42 U.S.C. § 1983* action necessarily would imply the invalidity of her criminal conviction or

Grant Sullivan                                                    EXHIBIT A

sentence, the *§ 1983* action does not arise until the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by an authorized state tribunal, or called into question by the issuance of a federal habeas writ. *See* Heck, 512 U.S. at 486-87. "*Heck* precludes *§ 1983* claims relating to pending charges when a judgment in favor of the plaintiff would necessarily imply the invalidity of any conviction or sentence that might result from prosecution of the pending charges. Such claims arise at the time the charges are dismissed." Beck v. City of Muskogee Police Dep't, 195 F.3d 553, 557 (10th Cir. 1999).

A judgment **[*13]** in favor of Plaintiff's claims necessarily would imply the invalidity of her state court criminal proceedings. Therefore, Plaintiff's claims for damages are barred by Heck and will be dismissed. The dismissal will be without prejudice. *See* Fottler v. United States, 73 F.3d 1064, 1065 (10th Cir. 1996).

Accordingly, based upon the above findings, Ms. Bluff has failed to state a claim pursuant to 42 U.S.C. § 1985(2), 18 U.S.C. § 241 and 42 U.S.C. § 1983, and any claims for damages that she brings are barred by the Supreme Court's ruling in *Heck*. The Court also declines to exercise supplemental jurisdiction over Ms. Bluff's state law claims because the constitutional claims over which the Court has original jurisdiction will be dismissed. *See* 28 U.S.C. § 1367(c)(3). Therefore, the Complaint and this action will be dismissed.

Finally, Defendant Brass moves the Court for an award of attorneys' fees under *42 U.S.C. § 1983*, because he argues that "the complaint is frivolous, groundless and plainly unreasonable." Response at 27. It is well settled that a "prevailing party" in a *§ 1983* action may be entitled to reasonable costs and attorneys' fees. *See* 42 U.S.C. § 1988(b). However, a defendant **[*14]** may only recover such fees in a *§ 1983* action if the suit "was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Hughes v. Rowe, 449 U.S. 5,

14, 101 S. Ct. 173, 66 L. Ed. 2d 163 (1980) (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422, 98 S. Ct. 694, 54 L. Ed. 2d 648 (1978); Crabtree v. Muchmore, 904 F.2d 1475, 1477-79 (10th Cir. 1990)). This standard has been described as a "stringent one." *See* Hughes, 449 U.S. at 5.

An award is also proper where the plaintiff continues to litigate after it is clear that the claim is frivolous, unreasonable, or groundless. *Houston v. Norton,* 215 F.3d 1172, 1174 (10th Cir. 2000) (quoting Hughes, 449 U.S. at 15-16). Further, the Court "consider[s] the *pro se* plaintiff's ability to recognize the objective merit of his or her claim" and that "[a]n unrepresented litigant should not be punished for [her] failure to recognize subtle factual or legal deficiencies in [her] claims." Olsen v. Aebersold, 149 Fed. Appx. 750, 753 (10th Cir. Aug. 31, 2005) (unpublished opinion).

At this time, the Court declines to award attorneys's fees to Defendant because this *section 1983* action is Ms. Bluff's first attempt to recover damages related to her criminal case. Nonetheless, **[*15]** Ms. Bluff is warned that should she continue making filings substantially similar to the instant action, that she will likely be required to pay attorney's fees incurred in responding to her filings. Accordingly, it is

ORDERED that Defendant's Motion to Dismiss and to Award Attorney's Fees (Doc. # 6) is GRANTED IN PART AND DENIED IN PART. It is

FURTHER ORDERED that the complaint and the action are dismissed without prejudice. It is

FURTHER ORDERED that all pending motions are denied as moot.

DATED at Denver, Colorado, this 10th day of November, 2009.

BY THE COURT:

/s/

Grant Sullivan

2009 U.S. Dist. LEXIS 104806, *15

Senior United States District Judge

---

**End of Document**

⚠ Caution
As of: September 15, 2016 6:23 PM EDT

## *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*

United States District Court for the District of Colorado

August 15, 2011, Decided; August 15, 2011, Filed

Civil Action No. 09-cv-00717-CMA-BNB

**Reporter**
2011 U.S. Dist. LEXIS 90420; 2011 WL 3568165

BROKERS' CHOICE OF AMERICA, INC., and TYRONE M. CLARK, Plaintiffs, v. NBC UNIVERSAL, INC., GENERAL ELECTRIC CO., CHRIS HANSEN, STEVEN FOX ECKERT, and MARIE THERESA AMOREBIETA, Defendants.

**Prior History:** *Broker's Choice of Am., Inc. v. NBC Universal, Inc., 2011 U.S. Dist. LEXIS 3003 (D. Colo., Jan. 11, 2011)*

**Counsel:** [*1] For Brokers' Choice of America, Inc., Tyrone M. Clark, Plaintiffs: Thomas Edward Downey, Jr., LEAD ATTORNEY, Downey & Murray, P.C., Englewood, CO; John J. Walsh, Joshua E. Abraham, Carter Ledyard & Milburn LLP, New York, NY.

For NBC Universal, Inc., General Electric Co., Chris Hansen, Steven Fox Eckert, Marie Theresa Amorebieta, Defendants: Hilary C. Lane, LEAD ATTORNEY, NBC Universal Inc., New York, NY; Gayle C. Sproul, Levine Sullivan Koch & Schulz, LLP-Philadelphia, Philadelphia, PA; Thomas B. Kelley, Levine Sullivan Koch & Schulz, LLP-Denver, Denver, CO.

**Judges:** CHRISTINE M. ARGUELLO, United States District Judge.

**Opinion by:** CHRISTINE M. ARGUELLO

## Opinion

### ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR

### ATTORNEYS' FEES AND COSTS

This matter is before the Court on Defendants' Motion for Award of Reasonable Attorneys' Fees and Costs (Doc. # 88). Plaintiffs have raised a number of objections. For the following reasons, the Court grants in part and denies in part Defendants' Motion.

### I. BACKGROUND

The factual and procedural history of this case is more fully set forth in this Court's Order granting Defendant's Motion to Dismiss Plaintiffs' Amended Complaint. (Doc. #77.) A brief recap follows.

Plaintiff Brokers' Choice [*2] of America, Inc. ("BCA") operates as an Independent Marketing Organization ("IMO") in the insurance industry. IMOs enter into agreements with insurance companies to market their insurance products. IMOs then recruit and make these insurance products available to independent licensed insurance agents who, in turn, market these products to consumers. BCA was founded by Plaintiff Tyrone M. Clark, who was the majority owner of BCA and served as BCA's CEO during the relevant period.

Defendant NBC Universal ("NBCU") produced a television report ("Report") focusing on the predatory sales tactics used in the sale of equity-indexed annuities to senior citizens. The Report, which aired on *Dateline NBC* on April 13, 2008, included a segment about training sessions for insurance agents marketed by BCA under the name Annuity University ("AU"). *Dateline* producers

EXHIBIT A

2011 U.S. Dist. LEXIS 90420, *2

attended a two-day training session at AU after the Alabama Department of Insurance ("ALDOI") had issued Alabama insurance producer licenses to the *Dateline* producers. The producers would not have been able to register for the session without these licenses. At the session, the Dateline producers recorded the classes and some of the recorded [*3] footage was included within the Report.

Plaintiffs initiated this action on March 31, 2009. In the original Complaint, Plaintiffs asserted state tort law claims for defamation, trespass, fraud, and intrusion, and a violation of their civil rights under *42 U.S.C. § 1983*. On October 22, 2009, the Court granted Defendants' Motion to Dismiss without prejudice in an oral ruling. Plaintiffs then filed an Amended Complaint that alleged only two claims for relief - the state tort claim for defamation and the civil rights claim under *§ 1983*. Defendants filed a Motion to Dismiss the Amended Complaint. (Doc. # 49.) The Court granted the Motion on January 1, 2011, and dismissed the case with prejudice. (Doc. # 77.) Plaintiffs filed a Notice of Appeal on January 27, 2011. (Doc. # 82.) The appeal is currently pending before the Tenth Circuit.

On February 7, 2011, Defendants filed the instant motion, requesting attorneys' fees and costs for work expended in defense of the civil rights claim under *42 U.S.C. § 1988*, and attorneys' fees for work expended in defense of the state tort law claims under *Colo. Rev. Stat. § 13-17-201*. (Doc. # 88.) Three of Defendants' attorneys, Mr. Thomas B. Kelley (Doc. # [*4] 88-2), Ms. Gayle C. Sproul (Doc. # 88-3), and Ms. Hilary Lane (Doc. # 88-4), submitted affidavits concerning the reasonableness of their requested fees. However, Defendants' attorneys did not submit their actual billing statements. Plaintiffs responded on March 3, 2011. In their Response, Plaintiffs argued that Defendants' fee application was deficient because it failed to include "meticulous, contemporaneous time records" that revealed how hours were allotted to specific tasks, and thus Defendants had failed to

prove the reasonableness of their claimed fees. [1] (Doc. # 91.) Plaintiffs contended that the Court should reject the fee application in its entirety or substantially reduce the fees. In their Reply, filed on March 24, 2011, Defendants attached actual billing statements. (Doc. # 95-3.) The Court allowed Plaintiffs to file a surreply in order to give them the opportunity to assess the reasonableness of Defendants' claimed fees based on these billing statements. (Doc. # 96.) Plaintiffs filed their Surreply on May 11, 2011. (Doc. #97.)

## II. LEGAL STANDARD

When evaluating a motion for attorneys' fees, the Court must follow the three-step process set forth in *Ramos v. Lamm, 713 F.2d 546 (10th Cir. 1983), overruled on other grounds by Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 483 U.S. 711, 725, 107 S. Ct. 3078, 97 L. Ed. 2d 585(1987).*

The first step in determining a fee award is to determine the number of hours reasonably spent by counsel for the prevailing party. *Malloy v. Monahan, 73 F.3d 1012, 1017 (10th Cir. 1996); Ramos, 713 F.2d at 553.* Factors considered in a reasonableness determination include: (1) whether the amount of time spent on a particular task appears reasonable in light of the complexity of the case, the strategies pursued, and the responses necessitated by an opponent's maneuvering; (2) whether the amount of time spent is reasonable in relation to counsel's [*6] experience; and (3) whether the billing entries are sufficiently detailed, showing how much time was allotted to a specific task. *Rocky Mountain Christian Church v. Bd. of Cnty. Comm'rs of Boulder Cnty., No. 06-cv-00554, 2010 U.S. Dist. LEXIS 102081, 2010 WL 3703224,*

---

[1] Without citation to any legal authority, Plaintiffs also requested that any award of attorneys' fees should be stayed until the appeals process [*5] has concluded in the interests of judicial efficiency. However, a party is entitled to an award of attorneys' fees notwithstanding the pendency of an appeal. *Fed. R. Civ. P. 62(d).* A stay is only available when the appellant has posted a *supersedeas* bond. *Id.* Plaintiffs have not posted a *supersedeas* bond and, thus, the Court will not stay an award of attorneys' fees.

EXHIBIT A

2011 U.S. Dist. LEXIS 90420, *5

*at \*2-3 (D. Colo. Sept. 13, 2010).* "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).* Although courts are obligated to exclude hours not reasonably expended from the fee award, courts need not "identify and justify every hour allowed or disallowed, as doing so would run counter to the Supreme Court's warning that a 'request for attorney's fees should not result in a second major litigation.'" *Malloy, 73 F.3d at 1018* (quoting *Hensley, 461 U.S. at 437*); *Fox v. Vice, 131 S. Ct. 2205, 2216, 180 L. Ed. 2d 45 (2011)* ("The essential goal in shifting fees ... is to do rough justice, not to achieve auditing perfection.").

Once the Court has determined the number of hours reasonably spent, it must then determine a reasonable hourly rate of compensation. *Ramos, 713 F.2d at 555.* "A reasonable rate is the prevailing market rate **[\*7]** in the relevant community." *Malloy, 73 F.3d at 1018* (citing *Blum v. Stenson, 465 U.S. 886, 897, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)*). The party seeking the award has the burden of persuading the court that the hours expended and the hourly rate are both reasonable. *Id.*

The third step consists of multiplying the reasonable hourly rate by the number of hours reasonably expended to determine the "lodestar" amount. *Hensley, 461 U.S. at 433.*

## III. <u>ANALYSIS</u>

## A.   WHETHER DEFENDANTS MAY RECOVER ATTORNEY FEES

Before turning to the reasonableness of the requested fees, the Court must first determine whether fees should be awarded. In their motion, Defendants seek $303,135.50 in attorneys' fees for work expended in defense of Plaintiffs' state tort claims and general litigation tasks, and $118,602.00 in attorneys' fees and costs for work expended in defense of Plaintiffs' civil rights claim. The

following chart is taken from Defendants' motion and summarizes the fee request:

[Go to table1](#)

(Doc. **[\*8]** #88 at 10.)

1. <u>Fees for Work Related to State Tort Claims and General Litigation Tasks</u>

Plaintiffs do not appear to dispute that Defendants are entitled to reasonable attorney fees for work dedicated to the defense of state tort claims. Indeed, such an award is mandatory as Colorado statute provides:

> In all actions brought as a result of . . . an injury to person or property occasioned by the tort of any other person, where any such action is dismissed on motion of the defendant prior to trial under *rule 12(b)* of the Colorado rules of civil procedure, such defendant shall have judgment for his reasonable attorney fees in defending the action.

*Colo. Rev. Stat. § 13-17-201*; see *also Crandall v. City of Denver, 238 P.3d 659, 662 (Colo. 2010)* (fee award is mandatory upon dismissal of tort action pursuant to *C.R.C.P. 12(b)*). The statute applies with equal force when, as in this case, a federal court dismisses a pendent state tort claim pursuant to *Fed. R. Civ. P. 12(b)(6)*. *Jones v. Denver Post Corp., 203 F.3d 748, 757 n.6 (10th Cir. 2000)*. Although *§ 13-17-201* does not provide for fee awards for dismissals of *§ 1983* claims, *see State v. Golden's Concrete Co., 962 P.2d 919, 926 (Colo. 1998)* (en banc). **[\*9]** Defendants are entitled to recover all reasonable fees not specifically dedicated to the civil rights claim that were necessarily incurred in defending the action. *See Dubray v. Intertribal Bison Co-op., 192 P.3d 604, 607 (Colo. App. 2008)*.

2. <u>Fees for Work Related to Defense of Civil Rights Claim</u>

Whether Defendants may recover their attorneys' fees for work expended in defense of the civil rights claim is vigorously contested. Under *42 U.S.C. § 1988(b)*, a "prevailing party" in a civil

2011 U.S. Dist. LEXIS 90420, *9

rights suit may recover reasonable attorneys' fees. Although a prevailing plaintiff is ordinarily entitled to attorney fees, *see Mitchell v. City of Moore, Okla., 218 F.3d 1190, 1203 (10th Cir. 2000)*, a prevailing defendant may recover such fees only where the lawsuit was "vexatious, frivolous, or brought to harass or embarrass the defendant." *Hensley, 461 U.S. at 429 n.2*. The Supreme Court has cautioned that courts must avoid

> the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom **[*10]** can a prospective plaintiff be sure of ultimate success.

*Christiansburg Garment Co., v. E.E.O.C, 434 U.S. 412, 421-22, 98 S. Ct. 694, 54 L. Ed. 2d 648 (1978)*. Thus, Defendants are presented with a "difficult standard to meet, to the point that rarely will a case be sufficiently frivolous to justify imposing attorney fees on the plaintiff." *Mitchell, 218 F.3d at 1203 (10th Cir. 2000)*; *see also Clajon Prod. Corp. v. Petera, 70 F.3d 1566, 1581 (10th Cir. 1995)* (stating that attorneys' fees are awarded to defendants under *§ 1988* only in "rare circumstances"). Claims that are dismissed for failure to state a claim "do not automatically meet the standard ... for an award of fees to the defendant." *Jane L. v. Bangerter, 61 F.3d 1505, 1513 (10th Cir. 1995)*.

In this case, the Court dismissed Plaintiffs' *§ 1983* claim for failure to allege sufficient facts to demonstrate state action on the part of private party Defendants. The basis for the alleged state action was the ALDOI's issuance of insurance licenses to Defendants for the sole purpose of allowing Defendants to access BCA's training sessions. In their motion for attorneys' fees, Defendants argue that "[P]laintiffs' theory of state action was one that had been rejected under **[*11]** clearly established precedent" and that Plaintiffs' claims were

"frivolous, unreasonable, and without foundation." (Doc. #88 at 11, 13.)

In *Anderson v. Suiters, 499 F.3d 1228 (10th Cir. 2007)*, a case cited extensively by this Court in its order dismissing this case, the plaintiff had filed a *§ 1983* action against a television reporter and a company owned television station (the "media defendants") for violation of her constitutional right to privacy. The plaintiff alleged that her estranged husband had raped and videotaped her while she was unconscious. *Id. at 1231*. The alleged basis for state action in *Anderson* was that a police officer, who had received the videotape with the understanding that it was to be used for law enforcement purposes only, instead gave an interview to the media defendants, provided them with the videotape, and arranged for them to contact the plaintiff. *Id*. In rejecting the plaintiffs arguments that the media defendants were acting jointly with the police officer, *Anderson* noted that there was no evidence that the media defendants knew about the confidentiality agreement between the plaintiff and the police officer, and that the complaint failed to allege facts **[*12]** "demonstrating a shared purpose" by the officer and the media defendants "to violate [the plaintiffs] constitutional rights." *Id. at 1233*.

In dismissing the *§ 1983* claim, this Court found *Anderson* instructive, noting that Defendants and ALDOI had "their own separate goals," as did the defendants in *Anderson*. (Doc. # 77 at 22.) However, the facts in *Anderson* were not so identical to the facts of this case that Plaintiffs theory was clearly proscribed by binding precedent. This case did not involve the turnover of information; rather, the state facilitated the Defendants' investigation by granting licenses for the express and limited purpose of investigating Plaintiffs' operation. Thus, although the Court ultimately dismissed Plaintiffs' *§ 1983* claim for failure to allege facts sufficient to sustain a claim of state action against the private party Defendants, the Court finds that this claim was not so frivolous as to warrant attorneys' fees under *§ 1988*.

EXHIBIT A

2011 U.S. Dist. LEXIS 90420, *12

Therefore, Defendants may not recover the $118,602 in claimed attorneys' fees and costs for work expended in defense of Plaintiffs' civil rights claim.

## B. REASONABLENESS OF HOURS

Plaintiffs raise numerous challenges to the reasonableness [*13] of Defendants' requested fees. Specifically, Plaintiffs assert that (1) Defendants' allocation of the hours between work spent on the defense state law tort claims and the civil rights claim is unacceptable; (2) the fee request for work performed by in-house counsel Ms. Hilary Lane lacks sufficient documentation and must be rejected; (3) and that fees associated with Defendants' instant motion, fees that were written off by Defendants' counsel, fees associated with redacted time entries, and fees for work performed by paralegals should all be rejected. [2] The Court will address these challenges in turn.

1. Allocation of Hours

Given the Court's determination that Defendants should be awarded attorneys' fees only for work related to the state tort claims and general litigation tasks, it is necessary to allocate between the hours spent on the defense of the state law tort claims and defense of the civil rights claim. Unfortunately, [*14] Defendants' method of allocation is not a model of clarity.

By affidavit, Mr. Kelley explains how he allocated the hours. On behalf of himself, associate attorneys Ms. Amanda Leith and Mr. Adam Piatt, and the legal assistants, Mr. Kelley first separated hours between two categories: (1) tasks dedicated to defense of the state tort law claims and general litigation tasks, and (2) tasks dedicated to defense of the civil rights claims. (Doc. # 88-2 at 6.) In a supplemental affidavit attached to the Reply, Mr. Kelley reveals, for the first time, that all but 137.5

hours were categorized in this manner. (Doc. # 95-2 at 3.) However, Mr. Kelley does not disclose what he relied on in determining which hours should be placed into which category and the Court, after scrutinizing the billing records, is unable to discern how Mr. Kelley was able to so categorize the hours.

The confusion is magnified by the fact that Mr. Kelley was unable to separate 137.5 hours into these two distinct categories. For these entries, Mr. Kelley allocated 80% of the hours into the state tort law and general tasks category for work related to Defendants' first motion to dismiss, and 70% of the hours into the state tort [*15] law and general tasks category for work related to the second motion to dismiss. (Doc. # 88-2, ¶ 112.) The 80% estimate for work related to the first motion to dismiss is based on the fact that four of the five claims pled against them were state tort claims. The 70% estimate for work related to the second motion to dismiss is based on the fact that, although Plaintiffs dropped three state tort claims in their Amended Complaint, the vast majority of the work was addressed to the remaining state law defamation claim because defending against the civil rights claim demanded "relatively little new work." (Doc. #7,¶ 12.)

Mr. Kelley's allocation method purports to apply only to the time entries of Mr. Kelley, Ms. Leith, Mr. Piatt, and the legal assistants. However, without attempting to precisely allocate her own hours, Ms. Sproul declared that she allocated her time as described by Mr. Kelley, who had expressly stated that his allocation method did not pertain to Ms. Sproul's hours. (Doc. # 88-3, ¶ 6.) In turn, Ms. Lane declared that Ms. Sproul's allocation of hours accurately reflected the time she spent on the various claims as well. (Doc. # 88-4, ¶ 5.) However, neither Ms. Sproul or [*16] Ms. Lane actually allocated their time as described by Mr. Kelley as neither differentiated between time spent on the first and second motions to dismiss; rather, they applied the 70% figure to all of their claimed hours. Moreover, Mr. Kelley attested that he used the percentage estimates for only for the hours that he was unable to categorize, whereas Ms. Sproul

---

[2] Plaintiffs also argue that the fees should be reduced because of block-billing, duplication of work, and top-heavy billing. The Court has considered these objections but finds that its reduction of fees, as set forth herein, obviates the need for further reductions.

2011 U.S. Dist. LEXIS 90420, *16

and Ms. Lane used a flat percentage for all of their hours.

These flaws in the allocation method notwithstanding, the Court finds it practicable to assess the reasonableness of the fee allocation as a whole in light of the Supreme Court's recent instruction that trial courts ought to strive for "rough justice" rather than "achieve auditing perfection." *Fox, 131 S.Ct. at 2216* (stating that trial courts should not "become green-eyeshade accountants."). In total, Defendants claim that their attorneys expended a combined 820.96 out of the 1, 132.20 total hours of work (72.5%) defending against the state tort claims and for general litigation tasks

The Court finds that expending 72.5% of the hours in defending against the state tort claims and for general litigation tasks was reasonable. With regard to the first motion to dismiss. [*17] Defendants devoted twenty-five of their thirty-four (73.5%) pages of argument in its motion and eighteen of their twenty-five (72%) pages of argument in its reply to addressing the state tort claims. (Doc. ## 10, 29.) With regard to the second motion to dismiss. Defendants devoted twenty of their thirty-one (64.5%) pages of argument in its motion and eleven of its nineteen (58%) pages of argument in their reply to addressing the defamation claim. Although the percentages for the second motion to dismiss are below the 72.5% figure, many of the arguments concerning the *§ 1983* claim had been raised by Defendants in their first motion to dismiss. In addition, only five pages of this Court's 25-page Order granting the second motion to dismiss addressed the *§ 1983* claim. (Doc. # 77.) That Defendants spent the majority of their time defending against the state tort claims is reasonable.

Although Defendants' byzantine method of allocation leaves much to be desired, the Court finds that Defendants' total estimate is reasonable considering that the state tort claims dominated this action, as evidenced by the briefing, motion hearings, and the Court's orders. *See Fox, 131 S.Ct.*

*at 2216* (stating [*18] that "trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.").

2. Ms. Lane's Requested Fees

Defendants request fees for work performed by Ms. Lane pertaining to the state tort law claims in the amount of $87,613.75 for 206.15 hours of work. However, Ms. Lane failed to maintain any time records. It is the burden of the party claiming fees to prove the hours to the district court. *See Case v. Unified Sch. Dist. No. 233, Jolinson Ctny, Kan., 157 F.3d 1243, 1250 (10th Cir. 1988)*. In *Ramos*, the Tenth Circuit stated that:

> [I]f [prevailing parties] intend to seek attorney's fees . . . [their attorneys] must keep meticulous, contemporaneous time records to present to the court upon request. These records must reveal for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks ....

*713 F.2d at 554*. This requirement exists so that trial courts may have some basis upon which to assess the reasonableness of requested fees. In the absence of billing records, the Court simply has no basis for determining how much time was reasonably spent [*19] by Ms. Lane. Furthermore, any attempt to merely reduce Ms. Lane's hours, rather than reject the claimed fees in its entirety, would be an exercise in the arbitrary.

Defendants attempt to circumvent the requirement that attorneys must submit billing statements through Ms. Lane's declaration that she spent at least as many hours working on the case as Ms. Sproul, and therefore, Ms. Sproul's time records are an accurate and reliable measure of Ms. Lane's time. (Doc. # 95-1 at 3.) Even if the Court were to accept Ms. Lane's declaration that she spent 294.5 hours on this case, the Court cannot determine whether these hours were reasonably expended. To recover attorneys' fees, a party must "prove and

Grant Sullivan

establish the reasonableness of each dollar, each hour, above zero." *Cadena v. Pacesetter Corp., 224 F.3d 1203, 1215 (10th Cir. 2000)*. Accepting Ms. Lane's self-serving assertions in lieu of documentary proof would set dangerous precedent as it would essentially eradicate the requirement that attorneys keep track of their time. Although Ms. Lane may have spent significant time working on this case, she should have kept formal records of her time if she intended to seek compensation for her work. [*20] Thus, the Court rejects Defendants' request for **$87,613.75** in fees for work performed by Ms. Lane in defense of Plaintiffs' state tort claims.

This modified chart reflects the Court's analysis up to this point:

⊞ *Go to table2*

3. Fees Dedicated to Recovery of Attorney Fees

Defendants request $13,005 in fees associated with recovering attorneys fees. [3] Under *Colo. Rev. Stat. § 13-17-102*, attorneys' fees are recoverable only for work associated with a motion for attorneys' fees where the trial court finds that the opposition to the motion lacks substantial justification. *See Anderson v. Pursell, 244 P.3d 1188, 1198 (Colo. 2010)* (en banc). This "substantial justification" test applies to fees requested under *§ 13-17-201*. *Foxley v. Foxley, 939 P.2d 455, 460 (Colo. App. 1996)* (stating that the "substantial justification" analysis is [*21] "necessarily applicable to fees requested under *§ 13-17-201*"). The Court finds that

---

[3] In their Surreply, Plaintiffs claim that Defendants revealed in their Reply that they sought $14,695 in fees for work dedicated to recovery of attorneys' fees. (Doc. # 97 at 5.) The Court cannot find this precise amount anywhere in the Reply. However, it appears to be roughly the difference between the total amount of fees in the billing records (Doc. # 95-3 at 85) and the so-called "grand total," which did not include fees for work after the Court dismissed the case with prejudice. (Doc. # 95-3 at 3-4.) According to the billing records (and not what Defendants actually claimed). Defendants expended $15,006.5 on work related to the instant motion ($299,929 - $284,922.50). However, Defendants appear to actually claim only $13,005 in fees related to the motion to recover fees (8.8 hours of Ms. Sproul's time x $425.00 hourly rate + 21.8 hours of Mr. Kelley's time x $425.00 hourly rate).

Plaintiffs' opposition to the motion for fees was substantially justified and, thus, fees should not be awarded for work dedicated to the motion for attorneys' fees. Thus, the Court will reduce the fee award by **$13,005.**

4. [*22] Fees Associated with Redacted Time Entries

Defendants' billing statements contain several redacted time entries totaling $4,128.50 in fees. Plaintiffs contend that these redacted entries should be rejected because they do not provide sufficient information for the Court to assess the reasonableness of these fees. The Court agrees. These redacted entries deprive both the Court and Plaintiffs of the ability to determine that these redacted fees were reasonably incurred. Thus, the Court will deduct **$4,128.50** in fees for these redacted entries.

5. Written-Off Fees

Defendants' attorneys wrote-off $3,993.01 in fees for early payment and other discounts. [4] These written-off fees essentially decreased the attorneys' rate and should not be charged to Plaintiffs. Attorneys should not bill fees to opposing counsel those fees that it would not bill to its clients. *See Kan. Penn Gaming, LLC v. HV Properties of Kan., LLC, 790 F. Supp. 2d 1307, 2011 U.S. Dist. LEXIS 53507, 2011 WL 1885853, at *7 (D. Kan. May 18, 2011)*. Thus, the Court will further deduct **$3,993.01** in fees as Defendants did not charge them to the client. The Court will deduct an additional **$127.50** in fees for the October 27, 2009 entry, which is described as an "E-mail [*23] exchange with client regarding seeking publication of motions ruling." Seeking publication of a bench ruling is not a necessary element of a defense.

6. Paralegal Fees

Plaintiffs also claim that Defendants should not be

---

[4] Plaintiffs claim that Defendants' attorneys' wrote off $4,359.08 in fees. (Doc. # 97 at 6.) However, three of the write-offs were duplicative entries and this appears to account for the difference between the Court's total and Plaintiffs' total.

EXHIBIT A

able to recover fees for work performed by their attorneys' legal assistants. Such fees are recoverable only to the extent the legal assistant performs work traditionally done by an attorney. *Silver v. Primero Reorganized Sell. Dist. No. 2, No. 06-cv-02088, 2008 U.S. Dist. LEXIS 10335, 2008 WL 280847, at *3 (D. Colo. Jan. 30, 2008)* (citing *Alter Fin. Corp. v. Citizens & S. Int'l Bank of New Orleans, 817 F.2d 349, 350 (5th Cir. 1987))*. Plaintiffs contend that Defendants have failed to establish that the work performed by their legal assistants was legal work. The Court has reviewed the billing statements and finds that the time entries billed by the legal assistants constitute time entries that would typically be billed to clients, and were, in fact, billed **[*24]** to Defendants. Thus, the Court finds that Defendants are entitled to recover fees for work performed by their legal assistants.

## C. REASONABLENESS OF HOURLY RATE

Plaintiffs assert that Defendants' hourly rates are unreasonable. [5] A reasonable hourly rate is based on the "prevailing market rates in the relevant community." *Malloy, 73 F.3d at 1018*. By affidavit, Mr. Kelley declares that he has practiced law in Colorado since September of 1972, has been listed in the publication *Best Lawyers in America* for more than twenty years, and has defended media organizations in state and federal courts throughout the United States. (Doc. # 88-2.) Mr. Kelley also attested that, as of April 2009, when work on this case began, Ms. Leith was an associate attorney with six years of experience and Mr. Piatt was an associate attorney with two and one-half years of experience. Ms. Sproul attested that she has practiced law since September of 1985, and that her practice has been primarily dedicated to representing members of the news media with respect to legal issues arising from the content of their publications. (Doc. # 88-3.)

In support of the reasonableness of their hourly rates, Mr. Kelley declared that he has served as an expert witness concerning reasonable hourly rates charged by law firms in Colorado. He also attests that he is generally familiar with the hourly rates customarily charged by law firms in the Denver metropolitan area for the kind of work that was performed in the defense of this action.

Defendants have supplied no evidence beyond these affidavits in support of the reasonableness of their hourly rates. The Supreme Court has stated that the party seeking attorneys' fees bears the burden of producing "satisfactory evidence -**in addition to the attorney's own affidavits** - that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum, 465 U.S. at 896 n.11* (emphasis added). Where, as here, "a district court does not have before it adequate evidence of prevailing market rates, the court may **[*26]** use other relevant factors, including its own knowledge, to establish the rate." *Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc., 295 F.3d 1065, 1079 (10th Cir. 2002)*. Although the affidavits of Defendants' attorneys alone are insufficient evidence to prove the reasonableness of their rates, the Court is familiar with the rates charged by lawyers in the Denver metropolitan area, and concludes that the rates charged by Defendants' attorneys, given their experience, skill, and specialization, were reasonable.

## IV. CONCLUSION

Based on the foregoing, the Court calculates Defendants' fee award as follows: After removing the fees for work dedicated to the defense of the civil rights claim and for work performed by Ms. Lane, there remains $215,521.75 in claimed fees. The Court will then deduct fees associated with the instant motion ($13,005.00), fees associated with redacted time entries ($4,128.50), fees that were written-off by Defendants' attorneys ($3,993.01),

---

[5] Mr. Kelley and Ms. Sproul were billed at $425/hr, Ms. Leith was billed at $320/hr, **[*25]** and Mr. Piatt was billed at $285/hr for their time spent working on this case. The legal assistants were each billed at $50/hr. Plaintiffs do not suggest what rates would have been more reasonable.

2011 U.S. Dist. LEXIS 90420, *26

and fees associated with the October 27, 2009 time entry ($127.50).

**Total fee award:** $215,521.75 - $13,005.00 - $4,128.50 - $3,993.01 - $127.50 = **$194,267.74.**

Accordingly, IT IS ORDERED that Defendants' Motion for Attorneys' Fees (Doc. **[*27]** # 88) is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Defendants shall be awarded fees in the amount of **$194,267.74.**

DATED: August 15, 2011

BY THE COURT:

/s/ Christine M. Arguello

CHRISTINE M. ARGUELLO

United States District Judge

Grant Sullivan

EXHIBIT A

2011 U.S. Dist. LEXIS 90420, *27

**Table1** (*Return to related document text*)

| Timekeeper | Total Hours Expended | Hourly Rate | Value of Total Hours Expended | Value of Hours Expended on State Tort Law and General Tasks | Value of Hours Expended on Civil-Rights Dedicated Tasks |
|---|---|---|---|---|---|
| Thomas B. Kelley | 264.3 | $425 | $112,327.50 | $88,680.50 (208.66 hours) | $23,647.00 (55.64 hours) |
| Gayle C. Sprout | 294.5 | $425 | $125,162.50 | $87,613.75 (206.15 hours) | $37,548.75 (88.35 hours) |
| Hilary Lane | 294.5 | $425 | $125,162.50 | $87,613.75 (206.15 hours) | $37,548.75 (88.35 hours) |
| Amanda M. Leith | 28.1 | $320 | $8,992.00 | $2,304.00 (7.2 hours) | $6,688.00 (20.9 hours) |
| Adam M. Platt | 159.8 | $285 | $45,543.00 | $33,088.50 (116.1 hours) | $12,454.50 (43.7 hours) |
| Legal Assistants | 91.0 | $50 | $4,550.00 | $3,835.00 (76.7 hours) | $715.00 (14.3 hours) |
| TOTALS | 1,132.2 | | $421,737.50 | $303,135.50 (820.96 hours) | $118,602.00 (311.24 hours) |

**Table1** (*Return to related document text*)

**Table2** (*Return to related document text*)

| Timekeeper | Total Hours Expended on Civil Rights Dedicated Tasks | Total Hours Expended on State Tort Law and General Tasks | Hourly Rate | Value of Hours |
|---|---|---|---|---|
| Thomas B. Kelley | 55.64 | 208.66 | $425 | $88,680.50 |
| Gayle C. Sproul | 88.35 | 206.15 | $425 | $87,613.75 |
| Hilary Lane | 88.35 | 206.15 | $425 | $87,613.75 |
| Amanda M. Leith | 20.9 | 7.2 | $320 | $2,304.00 |
| Adam M. Platt | 43.7 | 116.1 | $285 | $33,088.50 |
| Legal Assistants | 14.3 | 76.7 | $50 | $3,835.00 |
| TOTALS | | 614.81 | | $215,521.75 |

**Table2** (*Return to related document text*)

**End of Document**

Grant Sullivan

EXHIBIT A

No *Shepard's* Signal™
As of: September 15, 2016 6:23 PM EDT

## *QFA Royalties LLC v. Q of O, LLC*

United States District Court for the District of Colorado

March 10, 2016, Decided; March 10, 2016, Filed

Civil Action No. 15-cv-00461-CMA-MJW

**Reporter**

2016 U.S. Dist. LEXIS 30845; 2016 WL 915753

QFA ROYALTIES LLC, and QUIZNO'S MASTER LLC, THE, Plaintiffs, v. Q OF O, LLC, KIMBRE L. ANDERSON, DONNA J. JOHNSON, PHILLIP S. JOHNSON, DALE A. THOMAS, JR., DALE A THOMAS, SR., and P & D SUBS, INC., Defendants.

**Counsel:** [*1] For QFA Royalties LLC, Quizno's Master LLC, The, Plaintiffs: Allison Renee Grow, Cheng Cohen, Chicago, IL; Fredric Adam Cohen, Cheng Cohen, LLC, Chicago, IL.

Kimbre L. Anderson, Defendant, Pro se, Springfield, OR.

For Donna J. Johnson, Phillip S. Johnson, Defendants, Cross Claimants: Scott Thomas Kannady, Brown & Kannady, LLC, Denver, CO.

Dale A. Thomas, Jr., Defendant, Pro se, Springfield, OR.

For Dale A. Thomas, Sr., Defendant, Cross Defendant: Devin Christopher Daines, Jeffrey Cohen, Fox Rothschild LLP-Denver, Denver, CO.

**Judges:** CHRISTINE M. ARGUELLO, United States District Judge.

**Opinion by:** CHRISTINE M. ARGUELLO

## Opinion

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR FEES AND COSTS**

This matter is before the Court on Plaintiffs' Motion for Fees and Costs. (Doc. # 64.) For reasons described below, the Motion is granted in part and denied in part. Specifically, the Court awards attorney fees in the amount of **$20,790.00** and costs in the amount of **$1,154.68**.

## I. BACKGROUND

Plaintiffs QFA Royalties LLC and The Quizno's Master LLC ("Plaintiffs") originally filed this lawsuit against seven defendants for their alleged violation of noncompetition covenants with Plaintiffs and their use of Plaintiffs' trademarks [*2] and trade dress. On July 29, 2015, this Court entered default judgment against two of seven defendants to the original action, Q of O and P&D Subs ("Defendants"). Plaintiffs filed their Motion for Fees and Costs on August 12, 2015. (Doc. # 64.) Defendants filed no response.

## II. DISCUSSION

Colorado follows the traditional "American rule" that, absent statutory authority, an express contractual provision, or a court rule, the parties in a lawsuit are required to bear the costs of their own legal expenses. *Moore v. Edwards, 111 P.3d 572, 573 (Colo. App. 2005)*. Plaintiffs seek costs and attorney fees pursuant to *Fed. R. Civ. P. 54*, *D.C.COLO.LCivR 54.3*, and their franchise agreements with Defendants. (Doc. # 64 at 1, 3.) Those agreements, made enforceable through the default judgment entered by this Court on July 29, 2015, provide that "the non-prevailing party in any legal action will pay to the prevailing party 'all

Grant Sullivan

Case No. 1:16-cv-01237-JLK   Document 52-1   filed 09/16/16   USDC Colorado   pg 22 of 35

Page 2 of 6
2016 U.S. Dist. LEXIS 30845, *2

damages, costs, and expenses, including reasonable attorneys' fees, incurred by the prevailing party.'" (Doc. # 64 at 3.) This Court concludes that the franchise agreements permit Plaintiffs to recover reasonable attorney fees and costs requested in the instant Motion.

## A. ATTORNEY FEES

In accordance with *Fed. R. Civ. P. 54* and *D.C.COLO.LCivR 54.3*, Plaintiffs request [*3] attorney fees in the amount of $23,298.00. (Doc. # 64 at 4.) Specifically, Plaintiffs request an award for hours expended by senior attorney Fredric Cohen, who has more than 25 years of experience, attorney Allison Grow, who has five years of experience, and two paralegals, Adrienne Saltz and Emily Flores. (Doc. # 64-1 at 1-2.) All hours were expended in 2015. (Doc. # 64-2.) The expended hours, hourly rates, and total requested reimbursements are as follows:

- Senior attorney Fredric Cohen—12.1 hours at $450 per hour, for a total of $5,445.

- Attorney Allison Grow—50.1 hours at $275 per hour, for a total of $13,777.50.

- Paralegal Adrienne Saltz—1 hour at $195 per hour, for a total of $195.

- Paralegal Emily Flores—19.9 hours at $195 per hour, for a total of $3880.50.

(Doc. # 64-2.) In total, Plaintiffs request $23,298 for 83.1 expended hours.

Because Defendants have failed to respond to the instant Motion, this Court lacks the benefit of scrutiny and analysis by the opposing party. Nonetheless, the Court has a duty to ensure that the request for attorney fees is reasonable. *See Ramos v. Lamm, 713 F.2d 546, 553-54 (10th Cir. 1983)*, rev'd in part on other grounds, *Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 483 U.S. 711, 725, 107 S. Ct. 3078, 97 L. Ed. 2d 585 (1987)* (noting that a district court "must carefully scrutinize the total number of [*4] hours reported

to arrive at the number of hours that can reasonably be charged to the losing party, much as a senior partner in a private firm would review the reports of subordinate attorneys when billing clients whose fee arrangement requires a detailed report of hours expended and work done.")

The first step in determining reasonable attorney fees requires a calculation of the "lodestar amount"—*i.e.*, the reasonable hourly rate multiplied by the number of hours reasonably expended. *Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)*; *Malloy v. Monahan, 73 F.3d 1012, 1017-18 (10th Cir. 1996)*. The party requesting fees has the burden of persuading the Court that both the hourly rate and the hours expended are reasonable. *Malloy, 73 F.3d at 1018*.

To determine what constitutes a reasonable rate, the district court considers the "prevailing market rate in the relevant community." *Id.* Plaintiffs should provide evidence of the prevailing market rate for similar services by "lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson, 465 U.S. 886, 895 n.11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)*. If the district court does not have adequate evidence of prevailing market rates, it may, in its discretion, use other relevant factors, including its own knowledge of prevailing market rates, to establish a reasonable hourly rate. *Lippoldt v. Cole, 468 F.3d 1204, 1225 (10th Cir. 2006)*.

In determining the reasonableness of hours expended, [*5] the Court considers (1) whether the amount of time spent on a particular task appears reasonable in light of the complexity of the case, the strategies pursued, and the responses necessitated by an opponent's maneuvering; (2) whether the amount of time spent is reasonable in relation to counsel's experience; and (3) whether the billing entries are sufficiently detailed, showing how much time was allotted to each specific task. *See Ramos, 713 F.2d at 553-54*. Counsel for the party claiming fees has the burden of substantiating

EXHIBIT A

the hours it spent through "meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Case v. Unified Sch. Dist. No. 233, 157 F.3d 1243, 1250 (10th Cir. 1998)*. The Court must ensure that the attorney has exercised the same "billing judgment" as would be appropriate in billing his or her own client. *Id.; see also Hensley, 461 U.S. at 434* ("Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.") (internal quotation marks omitted). However, this Court is not bound to assess the propriety of every time entry. *Fox v. Vice, 563 U.S. 826, 131 S. Ct. 2205, 2217, 180 L. Ed. 2d 45 (2011)* ("[T]rial courts need not, and indeed should not, become green-eyeshade [*6] accountants. The essential goal in shifting fees is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.") Counsel should "make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley, 461 U.S. at 434*

Once the Court determines the lodestar, it may adjust it "upward or downward to account for the particularities" of the work performed. *Phelps v. Hamilton, 120 F.3d 1126, 1131 (10th Cir. 1997)*. The Court exercises its "discretion in making this equitable judgment" and does not "apportion the fee award mechanically" by considering each claimed expense and determining its reasonableness overall. *Hensley, 461 U.S. at 436-40* (holding that the Court "should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained"); *see also White v. GMC, Inc., 908 F.2d 675, 684-85 (10th Cir. 1990)* (noting that the amount of fees accumulated to secure the desired result must be reasonably related to the type and significance of issue in dispute).

*a) Reasonableness of Hourly Rate*

Plaintiffs supply no evidence concerning the reasonableness of the hourly rates listed in their Motion. Instead, Plaintiffs submit [*7] an affidavit that merely recites the number of years' experience for each attorney and the rate each person typically bills. (Doc. # 64-1.) A party seeking attorney fees bears the burden of producing "satisfactory evidence—**in addition to the attorney's own affidavits**—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson, 465 U.S. 886, 896 n.11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)* (emphasis added). Where, as in the instant case, "a district court does not have before it adequate evidence of prevailing market rates, the court may use other relevant factors, including its own knowledge, to establish the rate." *Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc., 295 F.3d 1065, 1079 (10th Cir. 2002)*. Although the affidavit alone is insufficient evidence to demonstrate the reasonableness of the hourly rates, the Court is familiar with rates charged by attorneys in the Denver metropolitan area. The Court concludes the rates charged by Plaintiffs' counsel are reasonable, but the rates charged for the work of paralegals Ms. Saltz and Ms. Flores are excessive.

Ms. Grow indicates that she has five years' experience as an attorney and that Mr. Cohen has more than 25 years' experience in litigation involving franchise companies. [*8] (Doc. # 64-1.) In the past, this Court has found $425 to be a reasonable hourly rate for an experienced senior attorney and $285 to be a reasonable hourly rate for an associate attorney. *See Shrader v. Beann, 2012 U.S. Dist. LEXIS 20575, 2012 WL 527480, at *3 (D. Colo. Feb. 12, 2012)*; *Broker's Choice of Am., Inc. v. NBC Universal, Inc., 2011 U.S. Dist. LEXIS 90420, 2011 WL 3568165, at *7-9 (D. Colo. Aug. 15, 2011)* (finding $425 was an appropriate rate for a senior attorney and $285 appropriate for an associate attorney with less than 5 years' experience). In light of this Court's prior decisions and the prevailing rates for legal work in the Denver area, hourly rates of $450 and $275 for

attorneys with, respectively, 25 and 5 years of experience are reasonable. However, this Court has not adjudicated as reasonable hourly rates for paralegal work in excess of $75, even where the work equaled that traditionally done by an attorney. *Parker v. Milyard, No. 12-CV-00448-WYD-MJW, 2013 U.S. Dist. LEXIS 131880, 2013 WL 5200965, at *5 (D. Colo. Sept. 16, 2013)* (reducing hourly rates of two paralegals from $120 and $90 to $75). Accordingly, the court reduces the rates of both Ms. Saltz and Ms. Flores to $75.

*b) Reasonableness of Hours Expended*

The Court reviewed the Transactions Listing Report (Doc. # 64-2) submitted by Plaintiffs and finds the number of hours expended reasonable. The billing entries are sufficiently detailed, showing how much time was allotted to the various tasks. The itemized tasks [*9] are limited to those needed to secure judgment against the Defendants and exclude tasks unrelated to that effort. Plaintiffs expended a reasonable quantity of hours given the minimal volume of filing in this case. In addition, the time expended was reasonable in relation to counsels' experience. Any redacted entries included sufficient information to allow the Court to determine the fees were reasonably incurred. Finally, upon review of the billing entries, the Court finds that defendant is entitled to recover fees for the itemized work of each of the paralegals because that work was equal to that traditionally done by an attorney, including such tasks as document review and updating electronic files. *See Silver v. Primero Reorganized Sch. Dist. No. 2, No. 06-cv-02088, 2008 U.S. Dist. LEXIS 10335, 2008 WL 280847, at *3 (D. Colo. Jan. 30, 2008)*.

**B. COSTS**

*Federal Rule of Civil Procedure 54* authorizes a Clerk to tax costs owed to the prevailing party in a civil action. *Fed. R. Civ. P. 54(d)(1)*. *Section 1920* in Chapter 28 of the United States Code enumerates which litigation expenses are taxable. *28 U.S.C. § 1920 (2012)*. On August 12, 2015, Plaintiffs

submitted their Proposed Bill of Costs. (Doc. # 63.) On August 27, 2015, the Clerk of the Court taxed costs totaling $655.75 against Defendants, including fees of the clerk, fees for service of [*10] summons and the complaint, and fees and disbursements for printing. (Doc. # 65.)

Plaintiffs now request reimbursement for additional nontaxable litigation costs totaling $1,154.68, pursuant to their franchise agreements with Defendants. (Doc. # 64-2 at 19-20; Doc. # 64 at 3.) The costs include Lexis/Nexis research fees of $374.96 and a private investigator fee of $779.72. (Doc. # 64-2 at 19.) Whether Plaintiffs are entitled to these nontaxable costs is a matter of contract interpretation. The "Attorneys' Fees" provision in the franchise agreements reads:

> In the event of any default on the part of either party to this Agreement, in addition to all other remedies, the party in default will pay the prevailing party . . . all amounts due and all damages, costs, and expenses, including reasonable attorneys' fees, incurred by the prevailing party in any legal action or other proceeding as a result of such default . . . .

(Doc. # 64-3 at 4,7). The essential question before this Court is whether the language "all damages, costs, and expenses" contemplates costs that are not taxable under *28 U.S.C. § 1920*. Several courts have concluded fee-shifting agreements with similar language include nontaxable costs. *See, e.g., Connell Bros. Ltd., v. Gannon International, Ltd., 4:10CV1795 JAR, 2013 U.S. Dist. LEXIS 18543, 2013 WL 508658 (E.D. Miss. Feb. 12, 2013)* [*11] (finding language "costs of collection" entitled Plaintiff to nontaxable expenses even though the Guaranty at issue did not distinguish between taxable and nontaxable costs); *Ward v. Siebel, No. 06-cv-00036-WYD-MJW, 2012 U.S. Dist. LEXIS 83171, 2012 WL 2196054, at *6 (D. Colo. 2012)* (language "costs and reasonable attorney fees" permitted, among other things, Westlaw legal research fees of $2,898.14); *Matthews v. Wisconsin Energy Corp., No. 05-CV-537, 2010 U.S. Dist.*

EXHIBIT A

2016 U.S. Dist. LEXIS 30845, *11

*LEXIS 110249, 2010 WL 3910298 (E.D. Wis. Oct. 4, 2010)*, *aff'd*, *642 F.3d 565 (7th Cir. 2011)* (although the central issue in *Matthews* was the appropriate amount of attorney fees, neither the lower court nor the Seventh Circuit questioned whether the contract language "costs, damages or expenses, including reasonable attorney's fees," encompassed nontaxable expenses). Even in the absence of these holdings, a plain reading of Plaintiffs' franchise agreements with Defendants suggests the parties intended to include nontaxable costs. First, the phrase "*all* damages, costs, and expenses" necessarily includes nontaxable costs. Relatedly, it is redundant to contract for taxable costs when *Rule 54* already awards those fees.

Accordingly, Plaintiffs' request for nontaxable litigation costs totaling $1,154.68 is granted.

## III. <u>CONCLUSION</u>

Based on the foregoing, it is ORDERED that Plaintiff's Motion **[*12]** for Fees and Costs (Doc. # 64) be GRANTED IN PART and DENIED IN PART. Consistent with the foregoing analysis, it is ORDERED that Plaintiffs' counsel is entitled to attorney fees in the amount of $20,790.00 and costs in the amount of $1,154.68.
*Go to table1*

DATED: March 10, 2016

BY THE COURT:

/s/ Christine M. Arguello

CHRISTINE M. ARGUELLO

United States District Judge

Grant Sullivan

2016 U.S. Dist. LEXIS 30845, *12

**Table1** (*Return to related document text*)

| Timekeeper | Proposed Hourly Rate | Adjusted Hourly Rate | Total Hours | Adjusted Hours | Proposed Lodestar | Adjusted Lodestar |
|---|---|---|---|---|---|---|
| Fredric Cohen | $450 | **$450** | 12.1 | 12.1 | $5,445 | $5,445 |
| Allison Grow | $275 | **$275** | 50.1 | 50.1 | $13,777.50 | $13,777.50 |
| Adrienne Saltz | $195 | **$75** | 1 | 1 | $195 | $75 |
| Emily Flores | $195 | **$75** | 19.9 | 19.9 | $3,880.50 | $1,492.50 |

**TOTAL ADJUSTED LODESTAR**

**Table1** (*Return to related document text*)

**End of Document**

Grant Sullivan

EXHIBIT A

No *Shepard's* Signal™
As of: September 15, 2016 6:23 PM EDT

## *Rasmussen v. Thorne*

United States District Court for the District of Colorado

August 6, 2015, Decided; August 6, 2015, Filed

Civil Action No. 13-cv-02557-CMA-CBS

**Reporter**
2015 U.S. Dist. LEXIS 103341

ALLEN RASMUSSEN, Plaintiff, v. LaTOYA THORNE, Defendant.

**Counsel: [\*1]** For Allen Rasmussen, Plaintiff: Alison Lee Ruttenberg, Alison L. Ruttenberg, Attorney at Law, Boulder, CO.

For LaToya Thorne, Arapahoe County Department of Human Services, Defendant: Erin Lynn Powers, LEAD ATTORNEY, Edward M. Caswall, Monica N. Kovaci, Arapahoe County Attorney's Office-Littleton, Littleton, CO.

**Judges:** CHRISTINE M. ARGUELLO, United States District Judge.

**Opinion by:** CHRISTINE M. ARGUELLO

## Opinion

**ORDER GRANTING DEFENDANT'S MOTION FOR AN AWARD OF ATTORNEY'S FEES AND COSTS AGAINST PLAINTIFF AND PLAINTIFF'S COUNSEL**

At the time he filed the instant suit, Plaintiff Allen Rasmussen knew that Defendant LaTOYA Thorne did not personally deprive him of any protected rights. After discovery, it became clear that Plaintiff's claim was factually baseless. Nevertheless, Plaintiff's counsel unreasonably multiplied proceedings by refusing to dismiss Plaintiff's claim. For these reasons, the Court grants Defendant's Motion (Doc. # 39), and awards attorney's fees and costs against both Plaintiff and

Plaintiff's counsel.

## I. BACKGROUND

On September 22, 2014, Plaintiff voluntarily dismissed this case with prejudice. (Doc. # 35.) Although Plaintiff never responded to Defendant's Motion for Summary Judgment (Doc. # 29), the **[\*2]** Court has reviewed the record and all exhibits contained therein and finds there is no genuine dispute of material fact.

### A. STATE COURT PROCEEDINGS

This case arises out of events that occurred in dependency and neglect ("D/N") proceedings in state court ("State Court"). The following is a summary of the proceedings.

Plaintiff is the grandfather of two young children born to Plaintiff's daughter, Venessa Rasmussen, who has a history of substance abuse. (Doc. # 1 at 2, ¶ 3; 7, ¶ 6(b).) In July of 2012, Venessa and her children, C.R. and M.M., became homeless. (*Id.* at ¶ 4.) On July 20, 2012, concerned about the well-being of his grandchildren, Plaintiff contacted Arapahoe County Sheriff's Office. (Doc. # 1 at 8, ¶ 8.) Arapahoe County Department of Human Services ("DHS") commenced a child protection proceeding in State Court and assumed legal custody of Plaintiff's grandchildren. (Doc. # 29 at 4, ¶¶ 5-6.)

Plaintiff expressed to the intake caseworker, Amanda Throckmorton, his desire to gain custody of his grandchildren. (Doc. # 29-5 at 3, ¶ 8.) However, Venessa told Ms. Throckmorton that she

EXHIBIT A

2015 U.S. Dist. LEXIS 103341, *2

did not want her kids placed with Plaintiff because he sexually and physically abused her in the past. [*3]  (*Id.* at 4, ¶ 12.) After speaking with Venessa and looking into Plaintiff's criminal history, Ms. Throckmorton explained to Plaintiff that she was not considering him for temporary placement. (*Id.* at ¶ 13.) On July 27, 2012, the State Court conducted a temporary custody hearing and ordered that the children be placed with a family friend under the protective supervision of DHS. (Doc. # 29-11 at 3.) The State Court also ordered that any visitation with the grandchildren occur only upon the consent of the guardian *ad litem* and caseworker. (*Id.*) Defendant became the children's permanent caseworker following the temporary custody hearing. (Doc. # 29 at 6, ¶ 15.)

Plaintiff moved to intervene in the D/N proceedings in an attempt to gain custody of the children. (Doc. 44-1 at 5, ¶ 12.) Venessa opposed the motion because of her concern that Plaintiff would sexually abuse her children. (Doc. # 29 at 7, ¶¶ 19-20.)

On September 24, 2012, Plaintiff, who alleged he was unaware of the July 27 Order, visited the children's temporary home. (*Id.* at 7, ¶ 21.) Defendant, who was at the house when Plaintiff arrived, informed Plaintiff that he could no longer see the children unsupervised. (*Id.* at ¶¶ 22-23.) Plaintiff never [*4] requested permission to visit his grandchildren before or after meeting Defendant. (Doc. # 29-6 at 2, ¶ 6.) Instead, Plaintiff disregarded the State Court's order prohibiting him from visiting the children unsupervised and continued to see them until they moved to a foster home on October 19, 2012. (Doc. # 29-1 at 55:21-23.)

On October 12, 2012, the State Court became aware of Plaintiff's ongoing violations of the September 12 Order and, in the presence of Plaintiff and his counsel, ordered that there would be no contact or visitation—supervised or unsupervised—pending a further court order. (Doc. ## 29-1 at 99:6-102:8; 29-9 at 7.) On May 20, 2013, the State Court reinstated the order allowing

supervised visitation with the consent of the guardian *ad litem* and Defendant. (Doc. # 29-9 at 3.) Based upon Vanessa's allegations of sexual abuse, Plaintiff's violent criminal history, and multiple allegations that Plaintiff meted out excessive discipline, the State Court also ordered that Plaintiff would not be considered for permanent placement. (*Id.* at 2-3.) In August 2013, both children were placed in permanent homes. (Doc. # 1 at 11, ¶ 13; 12, ¶ 13.)

## B.   FEDERAL COURT PROCEDURAL HISTORY

Following the [*5] conclusion of the State Court proceedings, Plaintiff filed the instant suit seeking damages for his deprivation of familial association between July and December of 2012. (Doc. ## 1 at 13, ¶ 19; 44 at 10, 11, 13.) In short, Plaintiff alleges that Defendant intentionally denied him his constitutional right of familial association with his grandchildren by "withholding her consent to supervised visitation and telephone contact and by maliciously spreading the lie that the Plaintiff had sexually assaulted C.R." (*Id.* at 13, ¶ 18.) Plaintiff also argued that Defendant's approval of the children's permanent placements arbitrarily interfered with his familial relationship. (*Id.* at 12, ¶ 13.) Defendant did not file a motion to dismiss and discovery ensued.

Following discovery, when it became clear that the suit lacked any factual basis supporting Plaintiff's claims, Defendant requested that Plaintiff dismiss the suit. (Doc. # 39-7 at 1.) Plaintiff declined, and Defendant was forced to file her Motion for Summary Judgment on August 15, 2014. (Doc. # 29.) Without responding to the motion, on September 22, 2014, Plaintiff moved to dismiss the complaint with prejudice. (Doc. # 35.) This Court granted that motion. [*6] (Doc. # 36.) On October 22, 2014, Defendant filed her Motion for Award of Attorney Fees and Costs Against Plaintiff and Plaintiff's Counsel. (Doc. # 39.) On December 18, 2014, Plaintiff filed a response, to which Defendant replied on January 5, 2015. (Doc. ## 44, 47.)

EXHIBIT A

Case No. 1:16-cv-01237-JLK   Document 52-1   filed 09/16/16   USDC Colorado   pg 29 of 35

Page 3 of 9
2015 U.S. Dist. LEXIS 103341, *6

## II. DISCUSSION

Ordinarily, the "American rule" bars litigants from collecting fees and costs from the losing party. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975)*. Courts may assess fees only if it is within their inherent authority to do so or if Congress specifically authorizes the practice by statute. *Id. at 247, 258*.

Defendant seeks attorney's fees and costs under *42 U.S.C. § 1988*; the narrow "bad faith" exception to the American rule; and *28 U.S.C. § 1927*, alleging that the case was frivolous, vexatious, and had no basis in law or fact. (Doc. # 39 at 1.)

### A. *42 U.S.C. § 1988*

*Section 1988(b)* provides that the court, in its discretion, may award reasonable attorney's fees to the prevailing party. *42 U.S.C. § 1988(b) (2015)*. While prevailing plaintiffs are ordinarily awarded attorney's fees, "prevailing defendants are only to be awarded attorney's fees when the plaintiff's claim is 'frivolous, unreasonable, or groundless, or [when] the plaintiff continued to litigate after it clearly became so.'" *Browder v. City of Moab, 427 F.3d 717, 721 (10th Cir. 2005)* (quoting *Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422, 98 S. Ct. 694, 54 L. Ed. 2d 648 (1978))*. "This is a difficult standard to meet, to the point [*7] that rarely will a case be sufficiently frivolous to justify imposing attorney fees on the plaintiff." *Mitchell v. City of Moore, Okla., 218 F.3d 1190, 1203 (10th Cir. 2001)*.

Plaintiff argues that Defendant is not a prevailing party under *§ 1988(b)* and, even if she is the prevailing party, his lawsuit was not frivolous.

#### 1. Defendant is the Prevailing Party

Plaintiff contends that Defendant is not a prevailing party because Plaintiff's voluntary dismissal did not constitute a judicially ordered change in legal relationships.

Under *section 1988(b)*, a party prevails when it receives a judgment on the merits in its favor that materially alters the legal relationship of the parties. *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res., 532 U.S. 598, 603-04, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001)*. In order to be considered a prevailing party, however, the change in legal relationship must be effectuated through a court order. *Id. at 605*. Thus, the issue is whether Plaintiff's voluntary dismissal with prejudice operates as a final adjudication on the merits.

If a party voluntarily dismisses its action without prejudice, pursuant to *Federal Rule of Civil Procedure 41(a)(1)(A)(i)*, the party is not considered a prevailing party "because in order to create a prevailing party there must be a 'judicially sanctioned change in the legal relationship of the parties.'" *Lorillard Tobacco Co. v. Engida, 611 F.3d 1209, 1215 (10th Cir. 2010)* (citing *Buckhannon, 532 U.S. at 605*). However, the Tenth Circuit has indicated that a plaintiff's voluntary dismissal [*8] of an action with prejudice prior to an opposing party's answer under *Rule 41(a)(1)(B)* "operates as a final adjudication on the merits." *Schmier v. McDonald's LLC, 569 F.3d 1240, 1242 (10th Cir. 2009)* (citation omitted).

*Schmier* did not address whether there is a prevailing party when a plaintiff voluntarily dismisses an action with prejudice. Indeed, the Tenth Circuit has not explicitly addressed this issue. Some circuits have found as a matter of law that a plaintiff's voluntary dismissal with prejudice "has the necessary judicial *imprimatur* to constitute a judicially sanctioned change in the legal relationship of the parties." *Highway Equip. Co., Inc. v. FECO, Ltd., 469 F.3d 1027, 1035 (Fed. Cir. 2006)*; *see also Claiborne v. Wisdom, 414 F.3d 715, 719 (7th Cir. 2005)* (finding that a voluntary dismissal with prejudice makes "clear that a decision on the merits has been rendered: [plaintiff's] claims were dismissed with prejudice"). In *Highway Equipment*, the court reasoned that to hold any differently "would imply that the only

EXHIBIT A

2015 U.S. Dist. LEXIS 103341, *8

way for a defendant to obtain a disposition on the merits would be to oppose a dismissal and proceed to litigation on the merits, and would encourage the litigation of unreasonable or groundless claims." *469 F.3d at 1035*.

Other circuits require a defendant moving for attorney's fees to show that the plaintiff voluntarily dismissed the case in order to avoid an adverse ruling on the **[*9]** merits. *Dean v. Riser, 240 F.3d 505, 510-11 (5th Cir. 2001)*; *see also Marquart v. Lodge 837, Int'l Ass'n of Machinists & Aerospace Workers, 26 F.3d 842, 852 (8th Cir. 1994)* ("We emphasize that there is not a scintilla of evidence that Marquart voluntarily withdrew her complaint to escape a disfavorable judicial determination on the merits."). The court in *Dean* refused to adopt a *per se* rule, reasoning that courts should "balance the concerns for encouraging vigorous enforcement of civil rights against discouraging frivolous litigation within the specific and unique context of each individual case." *240 F.3d at 511*.

In this case, Defendant is a prevailing party under either analysis. The September 23, 2014 Order granting Plaintiff's Motion to Dismiss operated as a final adjudication on the merits in favor of Defendant. Dismissing with prejudice barred Plaintiff from bringing a claim against Defendant arising out of the same set of facts. Therefore, Plaintiff's voluntary dismissal was a court-ordered change in the parties' legal relationship.

Defendant has also demonstrated that Plaintiff dismissed the case to avoid an unfavorable ruling on the merits. Plaintiff contends that Defendant never considered him for placement "because of her claim that he had a history of violence and had 'multiple' [allegations of] child abuse." (Doc. # 44 at 5-6.) However, **[*10]** it was Ms. Throckmorton, not Defendant, who placed the children in their temporary home. (Doc. # 29-1 at 28:11-22.) After Ms. Throckmorton's temporary placement of the children, Plaintiff had to adjudicate his motion to intervene before he could be considered for placement. (Doc. # 29-11 at 7.) After holding two

hearings on Plaintiff's motion to intervene, on May 20, 2013, the State Court found that Plaintiff did indeed have a history of violence and allegations of child abuse and ruled that it would not consider Plaintiff for permanent placement. (Doc. # 29-9 at 3.) Therefore, Defendant never had the opportunity to consider Plaintiff for placement.

Plaintiff also claims that Defendant falsely accused him of "having a number of referrals . . . that have to do with allegations of excessive discipline to the children in his home," and that Defendant repeated this allegation in State Court. (Doc. # 44 at 8.) In fact, the State Court record shows that there **were** allegations of excessive discipline. (Doc. # 29-9 at 2.)[1] Thus, Defendant was speaking truthfully when she testified about allegations against Plaintiff. Finally, Plaintiff alleges that Defendant refused to allow him to have any **[*11]** contact with his grandchildren. (Doc. # 44 at 10.) Throughout discovery, Plaintiff submitted no evidence to support this allegation. In fact, in his deposition, he admits that he never attempted to contact Defendant to get permission to see his grandchildren. (Doc. # 29-1 at 77:20-25.)

These facts adequately demonstrate that Plaintiff withdrew his complaint in order to avoid an unfavorable ruling on the merits. Therefore, the Court finds that Defendant is the prevailing party.

2. Plaintiff's Claim is Frivolous

A frivolous suit is one "based on indisputably meritless legal theory, or whose factual contentions are clearly baseless." *Thorpe v. Ancell, 367 F. App'x 914, 919 (10th Cir. 2010)* (citing *Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989))*. Subjective bad faith is not required to award attorney's fees to a prevailing defendant, and a "defendant can recover if the plaintiff violates this standard *at any point during*

---

[1] These allegations were contained in the Colorado Department of Human Services' ("CDHS") confidential database called "Trails." CDHS will only disclose whether an individual has founded allegations against him. Unfounded allegations are confidential, but remain in the system. (Doc. # 44-7 at 135:13-22.)

EXHIBIT A

Case No. 1:16-cv-01237-JLK   Document 52-1   filed 09/16/16   USDC Colorado   pg 31 of 35

Page 5 of 9
2015 U.S. Dist. LEXIS 103341, *11

*the litigation*, not just at its inception." *Id.* (citations omitted) (emphasis **[\*12]** in original). In determining whether a suit was frivolous, the district court must review the entire course of litigation. *U.S. ex rel. Grynberg v. Praxair, Inc., 389 F.3d 1038, 1059 (10th Cir. 2004)* (citing *Christiansburg, 434 U.S. at 421-22*). A court should be careful, however, not to engage in "*post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg, 434 U.S. at 421-22*.

In this case, Plaintiff filed a complaint under *42 U.S.C. § 1983*, alleging that Defendant deprived him of his constitutional right to familial association. In order to succeed on a *§ 1983* claim, a plaintiff must show that the defendant deprived him of his constitutional rights, and that the defendant was acting under the color of state law. *Hall v. Witteman, 584 F.3d 859, 864 (10th Cir. 2009)*. *Section 1983* claims for loss of familial relationship "can extend to grandparents in certain circumstances." *Estate of B.I.C. v. Gillen, 710 F.3d 1168, 1175 (10th Cir. 2013)* (citing *Suasnavas v. Stover, 196 Fed. Appx. 647, 657 (10th Cir. 2006))* (further citation omitted). In *Estate of B.I.C.*, the court explained in dicta that "[w]hen extending the right [of familial association] to grandparents, however, courts often consider whether the grandparents are 'custodial figure[s]' or 'acting in loco parentis,' and 'whether there is a potential conflict between the rights of the [grandparent] and the rights or interests of the [child's] natural parents.'" *Id.* (citations omitted) (second, **[\*13]** third, and fourth alterations in original); *see also United States v. White, 782 F.3d 1118, 1140 (10th Cir. 2015)* ("[W]hen grandparents are not playing any sort of custodial role, [the Tenth Circuit has] not afforded their right to familial association the same degree of protection as a parental right.") (citations omitted).

While the complaint may have stated a *§ 1983* claim on its face, the underlying facts were inaccurate. The only allegation that may have

required discovery was that Defendant repeatedly attempted "to manipulate C.R. into fabricating allegations against his grandfather."[2] (Doc. # 1 at 10, ¶ 11.) Plaintiff was personally involved in the State Court proceedings and knew the majority of his allegations were factually inaccurate at the time he commenced this action.

Even if Plaintiff had a constitutionally protected right to associate with his grandchildren, he was not deprived of that right until October 18, 2012. From July 20, 2012, when Plaintiff called the Arapahoe County Sheriff, until October 18, 2012, when DHS placed the children in foster care, Defendant disobeyed the State Court orders and visited the children unsupervised **[\*14]** and without permission. Simply put, Plaintiff may not collect damages under *§ 1983* for a deprivation that did not occur.

Moreover, Plaintiff knew the State Court, not the Defendant, was responsible for defining the parameters of C.R. and M.M.'s visitation. Plaintiff admits in his deposition that the State Court's October 12, 2012 Order required that Plaintiff not have contact with C.R. pending a further court order. (Doc. # 29-1 at 101:24-102:8.) At the October 12 hearing, the State Court restricted Plaintiff's visitation rights because Plaintiff continually failed to follow the previous court order. (Doc. # 44-2 at 11:1-5.) The October 12 Order remained in effect until May 20, 2013, when the State Court allowed supervised visitation with the consent of Defendant and the guardian *ad litem*. (Doc. # 29-9.) Assuming that Plaintiff had a constitutionally protected familial association right to see his grandchildren, the State Court, not Defendant, is responsible for depriving him of that right after the children went into foster care.

Finally, Plaintiff's claim became undeniably frivolous on March 28, 2014, when a DHS investigator explained in his deposition that aside from Defendant's peripheral **[\*15]** knowledge of

---

[2] This incident occurred in March of 2013. Plaintiff sought damages only for alleged deprivations that occurred in 2012.

EXHIBIT A

C.R.'s allegations of sexual abuse against Plaintiff, Defendant took no part in the investigation. (Doc. # 29-4 at 10:22-11:3.) The investigator also testified that C.R. told his foster mom about the incident, and the foster mom reported it to DHS. (*Id.* at 34:14-23.) The investigator's deposition undermined Plaintiff's only allegation that required discovery, yet Plaintiff continued to refuse to dismiss his complaint.

The Court finds Plaintiff's factual contentions to have been so baseless that they are frivolous. Therefore, the Court grants the award of attorney's fees under *42 U.S.C. § 1988(b)*.

## B. *28 U.S.C. § 1927*

A court may impose excess costs and fees on an attorney if the attorney unreasonably and vexatiously multiplies proceedings. *28 U.S.C. § 1927 (2015)*. Under *§ 1927*, "any conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court, is sanctionable." *Hamilton v. Boise Cascade Express, 519 F.3d 1197, 1202 (10th Cir. 2008)*. The purpose of *§ 1927* is to incentivize "attorneys to regularly re-evaluate the merits of their claims and to avoid prolonging meritless claims." *Steinert v. Winn Grp., Inc., 440 F.3d 1214, 1224 (10th Cir. 2006)*. A court may impose *§ 1927* liability only for the multiplication of proceedings, not the initiation of meritless litigation. *Id.* Sanctions under *§ 1927* "should be made only in instances [*16] evidencing serious and standard disregard for the orderly process of justice." *Miera v. Dairyland Ins. Co., 143 F.3d 1337, 1342 (10th Cir. 1998)* (citations and internal quotation marks omitted). When awarding fees and costs under *§ 1988* and *§ 1927*, the sanctioned party and the party's counsel shall be jointly liable for the fees incurred by the moving party. *See Thorpe v. Ancell, No. 03-cv-01181-LTB-BNB, 2006 U.S. Dist. LEXIS 58184, 2006 WL 2406240, at *6 (D. Colo. Aug. 18, 2006)*, *aff'd*, *367 F. App'x 914 (10th Cir. 2010)*.

Defendant argues that the Court should sanction Alison Ruttenberg, Plaintiff's attorney, for: (1) her inadequate conferral about a discovery dispute that resulted in an unnecessary hearing on the matter and (2) failing to dismiss Plaintiff's claim after it became undeniably meritless.

### 1. Discovery Dispute Delay

Because this is a case involving minor children, issues of confidentiality arose during the course of discovery. In one particular instance, state and federal law conflicted concerning what Defendant could legally produce. Defendant's counsel, Edward Caswall, emailed Ms. Ruttenberg on December 20, 2013 and on December 31, 2013, to attempt to confer and resolve the issue. (Doc. ## 17-2, 17-3.) Met with silence, Mr. Caswall requested on January 15, 2014, that Ms. Ruttenberg provide a time she was available to jointly contact Magistrate Judge Shaffer to [*17] resolve the dispute. (Doc. # 17-1.) In the January 15 email, Mr. Caswall provided case law to illustrate his concern about the conflicting laws. (*Id.*) Ms. Ruttenberg refused to set a conference call. (Doc. # 17-4.) On January 17, 2014, Mr. Caswall emailed Ms. Ruttenberg once again to inquire about a time to call Magistrate Judge Shaffer. (Doc. # 17-5.) Again, Ms. Ruttenberg refused, claiming Mr. Caswall did not give her any case law in support of his proposition. (Doc. # 17-6.) Finally, Mr. Caswall sent another email with the same case law outlined in the January 15, 2014 email and explained that he would be filing a motion for *in camera* inspection with the court. (Doc. # 17-7.) Defendant claims the motion for *in camera* inspection and the accompanying hearing are sanctionable under *§ 1927*.

The Court notes the importance of self-managing discovery disputes without judicial intervention. *See Witt v. GC Serv. Ltd. P'ship, No. 13-cv-02834-RBJ-CBS, 307 F.R.D. 554, 2014 U.S. Dist. LEXIS 170751, 2014 WL 6910500, at *1 (D. Colo. Dec. 9, 2014)*. However, Ms. Ruttenberg's difficulty in communicating with Mr. Caswall does not rise to the level of disregard contemplated by *§ 1927*. When a party's attempt to confer is met with disagreement, it does not follow that the

EXHIBIT A

disagreeing party should be sanctioned under **[*18]** _§ 1927_. Therefore, the Court will not award attorney's fees, costs, or extra expenses for Ms. Ruttenberg's failure to communicate adequately during the discovery dispute.

2. Failing to Re-Evaluate a Meritless Claim

As discussed in Section II(A)(2), _supra_, the vast majority of Plaintiff's allegations were unfounded at the start of litigation. At the close of discovery, Mr. Caswall contacted Ms. Ruttenberg asking her position about dismissing the case. Although Ms. Ruttenberg conceded the lack of merit to Plaintiff's claims after deposing the DHS investigator, she nonetheless refused to dismiss Plaintiff's complaint. (Doc. # 39-7 at 2) (explaining that any events that occurred after the children went into foster care in 2012 "are not relevant").

Assuming Plaintiff had a factual basis for the allegations in the complaint, Ms. Ruttenberg failed to re-evaluate Plaintiff's claim at the close of discovery, even at the urging of opposing counsel. Ms. Ruttenberg is therefore responsible for the excess costs.

## C. AMOUNT OF FEE AWARD

Defendant submits that the total fees to defend this case was $80,535. Because Defendant exacerbated the proceedings by not filing a motion to dismiss, Plaintiff and Plaintiff's **[*19]** counsel will bear only the costs incurred after discovery.

A court determines the reasonable amount of attorney fees by using the lodestar analysis, multiplying a reasonable hourly rate by the total number of hours reasonably expended. _Zinna v. Congrove, 680 F.3d 1236, 1242 (10th Cir. 2012)_ (citation omitted). A reasonable hourly rate "is the prevailing market rate in the relevant community." _Malloy v. Monahan, 73 F.3d 1012, 1018 (10th Cir. 1996)_. When determining the rate of a salaried-government attorney, the court should use "a billing rate equal to their counterparts in expertise in private practice." _See Ramos v. Lamm, 713 F.2d 546, 555 (10th Cir. 1983)_ _overruled on other_

grounds by _Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 483 U.S. 711, 725, 107 S. Ct. 3078, 97 L. Ed. 2d 585 (1987)_; _Parker v. Milyard, No. 12-cv-0048-WYD-MJW, 2013 U.S. Dist. LEXIS 131881, 2013 WL 5200965, at *4 (D. Colo. Sept. 16, 2013)_. The total number of hours expended are reasonable if the applicant exercises the same "billing judgment" as he would in billing his own client. _Malloy, 73 F.3d at 1018_ (citing _Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983))_. "Once an applicant for a fee has carried the burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be a reasonable fee as contemplated by _Section 1988_." _Cooper v. Utah, 894 F.2d 1169, 1171 (10th Cir. 1990)_.

In this case, Defendant supports his Motion for Attorney Fees with an affidavit of Mr. Caswall, thoroughly outlining his years of experience, the work he performed on this case, and the amount of time spent on each aspect of the case. (Doc. # 39-1.) Mr. Caswall provided **[*20]** figures of the average hourly rate of attorneys with his experience in the Denver Metro area using the Colorado Bar Association's published survey on attorney fee rates.[3] (Doc. # 39 at 8.) Using this survey, he placed his hourly rate of $350 between the 75th and 95th percentile due to his extensive experience, particularly in defending _§ 1983_ lawsuits against governmental entities. (_Id._ at 9.) Mr. Caswall provided a detailed spreadsheet, in which he conservatively calculated the number of hours expended on the case. (Doc. # 39-1 at 2-15.)

Plaintiff offered no evidence rebutting Defendant's calculation, and he has not argued for an adjustment to the lodestar value. The Court finds

---

[3] _See_ _Universal Drilling Co., Inc. v. Newpark Drilling Fluids, LLC, No. 08-cv-02686-MSK-CBS, 2011 U.S. Dist. LEXIS 17203, 2011 WL 715961, at *2 (D. Colo. Feb. 22, 2011)_ (relying on Colorado Bar Association's survey in determining a reasonable hourly rate); _Guardian Life Ins. Co. of Am. v. Wilds, No. 12-CV-01215-WYD-KLM, 2014 U.S. Dist. LEXIS 147451, 2014 WL 5293706, at *9 (D. Colo. Oct. 16, 2014)_ (same).

2015 U.S. Dist. LEXIS 103341, *20

Defendant's hourly rate to be reasonable.[4] However, Defendant contributed to the ongoing frivolous litigation by failing to file a motion to dismiss and by failing to contact Plaintiff's counsel for almost two months after the DHS investigator's deposition. Thus, the Court calculates the hours [*21] expended from the time that Mr. Caswall asked Ms. Ruttenberg to dismiss the suit on May 19, 2014, until Defendant filed her motion for summary judgment on August 15, 2014. Defense counsel conservatively billed 58.7 hours at a reasonable rate of $350. Therefore, the Court awards Defendant a reasonable attorney fee of $20,545 (58.7 x $350).

Because the Court finds attorney's fees warranted under _§ 1988_ and _§ 1927_, it need not address whether this case falls under the bad faith exception.

## III. <u>CONCLUSION</u>

For the reasons discussed above, the Court GRANTS Defendant Thorne's request for attorney's fees in the sum of $20,545 under _42 U.S.C. § 1988(b)_ and _28 U.S.C. § 1927_. Specifically, it is ORDERED that Ms. Thorne is awarded fees against Allen Rasmussen and Alison Ruttenberg, jointly and severally, in the amount of $20,545 for attorney's fees [*22] incurred as a result of the work done by Mr. Caswall between May 19, 2014 and August 15, 2014. It is

FURTHER ORDERED that Defendant shall be awarded costs pursuant to _Fed. R. Civ. P. 54(d)_ after complying with _D.C. Colo. LCivR. 54.1_.

DATED: August 6, 2015

BY THE COURT:

/s/ Christine M. Arguello

CHRISTINE M. ARGUELLO

United States District Judge

---

[4] _See Meadows at Buena Vista, Inc. v. Ark. Valley Pub'g Co., No. 10-CV-02871-MSK-KMT, 2012 U.S. Dist. LEXIS 138131, 2012 WL 4442737, at *5 (D. Colo. Sept. 26, 2012)_ ("The Plaintiffs have proffered no contrary evidence, and in the absence of contradictory evidence, the Court finds that the rates claimed are reasonable."); _Duran v. Koehler, No. 10-CV-01569-REB-KMT, 2014 U.S. Dist. LEXIS 117851, 2014 WL 4197578, at *3 (D. Colo. Aug. 25, 2014)_ (finding billing rate reasonable when defendant offered "neither argument nor evidence to suggest that these rates are inappropriate").

Grant Sullivan

EXHIBIT A

2015 U.S. Dist. LEXIS 103341, *22

**End of Document**