IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:16-cv-1237-JLK

**ELECTION SYSTEMS & SOFTWARE, LLC,**
      a Delaware limited liability company; and

**HART INTERCIVIC, INC.,**
      a Texas corporation;

        Plaintiffs,

        v.

**WAYNE W. WILLIAMS,**
      in his official capacity as Colorado Secretary of State.

        Defendant.

_____

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR DISCRETIONARY AWARD OF ATTORNEYS' FEES**

_____

JONES & KELLER, P.C.
      Thomas   P.   McMahon
      tmcmahon@joneskeller.com
      1999 Broadway, Ste. 3150
      Denver,  Colorado  80202
      Tel.  (303)  573-1600
      Fax(303) 573-8133
Attorneys for Plaintiffs

Dated:  October 11, 2016

## <u>TABLE OF CONTENTS</u>

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.    Defendant Does Not Qualify for a Discretionary
      Award of Attorneys' Fees under the Civil Rights Act. . . . . . . . . . . . . . . . . . . . 2

      A.    The complaint here has more than an arguable basis in fact;
            it is in fact *factual*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      B.    The complaint and amended complaint have
            more than an arguable basis in law. . . . . . . . . . . . . . . . . . . . . . . . . . 4

            1.    The complaint and amended complaint properly allege
                  a *prima facie* dormant commerce clause claim. . . . . . . . . . . . . . . 5

            2.    That the "market participant" exception may constitute
                  a defense to an otherwise-valid dormant commerce
                  clause claim need not be anticipated by a plaintiff. . . . . . . . . . . . . 6

            3.    The Secretary only belatedly raised in his reply brief the
                  new, particular aspect of the market participant argument
                  and authorities the court adopted. . . . . . . . . . . . . . . . . . . . . . . . 7

                  a.    The dismissal motion (#21) didn't raise the
                        dispositive aspect or authorities.. . . . . . . . . . . . . . . . . . . . 7

                  b.    The response brief dispelled the non-dispositive
                        aspects and authorities. . . . . . . . . . . . . . . . . . . . . . . . . . 8

                  c.    The reply brief then shifted the market participant
                        argument by advancing a new aspect and
                        authorities which the Court adopted. . . . . . . . . . . . . . . . . . 9

            4.    The "arguability" of Plaintiffs' dormant Commerce
                  Clause claim is evidenced by the close and careful
                  consideration given by the court to the novel and
                  difficult legal questions involved. . . . . . . . . . . . . . . . . . . . . . . 11

      C.    Defendant may not be awarded fees under 42 U.S.C. §1988(b)
            relating to the supplemental state law claims. . . . . . . . . . . . . . . . . . . 13

II.   The Fees Sought Are Excessive in Any Event. . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    A.   Not all the time claimed was reasonably incurred. . . . . . . . . . . . . . . . . . . 14

        1.   Non-compensable time on the state
            law claims must be excluded. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

            a.   Mr. Jackson's time should be reduced by 33.6 hours . . . . . . 16

            b.   Mr. Sullivan's time should be reduced by 59.4 hours. . . . . . 17

            c.   Ms. Morrill's time should be reduced by 12.5 hours. . . . . . . 18

        2.   The total time claimed is excessive
            and should be reduced by virtually half. . . . . . . . . . . . . . . . . . . . . . 18

        3.   Billing judgment has not been exercised here. . . . . . . . . . . . . . . . . 20

    B.   The rates sought are excessive. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Plaintiffs Election Systems & Software, LLC ("ES&S"), and Hart InterCivic, Inc. ("Hart"), oppose the motion of the Defendant Secretary of State (the "Secretary") seeking a discretionary award of attorneys' fees under 42 U.S.C. §1988(b) in excess of $158,000. Attorneys' fees may not be awarded here because the Plaintiffs' federal claim was not frivolous, unreasonable or without foundation; it had an arguable basis in both fact and law.

Neither the Tenth Circuit nor this District has previously addressed whether the "market participant" exception to a dormant Commerce Clause claim applies to the Secretary's actions and rules requiring Colorado's political subdivisions to purchase or lease voting systems with their own funds from a higher priced in-state vendor to the exclusion of less expensive out-of-state vendors.  Plaintiffs' response brief established that all seven market participant cases relied on in Defendant's dismissal motion supported their position.

Further, the Circuits are split regarding the basis on which the exception was ultimately applied here – that a state can be said to be a market participant through its political subdivisions.  *Compare* *W.C.M. Window Co. v. Bernardi*, 730 F.2d 486, 495-96 (7th Cir. 1984) (Posner, J.) (exception inapplicable), *with* *Big Country Foods, Inc. v. Bd. of Educ. of Anchorage Sch. Dist.*, 952 F.2d 1173, 1180 (9th Cir. 1992) (exception applicable).  As Judge Posner noted in *Bernardi*, application of the dormant Commerce Clause in particular cases "is often problematic."  730 F.2d at 493.  And, as the court in *Big Country* emphasized, "[t]he line between state market participation and state regulation is a fuzzy one that has perplexed courts and commentators alike."  *Id.* at 1178 (citing authorities).

Moreover, the fees sought here are excessive in any event.  The rates are excessive and the time incurred on the state law claims is non-compensable.

## **ARGUMENT**

## I. **DEFENDANT DOES NOT QUALIFY FOR A DISCRETIONARY AWARD OF ATTORNEYS' FEES UNDER THE CIVIL RIGHTS ACT**

Under 42 U.S.C. §1988(b), "a court has discretion to 'allow the prevailing party ... a reasonable attorney's fee' in a civil rights lawsuit filed under 42 U.S.C. §1983." _James v. City of Boise_, 136 S. Ct. 685, 686 (2016).  In seeking such a discretionary award here, Defendant relies in the first instance on a Tenth Circuit decision that was not even selected for official publication.  _See D.A. Osguthorpe Family P'ship v. ASC Utah, Inc._, 576 Fed. App'x 759 (10th Cir. 2014) (unpublished).[1]

However, a defendant in a civil rights action is not entitled to attorney's fees simply because it succeeds on the merits.  The mere fact that a plaintiff may, or ultimately does, lose its case is not in and of itself sufficient justification to assess fees.  _See Hughes v. Rowe_, 449 U.S. 5, 14 (1980); _Christiansburg Garment Co. v. EEOC_, 434 U.S. 412, 421 (1978).  "Although the statute does not distinguish between Plaintiffs and defendants, the courts have interpreted §1988 to hold prevailing defendants who seek a fee award to a higher standard than prevailing Plaintiffs." _Haynes v City of Gunnison_, 214 F.Supp.2d 1119, 1122-23 (D. Colo. 2002) (citing cases) (_quoted in Brooks v. Gaenzle_, 2009 WL 4949922, *3 (D. Colo.

---

[1] In _Osguthorpe_, the sole appellate case relied on by the plaintiff did not stand for the proposition for which it was cited; the language was actually drawn from the district court opinion, and merely described a claim made by the plaintiff.  _See_ 576 Fed. App'x at 764.  Further, the plaintiff offered no facts to support its conclusory allegations.  _See id._ at 765.  Unsurprisingly, the Tenth Circuit concluded the complaint had "no basis in law or fact" and was therefore frivolous.  _See id._

The Complaint here included detailed factual allegations on Plaintiffs' dormant Commerce Clause claim and was supported by extensive case law cited in the response brief opposing Defendant's dismissal motion.  This Court heard argument on complex issues relating to the claim and, after analysis in a 14-page opinion, followed Defendant's case authority rather than Plaintiffs' opposing authority.  All of this demonstrates the Complaint was not frivolous, unreasonable or unfounded.

Dec. 15, 2009) (unpublished)).  That is because "awarding fees to prevailing defendants who cannot meet this high standard would chill Plaintiffs' pursuit of civil rights claims and thus thwart the strong public policy in favor of private enforcement of individual civil rights claims." *Id.* at 1123 (citing cases).

Quoting *Christiansburg*, 434 U.S. at 421, the Supreme Court in *Hughes*, 449 U.S. at 14, "interpreted §1988 to permit a prevailing defendant in ... a suit [under §1983] to recover fees *only if* 'the plaintiff's action was *frivolous, unreasonable, or without foundation*.' " *James*, 136 S. Ct. at 686 (emphasis added).  None of those factors exist here.

Just because a complaint is dismissed for failure to state a claim does not mean that it was frivolous. *Neitzke v. Williams*, 490 U.S. 319, 320, 326 (1989).  Rather, "[a] complaint ... is frivolous where it lacks an *arguable* basis in law or in fact." *Id.* at 325 (*quoted in Blakely v. USAA Cas. Ins. Co.*, 633 F.3d 944, 949-50 (l0th Cir. 2011) (emphasis added) (*cited in Osguthorpe*, 576 Fed. App'x at 763)).   A frivolous complaint is one "based on an *indisputably meritless legal theory* ... [or] whose *factual contentions are clearly baseless*." *Id.* at 327 (emphasis added); *accord McDonald v. Sch. Dist. No. 1*, 2106 WL 1247663, *2 (D. Colo. Mar. 30, 2016).  The Tenth Circuit has cautioned that this "is a *difficult* standard [for a defendant] to meet, to the point that *rarely* will a case be sufficiently frivolous to justify imposing attorney fees on the plaintiff." *Mitchell v. City of Moore*, 218 F.3d 1190, 1203 (10th Cir. 2000) (emphasis added) (*quoted in McDonald*, 2106 WL 1247663, *2).

### A.   The Complaint Has More Than an Arguable Basis in Fact; It is In Fact *Factual*

To lack an arguable basis in fact, a complaint's allegations must be "clearly *baseless*"

to the point of being "*fanciful*" and "describing *fantastic or delusional* scenarios ...." *Neitzke*, 490 U.S. at 325, 327, 328 (emphasis added) (*cited in Blakely*, 633 F.3d at 950). "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the *irrational* or the wholly *incredible* ...." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (emphasis added) (*quoted in Blakely*, 633 F.3d at 950).

On the face of the Amended Complaint (#35), that is not the case here. Its "Operative Facts" section addresses Colorado's statutory scheme relating to voting systems (*id.* at 5-6); the Secretary's rulemaking authority in that regard under Colorado law (*id.* at 7-8); the historical background of voting systems in Colorado (*id.* at 8); the chronology of events over the last few years giving rise to the litigation (*id.* at 8-14); and an overall perspective on the situation resulting from the culmination of those events (*id.* at 15-17). Those allegations are in no way baseless, fanciful, fantastic, delusional, irrational or incredible. They are *factual*.

### B. THE COMPLAINT AND AMENDED COMPLAINT HAVE MORE THAN AN ARGUABLE BASIS IN LAW

Lacking an arguable basis in law means that " '[none] of the legal points [are even] arguable on their merits' "; the legal conclusion advanced must be "inarguable ...." *Neitzke*, 490 U.S. at 325 (quoting *Anders v. California*, 386 U.S. 738, 744 (1967)). Here, Defendant urges that Plaintiffs' legal contention that his actions and new voting system rules violated the dormant Commerce Clause was inarguable because Plaintiffs should have known the Secretary would raise, and prevail on, the market participant exception. But the aspect of that exception on which he initially relied in his dismissal motion – that he was akin to a purchaser or vendor of voting systems – was dispelled in Plaintiffs' response brief.

So, the Secretary switched positions in midstream, raising for the first time in his reply brief (#37) the aspect of that exception on which he ultimately prevailed: that he is a market participant because Colorado's counties are market participants when they acquire voting systems – for which they use their own funds. There is no pre-existing authority on that issue in the Tenth Circuit, and there was none in this District until the Court ruled. Plus, circuits that have considered whether a state is a market participant because its political subdivisions are market participants have split on the issue. _Big Country_, 952 F.2d at 1178. The mere fact _Bernardi_ answered the question in the negative makes Plaintiffs' position here "arguable." _Cf. Vakas v. Rodriquez_, 728 F.2d 1293, 1297 (10th Cir. 1984) (denying fees where, "[a]lthough the plaintiff was confronted with substantial opposing authority, the areas of constitutional law which he sought to explore were not without some slight legal support.")

Moreover, the Secretary never asserted in either his dismissal motion or reply that Plaintiffs' dormant Commerce Clause claim was frivolous, unreasonable or unfounded, nor did the Court so find in making its ruling. Accordingly, awarding fees is uncalled for. _See, e.g., Stauffer v. Hayes_, 2009 WL 1537972, *3 (D. Colo. June 2, 2009) (unpublished).

**1.    The Complaint and Amended Complaint Properly Allege a _Prima Facie_ Dormant Commerce Clause Claim**

"[E]ven if the law ... [is] somewhat questionable or unfavorable at the outset of litigation, a party may have an entirely reasonable ground for bringing suit." _Hughes_, 449 U.S. at 15. "[S]eldom can a prospective plaintiff be sure of ultimate success." _Christiansburg_, 434 U.S. at 422. Here, the _effect_ of the Secretary's actions and rules discriminating against out-of-state voting systems providers ES&S and Hart in favor of in-

state voting system provider Dominion Voting Systems, Inc. ("Dominion"), *prima facie* constitutes a dormant Commerce Clause violation.

That is because a state may violate the Clause by "discriminat[ing] against interstate commerce ... *in practical effect*," *Bioganic Safety Brand, Inc. v. Ament*, 174 F. Supp. 2d 1168, 1183 (D. Colo. 2001) (emphasis added), such as by "discriminat[ing] in favor of in-state economic interests." *Id.* at 1183-84. " '[D]iscrimination' simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Or. Waste Sys. v. Dept. of Envtl. Quality*, 511 U.S. 93, 99 (1994).

This occurs where an in-state commercial interest is directly, *or even indirectly*, favored by the challenged governmental action at the expense of out-of-state competitors. *See* *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 95 (2d Cir. 2009). That is precisely what occurred here. And, in the Tenth Circuit, a state rule that clearly discriminates against interstate commerce in favor of intrastate commerce is virtually invalid *per se* under the dormant Commerce Clause. Such a rule can survive *only if the defendant can demonstrate* that the discrimination is justified by a valid factor unrelated to economic protectionism. *KT & G Corp. v. Att'y Gen. of Okla.*, 535 F.3d 1114, 1143 (10th Cir. 2008).

**2.      That the "Market Participant" Exception May Constitute a *Defense* to an Otherwise-Valid Dormant Commerce Clause Claim Need Not Be Anticipated by a Plaintiff**

The Secretary moved to dismiss (#21) Plaintiffs' *prima facie* dormant Commerce Clause claim based on, *inter alia*, the so-called "market participant" exception. That is a defense, *see* *Cohen v. R.I. Tpk. & Bridge Auth.*, 775 F. Supp. 2d 439, 443 (D.R.I. 2011), or "an affirmative defense to an otherwise proper claim that the government action in question

impermissibly burdens interstate commerce," *Airline Car Rental, Inc. v. Shreveport Airport Auth.*, 667 F. Supp. 293, 297 (W.D. La. 1986).

In that regard, a complaint's factual allegations need only address the elements of the offense; it is unnecessary to anticipate and plead around a defense, whether affirmative or otherwise.  *See, e.g., Gomez v. Toledo,* 446 U.S. 635, 640 (1980) (burden of pleading a defense rests with defendant; it is for defendant to claim conduct was justified; no basis for imposing on plaintiff an obligation to anticipate defense in complaint); *accord United States v. N. Trust Co.,* 372 F.3d 886, 888 (7th Cir. 2004) (a "complaint states a claim on which relief may be granted whether or not some defense is potentially available").

### 3. The Secretary Only Belatedly Raised in His Reply Brief the New, Particular Aspect of the Market Participant Argument and Authorities the Court Adopted

#### a. The dismissal motion (#21) didn't raise the dispositive aspect or authorities

Initially, the Secretary asserted that he was a market participant as both a buyer and seller.  He analogized his position to a purchaser of construction projects, citing *White v. Mass. Council of Constr. Emp'rs*, 460 U.S. 204, 205-06 (1983), and scrap automobiles, citing *Hughes v. Alexandra Scrap Corp.*, 426 U.S. 794 (1976); and to that of a seller of state-issued bonds, citing *Dep't of Revenue v. Davis*, 553 U.S. 328, 343-48 (2008), and state-produced cement, citing *Reeves, Inc. v. Stake*, 447 U.S. 429, 432-33 (1980).

The Secretary further asserted that, like a private trading partner, he is not required to guarantee Plaintiffs' economic health, citing *Red River Serv. Corp. v. City of Minot*, 146 F.3d 583, 588 (8th Cir. 1998).  He also urged the market participant exception applies even

when the government entity is the "dominant" actor in the market, citing _Chance Mgmt. v. South Dakota_, 97 F.3d 1107, 1111 (8th Cir. 1996).  He claimed that, like a private business, governments are free to exercise purchasing discretion under the Commerce Clause, citing _Bldg. & Constr. Trades Council v. Assoc'd Bldrs. & Contrs._, 507 U.S. 218, 231 (1993).

Nowhere in the motion did the Secretary assert that he qualified for the market participant exception because the state's political subdivisions acquire voting systems.

> **b.      The response brief dispelled the non-dispositive aspects and authorities**

In their response brief in opposition (#33), ES&S and Hart showed that none of those cases supported the Secretary; all were distinguishable from the situation here.  And, in fact, those cases supported Plaintiffs' position.  _See id._ at 9-11.

In _White_, 460 U.S. at 214-15, Boston expended its own funds in entering into construction contracts, thereby becoming a participant in the market for construction projects as a purchaser.  Likewise, in _Hughes_, 426 U.S. at 796-97, 809, Maryland participated in the market for scrap automobiles as a purchaser by paying "bounties" for such items.  And, in _Bldg. & Constr. Trades Council_, 507 U.S. at 232-33 (1993), not a dormant Commerce Clause case, as the purchaser of construction contractor services a government agency was engaged in proprietary conduct.  Here the Secretary did not purchase voting systems himself and paid none of his own money for acquisition of voting systems by Colorado counties.

In _Davis_, 553 U.S. at 331-32, Kentucky was an issuer of state bonds and, thus, a market participant in the money-making business of selling bonds.  In _Reeves_, 447 U.S. at 440, South Dakota owned and operated a cement plant and, so, as a seller of cement was a

market participant.  In _Minot_, 146 F.3d at 585, the city owned and operated a landfill and was engaged in proprietary business activities as a seller of landfill capacity and waste disposal services, _see id._ at 587, rendering it a market participant rather than a market regulator.  _Id._ at 586.  And, in _Chance_, 97 F.3d at 1111-12, the state was the owner and operator of a money-making lottery business and, so, was a gaming market participant.  Here, the Secretary operates no business and makes no money from voting systems.

The response brief showed that the Secretary does not participate in commerce as the owner of a voting system vendor business in a money-making enterprise, nor does he purchase or lease voting systems from vendors using state funds; rather, he sought to govern private economic relationships of others.  That "_is the essence of regulation._"  _White_, 460 U.S. at 218-19 (Blackmun, J., concurring in part and dissenting in part) (emphasis added) (_quoted in Davis_, 553 U.S. at 346).

> ### c.  The reply brief then shifted the market participant argument by advancing a new aspect and authorities which the Court adopted

Only in his reply brief (#37) did the Secretary for the first time raise the argument and submit authority to the effect that the market participant exception applies to him because voting system purchases are made by the state's political subdivisions (_id._ at 2-6).  Ultimately, the Court relied on two out-of-circuit cases cited there by the Defendant.

_W.C.M. Window Co. v. Bernardi_, 730 F.2d 486 (7th Cir. 1984) (Posner, J.), cited by the Court as a "_cf._," actually supports Plaintiffs' position here.  (Indeed, Defendant called it "[t]he main case that goes the other way," Reply at 5 n.1.)  There, a statute required contractors to hire only Illinois workers on government projects unless they were unavailable

or incapable of performing the particular type of job.  *Id.* at 489.  The case arose when a contractor hired by a school board subcontracted with an out-of-state company.  *Id.* at 490.

Judge Posner, writing for the Seventh Circuit, reasoned that "every local government unit in Illinois is a part of the state government; *but maybe not for the purpose of evaluating Illinois' preference law under the commerce clause*."  *Id.* at 495 (emphasis added).  As in all states, government in Illinois was decentralized and political subdivisions had "substantial autonomy, including authority to levy taxes ...."  *Id.*  <u>The project in question was not paid for by the state but by the local school board.</u>

The appellate court held that, just as was the city of Boston in <u>*White*</u>, the market participant was the school board; the state, telling local government units what to do in construction contracting, was the government regulator.  The result would have been different if *state* funding had been involved.  *Id.*; *cf.* <u>GSW, Inc. v. Long Cty.</u>, 999 F.2d 1508, 1513-14 (11th Cir. 1993) (rejecting application of market participant exception to county which did not invest, expend or risk funds).

Colorado counties, too, have considerable autonomy, including the authority to impose taxes.  It is the counties, out of their resulting revenues – not the Secretary – paying the cost of acquiring Dominion's system.  And, critically, Colorado statutes expressly authorize the counties to choose – not the Secretary to mandate – which voting systems to select, adopt and use.  *See* C.R.S. §1-5-603 (*counties may adopt* any kind of voting machine fulfilling the requirements for voting machines set forth in C.R.S. §§1-5-601 *et seq.*); C.R.S. §1-5-612(1) (*counties may adopt* electronic or electromechanical voting systems); C.R.S. §1-5-616(4) (requiring that new technologies are available *for selection by counties*).

*Big Country Foods, Inc. v. Bd. of Educ. of Anchorage Sch. Dist.*, 952 F.2d 1173 (9th Cir. 1992), can also be read to support Plaintiffs' position.  It involved a statute requiring school districts to purchase, but not with their own funds, Alaska-produced milk if the price was no more than 7% higher than milk produced out-of-state.  *Id.* at 1175.  The plaintiff alleged the law discriminated against out-of-state producers in favor of in-state producers, and the Ninth Circuit agreed.  But the defendants raised the market participant exception to the dormant Commerce Clause, arguing that school districts are political subdivisions of the state and so should be regarded as part of the state.  *Id.* at 1177, 1178.

As here, the circuit had not determined whether the market participant exception could apply to a state statute requiring political subdivisions to favor an in-state vendor in the purchase of products.  And, it noted *the circuits are split on the issue*.  *Id.* at 1178.  The appellate court found the exception applicable because the state itself committed to the annual milk supply contract terms, *including the obligation to pay*, and it administered the acquisition and disbursement of the federal funds *to purchase* the milk.  *Id.* at 1179-80.

Here, the Secretary has not incurred any obligation to pay for the cost to Colorado counties of *acquiring* Dominion's voting system.  And, the federal funds he is contributing to counties that acquire Dominion's system this year or next are not to purchase or lease it but merely for half the cost of *training, implementation and program management*.

**4.**     **The "Arguability" of Plaintiffs' Dormant Commerce Clause Claim Is Evidenced by the Close and Careful Consideration Given by the Court to the Novel and Difficult Legal Questions Involved**

There was absolutely no reason Plaintiffs should have known that the Secretary would be deemed a market participant because Colorado's counties are market participants in

acquiring voting systems.  There was no authority in the Tenth Circuit or this District to that effect until this Court made its decision.  Other circuits were split on the question whether a state is a market participant because its political subdivisions are market participants.  The circuits have "noted the considerable practical difficulty in distinguishing between a 'market regulator' and a 'market participant.' " *GSW*, 999 F.2d at 1511 (citing *Shell Oil Co. v. City of Santa Monica*, 830 F.2d 1052, 1056 (9th Cir. 1987)).

"[T]here is no bright line separating actions taken in a 'governmental capacity' from those taken as a 'market participant,' and a court faced with a market participant defense '*must make fact-specific inquiries on a case-by-case basis*' to determine on which side of the line the state action falls." *Cohen*, 775 F. Supp. 2d at 443 (emphasis added) (quoting *Selevan*, 584 F.3d at 93).  In other words, a court " '*must consider in each specific context if the government is acting like a private business or a governmental entity.*' " *Tri-M Group, LLC v. Sharp*, 638 F.3d 406, 422 (3d Cir. 2011) (emphasis added) (quoting *Selevan*, 584 F.3d at 93).  Indeed,

> "application of the distinction between 'market participant' and 'market regulator' has [ ] occasioned considerable dispute in the Supreme Court's jurisprudence," with the "author of each of ... three opinions that applied the doctrine [*Hughes*, *White*, and *Reeves*] ... author[ing] a dissent in the next."

*Id.* n.24 (quoting *Swin Res. Sys., Inc. v. Lycoming Cty., Pa.*, 883 F.2d 245, 249 (3d Cir. 1989)).

"[C]laims dismissed on 12(b)(6) motions that receive 'careful consideration,' ... as evidenced by lengthy, detailed, and reasoned orders or opinions, are not 'groundless' or 'without foundation.' " *Jane L. v. Bangerter*, 61 F.3d 1505, 1513 (10th Cir. 1995) (quoting

*Hughes*, 449 U.S. at 15-16).  Here, while it granted Defendant's dismissal motion, the Court did not label the dormant Commerce Clause claim frivolous.  If it were truly frivolous, the Court would have had no need to engage in a detailed, in-depth analysis in a 14-page opinion and order.  *See id.* at 1514 & nn.4-5 (citing *Hughes*, 449 U.S. at 15-16).

Examples of suits based on an indisputably meritless legal theory include those asserting "claims against which it is *clear* that the defendants are immune from suit ... and claims of infringement of a legal interest which *clearly* does not exist ...." *Neitzke*, 490 U.S. at 327 (emphasis added).  In that regard, the case of *Crabtree v. Muchmore*, 904 F.2d 1475 (10th Cir.1990), illustrates "the *rare circumstances* in which a suit is truly frivolous so as to warrant an award of attorneys' fees to the defendant." *Clajon Prod. Corp. v. Petera*, 70 F.3d 1566, 1581 (10th Cir. 1995) (emphasis added).  In *Crabtree*, asserting "a property interest which both a state court and federal bankruptcy court had determined did not exist," the Plaintiffs sued a judge who was entitled to absolute immunity. *Id.* (citing *Crabtree*, 904 F.2d at 1477-78).

Conversely, a case like this one which "presents novel and difficult legal questions whose meritworthiness is underlined by the close consideration ... afford[ed] to them" does not meet the standard for awarding fees to a prevailing defendant.  *Id.*

### C.   DEFENDANT MAY NOT BE AWARDED FEES UNDER 42 U.S.C. §1988(b) RELATING TO THE SUPPLEMENTAL STATE LAW CLAIMS

Defendant also seeks fees under §1988(b) relating to Plaintiffs' state law claims.  But, by its very terms, that provision allows for a discretionary award of fees to a prevailing party on *federal* claims brought under

sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 [20 U.S.C.A. § 1681 *et seq.*], the Religious Freedom Restoration Act of 1993 [42 U.S.C.A. § 2000bb *et seq.*], the Religious Land Use and Institutionalized Persons Act of 2000 [42 U.S.C.A. § 2000cc *et seq.*], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d *et seq.*], or section 13981 of this title ....

42 U.S.C. §1988(b).

And, Defendant did not prevail on the state law claims in any event.  The Court did not decide those claims; it abstained from even considering them.  Memo. Op. and Or. (#41) at 12-13.  That is analogous to declining to exercise supplemental jurisdiction over the state law claims after the federal claim has been dismissed.  Defendant is not entitled to fees in such situation.  *See Stauffer*, 2009 WL 1537972, at *4; *Jones v. Haga*, 2007 WL 433126, *2 (D. Colo. Feb. 2, 2007) (unpublished).

## II.     THE FEES SOUGHT ARE EXCESSIVE IN ANY EVENT

A fee award must be reasonable.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The starting point is the "lodestar" – the number of hours reasonably expended multiplied by a reasonable hourly rate.  *Id.*; *Blum v. Stenson*, 465 U.S. 886, 888 (1984); *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir.1998).  A party seeking attorneys' fees should submit evidence supporting the hours expended and rates claimed.  *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 703 F.Supp.2d 1243, 1247 (D. Colo. 2010).

### A.     NOT ALL THE TIME CLAIMED WAS REASONABLY INCURRED

#### 1.     Non-Compensable Time on the State Law Claims must Be Excluded

As established above, Defendant is not entitled to an award of fees relating to the state law claims.  A careful review and allocation of attorneys' fees is necessary "to avoid

awarding fees for work performed on overlapping claims that are not covered by a fee shifting statute or rule." _Haynes v City of Gunnison_, 214 F.Supp.2d at 1122 (citing cases). Fees linked to the state law claims are not compensable because they are "infused with the federal policy interest in enforcement of the federal civil rights laws." _Id._ at 1123 (_quoted in Brooks v. Gaenzle_, 2009 WL 4949922, *2). Accordingly, fees incurred relating to research and briefing on those claims taking up 40% of the dismissal motion (pp.15-25) and two-thirds of the reply brief (pp.9-27) are not compensable.

Defendant's petition for fees on the state law claims is also problematic in that all the time records submitted involve entries by timekeepers on specific dates for multiple tasks under a single aggregated block of time with no differentiation regarding how much time was spent on each specific task. That is so-called "block-billing." _See Cadena v. Pacesetter Corp._, 224 F.3d 1203,1214-15 (l0th Cir. 2000).

The practice is deficient. That is because _time "records must reveal ... how ... hours were allotted to specific tasks ...."_ _Ramos v. Lamm_, 713 F.2d 546, 553 (10th Cir. 1983) (emphasis added). "_[T]he district court ... [must] examine hours allotted to specific tasks_. _Id._ at 554 (emphasis added). "When examining the hours reported for tasks that are properly billable, _the district court should evaluate the hours spent on each task_ to determine their reasonableness." _Id._ (emphasis added). "_Ramos_ admonishes attorneys who wish to recover attorneys' fees not to utilize the practice of block billing, because block billing does not precisely delineate 'how ... hours were allotted to specific tasks.' " _Cadena_, 224 F.3d at 1215 (citing _Ramos_, 713 F.2d at 553).

The Tenth Circuit has recognized that block-billing can contribute to excessive fees

being sought.  Thus, district courts have discretion to discount requested hours where block billing is used.  *See* _BP Pipelines (N. Am.) Inc. v. C.D. Brown Constr., Inc.,_ 473 F. App'x 818, 835 (10th Cir. 2012) (unpublished) (upholding 40% fee reduction); _Flying J, Inc. v. Comdata Network, Inc._, 322 Fed. Appx 610, 617 (l0th Cir. 2009) (unpublished).  That is "particularly important in a situation where a party is seeking to have his opponent pay for his own lawyer's work."  _Robinson v. City of Edmond_, 160 F.3d 1275, 1284 (10th Cir.1998).

Block billing presents a problem where non-compensable work is commingled with otherwise-compensable tasks.  _San Luis Valley Ecosystem Counsel v. U.S. Forest Serv._, 2009 WL 792257, at *8 (D. Colo. Mar. 23, 2009).  The block billing entries here make it impossible to determine how much of the daily time total was allocated to work on the state law claims.  But, the burden is on Defendant, as the applicant, to prove entitlement to the fees he seeks.  *See, e.g.,* _Blum_, 465 U.S. at 895 n.11; _Hensley_, 461 U.S. at 437; *see also* _Haynes_, 214 F.Supp.2d at 1120; _Brooks_, 2009 WL 4949922, at *3.  Accordingly, the entire daily block-billed time total containing a non-compensable entry should be disregarded, for a total of **105.5** hours.  That represents a 20.6% overall reduction in the 512.6 hours claimed.  *See* Ex. B-4 (#52-5) to Defendant's attorneys' fees motion, as follows:

### a.    Mr. Jackson's time should be reduced by 33.6 hours

•    6/10/16: "Researched and drafted motion to dismiss state law claims ....[2]  6.50" (p.1)[3]

---

 2   Ellipsis marks indicate omission of reference to block-billed but seemingly otherwise-compensable, though perhaps excessive, time entries.

 3   Mr. Jackson's work on the dismissal motion only related to the state law claims.  *See id.* Consequently, his generic references to work on the "motion to dismiss" all necessarily relate to those non-compensable claims.

- 6/15/16: "Edited draft motion to dismiss ....  5.80" (*id.*)

- 6/16/16: "Incorporated edits to motion to dismiss draft and circulated to client; made edits to accompanying affidavit ....  6.50" (*id.*)

- 7/13/16: "... reviewed Plaintiffs' response to motion to dismiss and amended complaint, and drafted outline of major arguments ....  6.20" (p.2)

- 7/14/16:  Researched and wrote outline of arguments to put into reply in support of motion to dismiss ....  8.60" (*id.*)

### b.    Mr. Sullivan's time should be reduced by 59.4 hours

- 6/1/16:  "Meet with L. Morrill and C. Jackson to discuss division of duties for ... the motion to dismiss the state law claims ....  3.40" (p.3)

- 6/2/16:  "... analyze case law under the Commerce Clause that indicates that certain categories of state laws are exempt from Commerce Clause scrutiny ....  6.20" (*id.*)

- 6/14/16: "Continue to draft portions of Motion to Dismiss, including ... edits to the arguments that the State law claims must be dismissed ....  6.20"  (p.4)

- 6/15/16: "Review draft motion to dismiss and provide comments and edits to same, including 11th Amendment argument; confer with L. Morrill re: same ....  4.00" (*id.*)

- 7/12/16: "... review Response to the Motion to Dismiss and the amended Complaint; and confer with L. Morrill regarding same.  2.20" (p.7)

- 7/14/16:   "Continue to review Plaintiffs' response to the motion to dismiss, and develop reply arguments ....  3.30" (*id.*)

- 7/15/16: "Continue drafting Reply in support of Motion to Dismiss; ... begin to draft argument that the 11th Amendment and Pullman apply[][4] ....  4.20" (*id.*)

- 7/18/16:   "... continue to draft Reply in support Motion to Dismiss, including arguments under Pullman abstention ....  4.60" (*id.*)

- 7/19/16:   "Continue to draft Reply in support of motion to dismiss, including arguments about lack of ripeness, and exclusivity of the APA review process ....

---

[4]  These arguments were raised in response to the state law claims.  *See* Motion (#21) at 16-19, Reply (#37) at 9, 16-19.

5.50" (*id.*)

- 7/20/16: "Continue to revise and edit the Reply in support of the motion to dismiss, including review of bullet points suggested by L. Morrill for replying to the Pullman abstention argument .... 3.80" (*id.*)

- 7/21/16: "Revise Reply in support of the Motion to Dismiss to incorporate arguments proposed by L. Morrill, including arguments under ... Pullman abstention .... 1.60" (*id.*)

- 7/26/16: "... continue to prepare for oral argument on motion to dismiss .... 9.10" (p.8)

- 7/27/16: "Continue to make final preparation for hearing on motion to dismiss ... and continue to prepare oral argument on the motion to dismiss .... 3.60" (*id.*)

- 7/27/16: "Attend hearing on motion to dismiss .... 1.70" (*id.*)

### c.     Ms. Morrill's time should be reduced by 12.5 hours

- 6/14/16: "Work on Eleventh Amendment and Pullman abstention sections of motion to dismiss. 1.50" (p.10)

- 6/15/16: "Draft Eleventh Amendment and Pullman abstention sections of motion to dismiss .... 3.50" (*id.*)

- 7/20/16: "Research and draft outline for reply brief arguments related to Eleventh Amendment and Pullman abstention defenses; [e]mail draft of same to G. Sullivan. 3.50" (p.11)

- 7/22/16: "Review draft reply in support of motion to dismiss; [d]iscuss same with G. Sullivan .... 4.00" (*id.*)

### 2.     The Total Time Claimed Is Excessive and Should Be Reduced by Virtually Half

Defendant seeks fees for **512.6** hours expended by his counsel in defending this matter

– 191.0 for Mr. Jackson (#52-5 at 1), 230.1 for Mr Sullivan (*id.* at 3), 91.5 for Ms. Morrill

(*id.* at 9).  The time period encompassed is from May 20, 2016 (*see id.* at 3) through

September 13, 2016 (*see id.*, *id.* at 9).

During that same time period, Plaintiffs' counsel expended **269.1** hours in prosecuting the litigation – 30.19 in late May (20th-31st), 50.7 in June, 178.7 in July, 7.51 in August and 2.0 in early September (6th-7th).  *See* attached Ex. 1 (McMahon Declaration) at ¶2.  The work encompassed virtually the same matters addressed by Defendant's counsel:

- Researching and preparing a Response (#33) in Opposition to the Secretary's Motion to Dismiss.

- Researching and preparing a Reply (#36) in support of Plaintiff's Motion for Preliminary Injunction, with supporting evidentiary exhibits (#36-11 through #36-22).

- Under Fed.R.Civ.P. 30(b)(6), taking the depositions of Defendant's two representatives and defending the depositions of Plaintiffs' two representatives.

- Negotiating the terms of a Proposed Protective Order (#24-1) to facilitate the exchange of sensitive and confidential material, and preparing a Motion (#28 ) to Modify One Critical Aspect of Defendant's Proposed Order, resulting in the Court granting Plaintiffs' Motion (#30) and modifying the Protective Order (#31) as requested by Plaintiffs.

- Propounding requests for production under Fed.R.Civ.P. 34, and reviewing the approximately 3,500 responsive documents that were produced.

- Responding to requests for production under Fed.R.Civ.P. 34, which required reviewing and producing approximately 2,500 documents.

- Preparing for the July 27, 2016 hearing, including preparation for oral argument on the Secretary's Motion to Dismiss (#21) and Reply (#37) and on Plaintiffs' Motion for a Preliminary Injunction (#2) and Reply (#36); and preparing to contest Defendant's planned evidentiary presentation on the latter via cross examination of witness testimony, including use of their affidavits or declarations.

- Researching and negotiating with opposing counsel regarding Defendant's Stipulated Bill of Costs (#42) and Motion for Attorneys' Fees (#52), and researching and preparing this Response Brief in Opposition to the latter.

*Id.*

In other words, defense counsel expended virtually twice the amount of time as

Plaintiffs' counsel on the same matters during the same time period.  And that was despite the fact that "tasks were delegated to in-house attorneys and staff at the [Defendant's] office" for which time expended fees are not sought.  *See* Motion (#52) at 12.  The hours requested are excessive, and should be reduced from 512.6 to 269.1.

### 3.    Billing Judgment Has Not Been Exercised Here

"Billing judgment" is a factor in determining a fee award.  *See Hensley*, 461 U.S. at 437; *Ramos*, 713 F.2d at 553.  But, no evidence has been submitted by Defendant that such judgment has been exercised here.  Seeking fees for work on the non-compensable state law claims and claiming virtually double the number of hours expended by Plaintiff's counsel in the same time period demonstrates that billing judgment has *not* been exercised.  The problem is exacerbated by the block billing used throughout.  A significant reduction of the time claimed is warranted.  *See Ecosystem Counsel*, 2009 WL 792257, at *8.

### B.    THE RATES SOUGHT ARE EXCESSIVE

A reasonable hourly rate is determined "according to the prevailing market rates in the relevant community."  *Blum*, 465 U.S. at 895.  It is a rate charged for "similar services by lawyers of reasonably comparable skill, experience and reputation."  *Id.* n.11.  "The first step in setting a rate of compensation ... is to determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time."  *Ramos v. Lamm*, 713 F.2d at 555.  The goal is to fix a rate equivalent to what counsel would reasonably charge a paying client.  *Henry v. Webermeier*, 738 F.2d 188, 195 (7th Cir. 1984).[5]

---

[5]  Yet, the Attorney General's office presumably charged Defendant far less per hour than the rates sought here.  *See* Ex. 1 at ¶3.  Defendant cites no authority for awarding higher rates than those

Here, with all due respect to counsel who represented Defendant, the hourly rates sought for their respective services are overly aggressive.

•        The requested rate of $350/hour for Ms. Morrill, a 14-year attorney, is high.  Three partners in the law firm of Plaintiffs' counsel – two practicing in the esoteric area of tax law – charge essentially that rate.  One with 33 years of experience and another with 23 charge exactly that rate.  The other, with 17 years of experience *and* a masters degree in tax law, charges $355/hour.  Yet another partner, with 24 years in practice, only charges $330/hour.  An of counsel attorney in the firm who worked extensively on this case has practiced law for 25 years, 11 years longer and than Ms. Morrill, only charges $275/hour.

According to the 2012 Colorado Bar Association Economic Survey Snapshot ("CBA Survey") submitted by Defendant (#52-5), an attorney in the 11-15 year experience range such as Ms. Morrill at the median had an hourly rate of $225 and at the 75th percentile had an hourly rate of $258.  *Id.* at 15.  Adjusted for the time differential, an appropriate rate for Ms. Morrill would be $250-$275/hour, and no more than $300/hour.  *See* Ex. 1 at ¶4a.

•        The requested rate of $300/hour for Mr. Sullivan, an attorney with 7 years of practice (2009-16), is also high.  The of counsel attorney referenced above has practiced law for 18 years and 3½ times longer than Mr. Sullivan, yet only charges the above-mentioned $275/hour.  According to the CBA Survey, an attorney in the 6-10 year experience range such as Mr. Sullivan at the median had an hourly rate of $200, and at the 75th percentile had have an hourly rate of $250.  *Id.* at 15.  Similarly, a senior associate with 6-9 years of

_____

actually charged him.

experience at the median had an hourly rate of $210, and at the 75th percentile had an hourly rate of $250. *Id.* at 16. Adjusted for time, an appropriate rate for Mr. Sullivan would be about $250/hour, and no more than $275/hour. *See* attached Ex. 1 at ¶4.b.

•   The requested rate of $300/hour for Mr. Jackson, an attorney with 4 years of practice (2012-16) is even more out of line – no disrespect to Mr. Jackson. A senior litigation associate in the law firm of Plaintiffs' counsel who worked on this case has almost double the years of experience (7) that Mr. Jackson has (4). Yet, he was only billing at the rate of $275/hour. Similarly, a case relied on by Defendant, *QFA Royalties LLC v. Q of O, LLC*, 2016 WL 915753, *3 (D. Colo. Mar. 10, 2016), recently awarded a rate of only $275/hour for an attorney with more years of practice (5) than Mr. Jackson.

Another litigation associate in Plaintiffs' counsel's law firm with 3½ years of practice – almost the same as Mr. Jackson – is billing at the rate of just $235/hour. According to the CBA Survey, an attorney in the 5 years or less experience range such as Mr. Jackson at the median had an hourly rate of $175, and at the 75th percentile had an hourly rate of $200. *Id.* at 15. Similarly, a mid-level associate with 4-5 years of experience at the median had an hourly rate of $200, and at the 75th percentile had an hourly rate of $229. *Id.* at 16. Adjusted for the time differential, an appropriate rate for Mr. Jackson would be on the order of $235/hour, and no more than $250/hour. *See* attached Ex. 1 at ¶4.c.

## CONCLUSION

The dormant Commerce Clause claim was brought on reasonable grounds. Despite being dismissed for failure to state a claim, it "deserved and received the careful consideration of ... the District Court ...." *Hughes*, 449 U.S. at 15. Although upon careful

examination it proved legally insufficient to require a trial, it is "not, for that reason alone, 'groundless' or 'without foundation' as required by *Christiansburg*." *Id.* at 16. A fee award should not be imposed here simply because the Defendant succeeded. *Christiansburg*, 434 U.S. at 421. Rather, this Court should be careful not to engage in *post hoc* reasoning to find this action frivolous.

> [H]indsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable.... Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

*Id.* at 421-22.

In the unlikely event the Court were to exercise its discretion to award fees to Defendant, those sought here are excessive. Defendant is not entitled to recover fees relating to the state law claims. Time entries on such claims using block billing should be disregarded in their entirety. Overall, hours should be reduced by virtually half because they are excessive by that amount and, so, unnecessary. Finally, the hourly rates sought are too high and should be reduced as set firth above.

Dated: October 11, 2016

JONES & KELLER, P.C.

 *S/ T.P. McMahon*
Thomas P. McMahon
tmcmahon@joneskeller.com
1999 Broadway, Ste. 3150
Denver, Colorado 80202
Tel. (303) 573-1600

Fax(303) 573-8133
Attorneys for Plaintiffs


## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2016, I filed a true and correct copy of the

foregoing **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION**

**FOR DISCRETIONARY AWARD OF ATTORNEY'S FEES** with the Clerk of Court

using the CM/ECF system which will send notification of such filing to  the following email

addresses:

LeeAnn Morrill
LeeAnn.Morrill@coag.gov

Grant T. Sullivan
Grant.Sullivan@coag.gov

Christopher Jackson
Christopher.Jackson@coag.gov


*s/Tammy Harris*
Tammy Harris